**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone:  (619) 696-9006
Facsimile:  (619) 564-6665
ron.marron@gmail.com

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
JACK FITZGERALD (257370)
MELANIE PERSINGER (275423)
888 Turquoise Street
San Diego, CA  92109
Telephone: (858) 488-1672
Facsimile: (480) 247-4553
greg@westonfirm.com
jack@westonfirm.com
mel@westonfirm.com

**INTERIM CLASS COUNSEL**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE FERRERO LITIGATION | CASE NO. 3:11-CV-00205-H-CAB |
|  | **CLASS ACTION** |
|  | JUDGE: Hon. Marilyn L. Huff |
|  | **FIRST AMENDED CONSOLIDATED COMPLAINT AGAINST DEFENDANT FERRERO U.S.A., INC. FOR VIOLATIONS OF:** |
|  | **UNFAIR COMPETITION (BUS. & PROF. CODE §§ 17200);** |
|  | **FALSE ADVERTISING LAW (BUS. & PROF. CODE § 17500);** |
|  | **CONSUMER LEGAL REMEDIES ACT (CIV. CODE §§ 1750);** |
|  | **BREACH OF EXPRESS WARRANTY; AND** |
|  | **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY** |
|  | **DEMAND FOR JURY TRIAL** |

1

Plaintiffs Athena Hohenberg and Laura Rude-Barbato, by their attorneys, for their First Amended Master Consolidated Complaint against Defendant FERRERO U.S.A., INC. ("Ferrero" or "Defendant") allege, upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.     This First Amended Master Consolidate Compliant ("Complaint") is filed pursuant to the Order of this Court, dated June 30, 2011, and presents all claims brought against Defendant in the separate cases consolidated hereunder.

## INTRODUCTION

2.     Nutella® is a purported "hazelnut spread" comprised primarily of sugar and oil. The spread was once described as "a loophole in breakfast laws that allows you to put chocolate icing on your toast."  It was invented in Italy in the 1940s by Pietro Ferrero, a pastry maker.  It has long been available and enjoyed in Europe, and was first imported into the United States in 1983, where it has slowly gained in popularity. It is distributed elsewhere throughout the world, for example in Australia.

3.     For many years, Ferrero has been running television and print ads, primarily in Europe, suggesting Nutella® is nutritious, an appropriate breakfast food, and that it promotes children's healthy growth and development.

4.     These advertisements have long been criticized, and Ferrero has come under fire for misleading consumers in this exact fashion elsewhere. In 2008, for example, after the U.K.'s Advertising Standards Authority received dozens of complaints about a Ferrero commercial showing mothers giving children Nutella® on toast with a voiceover saying it could be part of a "balanced breakfast." The ASA ruled the commercial, by creating "the overall impression that Nutella® made a significant contribution to a balanced breakfast," in fact **misleadingly implied the spread made a more significant contribution to a balanced breakfast than was the case.** As a result, the ASA pulled the commercial.[1]

5.     On or about June 16 2010, the European Parliament approved a draft measure requiring all processed foods to clearly label fat, salt, and sugar contents, aimed at fighting obesity and giving consumers more informed choices.

---

[1] *See*, Sweeny, Marc, "Nutella® ad banned over health claims," *The Guardian*, Feb. 27, 2008, *at* http://www.guardian.co.uk/media/2008/feb/27/asa.advertising1.

6.     In reaction to the measure, Ferrero International began a campaign dubbed "Hands off Nutella." Ferreo's vice-president Paolo Fulci called the labeling measure a "straightjacket," claiming that by affecting Nutella's® advertising, the measure would dampen "the most healthy and genuine pleasures," "lead to curbs on even the most private behavior," and "affect the most intimate aspects of private life."

7.     Despite censure in Europe, Ferrero has invaded the United States with the same misleading advertising strategies, played out on the labels of Nutella®, in television commercials and print ads, on the web and elsewhere, designed to and effective in persuading American consumers that Nutella® is an appropriate breakfast food, and a healthy alternative to things like jelly and syrup.

8.     These labels, advertisements, websites and commercials are so deceptive because Nutella®, far from being nutritious and part of a "balanced breakfast," in fact contains about 70% saturated fat and highly processed sugar by weight. Worse, during much of the Class Period, Nutella® was made with partially hydrogenated vegetable oil ("PHVO"), and therefore contained toxic artificial trans fat. As described herein, these substances contribute significantly to a number of serious diseases, and cause thousands of otherwise preventable deaths each year.

9.     After being exposed to Ferrero's long-term misleading advertising campaign described herein, and in reliance on various Ferrero statements, Plaintiffs purchased Nutella® throughout the Class Period defined herein for their own and household use. Having become aware of the true nature of Nutella®, and Ferrero's misleading tactics complained of herein, Plaintiffs seek, on behalf of themselves and all others similarly situated, the remedies prayed for herein.

## THE PARTIES

10.     Plaintiff Athena Hohenberg is and was at all relevant times herein, a resident of the County of San Diego, in California, who purchased Nutella® during the Class Period defined herein, for herself and her four-year-old child, because she sought a healthy snack or breakfast alternative for her household.

11.     Plaintiff Laura Rude-Barbato is and was at all relevant times herein, a resident of the County of San Diego, in California, who purchased Nutella® during the Class Period defined herein, for herself and household use.

FIRST AMENDED CONSOLIDATED COMPLAINT

12.     Defendant Ferrero U.S.A., Inc. is and was at all relevant times herein, a Delaware corporation with its principal place of business in New Jersey.

13.     Ferrero is part of the Ferrero Group, and the American subsidiary of the Italy-based Ferrero International. Ferrero is and was at all relevant times admitted to do and does conduct business within the State of California, the County of San Diego, and this judicial district under the laws of the State of California.

14.     Ferrero and its affiliated companies, directly or through intermediaries, manufacture, distribute and sell Nutella®.

15.     Sales of Nutella® in California are greater than in any other single state in the nation.

16.     Nutella® sold in the United States has been manufactured by Ferrero affiliate Ferrero Canada, Inc., entirely in an 85,000 square meter factory in Brantford, Ontario, Canada, since at least 2006. The Brantford factory employs a permanent workforce of over 1,000 employees.

17.     In March 2010, Ferrero announced it was expanding its Brantford, Ontario manufacturing facilities to produce more Nutella, which is Ferrero's fastest-growing product in the U.S., ramping up its production from the 46,000 tons of Ferrero products it previously manufactured.

18.     Since at least 2006, Ferrero's Toronto, Ontario headquarters, and its Brantford, Ontario factory, have been the primary location for Ferrero's administration and decisions concerning the mixture, formulation, advertising, marketing, and sale of Nucoa sold in the United States.

19.     Whenever the Complaint refers to any act or acts of Defendant, the references shall include the directors, officers, employees, affiliates, or agents of Defendant who authorized such act while engaged in the management, direction, or control of the affairs of Defendant.

20.     Plaintiffs have incurred and, during the pendency of this action, will incur expenses for attorneys' fees and costs herein.  Such attorneys' fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the class.

## JURISDICTION AND VENUE

21.     This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and there are numerous members of the class that are citizens of a state other than

the state of which Defendant is a citizen.

22.     This Court has personal jurisdiction over Defendant, because it has, at all relevant times, been operating or conducting business throughout the state of California and within this judicial district.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this district, Defendant is authorized to conduct business in this district, and has intentionally availed itself of the laws and markets of this district through promotion, marketing, distribution, and sale of its products in this district.

