1  KEITH E. EGGLETON, State Bar No. 159842
   COLLEEN BAL, State Bar No. 167637
2  DALE R. BISH, State Bar No. 235390
   EDMUNDO C. MARQUEZ, State Bar No. 268424
3  AMIR STEINHART, State Bar No. 275037
   WILSON SONSINI GOODRICH & ROSATI
4  Professional Corporation
   650 Page Mill Road
5  Palo Alto, CA 94304-1050
   Telephone:  (650) 493-9300
6  Facsimile:  (650) 565-5100
   E-mail:  keggleton@wsgr.com
7
   Attorneys for Defendant
8  FERRERO U.S.A, INC.

9

              UNITED STATES DISTRICT COURT
10
           FOR THE SOUTHERN DISTRICT OF CALIFORNIA
11

12  In re FERRERO LITIGATION        )   CASE NO.: 11 CV 0205 H (CAB)
                                    )
13                                  )   **FERRERO U.S.A., INC.'S**
                                    )   **OPPOSITION TO PLAINTIFFS'**
14                                  )   **MOTION FOR CLASS**
                                    )   **CERTIFICATION**
15                                  )
                                    )   **REDACTED VERSION**
16                                  )
                                    )   Date:  November 7, 2011
17                                  )   Time:  10:30 a.m.
                                    )   Location:  Courtroom 13
18                                  )
                                    )   Judge: Honorable Marilyn L. Huff
19                                  )
                                    )
20  _____ )

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   INTRODUCTION .................................................................................................... 1

4   ARGUMENT ........................................................................................................... 2

5   I.   NO CLASS CAN BE CERTIFIED FOR THE STATES AND TIME PERIOD
         PROPOSED ................................................................................................... 3

6       A.   This Case Cannot Be Litigated on Behalf of a Nationwide Class ......... 3

7            1.   It Would Be Unconstitutional to Apply California Law to Claims of
8                 Non-California Residents ............................................................... 3

9            2.   Non-Residents May Not Pursue Claims Under the California
                  Statutes ......................................................................................... 9

10

11      B.   The Proposed 11-Year Class Period Is Improper .................................. 11

12           1.   The National Advertising and Label Statements Challenged in the
                  Complaint Began In Late 2009 ..................................................... 11

13           2.   Plaintiffs Cannot Circumvent the Applicable Statutes of Limitations ...... 13

14           3.   Claims Based on the Pre-2008 Composition of Nutella .......................... 14

15  II.  PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN UNDER RULE 23 ............. 15

16      A.   Plaintiffs Have Not Carried Their Burden Under Rule 23(a) ............... 15

17      B.   Plaintiffs Have Not Demonstrated that Common Issues Will Predominate
             As Required by Rule 23(b)(3) ............................................................. 16

18

19           1.   Plaintiff Have Not Shown How They Will Prove Any Issue on a
                  Classwide Basis ......................................................................... 16

20           2.   Individual Issues Will Predominate this Litigation ................................. 17

21                a)   Injury-in-Fact .............................................................. 17

22                b)   Causation ..................................................................... 18

23                c)   Determining Restitution and/or Damages ................................ 22

24                d)   Ascertaining Class Members .......................................... 24

25  III. NO INJUNCTIVE CLASS CAN BE CERTIFIED ......................................... 24

26  CONCLUSION ..................................................................................................... 25

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4
*Aho v. AmeriCredit Fin. Servs., Inc.*, – F.R.D. –, 2011 WL 3047677
   (S.D. Cal. July 25, 2011) ................................................................ 17

5
*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
6
   247 F.R.D. 156 (C.D. Cal. 2007) ........................................... 17, 18

7
*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ..................................... 3

8
*Amato v. Gen. Motor Corp.*, 463 N.E.2d 625 (Ohio Ct. App. 1982) ............. 5

9
*Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801 (Ill. 2005)............ 5

10
*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) ................ 17

11
*Blades v. Monsanto*, 400 F.3d 562 (8th Cir. 2005) ................................ 17

12
*Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028, 2009 WL 4798873
   (C.D. Cal. Dec. 9, 2009)................................................................ 17
13

*Campbell v. Beak*, 568 S.E.2d 801 (Ga. Ct. App. 2002) ......................... 5
14

*Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644 (1993) ............... 19, 21
15

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007)......... 15
16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ................ 5
17

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010)................ 22, 23
18

*Church v. Consol. Freightways, Inc.*, No. C-90-2290, 1992 WL 370829
   (N.D. Cal. Sept. 14, 1992)............................................................... 8
19

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119 (N.D. Cal. 2000) ............. 10, 11
20

*Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009) .......................... 17
21

*Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36 (2006)......... 22, 23
22

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) .......... 22
23

*County of Fresno v. Lehman*, 229 Cal. App. 3d 340 (1991) ..................... 13
24

*Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. Ct. App. 2000)..................... 5
25

*Day v. AT&T Corp.*, 63 Cal. App. 4th 325 (1998) ................................. 22
26

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ..................... 17
27

*Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1977)................. 2
28

*Ellis v. Costco Wholesale Corp.*, No. 07-15838, slip op. (9th Cir. Sept. 16, 2011)..................... 16

*Feitler v. Animation Celection, Inc.*, 13 P.3d 1044 (Or. Ct. App. 2000) ....................................... 5

*Fine v. ConAgra Foods, Inc.*, No. CV 10-01848, 2010 WL 3632469
    (C.D. Cal. Aug. 26, 2010) ....................................................................................... 21

*Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982)....................................................................... 2, 17

*Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659
    (N.D. Ala. 2010)..................................................................................................... 24

*Hodes v. Vans Int'l Foods*, No. CV 09-01530, 2009 WL 2424214
    (C.D. Cal. July 23, 2009) ........................................................................................ 24

*Hubbard v. Albuquerque Truck Ctr. Ltd.*, 958 P.2d 11 (N.M. Ct. App. 1998) ............................. 5

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. C-05-04726,
    2008 WL 4544441 (N.D. Cal. Sept. 30, 2008)................................................................ 13

*In re Hitachi Television Optical Block Cases*, No. 08cv1746, 2011 WL 9403
    (S.D. Cal. Jan. 3, 2011) ..................................................................................... 4, 5, 7, 8

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008) ........................................ 2

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45
    (D. Mass. 2010)....................................................................................................... 23

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614
    (W.D. Wash. 2003) .................................................................................................. 24

*In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010)........................................... 17

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009)..................................................................... 15

*In re Toyota Motor Corp.*, – F. Supp. 2d –, 2011 WL 2276271
    (C.D. Cal. June 8, 2011)......................................................................................... 6, 9

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) ........................................... *passim*

*Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167 (D. Conn. 2000) ........................... 5

*Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848
    (9th Cir. 2002)......................................................................................................... 13

*Kuehn v. Stanley*, 91 P.3d 346 (Ariz. Ct. App. 2004) ............................................................. 5

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222 (Iowa 1998) ................... 5, 6

*Murphy v. Directv, Inc.*, No. 2:07-cv-06465, 2011 WL 3325891
    (C.D. Cal. Feb. 11, 2011) ........................................................................................ 10

*Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082 (N.D. Cal. 2006)...................................... 10

*Nw. Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999) ............................................. 4

*Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002) .................................................... 5

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008) ............................... 8

*Pecover v. Elec. Arts Inc.*, No. C 08-2820, 2010 U.S. Dist. LEXIS 140632
(N.D. Cal. Dec. 21, 2010) ............................................................................... 8

*Perez v. First Am. Title Ins.*, No. CV-08-1184, 2010 WL 1507012
(C.D. Ariz. Apr. 14, 2010) ............................................................................. 14

*Perez v. Nidek Co.*, 657 F. Supp. 2d 1156 (S.D. Cal. 2009) ........................................... 13

*Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008) ............................................. 22

*Pfizer Inc. v. Superior Court*, 105 Cal. Rptr. 3d 795 (Cal. Ct. App. 2010) ..................... 21

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........................................... *passim*

*Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009) .................................... 20

*Renee v. Duncan*, 623 F.3d 787 (9th Cir. 2010) .................................................... 18, 19

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
62 P.3d 142 (Colo. 2003) ............................................................................... 5

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, No. SACV 07-1306,
2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) ................................................. 4

*Roberts v. Heim*, 670 F. Supp. 1466 (N.D. Cal. 1987) ..................................................... 8

*Romberio v. Unumprovident Corp.*, 385 F. App'x 423 (6th Cir. 2009) .......................... 17

*Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234 (D. Haw. 2002) ................... 5

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................... 17

*Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343 (Ky. Ct. App. 2000) ..................... 5

*Stearns v. Ticketmaster Corp.*, – F.3d –, 2011 WL 3659354
(9th Cir. Aug. 22, 2011) ................................................................. 17, 19, 20, 21

*Stephens v. Gen. Nutrition Cos.*, No. 08 C 6296, 2010 WL 4930335
(N.D. Ill. Nov. 23, 2010) ............................................................................. 24

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) ................................................. 9, 10

*Swanson v. Bankers Life Co.*, 450 N.E.2d 577 (Mass. 1983) ........................................ 5

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
546 F.3d 196 (2d Cir. 2008) ............................................................................ 2

*Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999) .................................. 5

*Toy v. Metro Life, Ins. Co.*, 863 A.2d 1 (Pa. Super. Ct. 2004) ....................................... 5

