**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron.marron@gmail.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**Interim Class Counsel**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN RE FERRERO LITIGATION

Case No. 3:11-cv-00205-H-CAB
Pleading Type: Class Action
Action Filed: February 01, 2011

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

REDACTED VERSION FOR PUBLIC FILING

Judge: Hon. Marilyn L. Huff
Date: November 7, 2011
Time: 10:30 a.m.
Location: Courtroom 13

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... ii

I. COMMON QUESTIONS PREDOMINATE ..... 1

II. FERRERO'S PREDOMINANCE ARGUMENTS ARE WRONG ..... 1

A. The Content and Veracity of Ferrero's Messaging can be Determined Class-Wide ..... 1

B. Causation—to the Extent Necessary—can be Determined Class-Wide ..... 2

C. Damages can be Determined Class-Wide ..... 3

D. The Class is Ascertainable ..... 4

III. THE PROPOSED SCOPE OF THE CLASS IS PROPER ..... 4

A. There is a Factual Basis for Certification of a Class Beginning in 2000 ..... 4

B. The Statute of Limitations does not Preclude Certification ..... 6

C. Application of California Law to a Nationwide Class is Proper ..... 7

1. California has Significant Contacts with the Class's Claims ..... 7

2. Ferrero has not Satisfied its Choice-of-Law Burden ..... 8

3. Alternatively, the Court Should Certify a No-Conflicts Multistate Class ..... 9

IV. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**CASES**[1]

*Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426 (S.D. Cal. July 25, 2011)........ 2, 7

*Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003)........ 6

*Ameron Int'l Corp. v. Am. Home Assur. Co.*, 2011 U.S. Dist. LEXIS 61486 (C.D. Cal. June 6, 2011)........ 9

*Arevalo v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 34151 (N.D. Cal. Mar. 29, 2011)........ 7

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007)........ 2

*Burdick v. Union Sec. Ins. Co.*, 2009 U.S. Dist. LEXIS 121768 (C.D. Cal. Dec. 9, 2009)........ 6

*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010)........ 1

*Charlebois v. Angels Baseball, LP*, 2011 U.S. Dist. LEXIS 71452 (C.D. Cal. June 30, 2011)........ 4

*Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365 (N.D. Cal. 2010)........ 2, 3, 4

*Clark v. Prudential Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 93606 (D.N.J. Sept. 9, 2010)........ 6

*Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009)........ 2

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006)........ 3, 4

*Davis v. S. Bell Tel. & Tel. Co.*, 1993 U.S. Dist. LEXIS 2033 (S.D. Fla. Dec. 23, 1993)........ 4

*Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D. Mass. 1997)........ 10

[1] Throughout this brief, citations are omitted and emphases added unless otherwise noted.

*F.T.C. v. Figgie Int'l, Inc.*,
994 F.3d 595 (9th Cir. 1993) ... 3

*Fitzpatrick v. General Mills, Inc.*,
263 F.R.D. 687 (S.D. Fla. 2010) ... 2

*Fletcher v. Sec. Pac. Nat'l Bank*,
23 Cal. 3d 442 (1979) ... 4

*Gen. Bedding Corp. v. Echevarria*,
947 F.2d 1395 (9th Cir. 1991) ... 6

*Grayson v. 7-Eleven, Inc.*,
2011 U.S. Dist. LEXIS 62211 (S.D. Cal. June 10, 2011) ... 10

*Greenwood v. CompuCredit Corp.*,
2010 U.S. Dist. LEXIS 127719 (N.D. Cal. Nov. 19, 2010) ... 2, 7

*Grimes v. Rave Motion Pictures Birmingham, L.L.C.*,
264 F.R.D. 659 (N.D. Ala. 2010) ... 4

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ... 2, 9

*Henderson v. J.M. Smucker Co.*,
2011 U.S. Dist. LEXIS 27953 (C.D. Cal. Mar. 17, 2011) ... 6

*Hilao v. Estate of Marcos*,
103 F.3d 767 (9th Cir. 1996) ... 4

*Hodes v. Vans Int'l Foods*,
2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009) ... 4

*In re Computer Memories Sec. Litig.*,
111 F.R.D. 675 (N.D. Cal. 1986) ... 8, 9

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,
270 F.R.D. 521 (N.D. Cal. 2010) ... 6

*In re Ferrero Litig.*,
2011 U.S. Dist. LEXIS 70629 (S.D. Cal. June 30, 2011) ... 5

*In re Ferrero Litig.*,
2011 U.S. Dist. LEXIS 97488 (S.D. Cal. Aug. 29, 2011) ... 5

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. 2, 2008) ... 10

*In re Mex. Money Transfer Litig.*,
267 F.3d 743 (7th Cir. 2001) ........ 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
148 F.3d 283 (3d Cir. 1998) ........ 9