## FACTUAL ALLEGATIONS

24.     Plaintiffs repeatedly purchased Nutella® in California during the Class Period defined herein. Nutella®, manufactured and sold by Ferrero, is sold as a "hazelnut spread" but is really comprised mostly of sugar and oil.

25.     Nutella® contains dangerous levels of saturated fat, the consumption of which has been shown to cause heart disease and other serious health problems. Nutella® also contains over 55% processed sugar, the consumption of which has been shown to cause type-2 diabetes and other serious health problems. In short, Nutella® is not a "healthy" or "nutritious" product to consume.

26.     Plaintiff Hohenberg has a four-year-old child.  At various times during the Class Period beginning in 2009, Ms. Hohenberg purchased Nutella® from the San Diego NB Commissary, located at 2525 Callagan Hwy, Building 3629, San Diego, CA 92136, after being exposed to, understanding, and relying upon advertisements and representations by Defendant that Nutella® is a "healthy breakfast" and is "nutritious." For example, in addition to Nutella's® label, Ms. Hohenberg saw television advertisements where the "mom" is feeding Nutella® to her children while extoling its virtues as breakfast food, as further detailed herein.

27.     In purchasing Nutella®, Ms. Hohenberg was searching for healthy foods to serve her family because she is aware that healthy nutrition is important for maintaining the overall health of her family.  Ms. Hohenberg trusted the representations made by Ferrero in its labeling Nutella®, "An example of a tasty yet *balanced breakfast*," in association with a picture showing fresh fruits, whole

wheat bread, and orange juice.  Ms. Hohenberg believed based in part on this representation that Nutella® was part of a healthy meal.

28.     In or around December 2010, Ms. Hohenberg was surprised and upset to learn that Nutella® was in fact *not* a "healthy" "nutritious" food but instead a product with the nutritional properties of a candy bar, with very high levels of refined sugar and saturated fat.  Ms. Hohenberg felt betrayed that the makers of Nutella® misleadingly represented that their product was nutritious and omitted that the claimed nutritional value was not in fact derived from Nutella® itself but from other foods, such as whole-wheat toast, which potentially could be consumed along with Nutella®.  Had Ms. Hohenberg known the truth about Nutella's® qualities, she would not have purchased it for her family.

29.     Plaintiff Rude-Barbato has a seven-year-old child. At various times during the Class Period beginning in 2010, Ms. Rude-Barbato purchased Nutella® after being exposed to, understanding, and relying upon television advertisements and representations by Defendant that Nutella® is a "healthy breakfast" and is "nutritious."  For example, in addition to Nutella's® label, Ms. Rude-Barbato saw television advertisements suggesting Nutella® was a healthy choice, which included images of young children being fed Nutella®, as further described herein.

30.     Beginning in approximately July 2010, Ms. Rude-Barbato purchased Nutella® from a Vons grocery store in San Diego, and later from CostCo in San Diego, even though it costs more than traditional peanut butter spread, because she thought it was a healthier choice for her active and athletic sons, including her young 7-year old son.

31.     In purchasing Nutella®, Ms. Rude-Barbato was searching for healthy foods to serve her household for breakfast or a snack. Ms. Rude-Barbato trusted Ferrero's representations made in labeling Nutella®, "An example of a tasty yet *balanced breakfast*," in association with a picture showing fresh fruits, whole wheat bread, and orange juice.  Ms. Rude-Barbato believed, based in part on this representation, that Nutella® was part of a healthy meal.

32.     In or around February 2011, Ms. Rude-Barbato learned what ingredients were in the Nutella® she was feeding her family.  She was surprised and upset to find that Nutella® contains dangerous levels of saturated fat and processed sugar.  Ms. Rude-Barbato felt betrayed by the

advertisements that lulled her into believing that Nutella® was healthy and nutritious. Had Ms. Rude-Barbato known the truth about Nutella's® qualities, she would not have purchased it for her family.

33.   Plaintiffs were also upset to learn, in connection with the pre-filing investigation in this action, that, during the Class Period and until approximately August 2008, Nutella® was made with PHVO and, therefore, artificial trans fat.

34.   Plaintiffs seek an order compelling Ferrero to (1) cease marketing its products using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign, (3) restore the amounts by which Ferrero was unjustly enriched, and (4) destroy all misleading and deceptive materials and products.

## THE SUBSTANTIAL POTENTIAL HEALTH DANGERS
## CAUSED BY NUTELLA'S® INGREDIENTS

Saturated Fat

35.   Ferrero falsely and misleadingly markets Nutella® as healthful although it contains dangerous levels of saturated fat, which can increase the blood cholesterol levels in those who consume it. Saturated fat is the main dietary cause of high blood cholesterol. Moreover, high levels of cholesterol can increase one's risk of a heart attack, stroke, and narrowed arteries (atherosclerosis).

36.   The American Heart Association recommends limiting saturated fat intake to less than 7 percent of one's total daily calories.

37.   The American Heart Association recommends the following daily calorie limits for children:

| 1 Year | 2-3 Years | 4-8 Years | 9-13 Years | 14-18 Years |
|--------|-----------|-----------|------------|-------------|
| 900 | 1000 | 1200 (F), 1400 (M) | 1600 (F), 1800 (M) | 1800 (F), 2200 (M) |

38.   One serving of Nutella® (as determined by FDA regulations) is 2 level Tablespoons, which contains 3.5 grams of saturated fat. Thus, for each age, the saturated fat in one of these small servings of Nutella® contains the following percentage of the total recommended daily allowance for saturated fat:

| 1 Year | 2-3 Years | 4-8 Years | 9-13 Years | 14-18 Years |
|--------|-----------|-----------|------------|-------------|
| 50% | 45% | 37.5% (F), 32% (M) | 28% (F), 25% (M) | 25% (F), 20.5% (M) |

FIRST AMENDED CONSOLIDATED COMPLAINT

39.     In sum, regardless of age, a single serving of Nutella® contributes a substantial portion of children's total daily-recommended saturated fat, creating the high probability that the child will therefore exceed his or her recommended daily allowance.

Highly-Processed Sugar

40.     Nutella® contains approximately **20 grams of sugar per serving, the equivalent of five teaspoons of sugar**. The consumption of such staggering amounts of highly-processed sugar contributes to both short-term and long-term problems, especially for developing children.

41.     In the short-term, the high sugar content of Nutella® leads children who consume it to experience a sugar "high," during which they will tend to be hyperactive, and a subsequent "crash," or "low," during which they will be tired, moody, irritable, and even depressed.

42.     In the long-term, regular consumption of Nutella® could cause abnormal blood sugar levels and contribute to or exasperate type-2 diabetes and other related symptoms, such as obesity.

43.     Almost immediately upon consuming Nutella®, the sugar in the spread is digested into simple sugar and released into the blood stream. High levels of blood sugar are toxic to a number of organs, so in response the body releases the hormone insulin to reduce blood sugar to a safe level. When this process is repeated over time, cells that normally react to insulin and absorb excess blood sugar become sensitized and partially resistant to insulin. This partial insulin resistance is variously referred to as metabolic syndrome, insulin resistance syndrome, and pre-diabetes. Type-2 diabetes eventually results.

Artificial Trans Fat

44.     Artificial trans fat is a manufactured food product whose basic chemical structure is different from natural fat molecules. Trans fat is naturally found in trace amounts in foods derived from ruminant animals, primarily in cow's milk and read meat.[2]  Also known as, vaccenic acid, natural trans fat has never been linked to any negative health effect in human beings and is chemically different from artificial trans fat; initial studies on rats indicate that consumption of vaccenic acid is beneficial to health.[3]

---

[2] Dariush Mozaffarian *et al., Trans Fatty Acids and Cardiovascular Disease,* 354 New Eng. J. Med. 1601, 1608 (2008).