*Util. Consumers' Action Network v. Sprint Solutions, Inc.*, 259 F.R.D. 484
  (S.D. Cal. 2009) ............................................................................................................ 4, 8

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .......................................... *passim*

*Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906 (2001) .................................. 5

*Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011) ...................................... 17, 19

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ........................ 2, 5

## STATUTES

21 U.S.C. § 343(r)(1) ................................................................................................... 13

Ala. Code § 8-19-10(f) .................................................................................................. 6

Ala. Code § 8-19-13 ....................................................................................................... 5

Ariz. Rev. Stat. Ann. § 44-1522 ................................................................................... 5

Ark. Code Ann. § 4-88-113(f) ...................................................................................... 6

Cal. Bus. & Prof. Code § 17203 ................................................................................... 6

Cal. Bus. & Prof. Code § 17208 ................................................................................. 13

Cal. Bus. & Prof. Code § 17500 ................................................................................. 10

Cal. Civ. Code § 1750 ................................................................................................. 10

Cal. Civ. Code § 1783 ................................................................................................. 13

Cal. Civ. Proc. Code § 338 .......................................................................................... 13

Cal. Civ. Proc. Code § 339 .......................................................................................... 13

Cal. Com. Code § 2725 ............................................................................................... 13

Colo. Rev. Stat. Ann. § 6-1-113(2)(a) .......................................................................... 6

Ga. Code Ann. § 10-1-373 ............................................................................................ 6

Ind. Code Ann. § 24-5-0.5-3(a) .................................................................................... 5

Kan. Stat. Ann. § 50-626(a) .......................................................................................... 5

Kan. Stat. Ann. § 50-626(b) .......................................................................................... 5

## RULES

21 C.F.R. § 101.9(c)(9) ................................................................................................ 14

21 C.F.R. § 101.13(b)(2)(i) .......................................................................................... 12

**MISCELLANEOUS**

Jennifer LaRue Huget, *Nuts About Nutella*, Wash. Post, Aug. 18, 2008 ..................................... 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Ferrero respectfully submits that plaintiffs' motion for class certification should be denied. Plaintiffs propose a nationwide class that is unconstitutional under *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).  California law cannot be applied to the claims of non-California residents because there are no significant contacts between California and those claims.  The Court should reject plaintiffs' attempt to bootstrap the Court's earlier decision not to transfer this case to New Jersey into a finding that there can be a nationwide class under California law.  Pursuant to the transfer ruling, this case will be litigated in this Court – but the issue of whether plaintiffs can constitutionally assert claims on behalf of a nationwide class is different.  The clear answer is that it would be unconstitutional to certify the nationwide class sought by plaintiffs.

Moreover, under *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), plaintiffs have the burden on this motion and must submit a factual record to support certification.  Contrary to their assertion (Motion at 12), the Court does not have to accept as true plaintiffs' allegations. Plaintiffs fail to make a showing about how any class period can extend back to 2000.  Plaintiffs also fail to submit a factual record to support a finding that they can prove, on a classwide basis, that absent class members were injured by Ferrero's statements and in what amounts.

Indeed, plaintiffs' deposition testimony confirms that their claims turn on expectations, preferences, and decisions that are inherently personal.  While both would prefer that Ferrero advertise Nutella as a night-time snack, neither plaintiff has given any thought to the amount of fat or sugar that is acceptable – even to them – at breakfast. Exs. 1 at 96-99, 103; 2 at 33-34, 152.[1] And yet they seek to represent millions of consumers on claims that the fat and sugar content of Nutella renders it unacceptable as a breakfast food.  Moreover, one named plaintiff (Ms. Hohenberg) does not regret buying Nutella and continued using the spread after she learned the "truth" about its sugar content (by reading the label) while the other plaintiff (Ms. Rude-Barbato)

---

[1] Unless otherwise noted herein, all "Ex(s)." citations refer to the exhibits attached to the Declaration of Amir Steinhart In Support of Ferrero USA, Inc.'s Opposition to Class Certification.

1  acknowledged that her family loves Nutella, still wants it, and that she would not be opposed to

2  Nutella as a snack item or dessert.  These are precisely the types of individual issues that will

3  overtake any common issues at trial as plaintiffs struggle to demonstrate their own case and

4  damages, let alone those of millions of other consumers who bought Nutella for different reasons

5  and have enjoyed the product in varying degrees of satisfaction.

6      Therefore, even as to California residents – which would be the only plaintiffs that could

7  constitutionally be included in a certified class – plaintiffs fail to meet their burden and the motion

8  should be denied.

9                                          **ARGUMENT**

10     "The class action is 'an exception to the usual rule that litigation is conducted by and on

11  behalf of the individual named parties only.'"  *Wal-Mart*, 131 S. Ct. at 2550.  The party seeking

12  class certification bears the evidentiary burden and must provide facts sufficient to satisfy the

13  requirements of Federal Rules of Civil Procedure 23(a) and (b).  *Id*. at 2551-52; *Doninger v. Pac.*

14  *Nw. Bell, Inc*., 564 F.2d 1304, 1308-09 (9th Cir. 1977).  In addition, plaintiffs must demonstrate

15  that the proposed class does not violate the due process rights of putative class members.  *Zinser*

16  *v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir. 2001).

17     To determine whether plaintiffs have met their burden, district courts conduct a "rigorous

18  analysis" of the evidentiary record.  *Wal-Mart*, 131 S. Ct. at 2551.[2]  In doing so – and contrary to

19  plaintiffs' argument (Motion at 12) – courts do not accept as true allegations in the complaint or

20  unsubstantiated argument.  *Wal-Mart*, 131 S. Ct. at 2551 ("Rule 23 does not set forth a mere

21  pleading standard.").  Rather, courts may "probe behind the pleadings" to ensure that absent

22  class members may be bound, consistent with their constitutional due process rights, under Rule

23  23.  *Id*. (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).  If a court is not fully satisfied

24

25      [2] The Ninth Circuit has not had an opportunity to determine the required standard of proof
26  following the Supreme Court's decision in *Wal-Mart v. Dukes*.  However, other circuits had
    embraced a preponderance standard for evidence relevant to certification.  *See Teamsters Local*
27  *445 Freight Div. Pension Fund v. Bombardier Inc*., 546 F.3d 196, 202 (2d Cir. 2008); *In re*
    *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321-22 (3d Cir. 2008).

28

1   that the requirements of due process and Rule 23 are met, certification should be denied.  *Id.*

2   **I.      NO CLASS CAN BE CERTIFIED FOR THE STATES AND TIME PERIOD**
         **PROPOSED**
3

4           Plaintiffs have made plain legal errors in the class they seek to have certified, which

5   preclude certification separate and apart from the requirements of Rule 23.  First, a nationwide

6   class is not constitutionally permissible where, like here, the forum state lacks significant

7   contacts with the claims of non-residents.  Second, plaintiffs have not provided the Court with

8   any evidence that would support certification of their proposed 11-year class period.

9           **A.      This Case Cannot Be Litigated on Behalf of a Nationwide Class**

10                 **1.      It Would Be Unconstitutional to Apply California Law to Claims of**
                          **Non-California Residents**
11

12          Plaintiffs ask the Court to certify a nationwide class of Nutella purchasers asserting

13  claims under California law.  Such a class is impermissible under *Shutts*, 472 U.S. 797.  As

14  described below, *Shutts* limits any class in this case to residents of California because California

15  does not have the significant contacts to the claims of non-California residents – people who saw

16  the challenged advertising and purchased Nutella outside California – required for non-resident

17  class members to pursue claims under California law.

18          There are constitutional limitations to the application of one state's laws to claims by

19  plaintiffs residing in other states.  Those limitations require "'that for a State's substantive law to

20  be selected in a constitutionally permissible manner, that State must have a significant contact or

21  significant aggregation of contacts, creating state interests, such that choice of its law is neither

22  arbitrary nor fundamentally unfair.'"  *Shutts*, 472 U.S. at 818-19 (quoting *Allstate Ins. Co. v.*

23  *Hague*, 449 U.S. 302, 312-13 (1981)).  Courts determine whether application of its own law is

24  appropriate by "examin[ing] the contacts of the State . . . with the parties and with the occurrence

25  or transaction giving rise to the litigation" to ensure significant enough contacts to create a valid

26  interest of the forum State in applying its own law.  *See Allstate*, 449 U.S. at 308, 310-11.

27  Where a state does not have significant contacts with the parties and the transaction giving rise to

28  the litigation, a court may not constitutionally apply its own laws to the action, unless there is no

1  conflict between the law of the forum state and that of any other jurisdiction connected to the

2  suit. *See Shutts*, 472 U.S. at 816.