*In re Sch. Abestos Litig.*,
789 F.2d 996 (3d Cir. 1986) ........ 9

*In re St. Jude Med., Inc. Silzone Heart Valve Prods. Liab. Litig.*,
2006 U.S. Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006) ........ 9

*In re St. Jude Med., Inc. Silzone Heart Valve Prods. Liab. Litig.*,
425 F.3d 1116 (8th Cir. 2005) ........ 9

*In re TFT-LCD Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010) ........ 6

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........ 3

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) ........ 4

*Johansson v. Cent. Garden & Pet Co.*,
2011 U.S. Dist. LEXIS 56463 (D.N.J. May 26, 2011) ........ 8

*Johnson v. General Mills, Inc.*,
2011 U.S. Dist. LEXIS 45120 (C.D. Cal. Apr. 20, 2011) ........ 1, 2

*Keilholtz v. Lennox Hearth Prods.*,
2009 U.S. Dist. LEXIS 81108 (N.D. Cal. Sept. 8, 2009) ........ 6, 8

*Khorrami v. Lexmark Int'l*,
2007 U.S. Dist. LEXIS 98807 (C.D. Cal. Sept. 13, 2007) ........ 10

*Kingsberry v. Chi. Title Ins. Co.*,
258 F.R.D. 668 (W.D. Wash. 2009) ........ 10

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
97 Cal. App. 4th 1282 (2002) ........ 2

*Mazza v. Am. Honda Motor Co.*,
254 F.R.D. 610 (C.D. Cal. Dec. 16, 2008) ........ 8

*McKenzie v. Fed. Express Corp.*,
2011 U.S. Dist. LEXIS 65278 (C.D. Cal. June 16, 2011) ........ 3

*Menagerie Prods. v. Citysearch*,
2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009) .......... 5

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008) .......... 4

*Pecover Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*,
2000 U.S. Dist. LEXIS 13138 (S.D.N.Y. Sept. 12, 2000) .......... 9

*Pecover v. Elec. Arts Inc.*,
2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) .......... 3, 8

*Plascencia v. Lending 1st Mortg.*,
259 F.R.D. 437 (N.D. Cal. 2009) .......... 3

*Powers v. Lycoming Engines*,
328 Fed. Appx. 121 (3d Cir. 2009) .......... 9

*Stearns v. Ticketmaster*,
2011 U.S. App. LEXIS 17454 (9th Cir. Aug. 22, 2011) .......... 2

*Steroid Hormone Prod. Cases*,
181 Cal. App. 4th 145 (2010) .......... 2

*Sullivan v. Oracle*,
51 Cal. 4th 1191 (2011) .......... 8

*Tchoboian v. Parking Concepts*,
2009 U.S. Dist. LEXIS 62122 (C.D. Cal. July 16, 2009) .......... 4

*Thompson v. Bayer Corp.*,
2009 U.S. Dist. LEXIS 15190 (E.D. Ark. Feb. 12, 2009) .......... 9

*Vuyanich v. Republic Nat'l Bank of Dallas*,
82 F.R.D. 420 (N.D. Tex. 1979) .......... 2

*Walker v. Ryan's Family Steak Houses, Inc.*,
400 F.3d 370 (7th Cir. 2005) .......... 9

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .......... 1

*Wash. Mut. Bank v. Super. Ct.*,
24 Cal. 4th 906 (2001) .......... 8, 9

*Weinstat v. Dentsply Int'l, Inc.*,
180 Cal. App. 4th 1213 (2010) .......... 3

*Wiener v. Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009) ........ 3, 4

*Wolph v. Acer Am. Corp.*,
272 F.R.D. 477 (N.D. Cal. 2010) ........ 1, 2, 8

*Zeisel v. Diamond Foods, Inc.*,
2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) ........ 2, 3, 4

**STATUTES**

Cal. Bus. & Prof. Code § 17203 ........ 3

**RULES**

Fed. R. Civ. P. 8(e) ........ 5

## I. COMMON QUESTIONS PREDOMINATE

Although the common questions Plaintiffs initially identified were perhaps stated too abstractly, they nevertheless *are* common questions. More specifically, they include: (1) whether Ferrero communicated a representation, through Nutella packaging and advertising, that Nutella is healthier or more nutritious than it actually is, or makes a more significant contribution to a balanced breakfast than it actually does, including for children; (2) whether the representations were material to reasonable consumers; (3) whether the representations were false or misleading; (4) whether Ferrero deceptively omitted material facts (*See* FACC ¶¶ 28, 95, 97, 99); and (5) if these questions are answered affirmatively, the proper method for calculating the class's damages and the proper scope of injunctive relief. *See, e.g., Johnson v. General Mills, Inc.*, 2011 U.S. Dist. LEXIS 45120, at *8-9 (C.D. Cal. Apr. 20, 2011); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 488 (N.D. Cal. 2010). These common questions predominate over any individual issues because the putative class members all assert injury from the same conduct—they paid more for Nutella than they otherwise would have absent Ferrero's misleading advertisements and omissions. This is a cognizable Article III injury. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010). Moreover, determination of whether advertisements and omissions were material and truthful will resolve in "one stroke" an issue that is central to the validity each class member's UCL, FAL and CLRA claims—whether Nutella was promoted in a manner likely to deceive an ordinary consumer. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