[3] Ye Wang *et al., Trans-11 Vaccenic Acid Dietary Supplementation Induces Hypolipidemic Effects on JCR:LA-cp Rats,* 138 J. Nutrition 2117 (November 2008).

FIRST AMENDED CONSOLIDATED COMPLAINT

45.     Artificial trans fat, by contrast, is manufactured via an industrial process called partial hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures above 400 degrees Fahrenheit in the presence of ion donor catalyst metals such as rhodium ruthenium, or nickel.[4]  The resulting product is known as partially hydrogenated vegetable oil, or PHVO, which is the main source of artificial trans fat in the American diet.[5]

46.     PHVO was a major ingredient in Nutella® manufactured and distributed by Ferrero to Class members through and until approximately August 2008.

47.     PHVO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann. PHVO molecules are chemically different from the natural fat molecules in other food products, as shown in the illustrations that follow.

48.     Natural fat, except the trace amounts of natural trans fat from ruminant animals, comes in two varieties: (1) fats that lack carbon double bonds ("saturated fat," Fig. 1) and (2) fats that have carbon double bonds with the hydrogen atoms on the same side of the carbon chain ("*cis* fat," Fig. 2).   Trans fat, however, has hydrogen atoms on opposite sides of its double bonds, which significantly changes the shape and properties of the molecule (Fig. 3).

**FIGURE 1.**



Saturated fat

CH₃ — COOH

🔵 = Hydrogen atom    ⚫ = Carbon atom

---

[4] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing Cardiovascular Disease,* 95 Circulation 2588, 2588-90 (1997).

[5] *See* Mozaffarian, 354 New Eng. J. Med. At 1608.

**FIGURE 2.**



49. PHVO was initially a "wonder product" attractive to the packaged food industry because it combines the low cost of unsaturated *cis* fat with the flexibility and long shelf life of saturated fat. Like *cis* fat, PHVO is manufactured from lower-cost legumes,[6] while saturated fat is derived from relatively expensive animal and tropical plant sources.[7]

---

[6] e.g., corn oil, soybean oil, peanut oil

[7] e.g., butter, cream, tallow, coconut oil

50.     The industrial process that adds hydrogen ions to normal vegetable oil improves food texture and permits food products to withstand heavy mechanical processing and high temperatures.[8] Given its versatility, PHVO was recently used in 40 percent of processed packaged foods.[9]

51.     **Artificial trans fat causes coronary heart disease, chronic systemic inflammation, and atherosclerosis.**  In a joint Dietary Guidelines Advisory Committee Report, the U.S. Department of Health and Human Services and the U.S. Department of Agriculture recognized **"[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."[10]**  This "direct and progressive" relationship means even small amounts of artificial trans fat increases LDL blood cholesterol levels and damages the cardiovascular system.

52.     Food products with artificial trans fat harm the heart by "rais[ing] the concentration of the most dangerous form of serum cholesterol (LDL cholesterol)" and "lower[ing] a protective form of serum cholesterol (HDL cholesterol)."[11]

53.     The American Heart Association notes **"trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels.  Eating Trans fats increases your risk of developing heart disease**."[12]

54.     After an extensive evaluation of the scientific literature on the trans fat/Coronary Heart Disease ("CHD") connection, the FDA concluded:

> [B]ased on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies)

---

[8] *See* Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease,* 340 New Eng. J. Med. 94, 94-8 (1999).  *See also* Ctr. For Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat Nutrition Labeling (Update 2006) (2003), *available at* http://www.cfsan.fda.gov/%7Edms/quatrans2.html.

[9] Mary Charmichael, *The Skinny on Bad Fat,* Newsweek, Dec. 1, 2003 at 66.  *See also* Kim Severson, *Hidden Killer.  It's* Trans*Fat. It's Dangerous. And It's In Food You Eat Every Day,* S.F. Chron., Jan. 30, 2002.

[10] Dept's of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005).

[11] *Id.*

[12]     Am.     Heart     Ass'n.,     *Trans     Fat     Overview,     available at* http://www.americanheart.org/presenter.jhtml?identifier=3045792.

that were conducted using a range of test conditions and across different geographical regions and populations . . . the available evidence for an adverse relationship between *trans* fat intake and CHD risk is strong.[13]

55.     Trans fat raises the risk of CHD more than any other known nutritive product.[14]

56.     Removing 2% of daily calories from trans fat from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,000 premature deaths annually."[15]

57.     A study on the impact of trans fatty acids on heart health provides evidence that:

[E]ven the lower estimates from the effects [of PHVO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat.  Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[16]

58.     Artificial trans fat further damages the heart and other vital organs by causing chronic systemic inflammation, where the immune system becomes persistently overactive, damages cells, and causes organ dysfunction.[17]

59.     In June 2009, scientists found that mice fed a controlled diet "did not exhibit appreciable atherosclerotic plaque formation," but adding trans fat to their diet stimulated atherosclerotic development on its own, "which is an even not normally observed in [mice]."  Further, "the higher the circulating [trans fat] was, the more extensive were the atherosclerotic lesions," thus showing trans fat

---

[13] Ctr. For Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat Nutrition Labeling.

[14] Mozaffarian, 354 New Eng. J. Med. At 1603.

[15] Alberto Ascherio *et al., Trans Fatty Acids & Coronary Heart Disease,* 340 New Eng. J. Med 94, 94-8 (1999).

[16] W.C. Willett *et al., Trans Fatty Acids: Are the Effects Only Marginal?*84 Am. J. Pub. Health 722, 723 (1994).

[17] *See* Lopez-Garcia *et al., Consumption of Trans Fat is Related to Plasma Markers of Inflammation and Endothelial Dysfunction,* 135 J. of Nutr. 562-66 (2005); *see also* Baer *et al., Dietary fatty acids affect plasma markers of inflammation in healthy men fed controlled diets: a randomized crossover study,* 79 Am. J. Clin. Nutr. 969-73 (2004); Mozaffarian & Clarke, *Quantitative effects on cardiovascular risk factors and coronary heart disease risk of replacing partially hydrogenated vegetable oils with other fats and oils*, 63 Euro J. of Clin. Nutr. S22-S33 (2009);  Mozaffarian *et al., Trans fatty acids and systemic inflammation in heart failure,* 80 Am. J. Clin. Nutr. 1521-25 (2004).

1   consumption "can directly induce atherosclerosis."[18]

2   60.   **Artificial trans fat causes type-2 diabetes[19] and diabetes-induced cognitive decline.**

3   In particular, trans fat disrupts the body's glucose and insulin regulation system by incorporating itself

4   into cell membranes, causing the insulin receptors present on cell walls to malfunction, elevating blood

5   glucose levels and stimulating further release of insulin.   Researchers at Northwestern University's

6   medical school found mice show multiple markers of type-2 diabetes after eating a trans fat diet for only

7   four weeks.  By the eighth week of the study, mice fed the diet high in trans fat showed a 500% increase

8   compared to the control group in hepatic interleukin-1β gene expression, indicating the extreme stress

9   Trans fat places on the body.[20]

10   61.   A 14-year study of 84,204 women found that for every 2 percent increase in energy intake

11   from trans fat, the relative risk of type 2 diabetes was 1.39.  In other words, each 2 percent of calories

12   from artificial trans fat increases the risk of type 2 diabetes by 39 percent.[21]

13   62.   Further, in addition to ***causing*** type 2 diabetes, artificial trans fat also ***accelerates***

14   diabetes-related health decline.[22] Results are consistent with other studies showing trans fat causes

15   Alzheimer's disease, as "insulin resistance, high insulin levels, and cholesterol are all implicated in the β-

16   amyloid accumulation in the brain --- the pathologic hallmark of Alzheimer's disease."[23]

17   63.   **Artificial trans fat is a carcinogen and causes breast, prostate and colorectal cancer.**

18   A 13-year study of 19,934 French women showed 75 percent more women contracted breast cancer in

19

20   _____

[18] Am. Heart Ass'n., *Trans Fat Overview.*

21   [19] *Id.*

22   [20] Koppe *et al., Trans fat feeding results in higher serum alanine aminotransferase and increased

23   insulin resistance compared with a standard murine high-fat diet*, 297 Am. J. Physiol. Gastrointestinal Liver Physiol. 1019, 1023 (2001).