3       In *Shutts*, approximately 33,000 putative class members held royalty rights in leases to

4  land leased to the Oklahoma-based defendant, who was sued for interest on delayed royalty

5  payments. *Id.* at 799, 801. The plaintiffs were from all 50 states, and the land at issue was

6  located in 11 different states. *Id.* at 799. Although the plaintiff resided in Kansas, the defendant

7  owned property and conducted a significant amount of business in Kansas, and hundreds of

8  Kansas plaintiffs were affected by the defendant's conduct, the Court concluded that Kansas had

9  inadequate contacts with the claims of the non-resident plaintiffs. *See id.* at 819. Noting the

10  importance of the expectations of the parties to a transaction in deciding which law would apply

11  to a dispute, the Court concluded that it was unconstitutional for the Kansas court to have applied

12  Kansas law to the claims of all plaintiffs. *See id.* at 823.

13       Applying *Shutts*, courts deny certification of proposed nationwide classes in consumer

14  cases. For example, in *In re Hitachi Television Optical Block Cases*, No. 08cv1746, 2011 WL

15  9403 (S.D. Cal. Jan. 3, 2011),[3] the court refused to certify a nationwide class of all purchasers of

16  Hitachi televisions in an action asserting claims under California law – including the same

17  statutory claims asserted here. The court then examined the contacts between California and the

18  out-of-state plaintiffs' claims and found that the product at issue had been designed primarily in

19  Japan, manufactured in Mexico, and sold by retailers throughout the country, including

20  California. *Hitachi*, 2011 WL 9403 at *7. The marketing effort for the product was coordinated

21  by an employee located in California, consumers were directed to a California address for help

22  with questions about the product, registrations for the product warranty were sent to California,

23

24      [3] *See also Util. Consumers' Action Network v. Sprint Solutions, Inc.*, 259 F.R.D. 484, 487 (S.D. Cal. 2009) (California law could not properly be applied to non-resident consumer claims against telecommunications company); *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,

25  No. SACV 07-1306, 2008 WL 4906433, at *2 (C.D. Cal. Nov. 13, 2008) (California law could not be applied to nationwide class where plaintiff failed to provide evidence that California had

26  significant contacts to claims of non-residents); *Nw. Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 226 & n.15 (1999) (UCL claim could not be applied to claims of nonresidents where

27  defendant headquartered out of state despite some contacts with state).

28

FERRERO U.S.A., INC.'S OPPOSITION TO     -4-              11CV0205
MOTION FOR CLASS CERTIFICATION

1  and two of the defendants had a corporate presence and employees in California.  *See id.* at *7-9.

2  Despite these contacts with the state, the court concluded that California's contacts with the

3  claims of the non-resident plaintiffs were not significant enough to satisfy *Shutts*.  *See id.* at *9-

4  10.  Plaintiffs in *Hitachi* then moved (unsuccessfully) for certification of a class of California

5  residents only.  *Hitachi*, 2011 WL 4499036 (S.D. Cal. Sept. 27, 2011).

6         As demonstrated in *Shutts* and *Hitachi*, the constitutional inquiry focuses on the state's

7  contacts with the claim of each member of the proposed class.  Plaintiffs bear the burden of

8  making this showing.  *See Zinser*, 253 F.3d at 1187 (affirming district court order holding that

9  California law could not constitutionally be applied to claims by non-resident plaintiffs against

10 non-resident defendants); *see also Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921

11 (2001) (showing of requisite significant contacts between each class member's claims and

12 California properly borne by plaintiffs).  Plaintiffs have not met their burden.

13        First, plaintiffs do not even attempt to demonstrate that California consumer protection

14 laws are the same as the laws in the other 49 states where Nutella is sold.  The law is clear that

15 material differences do exist.[4]  *See, e.g.*, *Hitachi*, 2011 WL 9403, at *6 (finding material conflicts

16

17        [4] While plaintiffs bear the burden to show no material conflict for the *Shutts* analysis, Ferrero
18 notes that consumer protection laws of various states differ in material ways.  For example, while
   the requirements under California's UCL and FAL remain in flux with respect to absent class
19 members (*see infra* at 17 n.10), reliance and damages are required under the CLRA.  Other states
   also require reliance (e.g., Arizona, Indiana, Minnesota, Oregon, Pennsylvania, Texas,
20 Wisconsin), while some do not (e.g., Connecticut, Delaware, Florida) and still others require
   varying degrees of causation.  *See, e.g.*, *Kuehn v. Stanley*, 91 P.3d 346 (Ariz. Ct. App. 2004);
21 *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc*., 62 P.3d 142 (Colo. 2003);
   *Izzarelli v. R.J. Reynolds Tobacco Co*., 117 F. Supp. 2d 167 (D. Conn. 2000)*; Davis v. Powertel,
22 Inc*., 776 So. 2d 971 (Fla. Ct. App. 2000); *Sambor v. Omnia Credit Servs., Inc*., 183 F. Supp. 2d
   1234 (D. Haw. 2002); *Oliveira v. Amoco Oil Co*., 776 N.E.2d 151 (Ill. 2002); Ind. Code Ann. §
23 24-5-0.5-3(a); *Amato v. Gen. Motor Corp.*, 463 N.E.2d 625, 629 (Ohio Ct. App. 1982); *Campbell
   v. Beak*, 568 S.E.2d 801, 805-06 (Ga. Ct. App. 2002); *Thompson v. Am. Tobacco Co.*, 189 F.R.D.
24 544 (D. Minn. 1999); *Feitler v. Animation Celection, Inc*., 13 P.3d 1044 (Or. Ct. App. 2000); *Toy
   v. Metro Life, Ins. Co*., 863 A.2d 1 (Pa. Super. Ct. 2004).  Similarly, some consumer statutes
25 require scienter (Ala. Code § 8-19-13; Ariz. Rev. Stat. Ann. § 44-1522; Kan. Stat. Ann. §§ 50-
   626(a), (b)(2)-(4); *Sparks v. Re/Max Allstar Realty, Inc*., 55 S.W.3d 343 (Ky. Ct. App. 2000);
26 *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801 (Ill. 2005)) while others do not
   (*Swanson v. Bankers Life Co*., 450 N.E.2d 577 (Mass. 1983)).  Moreover, California recognizes a
27 safe-harbor under  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163
   (1999), others recognize a "good faith defense" (*Hubbard v. Albuquerque Truck Ctr. Ltd.*, 958
28 P.2d 11 (N.M. Ct. App. 1998), and several do not allow private causes of action (*Molo Oil Co. v.*
                                                                                    (continued...)

FERRERO U.S.A., INC.'S OPPOSITION TO           -5-                                   11CV0205
MOTION FOR CLASS CERTIFICATION

exist with respect to consumer protection and warranty laws and citing significant authority); *In re Toyota Motor Corp.*, – F. Supp. 2d –, 2011 WL 2276271, at *7 (C.D. Cal. June 8, 2011) (noting significant differences and rejecting application of California law to nationwide class).

Second, and most importantly, the limited (if any) contacts California has with the non-California residents' claims do not satisfy *Shutts*. It is plaintiffs' burden to establish the contacts – yet they offer virtually no proof on this point. For example, they make no showing that non-California class members saw the advertising at issue in California, purchased Nutella in California, or that their claims in any other way arise out of conduct that occurred in California.

While not its burden to do so, Ferrero has submitted declarations on the *Shutts* issue, which confirm that there are no significant contacts between claims of non-California residents and California. *See* Kreilmann Decl. ¶¶ 2–34; Krohn Decl. ¶¶ 3–18. Specifically:

- Ferrero is a Delaware corporation which has been doing business in its New Jersey headquarters since 1994. Kreilmann Decl. ¶¶ 1-4. It has over 100 employees in New Jersey, including all of its executives (e.g., Chief Executive Officer, Chief Financial Officer, VP of Sales, and VP of Marketing). *Id*. ¶¶ 6, 7, 10.

- The only Ferrero employees in California are field sales employees who are responsible for selling product to retailers, not individual consumers. *Id*. ¶¶ 12-15. Only 15 of Ferrero's 166 field employees are located in California; the other 151 are in other states. *Id*.

- The advertising statements challenged by plaintiffs (TV ads, print ads, website) were developed outside of California between Ferrero employees and agencies hired by Ferrero in New York. Krohn Decl. ¶¶ 6-9, 11, 14. TV advertisements were filmed in Los Angeles using a company retained by Ferrero's New York advertising agency. *Id*. ¶¶ 8-9. Post-production and editing work was performed in New York. *Id*.

- Nutella is manufactured in Canada. Kreilmann Decl. ¶¶ 17-18. The product is sold in the United Sates through retailers and distributors. *Id*. ¶ 19.

---

(...continued from previous page)
*River City Ford Truck Sales, Inc.*, 578 N.W.2d 222 (Iowa 1998)) and/or preclude class actions (Ala. Code § 8-19-10(f)). Finally, the available remedies vary by statute (e.g., compensatory, statutory and punitive damages, restitution, disgorgement, and injunctive). *Compare, e.g.*, Cal. Bus. & Prof. Code § 17203, *with* Ark. Code Ann. § 4-88-113(f), *and* Colo. Rev. Stat. Ann. § 6-1-113(2)(a), *and* Ga. Code Ann. §§ 10-1-373(a)-(c).

- Sales of Nutella in California are consistent with the state's population. Specifically, total unit sales of Nutella in California are approximately 12.5% of national sales,[5] which is proportional to the 12% of the country's population located in California.[6] In other words, Ferrero sells about the amount of product in California that would be expected from any nationwide wholesaler.

There is nothing about these facts that reflect "significant contacts" between California and the claims of class members who saw Ferrero advertisements and purchased Nutella in other states.