## II. FERRERO'S PREDOMINANCE ARGUMENTS ARE WRONG

### A. The Content and Veracity of Ferrero's Messaging can be Determined Class-Wide

Using the same class-wide evidence Plaintiffs submitted, Ferrero asserts it did not convey to consumers uniform messaging. *See* Opp. at 19-20. That question, however, is a predominating class-wide issue that can be demonstrated or refuted with common evidence, as Ferrero demonstrates. Opp. at 18 & n. 11, 20 & n.13. Moreover, Ferrero's argument is contradicted by the record. *See* Persinger Decl. ¶ 3; Kreilmann Decl. Exs. 2-3 (identifying just two consistent labels used during class period); FACC ¶¶ 91-93 (transcriptions of just three nationally-aired commercials); *id.* at 18-24 (web); Weston Decl. Exs. 6-10, 12 (print). Representations Ferrero made to which the entire class was not exposed do not detract from what every class member *was* exposed to: minimally, Nutella's label, and likely additional aspects of its national advertising blitz. *See* Kreilmann Decl. ¶¶ 31-32. Nor do differences in class members' exposure defeat commonality. *See*

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Thus, Plaintiffs can present class-wide evidence showing Ferrero conveyed common messaging about Nutella's contribution to healthy eating. *See generally Fitzpatrick v. General Mills, Inc.*, 263 F.R.D. 687, 700 (S.D. Fla. 2010) ("variations in how different advertising statements address Yo-Plus' purported digestive health benefit are not so significant as to preclude a fact finder from evaluating whether General Mills' overarching theme . . . is 'deceptive'"). Finally, questions of science, such as the effect of Nutella on human health, are demonstrated on a generalized basis. Ferrero agrees its messaging may be evaluated by reference to such common evidence. *See* Persinger Decl. ¶ 4.

**B. Causation—to the Extent Necessary—can be Determined Class-Wide**

The UCL and FAL are strict liability statutes under which only the named plaintiff need demonstrate injury and causation. *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009); *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1288 (2002). Contrary to Ferrero's assertion of a court split, Opp. at 17 n.10, once a plaintiff has standing, "no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members." *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010) (abrogating *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 981 (2009)); *Stearns v. Ticketmaster*, 2011 U.S. App. LEXIS 17454, at *13-14 (9th Cir. Aug. 22, 2011).[2] Nevertheless, to the extent reliance is an issue, it can be proven or disproven on a class-wide basis since, "[u]nder California law, reliance may be presumed from a showing that a misrepresentation was material." *Wolph*, 272 F.R.D. at 488 (citing *Tobacco II*, 46 Cal. 4th at 327); *Mass. Mut.*, 97 Cal. App. 4th at 1292 (burden "of showing causation as to each" satisfied "by showing materiality as to all"). This includes CLRA claims. *Stearns*, 2011 U.S. App. LEXIS 17454, at *17-19. *See generally Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 448 (N.D. Cal.

[2] Ferrero's analysis of *Stearns* is misplaced. **First**, Judge Carney dismantled the analogy to *Stearns* Ferrero attempts to draw here, arguing that class members without standing will supposedly be "swept willy-nilly into the class," Opp. at 21. *See Johnson*, 2011 U.S. Dist. LEXIS 103357, at *11-12. **Second**, the Ninth Circuit did not hold that absent class members need not have Article III standing, Opp. at 17 n.10. *See Stearns*, 2011 U.S. App. LEXIS 17454, at *13-14. *Accord Greenwood v. CompuCredit Corp.*, 2010 U.S. Dist. LEXIS 127719, at *15 (N.D. Cal. Nov. 19, 2010). **Third**, the *Stearns* holding is not novel; ample authority shows "passive [class] members need not make any individual showing of standing," *Zeisel v. Diamond Foods, Inc.*, 2011 U.S. Dist. LEXIS 60608, at *16 (N.D. Cal. June 7, 2011); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *Greenwood*, 2010 U.S. Dist. LEXIS 127719, at *10; *Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010). Instead, a class must be defined so that anyone in it has standing. *See Aho v. Americredit Fin. Servs.*, 2011 U.S. Dist. LEXIS 80426, at *30 n.7 (S.D. Cal. July 25, 2011). *Accord Vuyanich v. Republic Nat'l Bank of Dallas*, 82 F.R.D. 420, 428 (N.D. Tex. 1979) ("If th[e] court, guided by the nature and purpose of the substantive law on which the plaintiffs base their claims, properly applies rule 23, then the certified class must necessarily have standing as an entity.").