24   [21] Salmeron *et al., Dietary Fat Intake and Risk of Type 2 Diabetes in Women,* 73 Am. J. of Clinical

25   Nutrition 1019, 1023 (2001).

26   [22] *See* Devore *et al., Dietary fat intake and cognitive decline in women with type 2 diabetes,* 32 Diabetes Care 635-340 (2009).  This study covered 1,486 participants and carefully controlled for body mass index, physical activity, diabetes severity, depression, vitamin E supplement use, alcohol

27   intake, smoking status, and history of high blood pressure, high cholesterol, or myocardial infarction.

28   [23] *Id* at 693.

the highest quintile of trans fat consumption than did those in the lowest.[24] In a 25-year study of 14,916 U.S. physicians, the doctors in the highest quintile of trans fat intake had over a 100% greater risk of developing prostate cancer than the doctors in the lowest quintile.[25] A study of 1,012 American males observing trans fat intake and the risk of prostate cancer found "[c]ompared with the lowest quartile of total trans-fatty acid consumption, the higher quartiles gave odds ratios equal to 1.58," meaning those in the highest quartile are 58% more likely to contract prostate cancer than those in the lowest.[26] A 600-person study found an 86 percent greater risk of colorectal cancer in the highest trans fat consumption quartile.[27] A 2,910-person study found "*trans*-monounsaturated fatty acids . . . were dose-dependently associated with colorectal cancer risk," which showed "the importance of type of fat in the etiology and prevention of colorectal cancer."[28]

64.    The serious health conditions caused by trans fat consumption only occur from consuming artificial trans fat, not the trace natural trans fat (vaccenic acid) found in ruminant sources.[29]

65.    **The grave, concrete risks of artificial trans fat consumption far outweighed any conceivable benefits of Ferrero's conduct.** There is no health benefit to artificial trans fat consumption and "no safe level" of artificial trans fat intake.[30]   According to the established consensus of the scientific community, consumers should keep their consumption of trans fat "as low as possible."[31]

66.    "[F]rom a nutritional standpoint, the consumption of trans fatty acids results in

---

[24] Chajes *et al., Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study,* 167 Am. J. of Epidemiology 1312, 1316 (2008).

[25] Chavarro *et al., A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.,* 47 Proc. Am. Assoc. of Cancer Research 95, 99 (2006).

[26] Liu et al., *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNAseL R462Q Variant,* 28 Carcinogenesis 1232, 1232 (2007).

[27] Vinikoor *et al., Consumption of Trans-Fatty Acid and its Association with Colorectal Adenomas,* 168 Am. J. of Epidemiology 289, 294 (2008).

[28] Theodoratou *et al., Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study,* 166 Am. J. of Epidemiology (2007).

[29] Mozaffarian, 354 New Eng. J. Med. at 1608-1609.

[30] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes for Energy Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (2005).

[31] *Id.*

considerable potential harm but no apparent benefit . . . ."[32]

67.     **_Trans_ fat is so inherently dangerous that it is being banned in an increasing number of American states and European countries.** In 2008, California became the first state to ban all restaurant food with artificial trans fat, a law affecting approximately 88,000 eating establishments. Trans fats are now banned in California restaurants and schools as of January 1, 2011.  New York City banned all trans fat in its 20,000 food establishments in 2006.  Similar laws exist in Philadelphia, Baltimore, Stamford (CT), and Montgomery County (MD). A 2004 Danish law restricted all foods to under 2 percent of calories from trans fat.  Switzerland made the same restriction in 2008.[33]  In 2006, a trans fat task force co-chaired by Health Canada and the Heart and Stroke Foundation of Canada recommended capping trans fat content at 2 percent of calories for tub margarines and spreads and 5 percent for all other foods. On September 30, 2009, British Columbia became the first province to impose these rules on all restaurants, schools, hospitals, and special events.[34]

68.     After conducting a surveillance study of Denmark's trans fat ban, researchers concluded the change "did not appreciably affect the quality, cost or availability of food" and did not have "any noticeable effect for the consumers."[35]

69.     In approximately August 2008, Ferrero reformulated Nutella® to be made with (modified) palm oil, rather than PHVO.[36]

70.     Thus, Ferrero's pre-2008 formulation of Nutella® (which Ferrero manufactured, advertised as healthful, then distributed and sold to members of the Classes) contained a dangerous ingredient that causes or exasperates type-2 diabetes, is associated with cognitive decline related to

---

[32] Mozaffarian, 354 New Eng. J. Med. at 1608-1609.

[33] Andrew Collier, *Deadly fats: Why Are We still Eating Them?,* The Independent (UK), June 10, 2008.

[34] *Province Restricts Trans Fat in B.C.,* British Columbia Ministry of Healthy Living and Sport Press Release (2009), *available at* http://ww2.news.gov.bc.ca/news_releases_2005-2009/2009HLS0013-000315.htm.

[35] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* High Levels of Industrially Produced Trans Fat in Popular Fast Food, 354 New Eng. J. Med. 1650, 1652 (2006).

[36] *See* LaRue Huget, Jennifer, "Nuts About Nutella®," *Washington Post*, Aug. 18, 2008, *at* http://voices.washingtonpost.com/checkup/2008/08/nuts_about_Nutella®.html.

Alzheimer's disease, raises LDL cholesterol levels, lowers HDL cholesterol levels, inflames blood vessels, causes heart disease and several types of cancer, and is now illegal in many cities, counties, and nations, as well as the province of British Columbia and the state of California. Ferrero's addition of artificial trans fats to Nutella® during the Class Period rendered it unfit for human consumption, and rendered its concurrent advertisements, labels and representations that Nutella® was "healthy," "nutritious," and part of a "balanced breakfast," particularly false, misleading and deceptive.

Modified Palm Oil

71.    Ferrero's response to the global outcry against artificial trans fats was to do nothing more than substitute modified palm oil, also implicated in causing heart disease and diabetes, and to institute a widespread advertising and labeling campaign falsely and deceptively marketing Nutella® as a healthy, wholesome food, part of a balanced breakfast, and particularly as being beneficial to children's development and growth.

72.    The use of modified palm oil involves a process called interesterification, the long-term effects of which are not well understood. Some studies have suggested modified palm oil may have a nearly identical effect on human LDL cholesterol levels as PHVO.[37]

73.    In addition, the World Health Organization has convincingly linked palmitic acid—present in palm oil—to increased risk of cardiovascular disease.[38]

74.    Nutella® also uses genetically modified soy lecithin, which has been genetically engineered and sprayed with pesticides, and is not healthy for children's growth and development.