Rather than providing the Court with the required factual record, plaintiffs rely on the Court's ruling on a Section 1404(a) motion to transfer. Motion at 22. That order has no bearing here — the Court's determination that a case filed by two California residents can proceed in their chosen forum does not mean those plaintiffs can constitutionally pursue a class action on behalf of non-California residents. *Cf. Hitachi,* 2011 WL 9403, at *9 ("Unlike the contacts analysis for purposes of personal jurisdiction, which measures the defendant's contacts with the forum state, the contacts analysis here measures the forum state's contacts with the individual claims.").

Plaintiffs' only other support for their gloss on the *Shutts* analysis is contact between Ferrero and California that does not pertain to the claims of the non-resident class members. Motion at 22. Merely doing business in a state is irrelevant where the non-residents' claims do not arise out of the business done there. *See Shutts,* 472 U.S. at 819 (defendant owned property and conducted substantial business in Kansas, but non-residents' claims did not arise out of such contacts so Kansas law could not be applied). Similarly, having sales and marketing efforts in a state, such as the blogging events referenced by plaintiffs, will not create a significant contact with non-residents' claims, especially where there is no evidence that the non-residents were

---



[6] *See* http://quickfacts.census.gov/qfd/states/06000.html(reporting California's population as 37.254 million and the national population as 308.746 million people).

1   exposed to such sales and marketing efforts.  *See, e.g.*, *Hitachi*, 2011 WL 9403, at *9.

2          Given California's lack of contacts – let alone "significant contacts" – with the claims of

3   non-California residents, certification of a nationwide class under California law would violate

4   *Shutts*.  Plaintiffs know it – their brief does not point to a single case where a court found that its

5   own state's law could be applied to claims of non-residents against a non-resident defendant

6   arising out of alleged conduct (e.g., advertising) that took place outside of the state.  Instead,

7   plaintiffs rely on cases where, unlike here, a defendant was headquartered in California or there

8   were significant contacts between the claim and California.  *See Pecover v. Elec. Arts Inc.*, No. C

9   08-2820, 2010 U.S. Dist. LEXIS 140632, at *51-52 (N.D. Cal. Dec. 21, 2010) (defendant

10  headquartered in California, conduct giving rise to claim took place in California and license

11  agreements at issue included California choice of law); *Parkinson v. Hyundai Motor Am.*, 258

12  F.R.D. 580, 598 (C.D. Cal. 2008) (defendant headquartered in California and conduct giving rise

13  to claims emanated from operations in California); *Roberts v. Heim*, 670 F. Supp. 1466, 1493-95

14  (N.D. Cal. 1987) (numerous partnerships in which plaintiffs invested in suit alleging securities

15  fraud resided in California and dissemination of material at issue emanated from there);

16  *Church v. Consol. Freightways, Inc.*, No. C-90-2290, 1992 WL 370829, at *6 (N.D. Cal. Sept.

17  14, 1992) (numerous defendants in securities fraud action resided in California and alleged

18  misrepresentations emanated from there).  In each of those cases, the non-California parties

19  could reasonably expect that California law would apply to their claims.  In contrast, here,

20  consumers who saw an advertisement in their home state, for a product manufactured by a New

21  Jersey company, and purchased that product in their home state, would not expect the law of

22  California to apply.  *See Util. Consumers' Action*, 259 F.R.D. at 487.

23         Based on their recent filing seeking to intervene in the parallel case that is pending in the

24  District of New Jersey (*In re Nutella Sales and Marketing Litigation*), Ferrero anticipates that

25  plaintiffs will rely heavily on the *Yummul v. Smart Balance* decision as authority that this Court

26  can certify a nationwide class notwithstanding *Shutts*.  Ex. 3 at 7-8.  In their New Jersey

27  submission, however, plaintiffs neglected to acknowledge that sales of that product (Nucoa) in

28  California represented 94.5% of nationwide sales. Ex. 4 at 38.  Given that fact, it is not surprising

1   that Smart Balance made only a passing argument, at the end of its brief, opposing a nationwide

2   class; it is telling, however, that plaintiffs feel that the tentative order in *Smart Balance* is the

3   strongest support for certification of nationwide class here, despite the enormous factual

4   distinction in sales.

5          In sum, the class plaintiffs seek to certify is unconstitutional.  The fact that a non-resident

6   nationwide retailer advertises and sells product nationally, including in California, does not

7   create the kind of "significant contacts" with claims of non-California residents to allow

8   certification of a nationwide class action under California law.  Plaintiffs are asking the Court to

9   endorse a new (and improper) era of nationwide class action litigation under California laws.

10  Because plaintiffs have failed to meet their burden of demonstrating that this Court may

11  constitutionally apply California law to the claims of non-resident class member, and because the

12  record presented by Ferrero demonstrates a lack of significant contacts between California and

13  the claims of non-California residents pursuant to *Shutts*, plaintiffs' motion must be denied.[7]

14             **2.     Non-Residents May Not Pursue Claims Under the California Statutes**

15         Even if it were constitutional to apply California law to the claims of non-California

16  residents (it is not), a nationwide class action cannot be certified under the UCL, FAL or CLRA.

17  The California Supreme Court recently held that there is a presumption against extraterritorial

18  application of these statutes.  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011).  This limitation

19  on plaintiffs' proposed class is independent of constitutionality under *Shutts*.  *Id.* at 1207 n.9.

20         Under *Oracle*, courts must presume that a legislature did not intend a statute to apply to

21  occurrences outside of the state "unless such intention is clearly expressed or reasonably to be

---

23         [7] Because plaintiffs have failed to demonstrate the constitutionality of their proposed national
    class, there is no need for the Court to engage in a choice of law analysis under California law.
24  Plaintiffs cite several cases in which courts perform that analysis using the "governmental
    interest" test.  That analysis is separate and distinct from the constitutional requirement set forth in
25  *Shutts* and is only reached if there is no constitutional barrier to applying California law to absent
    class members.  *See, e.g.*, *Toyota Motor*, 2011 WL 2276271, at *2.  Unlike the constitutional
26  analysis (in which plaintiffs bear the burden), Ferrero would bear the burden on that analysis.
    Although the law set forth in this motion would satisfy that burden, Ferrero has not performed a
27  complete "choice of law" analysis here because *Shutts* is dispositive.

28

1   inferred from the language of the act or from its purpose, subject matter or history." *Id.* at 1207

2   (internal quotation marks and citations omitted).  The California Supreme Court had been asked

3   by the Ninth Circuit to determine whether the UCL applied to claims based on a California

4   employer's failure to pay overtime to non-resident employees for work performed outside of

5   California. *Id.* at 1196.  Finding that "[n]either the language of the UCL nor its legislative

6   history provides any basis for concluding the Legislature intended the UCL to operate

7   extraterritorially," the Court held that the presumption against extraterritoriality applies to claims

8   under the UCL. *Id.* at 1207.  The Court concluded that because the unlawful act as it pertained to

9   the non-resident members of the class – the failure to pay required overtime – took place outside

10  of California, those members of the class could not pursue a claim under the UCL.  Notably, the

11  Court reached this conclusion even though the defendant's headquarters were in California, and

12  the decision that led to the failure to pay overtime took place in California. *See id.* at 1208.

13          Under the same reasoning, the non-California members of plaintiffs' proposed

14  nationwide classes may not pursue claims under the California UCL, FAL, or CLRA.  Just as

15  with the UCL, neither language nor legislative history of Business & Professionals Code

16  §§ 17500 *et seq.*, or Civil Code §§ 1750 *et seq.*, provides any basis for concluding the

17  Legislature intended these statutes to apply to occurrences outside of California. *See, e.g.*,

18  *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1096 (N.D. Cal. 2006) (only California

19  plaintiffs had standing to enforce CLRA against out-of-state defendants); *Churchill Vill.,*

20  *L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (noting language of

21  FLA restricting claims to those made in or from California and concluding "none of defendant's

22  written or oral communications made in California was directed to consumers outside the state.

23  Thus, only California consumers can proceed on a claim under the FAA.").

24          Because the allegedly unlawful conduct as it pertains to the non-California members of

25  the proposed class—the making of representations regarding Nutella that plaintiffs claim are

26  false and misleading—took place outside of California, non-California residents may not pursue

27  claims under the UCL, FAL, or CLRA. *See, e.g.*, *Murphy v. Directv, Inc.*, No. 2:07-cv-06465,

28  2011 WL 3325891, at *3 (C.D. Cal. Feb. 11, 2011) (non-resident plaintiffs could not pursue

1   CLRA or UCL claims against non-resident defendant where no allegations that defendant

2   engaged in any unlawful conduct *vis a vis* non-resident plaintiffs in California); *Churchill Vill.*,

3   169 F. Supp. 2d at 1126-27 (same with respect to FAL claim).

4       **B.    The Proposed 11-Year Class Period Is Improper**

5       Plaintiffs seek certification of a class of "all persons" who purchased Nutella since

6   January 1, 2000.  Plaintiffs provide no factual basis to support that proposed class period (*see* Ex.

7   1 at 115-18, 124-25; Ex. 2 at 160-62) nor any evidence to circumvent the applicable statues of

8   limitations.