2009) ("Plaintiffs may prove with generalized evidence that Defendants' conduct was 'likely to deceive' members of the public.").

Though Plaintiffs need only show materiality may be proved by common evidence, they have already *demonstrated* it. By showing *they* relied on Ferrero's misrepresentations, *see* Persinger Decl. ¶ 5, the Court may draw an inference of materiality. *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009); *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010). Plaintiffs showed Nutella sales increased dramatically upon Ferrero's embarking on the challenged breakfast messaging campaign. Mot. at 2 (chart).[3] Materiality is also established by Ferrero's attempt to have "key opinion leaders," like pediatricians and nutritionists, convey Nutella messaging on Ferrero's behalf, since reasonable people find the advice of physicians and academics material. Finally, the challenged statements and advertising convey a message that Nutella is a nutritious breakfast food for children. Common sense suggests such representations are material to reasonable consumers. *C.f. In re Toyota Motor Corp. Unintended Acceleration Litig.*, 754 F. Supp. 2d 1145, 1191 (C.D. Cal. 2010) ("common sense supports Plaintiffs' claim that a potential car buyer would view as material a defect that relates to control over the speed of the car"); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 672 (2006) ("The evidence presented was sufficient, without further extrinsic evidence—such as a consumer survey—to establish that Leatherman's representations were deceptive.").

**C. Damages can be Determined Class-Wide**

Courts have often rejected Ferrero's assertion that individual issues of damages, which will almost *always* be present in consumer class actions, predominate. *See, e.g.*, *McKenzie v. Fed. Express Corp.*, 2011 U.S. Dist. LEXIS 65278, at *30 n.3 (C.D. Cal. June 16, 2011) ("The fact that individualized proof of damages may ultimately be necessary does not mean, however, that [plaintiff's] theory of recovery is not amenable to class treatment."); *Pecover v. Elec. Arts Inc.*, 2010 U.S. Dist. LEXIS 140632, at *31 (N.D. Cal. Dec. 21, 2010); *see also Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *33; *Chavez*, 268 F.R.D. at 379. Ferrero is wrong that class members are entitled only to the difference in purchase price between Nutella and a substitute product. While this is one accepted and provable measure, another is restitution of the purchase price. *F.T.C. v. Figgie Int'l, Inc.*, 994 F.3d 595, 606 (9th Cir. 1993); Cal. Bus. & Prof. Code § 17203; *Zeisel*, 2011 U.S. Dist. LEXIS

[3] Ferrero is free to argue to the jury that "correlation is not causation," Opp. at 21, and that other factors affected the increase in sales, but even in doing so, Ferrero would resort to the same common evidence as Plaintiffs—the comparison of its advertising and promotional spending to its sales.

60608, at *34; *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 450-51 (1979). Either way, the remedy can be adjudicated in a class setting. Ferrero's interest is not in the amount a class member receives, but the aggregate amount awarded. *Hilao v. Estate of Marcos*, 103 F.3d 767, 786-87 (9th Cir. 1996). This can be calculated from Ferrero's records, including retail pricing, sales, and revenues. Once calculated, distributing the fund is a routine matter for claims administrators. *See Weiner*, 255 F.R.D. at 670; *Chavez*, 268 F.R.D. at 379; *accord Davis v. S. Bell Tel. & Tel. Co.*, 1993 U.S. Dist. LEXIS 2033, at *21-22 (S.D. Fla. Dec. 23, 1993).[4]

**D. The Class is Ascertainable**

A class is ascertainable so long as the definition specifies "a distinct group of plaintiffs whose members [can] be identified with particularity." *Charlebois v. Angels Baseball, LP*, 2011 U.S. Dist. LEXIS 71452, at *7 (C.D. Cal. June 30, 2011). "Objective criteria must be used to ascertain class members." *Id.* District courts routinely certify consumer class actions where class members' identities are not known at the time of certification, and where notice will be required to allow class members to self-identify. *See Tchoboian v. Parking Concepts*, 2009 U.S. Dist. LEXIS 62122, at *14 (C.D. Cal. July 16, 2009); *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *20-21 & n.10; *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008); *Chavez*, 268 F.R.D. at 377.[5] Ferrero's assertion that a consumer class cannot be certified unless all its members have receipts is wrong; the absence of store receipts is not the absence of proof of purchase. Class members may swear or affirm that they purchased Nutella.