**PRODUCTS WITH WHICH NUTELLA® IS FAIRLY COMPARABLE**

75.    Although advertised as a "nutritious" "hazelnut spread" that is part of a "balanced breakfast," Nutella® is in fact more comparable foods which decidedly are ***not*** breakfast foods, or suitable to assist in the development and growth of children:

---

[37] *See* "Palm Oil Not A Healthy Substitute For Trans Fats, Study Finds," *Science News*, May 11, 2009, *at* http://www.sciencedaily.com/releases/2009/05/090502084827.htm (reprinted from materials provided by the United States Department of Agriculture, Agricultural Research Service).

[38] *See* World Health Organization, "Diet, Nutrition and the Prevention of Chronic Diseases" (2003), at 81-82, *available at* http://www.who.int/hpr/NPH/docs/who_fao_expert_report.pdf.

| | Serving Size | Calories | Calories from Fat | Total Fat | Saturated Fat | Sugar | Protein |
|---|---|---|---|---|---|---|---|
| Nutella® | 2 tbsp. (37g) | 200 | 100 | 11g | 3.5g | 21g | 3g |
| Smucker's Hot Fudge Microwave Topping | 2 tbsp. (39g) | 130 | 35 | 3.5g | 1g | 17g | 2g |
| Hershey's Payday Peanut Caramel Bar | 1 bar (52g) | 240 | 120 | 13g | 2.5g | 21g | 7g |

### FERRERO'S LONG-TERM, MULTI-MEDIA, DECEPTIVE ADVERTISING CAMPAIGN

76.     Throughout the Class Period, Ferrero engaged in, and Plaintiffs and members of the class were exposed to, a long-term advertising campaign in which Ferrero utilized various forms of media, including, but not limited to, print advertising on the Nutella label and elsewhere, websites, television commercials, physicians, and unpaid press coverage, to consistently convey the deceptive and misleading message that Nutella is healthy, nutritious, part of a healthy meal, part of a balanced meal, and/or beneficial for developing and growing children.

Nutella® Label

77.     **Deceptive product label:** Ferrero deceptively labels Nutella® with the following phrases: "Hazelnut Spread," "Start your day with Nutella® . . ." and "An example of a tasty yet balanced breakfast: a glass of skim milk, orange juice and Nutella® on whole wheat bread," (in which the words "tasty" and "balanced" are highlighted).  The label of Nutella® also depicts this purportedly "balanced" breakfast, showing fruit, a glass of orange juice, a glass of milk, a slice of bread covered in Nutella®, and a jar of Nutella®.  This montage is repeated elsewhere on the label.  Nutella's® product labels are deceptive because they falsely suggest that Nutella® is the key element that makes the depicted breakfast "balanced" or nutritious when in fact it is the other food items such as milk, juice, fruit and bread that provide the nutrients and healthy qualities that Nutella® is touting.

//

//

//

//



Nutella® Website

78. **Reference to false and misleading Nutella® website:** The Nutella® label also includes a link to a website showing pictures of a mother feeding Nutella® to happy, healthy children. Several pages on the website link to information further deceptively suggesting Nutella® is healthy and wholesome, and especially that it should be fed to children as part of a healthy breakfast.

//

//

//

//

//

//

//

//

//

//

18

79.   For example, the page titled "About Nutella®" claims the product "contains quality ingredients such as skim milk and a hint of cocoa," and when spread on whole wheat bread "is a good combination for a balanced breakfast that the entire family will enjoy." The page further implies Nutella® is healthy because it "contains no artificial colors or preservatives."

//
//
//
//
//
//
//
//
//

19



80. This description includes links to "hazelnut," "skim milk," and "cocoa," which pop-up with windows that provide the following deceptive descriptions of the ingredients:

- Hazelnuts – "Hazelnuts have a flavorful combination of oils, vitamins and protein. Like other varieties of nuts, hazelnuts contain antioxidant compounds that protect your body overall."

- Skim Milk – "Skim Milk is high in protein, vitamins and has less fat than whole milk."

- Cocoa – "Cocoa is a very important ingredient in Nutella® because of its unique and incomparable flavor. The cocoa used gives Nutella® its chocolaty taste."

81. Ferrero's claim that Nutella® is a "Hazelnut Spread" and contains "Over 50 hazelnuts per 13 oz. Jar" but just a "hint of Cocoa" is also misleading because it implies that it has substantially

more healthy ingredients (nuts) than unhealthy ones (chocolate), even though, according to the ingredient list of Nutella®, hazelnuts and cocoa are the third and fourth ingredients, respectively. (Sugar and palm oil make up the majority of Nutella®.) In fact, Nutella® contains only about 13% hazelnuts and less than 7% skim milk, but 55% sugar.



82.     On a portion of its website titled "Nutella® and Nutrition," Ferrero further implies Nutella® is healthy by citing a 2005 article summarizing the results of studies that found eating breakfast is good for kids. Ferrero then goes on to provide advice from "Connie Evers, M.S., R.D., a registered dietitian and children's nutrition expert," including, "Create a meal of whole wheat toast or a whole-grain toaster waffle with Nutella® hazelnut spread, a small bowl of sliced strawberries and a

glass of 1% milk for a ***good mix of morning nutrients.*** When used in moderation with complementary foods, ***Nutella® can form part of a balanced meal***. It is a quick and easy way to encourage kids to eat whole grains . . . . With the unique taste of Nutella®, kids may think they are eating a treat for breakfast while ***moms are helping nourish their children with whole gains***."



83.     On a portion of its website titled "<u>Tips for Moms</u>," Ferrero further implies Nutella® is healthy and wholesome, especially for children, by conveying the purported advice expert Evers.

84.     The advice Evers gives includes that Nutella® is the "best breakfast" that can be served to children.

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20    85.    Expert Evers further advises "A breakfast that consists of a small whole grain bagel

21 with Nutella®, 1/2 cup of slice strawberries and 1 cup of 1% milk *is suitable for school-aged*

22 *children*." Notably, Ms. Evers does not opine on *how much* Nutella® is "suitable" for children.

23    86.    Expert Evers further advises "Nutella® can form part of a balanced meal. You can start

24 your day with a genuine and tasty breakfast by spreading Nutella® hazelnut spread on a variety of

25 bakery goods, *preferably* whole wheat or multigrain bread. Add a glass of 1% milk and juice or fruit

26 to get the *right fuel to start your day!*"

27 //

28 //



87.    Elsewhere on the page, expert Evers opines an "appropriate amount" of Nutella® to serve children at breakfast is 1 tablespoon.  This is *half* the standard Nutella® serving size of 2 tablespoons, and far less than the amount depicted in the various photographs and videos of children eating Nutella® slathered on toast.

//
//
//
//
//
//

24

88. Ferrero, through expert Evers, also represents that Nutella® "has a nutritional profile that is comparable to other popular breakfast condiments, such as jellies and syrup." This claim is false and deceptive, even according to Ferrero's own comparison:

|  | **Nutella®** | **Jelly** | **Syrup** |
|---|---|---|---|
| **Serving Size** | 1 Tablespoon | 1 Tablespoon | 1 Tablespoon |
| **Calories** | 100 | 56 | 53 |
| **Fat** | 5.5 g | 0 g | 0 g |
| **Sugar** | 22 g | 14 g | 13 g |

89. Elsewhere on its websites, Ferrero states that it "recommend[s] that Nutella® is eaten at breakfast" because it purportedly has a "low glycemic index," so that it "help[s] maintain energy and concentration levels longer." This statement is false as Nutella's® very high sugar content renders it a high glycemic index food.