9           **1.    The National Advertising and Label Statements Challenged in the
            Complaint Began In Late 2009**

10

11      Plaintiffs challenge the "long-term advertising campaign in which Ferrero utilized

12  various forms of media, including, but not limited to, print advertising on the Nutella label and

13  elsewhere, websites, television commercials, physicians, and unpaid press coverage."  Compl. ¶

14  76.  The FAC does not, however, allege when this "long-term advertising campaign" began or

15  include any of the other necessary allegations under Rule 9(b).  *See* Dkt. No. 48-1 at 2-3 (Motion

16  to Dismiss).  In their motion for class certification, and despite bearing the burden on such

17  issues, plaintiffs do not submit the relevant dates.

18      Ferrero will provide them.  The advertising campaign challenged in the complaint began

19  in August 2009 when Ferrero's commercials for Nutella began airing nationwide.[8]  Kreilmann

20  Decl. ¶ 31; Krohl Decl. ¶¶ 3-10, Exs. 1-3.  Shortly thereafter, Ferrero began using the label for

21  Nutella that is challenged in the complaint, which contains the "balanced breakfast" statement.

22  Kreilmann Decl. ¶ 34; Krohl Decl. ¶ 15.  At approximately the same time, some of the website

23  statements challenged in the complaint appeared on the Nutella website, while others appeared a

24  year later (in August 2010) and print ads for Nutella began appearing in national publications.

25  _____

26      [8] Prior to its national rollout, Ferrero tested one of the challenged television advertisements in
    six cities: Providence, RI and Albany, NY beginning in February 2008, and Columbus, OH;

27  Buffalo, NY; and Eugene and Portland, OR in January 2009.  Kreilmann Decl. ¶ 31; Krohn Decl.
    ¶ 5.

28

1   Krohl Decl. ¶¶ 11-14.  Although Ferrero is unclear as to the unnamed "physicians and unpaid

2   press coverage" alleged in the complaint, it appears plaintiffs are referring to the "word of

3   mouth" marketing efforts that began in November 2009 in conjunction with Ferrero's retention

4   of nutritionist Connie Evers.  Weston Decl. (Dkt. No. 51-2), Ex. 13 at 5.

5          Plaintiffs do not explain what statements they are challenging before 2009 that would

6   support certification.  From their Motion, it appears plaintiffs are still attempting to challenge the

7   statements that Nutella is a "Hazelnut Spread with Skim Milk & Cocoa" and is "Made with over

8   50 Hazelnuts per Jar," which were on the Nutella label prior to 2009.  Motion at 3; Kreilmann

9   Decl. ¶ 34; Ex. 2 (pre-2009 label).  During their depositions, however, both plaintiffs

10  acknowledged that they do not object to the "Made with over 50 hazelnuts per Jar" statement.

11  Ex. 1 at 12-13; Ex. 2 at 42.

12         In any event, plaintiffs cannot rely on these statements from the label to extend the class

13  period because the statements are not in the case.  The Court held that these statements were only

14  challenged by plaintiffs to the extent they appeared on the website and on television.  Order at 7

15  ("The only 'where' that Plaintiffs provide for those two statements are Ferrero's website and

16  Ferrero's television advertisements.").  The website and television advertisements did not appear

17  nationally until 2009.  Kreilmann Decl. ¶¶ 31, 33; Krohl Decl. ¶¶ 5, 12.  The Court granted

18  plaintiffs leave to amend the complaint, but plaintiffs did not add allegations to challenge these

19  statements on the label.  Therefore, these statements cannot support certification.

20         If plaintiffs had amended to add allegations regarding the label, their claims would be

21  preempted.  *See* Dkt. Nos. 30, 42.  Plaintiffs continue to argue that statements about the

22  ingredients in Nutella (i.e., hazelnuts, skim milk and cocoa) suggest that the product is "healthy,"

23  i.e., relatively low in the "dangerous" nutrients saturated fat and sugar (which are nutrients under

24  any definition of that term).  Motion at 3.  Under plaintiffs' theory, Ferrero's statements about

25  these ingredients are implied nutrient claims.  21 C.F.R. § 101.13(b)(2)(i) (defining implied

26  nutrient content claims as one that "[d]escribes the food *or an ingredient* therein in a manner that

27  suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')")

28  (emphasis added); *see also* Ex. 1 at 140; Ex. 2 at 29 ("Q. So you see hazelnuts and you think

FERRERO U.S.A., INC.'S OPPOSITION TO          -12-                              11CV0205
MOTION FOR CLASS CERTIFICATION

1   protein? A. Yes.").  As set forth in the parties' prior briefing, federal law preempts challenges to

2   implied nutrient content claims on a product's label where plaintiffs, like those here, are seeking

3   to impose requirements that are not "identical" to those set forth in the federal regulatory regime

4   (i.e., 21 U.S.C. §§ 343(r)(1)); *see* Dkt. Nos. 30, 42.  Because they are not in the case, and would

5   be preempted under any event, statements on the pre-2009 label about the contents of Nutella

6   cannot support certification of claims back to 2000.

7                    **2.    Plaintiffs Cannot Circumvent the Applicable Statutes of Limitations**

8            Certification of an 11-year class period is also prohibited by the statutes of limitations for

9   the asserted claims.  The statute of limitations for claims under the UCL is four years.   Cal. Bus.

10  & Prof. Code § 17208.  The statute of limitations for claims under the CLRA and FAL is three

11  years. Cal. Civ. Code § 1783; Cal. Civ. Proc. Code §§ 338, 339; *County of Fresno v. Lehman*,

12  229 Cal. App. 3d 340, 346 (1991) (applying three-year statute of limitations to an FAL claim).

13  The statute of limitation for warranty claims is four years.  Cal. Com. Code § 2725.  Plaintiffs

14  attempted to plead around these statutes of limitations by alleging they did not understand the

15  potential health effects of consuming products "like" Nutella until December 2010 (Ms.

16  Hohenberg) and February 2011 (Ms. Rude-Barbato).  Compl. ¶¶ 115-18.

17          As a threshold matter, the statute of limitations for claims under the UCL cannot be

18  tolled.  *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir.

19  2002) (claims under the UCL "are subject to a four-year statute of limitations which [begins] to

20  run on the date the cause of action accrue[s], not on the date of discovery."); *Perez v. Nidek Co.*,

21  657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009) (following *Karl Storz*).

22          For the remaining claims, plaintiffs have not submitted any evidence to demonstrate that

23  the statutes of limitations can be tolled on behalf of absent class members.  "In order to invoke

24  this special defense to the statute of limitations, the plaintiff must specifically plead facts which

25  show (1) the time and manner of discovery and (2) the inability to have made earlier discovery

26  despite reasonable diligence."  *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,

27  No. C-05-04726, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008).  At the class certification

28  stage, plaintiffs must offer evidence establishing both of these requirements for every member of

1  the proposed class.  *Perez v. First Am. Title Ins.*, No. CV-08-1184, 2010 WL 1507012, at *4

2  (C.D. Ariz. Apr. 14, 2010).

3       Plaintiffs have not satisfied their burden to do so.  First, there is no evidence – nor could

4  there be – showing when each individual member of the class learned that a 2-tablespoon serving

5  of Nutella contained 3.5 grams of saturated fat and 21 grams of sugar.  Diligent consumers

6  would have discovered those facts when they picked up a jar of Nutella and read the FDA-

7  required Nutrition Facts panel.  Kreilmann Decl., Ex. 3 (label).  In fact, that is precisely what Ms.

8  Hohenberg did (Ex. 1 at 126-27) and what Ms. Rude-Barbato could have done at any time (Ex. 2

9  at 30-31).  Similarly, plaintiffs have offered no proof of the "inability" of class members to

10  determine the amount of nutrients and ingredients used in Nutella or the possible health effects

11  of them.  Ex. 2 at 144 (Ms. Rude-Barbato explaining that she did not read nutritional studies

12  referenced in her complaint because "I found it kind of boring.")

13               **3.       Claims Based on the Pre-2008 Composition of Nutella**

14       Certification of an 11-year class period is prohibited for a third, independent reason –

15  plaintiffs lack standing to pursue claims based on a product they never purchased.  Although

16  plaintiffs devote six pages of their complaint to allegations regarding the claimed evils of

17  partially hydrogenated vegetable oil and trans fat, plaintiffs omit a crucial fact:  neither plaintiff

18  ever purchased Nutella that contained partially hydrogenated vegetable oil.[9]  By the time

19  plaintiffs purchased their Nutella in 2009 (Ms. Hohenberg) and 2010 (Ms. Rude-Barbato),

20  Nutella was made from palm oil – not PHVO – and contained only trace amounts of trans fat.  It

21  _____

22     [9] Indeed, Nutella never contained trans fat in an amount that required disclosure by the FDA,
    even after the FDA began requiring the amount per serving to be listed in the Nutrition Facts

23  Panel.  *See* 21 C.F.R. § 101.9(c)(9).  Moreover, despite the allegations in their complaint, neither
    plaintiff actually cares about PHVO.  *Compare* Compl. ¶ 34 (alleging plaintiffs were "upset to

24  learn" that Nutella used to contain PHVO), *with* Ex. 1 at 64-71 ("Q. Do you have know what
    PHVO is? A. No. Q. No. So does it matter to you if PHVO is in a product or not? A. I don't what

25  it is. I mean specifically I'm not sure what it is."), *and* Ex. 2 at 136 ("Q. So apart from your
    attorney's representation that PHVO is the same thing as trans fat, do you ever look for PHVO

26  on a label? A. I don't even know what PHVO is. Q. Okay. So – A. Even if I saw it on a label I
    wouldn't know what that is. Q. So when you buy products you don't look at the ingredients to

27  see if there's PHVO in there, do you? A. I don't even know what PHVO – why would – how
    would that affect – I don't even know what that is.")