**III. THE PROPOSED SCOPE OF THE CLASS IS PROPER**

**A. There is a Factual Basis for Certification of a Class Beginning in 2000**

Ferrero does not dispute that a class should be certified beginning *at least* in August 2009, Opp. at 15. But Plaintiffs' motion clearly delineates the challenged conduct during the class period, both before and after August 2009. Mot. at 3-11. Ferrero confirms this. Kreilmann Decl. ¶ 30. Ms. Rude-Barbato testified she may

---

[4] *Colgan*, 135 Cal. App. 4th 663, involved a decision of the lower court on the merits. And *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 135-36 (2009) did not hold that class-wide damages cannot be calculated where a product does not provide the advertised benefit; rather, the court found individual medical histories, treatment needs and drug interactions were at issue. *Id.* at 136. *See* Opp. at 22-23.

[5] *Hodes v. Vans Int'l Foods*, 2009 U.S. Dist. LEXIS 72193, at *11 (C.D. Cal. July 23, 2009), *see* Opp. at 24, is distinguishable because, unlike here where a single product and label is at issue, the proposed class definition captured consumers who purchased "frozen waffles in a variety of product lines," *id.* at *3, some of which did not bear the challenged claims. And *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659 (N.D. Ala. 2010) involved claims *about* receipts (i.e., under the Fair and Accurate Credit Transactions Act—FACTA), and the problem was "there is no way to determine who was or was not issued a FACTA non-compliant receipt," i.e., to resolve the *merits* of the underlying claim.

have seen Nutella advertising as early as 2003. Rude-Barbato Dep. Tr. 162:6-163:4. In addition, though Plaintiffs purchased Nutella after August 2009, their claims are typical of the claims of pre-2009 Nutella purchasers. Since January 2000, Nutella has been marketed as a "hazelnut spread" made with "over 50 hazelnuts per jar," containing "quality ingredients," and has been deceptively categorized as a nut spread, *see* Mot. at 3-4. Beginning in August 2009, additional variations of the messaging were added via its "balanced breakfast" campaign, but Plaintiffs allege a consistent campaign to hide the real nutritional quality of Nutella during the entire class period. Ferrero nevertheless lodges two challenges: that Plaintiffs "do not object" to the statements, and that they "are not in the case." Opp. at 12. For its first challenge, the testimony Ferrero cites does not support its contention. *See* Persinger Decl. ¶ 6. But even if Ferrero's characterization of the cherry-picked testimony was valid, that is no matter, since Plaintiffs' claims "will be adjudicated under the 'reasonable consumer' standard rather than by examining the individual circumstances of each plaintiff." *Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768, at *43-44 (C.D. Cal. Nov. 9, 2009).

Moreover, the statements *are* in the case. The Complaint describes the statements in the context of a discussion about the Nutella website, *see* FACC ¶ 81, but the allegation does not, on its face, relate exclusively to the website. Ferrero is correct that the Court previously noted Plaintiffs challenge "hazelnut" representations in their discussion of Nutella's website, which it initially held Plaintiffs did not have standing to challenge. *See In re Ferrero Litig.*, 2011 U.S. Dist. LEXIS 70629, at *13 (S.D. Cal. June 30, 2011). Nonetheless the Court held the "balanced breakfast" claim on Nutella's label was not puffery because it "contribute[d] 'to the deceptive context of the packaging as a whole.'" *Id.* at *17. Thus the full campaign was always at issue. In addition, notwithstanding the Complaint's unfortunate but merely inartful drafting, Plaintiffs' intent to challenge those representations on Nutella's label has always been clear. Moreover, the Court later held they had standing to challenge those representations, though it did not revisit the preemption issue raised on Ferrero's first Rule 12 motion. *See In re Ferrero Litig.*, 2011 U.S. Dist. LEXIS 97488 (S.D. Cal. Aug. 29, 2011).[6] While Plaintiffs should have better amended their Complaint to clarify that hazelnut challenges related to every aspect of Nutella's marketing including its label, Ferrero cannot claim surprise, and Plaintiffs would respectfully request that the Court construe the pleading "so as to do justice." *See* Fed. R. Civ.

[6] Plaintiffs do not object to revisiting Ferrero's argument that hazelnut statements are preempted, *see* Opp. at 12-13, and rest on their Opposition to Ferrero's first Motion to Dismiss. *See* Dkt. No. 39 at 9-11.