//

90.   **False and Misleading Television Commercials:** During the Class Period, Ferrero also broadcast television commercials (and recast those commercials on its website) portraying mothers feeding Nutella® to happy, healthy children.

91.   One such commercial for Nutella® aired during the Class Period is as follows:

*[DOG BARKING, YOUNG BOY YELLING]: Mom!*

*[FRENZIED MOTHER]: Breakfast in this house? In the morning, I can use all the help I can get. That's why I love Nutella®, a delicious hazelnut spread that's perfect on multigrain toast and even whole wheat waffles. It's a quick and easy way to give my family a breakfast they'll want to eat. And Nutella® is made with simple, quality ingredients like hazelnuts, skim milk, and a hint of cocoa. They love the taste, and I feel good that they're ready to tackle the day. Nutella® – breakfast never tasted this good.*

92.   Another commercial for Nutella® aired during the Class Period is as follows:

*[FRENZIED MOTHER]: When it comes to getting my family to eat breakfast, I could use all the help I can get. Like Nutella®, a delicious hazelnut spread that's perfect on multigrain toast, even whole grain waffles, for a breakfast that my kids love, and I feel good about serving. And Nutella® is made with simple, quality ingredients, like hazelnuts, skim milk, and a hint of cocoa. It's quick, easy, and something everyone can agree on. Nutella® – breakfast never tasted this good.*

93.   Another commercial for Nutella® aired during the Class Period is as follows:

*[MOM]: As a mom, I'm a great believer in Nutella®, a delicious hazelnut spread that I use to get my kids to eat healthy foods. I spread a little on all kinds of healthy things, like multigrain toast. Every jar has wholesome, quality ingredients, like hazelnuts, skim milk, and a hint of*

*delicious cocoa. And Nutella® has no artificial colors or preservatives. It's quick, it's easy,*
*and at breakfast I can use all the help I can get.*

*[VOICEOVER]: Nutella® – breakfast never tasted this good.*

94.     Each commercial includes depictions of the mother slathering Nutella® on toast and feeding it to children, as well as text proclaiming that Nutella® does not have any artificial colors or preservatives.

95.     Moreover, each commercial, while touting the purportedly "simple" and "wholesome" ingredients in Nutella®, deceptively omits that the product is comprised mostly of sugar and oil.

96.     Moreover, in the context of these commercials, Ferrero uses the word "simple" to falsely imply that Nutella® somehow differs from, and is healthier than, typical processed foods.

97.     **Omissions of material information:** In the various representations complained of herein, Ferrero deceptively omitted, throughout the Class Period, the actual content and ingredients of Nutella®, including that it is comprised primarily of sugar and oil (and, during much of the period, was made with PHVO and therefore contained dangerous artificial trans fat), and the association between these ingredients and death, disease and other health issues, like childhood obesity.

98.     **Deceptive grocery categorization:** Ferrero categorizes Nutella® in a manner that results in the product typically being displayed in grocery stores alongside items like peanut butter, even though the product has far more in common with cake icing. This is part and parcel of Ferreo's false and deceptive "Hazelnut Spread" claim.

### SUMMARY OF FERRERO'S MISLEADING MISREPRESENTATIONS, OMISSIONS, AND FRAUDULENT ACTS

99.     In sum, Ferrero has engineered a long-standing, pervasive and multi-faceted marketing campaign focusing on the purported "nutritional" value of Nutella® as a breakfast food for children. For instance, its ad campaign includes images and videos of wholesome families and happy, healthy children enjoying Nutella® for breakfast before going to school. These claims are misleading because Nutella® contains high levels of saturated fats, sugar, oil, artificial flavoring, and other objectionable ingredients (and for much of the Class Period contained high levels of artificial trans fat), which harm

the heart by raising blood cholesterol and blood sugar levels, a fact Ferrero deceptively omits.

100.    Moreover, the nutritional value claimed, if any, is not derived from Nutella®, but instead is dependent on whatever *other* foods or drinks (such as the whole grain bagel, 1/2 cup of sliced strawberries and 1 cup of 1% milk) that are supposed to be consumed along with Nutella®. But Nutella's® actual nutritional facts are comparable to other foods that are definitively *not* considered a part of a "balanced" breakfast, like candy bars and cake icing.

101.    Ferrero also made representations that consumption of Nutella® is especially beneficial to children. Ferrero did and intended to convey with its statements and images that Nutella® is a wholesome and healthful product, when in fact consuming Nutella® daily, a behavior Ferrero implies through its advertising is healthful and not harmful, could create a substantial health risk, raise cholesterol levels, cause disease, damage the heart, and increase the risk and severity of type-2 diabetes. Ferrero's encouragement of the daily consumption of Nutella® by children is especially insidious because of the devastating effects on children's growth and health from high amounts of saturated fat, sugar, and artificial trans fat.

102.    Plaintiffs believed, based on representations complained of herein, both individually and especially when taken together as a whole, that Nutella® consumption is healthful and beneficial to children. Nutella®, however, contains about 70% saturated fat and processed sugar by weight, for much of the Class Period was made with artificial trans fat, and is comprised of other objectionable ingredients as described herein. These ingredients significantly contribute to America's alarming increases in childhood obesity, which can lead to life-long health problems. Therefore, Nutella® is decidedly ***not*** part of a nutritionally "balanced" breakfast for consumption by children as Defendant's advertising deceptively suggests.

## PLAINTIFFS' RELIANCE AND INJURY

103.    When purchasing Nutella®, Plaintiffs were seeking, for themselves and their households, a healthy snack or breakfast alternative, including a product that did not negatively affect blood cholesterol levels or the health of Plaintiffs' or their families' cardiovascular systems, as well as products made with natural, healthy ingredients.

104.    Plaintiffs were exposed and Ferrero's long-term advertising campaign concerning the

purported healthfulness of Nutella. They understood and relied upon Ferrero's misrepresentations for each purchase of Nutella® made during the Class Period, including, for example, "moms are helping nourish their children with whole grains," "A *balanced breakfast* is key to a great start each morning for the entire family, especially for children," "An example of a tasty yet *balanced breakfast*," and "Nutella® can form a part of a *balanced meal*."

105.    For each purchase of Nutella® she made during the Class Period, Plaintiff Hohenberg was exposed to, saw, read, understood, and relied upon Nutella's® label, as described herein. Throughout the class period, Plaintiff Hohenberg further was exposed to, saw, heard, understood, and relied upon various statements made about Nutella's® purported healthful qualities as part of Ferrero's long-term advertising campaign.

106.    For each purchase of Nutella® she made during the Class Period, Plaintiff Rude-Barbato was exposed to, saw, read, understood and relied upon Nutella's® label, as described herein. Throughout the class period, Plaintiff Rude-Barbato further was exposed to, saw, heard, understood, and relied upon various statements made about Nutella's® purported healthful qualities as part of Ferrero's long-term advertising campaign.

107.    Plaintiffs purchased Nutella® believing it had the qualities they sought based on its deceptive advertising and Ferrero's misrepresentations and omissions, but the product was actually unsatisfactory to them for the reasons described herein.

108.    Nutella® costs more than similar products without misleading advertisements and misrepresentations, and would have costs less absent the false and misleading statements and material omissions described herein.

109.    Plaintiffs and members of the Classes paid more for Nutella®, and would have been willing to pay less, if anything at all, had they not been mislead by the false and misleading advertisements, misrepresentations and omissions complained of herein. Plaintiffs and members of the Classes would not have purchased Nutella® at the prices they did, or would not have purchased Nutella® at all, absent Defendant's false and misleading advertisements and misrepresentations.