28

FERRERO U.S.A., INC.'S OPPOSITION TO          -14-                              11CV0205
MOTION FOR CLASS CERTIFICATION

1    is axiomatic that plaintiffs lack standing to pursue class claims regarding a product that they

2    never bought and, therefore, could not have caused them any harm. *See In re Tobacco II Cases*,

3    207 P.3d 20, 40 (Cal. 2009); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946-47 (S.D.

4    Cal. 2007).

5    **II.    PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN UNDER RULE 23**

6            As explained above, at most plaintiffs could seek certification of claims on behalf of

7    California residents who purchased Nutella beginning in August 2009. However, to certify any

8    class, plaintiffs must first make an adequate showing under Rule 23(a). *Wal-Mart*, 131 S. Ct.

9    2541. Plaintiffs have not carried their burden under Rule 23(a) or Rule 23(b).

10          **A.    Plaintiffs Have Not Carried Their Burden Under Rule 23(a)**

11          The Supreme Court recently clarified the requirements of Rule 23(a)(2)—"the rule

12   requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" *Id.* at

13   2548. In doing so, the Court cautioned that rule 23(a)(2) is "easy to misread, since '[a]ny

14   competently crafted class complaint literally raises common 'questions'" and held that plaintiffs

15   do not carry their burden under Rule 23(a) by merely reciting common questions, such as: "Do

16   all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that

17   an unlawful employment practice? What remedies should we get?" Instead, "[c]ommonality

18   requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id*.

19   at 2551. If plaintiffs have not demonstrated that class members have "suffered the same injury,"

20   then the Court's analysis ends and a class cannot be certified. *Id.*

21          Here, plaintiffs have offered no evidence showing that class members "suffered the same

22   injury." Indeed, as discussed below, it will be difficult if not impossible for plaintiffs to do so

23   given the differences in consumer expectations and subjective satisfactions with Nutella. Instead

24   of making this showing, plaintiffs recite the kinds of questions that the Supreme Court held are

25   insufficient. *See* Motion at 14 (listing "(a) Whether Ferrero contributed to, commited and/or is

26   responsible for the conduct alleged; (b) Whether Ferrero's conduct constitutes the violations of

27   law [sic]; (c) Whether Ferrero acted willfully, recklessly, negligently, or with gross negligence;

28   (d) Whether Class Members are entitled to injunctive relief; and (e) Whether Class Members are

1    entitled to restitution.").  Plaintiffs also state that "each of Plaintiffs' claims presents common

2    questions of whether the elements are satisfied."  *Id*.  However, plaintiffs do not carry their

3    burden under Rule 23(a)(2) by offering conclusory arguments unsupported by any evidence.

4    **B.    Plaintiffs Have Not Demonstrated that Common Issues Will Predominate As**
     **Required by Rule 23(b)(3)**

5

6    Even if plaintiffs have sufficiently identified a common issue to satisfy Rule 23(a)(2),

7    they have not demonstrated that any such issues will predominate in the litigation as required by

8    Rule 23(b)(3).

9    **1.    Plaintiff Have Not Shown How They Will Prove Any Issue on a**
     **Classwide Basis**

10

11   In the Rule 23(b)(3) section of their brief (Motion at 15-21), plaintiffs identify a single

12   common issue, i.e., "whether a limited group of label claims and advertisements are misleading."

13   *Id*. at 16.  Even if a single common issue could predominate over the remaining issues in the case

14   – and it will not for the reasons set forth below – plaintiffs have not provided the Court with any

15   evidence showing that they will be able to resolve the issue on common proof.

16   Instead, plaintiffs speculate that they "may" offer an unidentified "consumer survey

17   expert" as well as "expert testimony on the health effects of consuming Nutella." *Id*. at 17.

18   Speculation is insufficient at the class certification stage.  If plaintiffs intend to make their case

19   using expert testimony, that evidence is subject the Court's "rigorous analysis" before the class

20   can be certified.  *Wal-Mart*, 131 S. Ct. at 2553-54; *Ellis v. Costco Wholesale Corp.*, No. 07-

21   15838, slip op. at 17711-12 (9th Cir. Sept. 16, 2011) (at class certification stage, district court

22   must determine if expert testimony is admissible under *Daubert* and whether such evidence is

23   persuasive).

24   In addition to their speculative expert evidence, plaintiffs do not explain how they will

25   prove a "likelihood of deception" on a classwide basis.  Importantly, plaintiffs are not

26   challenging a single statement to which class members were uniformly exposed.  Instead,

27   plaintiffs are challenging a number of different statements that appeared in different contexts,

28   used different words and images, and were seen by different people. Each of those statements is

FERRERO U.S.A., INC.'S OPPOSITION TO          -16-                              11CV0205
MOTION FOR CLASS CERTIFICATION

1  subject to unique defenses (including preemption, puffery, and materiality) but plaintiffs offer no

2  plan for how to account for these variations.

3            **2.**       **Individual Issues Will Predominate this Litigation**

4        Although they purport to identify one common issue (likelihood of deception), plaintiffs

5  have not shown that this single issue will predominate over the many other issues in the case.

6  For example, it is undisputed that "the CLRA requires each class member to have an actual

7  injury caused by the unlawful practice" meaning that, at trial, plaintiffs will have to prove injury

8  and causation on a classwide basis. *Stearns v. Ticketmaster Corp.*, – F.3d –, 2011 WL 3659354,

9  at *6 (9th Cir. Aug. 22, 2011); Motion at 18-19 (acknowledging causation element of CLRA).[10]

10           **a)**       **Injury-in-Fact**

11       In their Motion, plaintiffs do not address how they will establish injury-in-fact on a

12 classwide basis or demonstrate that members of the class each "suffered the same injury." *Wal-*

13 *Mart*, 131 S. Ct. at 2551 (citing *Falcon*, 457 U.S. at 157); *Blades v. Monsanto*, 400 F.3d 562,

14 572-74 (8th Cir. 2005) (affirming denial of class certification where plaintiffs' expert "did not

15 show that injury could be proven on a classwide basis with common proof"); *Allied Orthopedic*

16

17     [10] California's courts are currently split as to whether UCL plaintiffs must demonstrate

18 damages and causation for absent class members at the class certification stage. *Compare, e.g.*, *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 981 (2009) (holding UCL and CLRA claims

19 involve factual questions associated with their reliance on alleged false representations and subject to the court's consideration when examining 'commonality' on motion for class certification, "even after *Tobacco II*"), *with In re Steroid Hormone Prod. Cases*, 181 Cal. App.

20 4th 145, 155 (2010) (holding classwide reliance is not required in UCL unlawful prong cases).

21     Similarly, although courts in this district and elsewhere have held that all members of the

22 class must have Article III standing (*Aho v. AmeriCredit Fin. Servs., Inc.*, – F.R.D. –, 2011 WL 3047677 (S.D. Cal. July 25, 2011); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009); *Webb v. Carter's Inc.*, 272 F.R.D. 489 (C.D. Cal. 2011); *Burdick v. Union Sec. Ins.*

23 *Co.*, No. CV 07-4028, 2009 WL 4798873, at *3 (C.D. Cal. Dec. 9, 2009)), the recent *Stearns* opinion suggests that is not the case in this Circuit. *Compare Stearns*, 2011 WL 3659354, at *4,

24 *with Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."), *and Romberio v. Unumprovident*

25 *Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (class certification not proper "[w]here a class definition encompasses many individuals who have no claim at all to the relief requested"), *and*

26 *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010). Ferrero respectfully submits that, because plaintiffs' proposed class seeks to pursue claims on behalf of an

27 appreciable number of consumers who suffered no injury (much less any injury caused by the challenged statements), class certification is not appropriate under Article III or California law.

28

1    *Appliances, Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156, at 165 (C.D. Cal. 2007) ("In

2    the class action context, class certification is precluded where plaintiffs have not shown that the

3    fact of injury element can be proven for all class members with common evidence.").

4         Plaintiffs have not submitted any evidence showing that they will be able to demonstrate

5    injury-in-fact themselves, let alone on behalf of any other class members. For example, Ms.

6    Hohenberg does not regret buying Nutella (Ex. 1 at 44-45), continued to eat Nutella (as a topping

7    on ice cream) long-after she learned from the label that Nutella "had a high amount of sugar in

8    it" (*id*. at 126), and does not believe that she was injured by her purchase. *Id*. at 45.

9         As this testimony reflects, not everyone purchased something they did not want, received

10   a worthless product, or paid more than they intended. Plaintiffs have not shown that absent class

11   members would not have purchased Nutella, would have bought a competing product, or

12   otherwise regret their purchase. On the contrary, the record reflects that many consumers were

13   happy with their purchase and remain loyal Nutella consumers.[11] Because their case is about

14   individual expectations (Compl. ¶¶ 115, 146), dietary preferences (*id*. ¶¶ 27, 31), nutritional

15   knowledge (*id*. ¶¶ 28, 32-33, 116-17) and imperfect substitutes in the market (*id*. ¶¶ 30, 88, 98),

16   it will be exceedingly difficult for plaintiffs to demonstrate injury on a classwide basis. In any

17   event, they do not provide the Court with a factual showing that they will be able to do so.