P. 8(e). Alternatively, if the Court is otherwise inclined to grant class certification, Plaintiffs would request leave to amend their Complaint to conform it to the certification class. Finally, even if the hazelnut representations on Nutella's label are not "in the case," and the Court does not permit them in, either under Rule 8(e) or 15, Ferrero wholly ignores that Plaintiffs also challenge—prior to 2009—an element of Ferrero's *conduct* that is not dependent upon any specific advertising statements, the in-store placement of Nutella as a nut product. *See* FACC ¶ 98.

**B. The Statute of Limitations does not Preclude Certification**

Plaintiffs propose a class period predating the statute of limitations under their California law claims on the basis of their properly-pled delayed discovery allegations, FACC ¶¶ 115-18. *See Henderson v. J.M. Smucker Co.*, 2011 U.S. Dist. LEXIS 27953, at *6-8 (C.D. Cal. Mar. 17, 2011).[7] Ferrero's argument that certification of a class beginning in 2000 is "prohibited" by the statute of limitations, Opp. at 13, is wrong. *See In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 531 n.8 (N.D. Cal. 2010) ("individual issues relating to the statute of limitations do not bar certification where there is otherwise a sufficient showing of commonality."). Delayed discovery allegations may be applied class-wide so long as Plaintiff could submit common proof on which a fact-finder could find it should apply. *C.f. Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1263 (11th Cir. 2003) (upholding application of tolling allegations to entire class); *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 310 (N.D. Cal. 2010) (common issues predominated where "critical inquiry" in fraudulent concealment allegations focused on defendant's behavior). The elements of delayed discovery are (a) lack of knowledge, (b) lack of means of obtaining knowledge in the exercise of reasonable diligence, and (c) the manner of actual discovery. *See Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991) (applying California law). Plaintiffs can prove each element by reference to common proof, i.e., that Ferrero was "in a far superior position to know of the act and the injury, and the act and the injury are difficult for the plaintiff to detect." *Keilholtz v. Lennox Hearth Prods.*, 2009 U.S. Dist. LEXIS 81108, at *9-10 (N.D. Cal. Sept. 8, 2009). *See generally* FACC ¶ 117. Class-wide proof of the manner of discovery for unnamed class members will consist of the public notice distributed upon certification of a

[7] Ferrero's assertion, relying on *Karl Storz*, that "the statue of limitations under the UCL cannot be tolled," Opp. at 13, has been rejected. *See Clark v. Prudential Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 93606, at *46-54 (D.N.J. Sept. 9, 2010); *Burdick v. Union Sec. Ins. Co.*, 2009 U.S. Dist. LEXIS 121768, at *34 n.16 (C.D. Cal. Dec. 9, 2009).

class in this case. If the statute of limitations did present a predominating individual issue, however, the remedy would be to narrow the class definition to the statutory period, not to deny certification.

Nor is Ferrero's standing argument apt. *See* Opp. at 14-15. So long as Plaintiffs establish personal standing, they may represent a class whose claims are typical. *See Arevalo v. Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 34151, at *12-13 (N.D. Cal. Mar. 29, 2011) ("[W]hen class representatives establish standing . . . the requirements of Rule 23(a) are ordinarily the best means of 'effectively limit[ing] the class claims to those fairly encompassed by the named plaintiff's claims'"); *Greenwood*, 2010 U.S. Dist. LEXIS 127719, at *8-9 (whether named plaintiffs with personal standing "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation"); *Aho*, 2011 U.S. Dist. LEXIS 80426, at *30-31 n.7 (the "ability of [a] class representative to assert claims on behalf of absent class members is not a standing issue, but 'depends rather on meeting the prerequisites of Rule 23 governing class actions'"). Ferrero does not contest Plaintiffs' personal standing, the typicality of their claims to the entire class's claims, nor the adequacy of their representation. Nor could it. Persinger Decl. ¶ 5; Opp. at 21 ("both plaintiffs allege that advertisements for Nutella played some role in their purchasing decisions"[8]). Ferrero's assertion that Plaintiffs did not purchase Nutella with PHVO, Opp. at 14, is misplaced. Minor factual differences, like the exact formulation of Nutella, which has changed several times, not just once, *see* Persinger Decl. ¶ 9, do not defeat commonality where all class members will advance the same legal theory—that Nutella's advertising is deceptive in light of its objectionable ingredients, whether sugar and saturated fat, or sugar, saturated fat and trans fat.