110.    For these reasons, Nutella® was worth less than what Plaintiffs and members of the Classes paid for them.

FIRST AMENDED CONSOLIDATED COMPLAINT

111.    Plaintiffs and members of the Classes purchased Nutella® instead of competing products based on the false statements, misrepresentations and omissions described herein.

112.    Instead of receiving products that have the advantages inherent in being free of high levels of saturated fat, sugar, artificial trans fat, artificial flavoring, and other objectionable ingredients, and comprised of natural, healthy ingredients, Plaintiffs and members of the Classes received products that were comprised of highly-refined, highly-processed, and nutritionally empty ingredients, with dangerous levels of saturated fat, sugar, artificial trans fat, and other objectionable ingredients.

113.    Plaintiffs and members of the Classes lost money as a result of Ferrero's deception in that they did not receive what they paid for.

114.    Plaintiffs and members of the Classes altered their position to their detriment and suffered damages in an amount equal to the amount they paid for Nutella®.

## DELAYED DISCOVERY

115.    Plaintiffs were reasonably diligent consumers looking for products for themselves and their family households that were generally healthy and nutritious. Nevertheless, Plaintiffs did not discover that Ferrero's labeling of Nutella® was false, deceptive, or misleading until December 2010 (Plaintiff Hohenberg) and February 2011 (Plaintiff Rude-Barbaro).

116.    Plaintiffs were unaware of the grave health consequences of consuming products like Nutella® before that time.

117.    Plaintiffs are not nutritionists, food experts, or food scientists; they are lay consumers who did not possess the specialized knowledge Ferrero had which otherwise would have enabled them to associate high levels of saturated fat and refined sugar with disease.

118.    Plaintiffs, in the exercise of reasonable diligence, could not have discovered Ferrero's deceptive practices earlier because, like nearly all consumers, they do not read scholarly publications or other materials describing the negative impact of consuming foods high in saturated fat, refined sugars, and trans fatty acids.

## CLASS ACTION ALLEGATIONS

119.    Plaintiffs bring this action on behalf of themselves and the following Classes in

30

accordance with Rule 23 of the Federal Rules of Civil Procedure:

**A. Restitution Class -** All persons (excluding officers, directors, and employees of Ferrero) who purchased, on or after January 1, 2000 (the "Class Period"), one or more Nutella® products in the United States for their own or household use rather than resale or distribution.

**B. Injunctive Relief Class** - All persons (excluding officers, directors, and employees of Ferrero) who commonly purchase or are in the market for Nutella® in the United States for their own or household use rather than resale or distribution.

120.    Questions of law and fact common to Plaintiffs and the Classes include:

a.   Whether Ferrero contributed to, committed, and/or is responsible for the conduct alleged herein;

b.   Whether Ferrero's conduct constitutes the violations of laws alleged herein;

c.   Whether Ferrero acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein;

d.   Whether Class Members are entitled to injunctive relief; and

e.   Whether Class Members are entitled to restitution.

121.    By purchasing and/or using Nutella®, all members of the Classes were subjected to the same wrongful conduct.

122.    Absent Ferrero's material deceptions, misstatements, and omissions, Plaintiffs and other members of the Classes would not have purchased Nutella®.

123.    Plaintiffs' claims are typical of the Classes' claims.   Plaintiffs will fairly and adequately protect the interests of the Classes, have no interests that are incompatible with the interests of the Classes, and have retained counsel competent and experienced in class litigation.

124.    The Classes are sufficiently numerous, as they include at least hundreds of thousands of individuals who purchased Nutella® throughout the United States during the Class Period.

125.    Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

126.    Ferrero has acted on grounds applicable to the Classes, thereby making appropriate

1   final injunctive relief or declaratory relief concerning the Classes as a whole.

2        127.   Questions of law and fact common to the Classes predominate over any questions

3   affecting only individual members.

4        128.   Class treatment is appropriate under FRCP 23(a) and both 23(b)(2) and 23(b)(3).

5   Plaintiffs do not contemplate class notice if the classes are certified under FRCP 23(b )(2), which does

6   not require notice, and notice via publication if the classes are certified under FRCP 23(b)(3) or if the

7   Court determines class notice is required notwithstanding that notice is not required under FRCP

8   23(b)(2).   Plaintiffs will, if notice is required, confer with Defendant and seek to present the Court

9   with a stipulation and proposed order on the details of a class notice plan.

10                              **FIRST CAUSE OF ACTION**

11                  **Violations of the California Unfair Competition Law,**

12                        **Bus. & Prof. Code §§ 17200 et seq.**

13                                    **(Unlawful)**

14       129.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set

15   forth in full herein.

16       130.   Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or

17   practice."

18       131.   The acts, omissions, misrepresentations, practices, and non-disclosures of Ferrero as

19   alleged herein constitute "unlawful" business acts and practices in that Ferrero's conduct violates the

20   False Advertising Law and the Consumer Legal Remedies Act.

21       132.   Ferrero's conduct is further "unlawful" because it violates the following provisions of the

22   Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations:

23           a.   21 U.S.C. § 343(a), which deems food misbranded when the label contains a statement

24                that is "false or misleading in any particular;"

25           b.   21 C.F.R. § 10 1.13(i)(3), which bars nutrient content claims voluntarily placed on the

26                front of a product label that are "false or misleading in any respect";

27           c.   21 C.F.R. § 101.14(d)(2)(ii)-(iii), in that Ferrero's claims concerning the supposed

28                benefits of Nutella® to health are not limited to describing the value that ingesting the

substance may have on a particular health related condition, and further because they are not complete, not truthful, and highly misleading; and

    d.    21 C.F.R. § 1.21, which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients.

133.    Ferrero's conduct also violates the California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), at, *inter alia*, (a) Health & Safety Code § 110660, which deems food products "misbranded" if their labeling is "false or misleading in any particular," and (b) Health & Safety Code § 110670, which bars nutrient content and health claims voluntarily placed on the front of a product label that fail to comply with the federal regulation for nutrient content and health claims.

134.    Each of the challenged statements made by Ferrero, by violating the FFDCA and Sherman Law, further violate the "unlawful" prong of the UCL.

135.    Ferrero's conduct also violates the California False Advertising Law and Consumer Remedies Act, as further described herein, and for that reason further violates the UCL's "unlawful" prong.

136.    Ferrero leveraged its deception to induce Plaintiffs and members of the Classes to purchase products that were of lesser value and quality than advertised.

137.    Plaintiffs and members of the Classes suffered injury in fact and lost money or property as a result of Ferrero's deceptive advertising in that they were denied the benefit of the bargain when they decided to purchase Nutella® over competitor products, which are less expensive and/or contain healthier ingredients, or which do not claim, like Nutella®, to be healthy.  Had Plaintiffs and members of the Classes been aware of Ferrero's false and misleading advertising tactics, they would have paid less than what they did for Nutella®, or not purchased the product at all.

138.    In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Ferrero from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

139.    Plaintiffs also seek an order for the disgorgement and restitution of all monies from the sale of Nutella®, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## SECOND CAUSE OF ACTION

### Violations of the California Unfair Competition Law

### Bus. & Prof. Code §§ 17200 et seq.

### (Unfair and Fraudulent)

140.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

141.    Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

142.    The false and misleading labeling of Nutella®, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Ferrero's conduct outweighs any conceivable benefit of such conduct.