18                            **b)    Causation**

19        Plaintiffs must also demonstrate "'a causal connection between the injury and the conduct

20   complained of.'" *Renee v. Duncan*, 623 F.3d 787, 796-97 (9th Cir. 2010). Although noting that

21   "reliance" is an element of their CLRA claim (Motion at 18-19) plaintiffs do not suggest that it is

22   possible to prove actual reliance on a classwide basis. Instead, plaintiffs intend to rely on an

23

24        [11] The record submitted by plaintiffs contains examples of consumers who purchased Nutella
     with knowledge of its ingredients, are emphatic about the product, and (presumably) will
25   continue purchasing Nutella at the current price. *See, e.g.*, Jennifer LaRue Huget, *Nuts About
     Nutella*, Wash. Post, Aug. 18, 2008, *available at* http://voices.washingtonpost.com/
26   checkup/2008/08/nuts_about_nutella.html (calling Nutella "delicious decadence" due to the
     amount of sugar in it, but reporting to "have bought many jars of the stuff" and "spreading it on
27   whole-grain toast for breakfast").

28

FERRERO U.S.A., INC.'S OPPOSITION TO              -18-                        11CV0205
MOTION FOR CLASS CERTIFICATION

1   "inference of reliance." *Id*. Plaintiffs acknowledge that this "inference of reliance" requires

2   proof that the challenged statement was (1) made to every member of the class and (2) material

3   to the consumers' purchasing decisions. Plaintiffs have demonstrated neither. *Id.* at 19-20.

4          *First*, plaintiffs are not challenging one statement that was made to every member of the

5   class.[12]  Instead, their Motion describes many statements excerpted from three television ads,

6   various print ads, online advertising, live presentations, and statements made by third-party

7   bloggers. Motion at 4-11. According to plaintiffs, Ferrero sometimes used the word "healthy" to

8   describe the depicted breakfast (*id.* at 4, 10); other times it used the word "balanced" (*id.*); and

9   still other times Ferrero only made statements about the ingredients in Nutella (*id.* at 3, 7-8).

10  Plaintiffs argue the implications from each of these statements are identical (i.e., that Nutella is,

11  when consumed by itself, "healthy") but present no evidence showing that the average consumer

12  – let alone all members of the putative class – would reach the same inference.

13         *Second*, the record will not permit an inference of reliance here because plaintiffs have

14  not shown materiality on a classwide basis. *Webb*, 272 F.R.D. at 502. Although plaintiffs

15  correctly explain that materiality can be shown by objective criteria in some instances, i.e., when

16  there is an average consumer who would attach importance to the statement (Motion at 19), that

17  test will not work when the importance and understanding of the statement necessarily varies. If

18  the issue of materiality or reliance "would vary from consumer to consumer," then "the class

19  should not be certified." *Stearns*, 2011 WL 3659354, at *7 (quoting *In re Vioxx Class Cases*,

20  180 Cal. App. 4th 116, 129 (2009)); *see, e.g.*, *Caro v. Procter & Gamble Co*., 18 Cal. App. 4th

21  644, 668 (1993) (materiality cannot be presumed on a classwide basis where class members

22  _____

23  [12] Plaintiffs may argue that all class members (beginning in 2009) were exposed to the "tasty
    yet balanced" statement on the product label. However, many consumers – including both of the

24  named plaintiffs – did not see that statement because they did not read the back of the label. Ex.
    1 at 28 ("Q. Okay. So what happened? You just saw the jar, did you turn it around and look at

25  the nutrition information? A. I did not. Q. You didn't turn it around? A. No. Q. Just put it in your
    cart? A. The cart."); Ex. 2 at 49-50 ("[Q.] so what happened, you see – you went in there, went

26  straight for the Nutella? A. Uh-huh. Q. Yes? A. Yes. Q. Picked it up did you turn around to look
    at the nutrition facts label or the ingredients? A. No. Q. You didn't turn it around? A. No.  Q. So

27  you just picked it up, put it in your cart, went and checked out?  A. I probably didn't even have a
    cart, but yes.")

28

1  would differ in whether orange juice's "fresh" and "no additives" labels would lead them to

2  believe the juice was premium, where the carton also said "from concentrate."); *Picus v. Wal-*

3  *Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009) (purchasing decisions "could be based on a

4  variety of factors unrelated to the 'Made in the USA' label, such as price, convenience, or a pet's

5  preference for the product.").

6      Here, the sparse record submitted by plaintiffs shows that "the issue of materiality or

7  reliance is a matter that would vary from consumer to consumer" (*Stearns*, 2011 WL 3659354, at

8  *7 (quoting *Vioxx*, 180 Cal. App. 4th at 129)) as there are "myriad reasons" why consumers

9  purchase Nutella.[13]  Decisions made in a grocery aisle are highly subjective, deeply personal, and

10  subject to any number of individualized factors.  For example, Ms. Hohenberg was trying

11  "something new" when she bought Nutella because she does not like peanut butter. Ex. 1 at 28.

12  Ms. Hohenberg did not check the nutritional facts on the Nutella label because she was not

13  curious, at that time, if Nutella contained fat or sugar.  *Id.* at 29.  After trying Nutella several

14  times, Ms. Hohenberg ultimately decided it was "too sweet" for breakfast in her household (*id.* at

15  103-04, 173) because "we don't eat a lot of sweets" – a personal preference for her family, which

16  is one not shared by many other families.  *Id.* at 103-04 ("To each their right.").

17      Similarly, Ms. Rude-Barbato purchased Nutella after her son tried it at a friend's house,

18  and purchased it again (this time in a larger size) after seeing that the rest of her sons "loved it"

19  as well.  Ex. 2 at 38, 44-45.  Ms. Rude-Barbato did not check the nutrition facts panel because

20  she had "blind faith" that its sugar content would not be high.  *Id.* at 51 ("Q. Did you ever see

21  any advertisements saying that Nutella is low in sugar? A. No.").  Unlike Ms. Hohenberg, sweets

22  are prevalent in Ms. Rude-Barbato's household of three extremely athletic sons (who eat

23

24      [13] *See, e.g.*, Weston Decl., Ex. 20 ("I guess I would have to label the [Denver Mommy Party
     group] the party animal group! . . . Nutella cocktails – not my idea! . . . I did talk about the
25     messages but this group was not-so-much into nutrition."); *id.*, Ex. 21 ("[M]any of the BlogHers
     were more geared towards the decadent side of Nutella – using it as an ingredient in rich
26     desserts."); *id.*, Ex. 23 (participants in Mommy Parties Tweeting, "I need to hit the gym. . . . .
     Right after I polish off that #nutella in my bag ; lol[,]" "theres [sic] no wrong way to eat nutella
27     lol…spoonful out of the jar is delish too.").

28

FERRERO U.S.A., INC.'S OPPOSITION TO            -20-                    11CV0205
MOTION FOR CLASS CERTIFICATION

1  everything from biscuits and gravy to cinnamon toast crunch for breakfast) and her "goals for

2  their diet change depending on what sport they're playing" on any given day.  Ex. 2 at 31-33; *see*

3  *id*. at 103 ("My husband and I went on like that no carb diet a few years ago, and so I would look

4  at labels to see carbohydrates in it. Maybe if I'm trying to watch my weight I might look at the

5  calorie content. A little worried about my bones, I might look for a calcium in something.").

6    Although both plaintiffs allege that advertisements for Nutella played some role in their

7  purchasing decisions – assertions that will be the subject of subsequent motions – they have not

8  presented any evidence to suggest that would be true for the rest of the class.  In addition to

9  individuals' personal choices and preferences, many consumers were brand-loyal to Nutella

10  long-before any of the challenged statements were made and plaintiffs offer no reason to believe

11  that new statements played any part in their purchasing decision.  *Pfizer Inc. v. Superior Court*,

12  105 Cal. Rptr. 3d 795, 798, 803 (Cal. Ct. App. 2010) (denying class certification after positing

13  that the majority of class members purchased Listerine during the relevant period because they

14  were "brand-loyal customers" or for other reasons unrelated to the contentious advertisements);

15  Ex. 1 at 44 ("If you like it, yeah, no need to change.").  In short, many consumers would have

16  purchased Nutella for reasons unconnected to the alleged advertising, "[b]ut all of those people

17  would have been swept willynilly into the class."  *Stearns*, 2011 WL 3659354, at *8.

18    Plaintiffs may point to the statement and chart in the introduction of their Motion

19  regarding the increase in sales of Nutella following the national advertising campaign in 2009 as

20  anecdotal evidence of causation.  That fact is insufficient because plaintiffs have offered no

21  evidence (expert or otherwise) showing that the challenged statements caused the increase in

22  sales or in what amount.  Correlation is not causation.  Any such theory would have to account

23  for the fact that Nutella was being advertised nationally in the United States for the first time.

24  Kreilmann Decl. ¶ 30; Krohn Decl. ¶ 5.  Plaintiffs have not tried to perform any such analysis.

25  Therefore, the record submitted by plaintiffs does not support an inference of reliance or any

26  other way to satisfy the causation element of plaintiffs' claims using common proof.  *Id*.; *Vioxx*,

27  180 Cal. App. 4th at 135-36; *Caro*, 18 Cal. App. 4th at 667-68; *Fine v. ConAgra Foods, Inc*., No.