### C. Application of California Law to a Nationwide Class is Proper

#### *1. California has Significant Contacts with the Class's Claims*

"[T]he Due Process Clause . . . provide[s] *modest* restrictions on the application of forum law." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985). A state need only "have *a* significant contact or significant *aggregation* of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id*. That is because Due Process serves only to prevent the extreme of applying the law of a state "only casually or slightly related to the litigation." *Id* at 819. California is not "only casually or slightly related" to the claims of the class. One contact is so significant as to satisfy Due Process itself: the

[8] Additional reasons Plaintiffs bought Nutella, Opp. at 20-21, are irrelevant. *Tobacco II*, 46 Cal. 4th at 326.

most distinctive and by far most expensive aspect of Ferrero's marketing, the nationally-aired television commercials, were filmed in California, Persinger Decl. ¶¶ 8, 10, and therefore "emanate" from here. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 620 (C.D. Cal. Dec. 16, 2008) (television advertising created in California supported certifying national California law class). There is also an aggregation of contacts satisfying Due Process. All the Nutella in the United States is distributed by [REDACTED] companies, one of which is a California Company, Aspen Logistics. *See* Persinger Decl. ¶ 7; Kreilmann Decl. ¶ 20. Aspen distributes Nutella to 11 states. Persinger Decl. ¶ 11. And while OHL currently distributes Nutella from [REDACTED] [REDACTED], Kreilmann Decl. ¶ 20, it also distributed Nutella from California during most the class period. *See id.* (receipts of Nutella from OHL in Ontario, California); *id.* ¶ 7 (Kreilmann testifying, "[OHL was] performing this activity for us in California."). *See also* Mot. at 22 (discussing additional contacts).[9]

***2. Ferrero has not Satisfied its Choice-of-Law Burden***

As the proponent of foreign law, Ferrero had to show material difference from and actual conflict with California law, and a greater interest in the application of foreign law. *See Keilholtz*, 268 F.R.D. at 340; *Pecover*, 2010 U.S. Dist. LEXIS 140632, at *53; *Wolph*, 272 F.R.D. at 484-86; *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 919-20 (2001). Instead, "[a]lthough the defendant[] . . . indicat[ed] that numerous jurisdictions have laws that differ from the relevant California laws, the defendant[] ha[s] not requested that the Court apply the law of another jurisdiction[[10]] or argued that the interests of any particular jurisdiction would be more impaired than those of California if the jurisdiction's law were not applied." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 685 (N.D. Cal. 1986). *Compare* Opp. at 1-11. "[I]f the foreign law proponent fails to identify any actual conflict or to establish the other state's interest in having its own law applied, even if there were a conflict, California law would prevail based on the third prong[.]" *Pecover*

---

[9] Ferrero's reliance on *Sullivan v. Oracle*, 51 Cal. 4th 1191 (2011) for the proposition that California independently prohibits the application of California law to a nationwide class where there are sufficient contacts to satisfy Due Process, *see* Opp. at 9-10, is misplaced. *Sullivan* involved an idiosyncratic question of whether a claim could be maintained under the UCL "*in the circumstances of this case*," a phrase the *Sullivan* court repeated throughout, suggesting its narrow holding, 51 Cal. 4th at 1196 (also noting "no question concerning class certification is before us"). *See also id.* at 1207 n.9 ("We need not address any . . . constitutional issue [of Due Process under *Shutts*]"). The *Sullivan* court did not, as Ferrero suggests, Opp. at 9:16, even address the FAL or CLRA. And the presumption in *Sullivan* is not new; many nationwide California law classes have been certified where *Shutts* was met since the 1999 decisions cited concerning the presumption, *id.* at 1207.

[10] This is probably because "Plaintiffs' causes of action under the UCL and CLRA are similar to the causes of action provided under the New Jersey Consumer Fraud Act." *Johansson v. Cent. Garden & Pet Co.*, 2011 U.S. Dist. LEXIS 56463, at *10 (D.N.J. May 26, 2011).

*Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, 2000 U.S. Dist. LEXIS 13138, at *59 (S.D.N.Y. Sept. 12, 2000).