143.    Defendant placed Nutella® into the stream of commerce with knowledge that, through the intended use of such products, individuals, including young children, will be exposed to high and dangerous levels of saturated fat, trans fat, highly-refined sugars, and other objectionable ingredients.

144.    Defendant knew or should have known that high and dangerous levels of saturated fat, artificial fat, and sugar causes heart disease, type 2 diabetes, cancer and death.

145.    The acts, omissions, misrepresentations, practices, and non-disclosures of Ferrero as alleged herein constitute "fraudulent" business acts and practices because Ferrero's conduct is false and misleading to Plaintiffs, members of the Classes, American consumers, and the general public.

146.    Defendant's labeling and marketing of Nutella® using claims such as "balanced nutrition," "moms are helping nourish their children with whole grains," "A *balanced breakfast* is key to a great start each morning for the entire family, especially for children," "An example of a tasty yet balanced breakfast," and "Nutella® can form a part of a balanced meal."—which are likely to create expectations of safety and well-being among consumer—is likely to deceive members of the Classes, American consumers, and the general public about the healthfulness and safety of Defendant's Nutella® product.

147.    Defendant either knew or reasonably should have known that the claims on the labels of Nutella® were untrue and misleading.

148.    In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Ferrero from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

149.    Plaintiffs also seek an order for the disgorgement and restitution of all monies from the sale of Nutella®, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## THIRD CAUSE OF ACTION

### Violations of the California False Advertising Law,

### Bus. & Prof. Code § 17500 et seq.

150.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

151.    In violation of Bus. & Prof. Code § 17500 et seq., the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the products without the knowledge that Nutella® contain high levels of saturated fat, artificial trans fat, sugar and other objectionable ingredients.

152.    Ferrero either knew or reasonably should have known that the labels on Nutella® were false and misleading.

153.    As a result, Plaintiffs, the Classes, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Ferrero was unjustly enriched.

## FOURTH CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,

### Civ. Code § 1750 et seq.

### (Injunctive Relief and Damages)

154.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

155.    The CLRA has adopted a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily or personal,

1  family, or household purposes.

2      156.   Ferrero's policies, acts, and practices were designed to, and did, result in the purchase and

3  use of the products primarily for personal, family, or household purposes, and violated and continue to

4  violate at least the following sections of the CLRA:

5          a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do

6              not have.

7          b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they

8              are of another.

9          c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised.

10         d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance

11             with a previous representation when it has not.

12     157.   As a result, Plaintiffs and members of the Classes have suffered irreparable harm and are

13  entitled to an order enjoining the above-described wrongful acts and practices of Ferrero, providing

14  restitution to all members of the Classes who are so entitled, ordering the payment of costs and attorneys'

15  fees, and such other relief as deemed appropriate and proper by the Court under California Civil Code

16  section 1780(a)(2).

17     158.   In compliance with Civil Code section 1782, Plaintiffs have given written notice to

18  Ferrero of their claims and of their intention to seek damages under California Civil Code § 1750 *et seq.*,

19  unless Ferrero provides an appropriate correction or refund plus interest and other appropriate relief to all

20  members of the Classes entitled to relief under the CLRA.

21     159.   Ferrero has failed to provide such relief and has not adequately responded to the demand

22  to pay refunds and otherwise rectify the wrongful conduct described above on behalf of all members of

23  the Classes who may be entitled to relief under the CLRA.

24     160.   Plaintiffs, therefore, seek an award of all actual and exemplary damages permitted for

25  violation of the CLRA, including for statutory damages of $1,000 per Class member and/or up to $5,000

26  per each Class member who qualifies as a "senior citizen" under the CLRA.

27  //

28  //

FIRST AMENDED CONSOLIDATED COMPLAINT

## SIXTH CAUSE OF ACTION

### Breach of Express Warranty

161.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

162.   Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendant made representations to the public, including Plaintiffs, by its advertising, packaging and other means, that Nutella® is "an example of a tasty yet *balanced breakfast*," among other representations. That promise and related promises became part of the basis of the bargain between the parties and thus constituted an express warranty.

163.   Thereon, Defendant sold the goods to Plaintiffs and other consumers, who bought the goods from Defendant.

164.   However, Defendant breached the express warranty in that the goods were in fact not an "example of a tasty yet *balanced breakfast*," or healthy, as set forth in detail hereinabove.  As a result of this breach, Plaintiffs and other consumers in fact did not receive goods as warranted by Defendant.

165.   As a proximate result of this breach of warranty by Defendants, Plaintiffs and other consumers have been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

166.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

167.   Beginning at an exact date unknown to Plaintiffs, but at least since four years prior to the filing date of this action, and as set forth hereinabove, Defendant made representations to the public, including Plaintiff, by their advertising, packaging and other means that Nutella® is "an example of a tasty yet *balanced breakfast*," among other representations.  Plaintiffs and other consumers bought those goods from Defendant.

168.   Defendant was a merchant with respect to goods of this kind which were sold to Plaintiffs and other consumers, and there was in the sale to Plaintiffs and other consumers an implied warranty that those goods were merchantable.

169.    However, Defendant breached that warranty implied in the contract for the sale of goods in that Nutella® is in fact not "an example of a tasty yet *balanced breakfast*" and is also not a "healthy" nor "nutritious" breakfast food, as set forth in detail hereinabove.

170.    As a result of Defendant's conduct, Plaintiffs and other consumers did not receive goods as impliedly warranted by Defendant to be merchantable.

171.    As a proximate result of this breach of warranty by Defendant, Plaintiffs and other consumers have been damaged in an amount to be determined at trial.

## PRAYER ON ALL CAUSES OF ACTION

**WHEREFORE**, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, prays for judgment against Ferrero as follows:

A.    An order declaring this action to be a proper class action, appointing undersigned counsel as Class Counsel, and requiring Ferrero to bear the cost of class notice.

B.    An order enjoining Ferrero from:

    a.    Marketing Nutella® as "healthy."

    b.    Marketing Nutella® as "balanced nutrition."

    c.    Marketing Nutella® as "moms are helping nourish their children with whole grains."

    d.    Marketing Nutella® as "Nutella® can form a part of a balanced meal."

    e.    Marketing Nutella® as "An example of a tasty yet balanced breakfast."

    f.    Marketing Nutella® as recommended or acceptable as a breakfast food.

    g.    Marketing Nutella® using the words "healthy", "wholesome," "balanced," "balanced nutrition," "nutritious," or "simple."

C.    An order compelling Ferrero to conduct a corrective advertising campaign to inform the public that its products contain unsafe amounts of saturated fat at consumers' actual consumption levels, and contained unsafe amounts of artificial trans fat at consumers' actual consumption levels during the Class Period.

D.    An order requiring Ferrero to disgorge or return all monies, revenues, and profits obtained by means of any wrongful act or practice.

E.  An order compelling Ferrero to destroy all misleading and deceptive advertising materials and products.

F.  An order requiring Ferrero to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the UCL, FAL or CLRA, plus pre-and post-judgment interest thereon.

G.  Costs, expenses, and reasonable attorneys' fees.

H.  Damages in an amount to be determined at trial.

I.  Punitive damages.

J.  All such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated July 3, 2011                         Respectfully submitted,


                                           /s/ JACK FITZGERALD

                                           Jack Fitzgerald
                                           Gregory S. Weston
                                           Melanie Persinger
                                           THE WESTON FIRM

                                           Ronald A. Marron
                                           LAW OFFICES OF RONALD A. MARRON, APLC

                                           **INTERIM CLASS COUNSEL**

FIRST AMENDED CONSOLIDATED COMPLAINT