28  CV 10-01848, 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26, 2010) ("[C]lass certification is

1   improper, given that Plaintiff's proposed class includes many people who may not have relied on

2   Defendant's alleged misrepresentations when making their purchasing decisions.").

3                    c)        **Determining Restitution and/or Damages**

4          Before a class can be certified, plaintiffs must demonstrate there exists a way to calculate

5   restitution (under the UCL) and damages (under the CLRA) using common proof. *Vioxx*, 180

6   Cal. App. 4th at 136 (affirming denial of class certification where plaintiff did not offer method

7   to determine restitution on a classwide basis); *Chavez v. Blue Sky Natural Beverage Co.*, 268

8   F.R.D. 365, 379 (N.D. Cal. 2010) ("At class certification, plaintiff must present a likely method

9   for determining class damages.") (internal quotation marks and citations omitted).

10         Restitution under the UCL is permitted only to the extent necessary to "return . . . the

11  excess of what the plaintiff gave the defendant over the value of what the plaintiff received."

12  *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174 (2000). Plaintiffs cannot

13  recover amounts paid to a defendant if they received what they expected. *Peterson v. Cellco*

14  *P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) ("'There is no equitable reason for invoking

15  restitution when the plaintiff gets the exchange which he expected.'") (citation omitted); *Day v.*

16  *AT&T Corp.*, 63 Cal. App. 4th 325 (1998). For those consumers who received something less

17  than expected, plaintiffs bear the burden to present a measure of restitution that returns only the

18  difference between the value of the product as represented and the value of the product actually

19  received. *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 61-62 (2006).

20         In *Colgan*, consumers purchased hand tools with "Made in the U.S.A." labels that were

21  actually manufactured in part overseas. Because the class members retained the benefits of

22  defendants' tools, they could not seek restitution for their total purchase price. The trial court

23  awarded restitution of 25% of each purchaser's purchase price as an estimate of the difference in

24  the value of the tools as represented and the tools actually received. *Id*. at 44. The Court of

25  Appeal reversed because the trial court's restitution award was not "supported by substantial

26  evidence." *Id*. at 63. Although there was expert testimony that a "Made in the U.S.A." label has

27  a positive impact on consumers, the expert had not attempted "to quantify either the dollar value

28  of the consumer impact or the advantage realized by [the defendant]." *Id*. As a result, the record

FERRERO U.S.A., INC.'S OPPOSITION TO                -22-                           11CV0205
MOTION FOR CLASS CERTIFICATION

did not include "substantial evidence" of a measurable difference between the value of what the class members thought they paid for (tools made in the U.S.A.) and what they actually received (tools manufactured in part overseas), making the 25% award reversible error.

Here, as in *Colgan*, Nutella purchasers received something of value.  For example, after Ms. Hohenberg decided Nutella was too sweet for breakfast – and after she was fully aware of its sugar content – she used it as a dessert topping for months.  Ex. 1 at 41-42 ("Q. So you started using it as a dessert topping, correct? A. Correct. Q. All right. So you enjoyed it, right? A. Uh-huh. Q. Okay. It tasted good, right? A. Yes. Q. And your daughter liked it? A. Yes. Q. Do you have any way to value, if you paid two to \$3 for it, how much was it worth to you? A. I'm not sure if I know how to answer that question. Q. Just give it your best shot. ***A. I don't know that I could really put a dollar amount on it***.  It wasn't what I purchased…it for.").  Indeed, Ms. Hohenberg does not regret purchasing Nutella.  *Id*. at 44-45.  Similarly, Ms. Rude-Barbato's family "loved" Nutella and was upset when she took it away.  Ex. 2 at 38.  If plaintiffs themselves cannot "put a dollar amount on it," it will be virtually impossible for them to do so on a classwide basis.

But that is exactly what plaintiffs must do before a class may be certified.  *Chavez* 268 F.R.D. at 379 ("At class certification, plaintiff must present a likely method for determining class damages"); *Vioxx*, 180 Cal. App. 4th at 136 (denying class certification where plaintiffs were unable to prove the "actual value to the patient" because determining a substitute product would be a "patient-specific issue" such that restitution could not be calculated on a classwide basis); *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 59 (D. Mass. 2010) (denying class certification because determining restitution would depend on consumer's subjective satisfaction with the product).

Because plaintiffs have not presented any theory – let alone an economically sound methodology supported by "substantial evidence" – for determining restitution under the UCL, or for determining damages under the CLRA, certification should be denied.

1

          **d)**     **Ascertaining Class Members**

2

     Before any class can be certified, plaintiffs must demonstrate that it is possible to identify

3

its members without resort to individualized, fact-intensive inquiries.  *See, e.g., In re*

4

*Phenylpropanolamine (PPA) Prods. Liab. Litig*., 214 F.R.D. 614, 617-20 (W.D. Wash. 2003)

5

(compiling cases and holding "[b]ecause the vast majority of putative class members are unlikely

6

to possess proof of purchase, and given the purportedly immense size of this class, the

7

individualized inquiries surrounding class certification would be prodigious and would defy the

8

court's ability to effectively and efficiently managed the litigation."); *Hodes v. Vans Int'l Foods*,

9

No. CV 09-01530, 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009) (denying certification

10

where "[t]he likelihood that tens of thousands of class members saved their receipts as proof of

11

their purchase of Van's waffles is very low."); *Grimes v. Rave Motion Pictures Birmingham,*

12

*L.L.C.*, 264 F.R.D. 659, 665 (N.D. Ala. 2010) ("Without a receipt, no plaintiff would have proof

13

of a claim . . . [s]uch a plaintiff by plaintiff examination would not only be a task beyond the

14

court's logistical capacity, but would constitute a prohibited merits based analysis.").

15

     Here, plaintiffs offer no plan to identify potential class members let alone one that would

16

address the substantial impediments in doing so. Ex. 1 at 150-51 (Ms. Hohenberg

17

acknowledging no means by which to prove purchase of Nutella); Ex. 2 at 71 (Ms. Rude-Barbato

18

acknowledging no receipts);  *PPA*, 214 F.R.D. at 617 ("using the named plaintiffs as a marker,

19

only a quarter of the class, at most, would likely possess any physical proof of purchase.").

20

**III.**    **NO INJUNCTIVE CLASS CAN BE CERTIFIED**

21

     Although it appears that plaintiffs are only moving for certification under Rule 23(b)(3)

22

(Motion at 13), their Motion seeks certification of an injunction-only class. *Id.* at 3.

23

Certification of an injunction-only class under Rule 23(b)(2) is inappropriate where, as here, the

24

monetary relief sought by plaintiffs is not incidental to the injunctive or declaratory relief. *Wal-*

25

*Mart*, 131 S. Ct. at 2557.  Such a class would only be permissible if plaintiffs abandon their

26

claims for individual awards of money damages and if plaintiffs met the other requirements of

27

Rule 23, which they have not.  Therefore, no class can be certified under Rule 23(b)(2).

28

1          **CONCLUSION**

2          Plaintiffs have failed to satisfy their burden for certification.  While only plaintiffs and

3   their counsel know the reasons behind the hasty filing of this motion – which occurred months

4   before the stipulated deadline – Ferrero notes the following exchange between plaintiffs' counsel

5   and the Judicial Panel on Multi-District Litigation:

6          MR. WESTON: And, finally, favoring San Diego is the fact that we're – we
            have a class certification hearing set for October. We've just to review thousands
7          of pages of documents in support of that, we're going to have that on file soon.
                                                   ***
8          JUDGE FURGESON: And so you and the Defendants have put this case on an
            incredibly fast track, correct? And you've done – you're thinking you're going to
9          finish your discovery and you're going to be ready, both sides are ready to have a
            class action certification hearing in October?
10         MR. WESTON: Yes.
            JUDGE FURGESON: And Judge Huff said you're going to be ready, whether
11         you want to or not.
            MR. WESTON: She didn't set a deadline for class certification. But we've been
12         – done all that discovery, and the rules say when you're ready, then you should
            file it.
13         JUDGE FURGESON: I understand that you said you had a hearing set.
            MR. WESTON: We do have a hearing set and scheduled October 12 as well and
14         we also have a stipulated briefing schedule with the Defendant.

15   Ex. 5 at 10-12.  As admitted by their counsel, plaintiffs have conducted all discovery they

16   deemed necessary for this motion and chose to proceed without any expert testimony.  Plaintiffs

17   fall far short of meeting their burden under due process, *Wal-Mart v. Dukes*, and Rule 23.

18   Therefore, Ferrero respectfully submits that plaintiffs' motion should be denied.

19

20   Dated:  October 10, 2011                     WILSON SONSINI GOODRICH & ROSATI
                                                   Professional Corporation
21

22                                                 By:   /s/ Keith E. Eggleton                    .
                                                         Keith E. Eggleton
23                                                       keggleton@wsgr.com

24                                                 Attorneys for Defendant Ferrero U.S.A., Inc.

25

26

27

28

FERRERO U.S.A., INC.'S OPPOSITION TO              -25-                              11CV0205
MOTION FOR CLASS CERTIFICATION