***3. Alternatively, the Court Should Certify a No-Conflicts Multistate Class***

If the Court determines that California does not have the requisite contacts, the next step is to determine if California law materially conflicts with any other law that could apply, since there is "no constitutional injury to out-of-state plaintiffs in applying [a state's] law unless [the state's] law is in conflict with other states' laws." *Shutts*, 472 U.S. at 816; *see also Ameron Int'l Corp. v. Am. Home Assur. Co.*, 2011 U.S. Dist. LEXIS 61486, at *28 (C.D. Cal. June 6, 2011) ("If there is no material difference, there is no choice of law problem, and the court may apply California law[,]" citing *Wash. Mut.*, 24 Cal. 4th at 920); *In re Computer Memories*, 111 F.R.D. at 686 ("unless such a conflict exists, it would be impossible for the application of forum law to violate the Constitution"); *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 377 (7th Cir. 2005); *In re St. Jude Med., Inc. Silzone Heart Valve Prods. Liab. Litig.*, 425 F.3d 1116, 1120 (8th Cir. 2005); *Thompson v. Bayer Corp.*, 2009 U.S. Dist. LEXIS 15190, at *8 (E.D. Ark. Feb. 12, 2009). "In many situations, there will be several constitutionally permissible choices of law." *In re St. Jude Med., Inc. Silzone Heart Valve Prods. Liab. Litig.*, 2006 U.S. Dist. LEXIS 74797, at *7 (D. Minn. Oct. 13, 2006) (citing *Shutts*, 472 U.S. at 823). "If a complete choice-of-law analysis ha[s] been conducted and indicated that more than one jurisdiction's law applie[s], consideration should . . . be[] given to 'whether variations in state laws present the types of insuperable obstacles which render class action litigation unmanageable.'" *Powers v. Lycoming Engines*, 328 Fed. Appx. 121, 127 (3d Cir. 2009). An action may still proceed on behalf of consumers from different states where "varying state laws [could] be grouped by shared elements and applied as a unit in such a way that the litigation class is manageable." *Id.* (citing, *inter alia*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1998) (finding various states' laws could be applied in this fashion); *In re Sch. Abestos Litig.*, 789 F.2d 996, 1010-11 (3d Cir. 1986) (plaintiffs made "a credible showing" that a class action could be managed in this fashion)); *see also Hanlon*, 150 F.3d at 1022 ("Variations in state law do not necessarily preclude a 23(b)(3) action, but class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members," citing *Shutts*, 472 U.S. at 821-23); *Grayson v. 7-Eleven, Inc.*, 2011 U.S. Dist. LEXIS 62211, at *14-15 (S.D. Cal. June 10, 2011) (suggesting multi-state class action may be certified where counsel "affirmatively

demonstrate[s] the accuracy of the assertion" that "variations regarding [state] claims . . . could be managed in a practical manner"); *Khorrami v. Lexmark Int'l*, 2007 U.S. Dist. LEXIS 98807, at *12 (C.D. Cal. Sept. 13, 2007) ("the United States Supreme Court has instructed that 'multi-state, and even nationwide class actions can be, and are, maintained in many instances'"); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 64 (D. Mass. 1997) ("Insofar as class members assert claims for fraud or misrepresentation under various state laws, the differences among these laws do not appear to be so great as to undermine the predominance of the common questions"); *c.f. In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747-48 (7th Cir. 2001) ("Sometimes class treatment will be inappropriate . . . when recovery depends on law that varies materially from state to state. The class representatives [can] avoid[] this pitfall . . . [by] confin[ing] their theories to. . . aspects of state law that are uniform[.]"). Here, a class comprised of consumers from 32 states and the District of Columbia will not create predominance or manageability problems because there are no true substantive conflicts with California's statutes so the jury can be instructed on common elements. *See* Persinger Decl. ¶ 12. Accordingly, if the Court does not certify a nationwide class, Plaintiffs request it certify instead the following class:[11]

> All persons (excluding officers, directors and employees of Ferrero) who purchased Nutella®, on or after February 1, 2006,[12] for their own or household use rather than resale or distribution, in any of the following states: Alaska, Arizona, California, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Idaho, Illinois, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Tennessee, or Vermont.

If, however, the Court is disinclined to certify *both* a nationwide and the proposed multi-state class, Plaintiffs would respectfully request that the Court do one or more of the following: (a) certify a California-only class, (b) grant Plaintiffs leave to amend their Complaint to add a cause of action under the NJCFA and leave to file a renewed motion for class certification for that claim; or (c) grant Plaintiffs leave to file a motion for class certification concerning their warranty claims.[13]

## IV. CONCLUSION

Plaintiffs respectfully request the Court grant their Motion, and that any denial be without prejudice.

---

[11] This request is proper. *See Charlebois*, 2011 U.S. Dist. LEXIS 71452, at *9.

[12] Because variation in state tolling laws do materially vary, Plaintiffs confine their proposed multi-state class to the statutory period under California law.

[13] *See, e.g.*, *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. 2, 2008) (applying California breach of warranty law in multistate class action"); *Kingsberry v. Chi. Title Ins. Co.*, 258 F.R.D. 668, 669-70 (W.D. Wash. 2009) ("[T]he spectre of having to apply different substantive law does not warrant refusing to certify a class on . . . common law claims." (quotations omitted)).

DATED: October 21, 2011

Respectfully Submitted,

/s/ Jack Fitzgerald
Jack Fitzgerald

**THE WESTON FIRM**
JACK FITZGERALD
GREGORY S. WESTON
MELANIE PERSINGER
COURTLAND CREEKMORE
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone: (619) 696-9066
Facsimile: (619) 564-6665

**Interim Class Counsel**