**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron @consumersadvocates.com*
MAGGIE REALIN (263639)
*maggie@consumersadvocates.com*
B. SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd. Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

*Class Counsel*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE FERRERO LITIGATION | Case No. 11-cv-00205 H KSC<br>Pleading Type: Class Action<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><span style="color:red">**REDACTED VERSION FOR PUBLIC FILING**</span><br><br>Judge: The Honorable Marilyn L. Huff<br>Hearing: July 9, 2012<br>Time: 10:30 a.m.<br>Location: Courtroom 13 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

    I.     HISTORY OF THE LITIGATION ...................................................... 2

         A.    The Parties and Complaint ................................................. 2

         B.    The Copycat *Glover* Action .............................................. 3

         C.    Ferrero's Attempts to Transfer this Action to its Back Yard ............... 3

         D.    Ferrero's Motions to Dismiss are Largely Unsuccessful ...................... 4

         E.    Plaintiffs Engage Ferrero and Third Parties in Substantial Discovery .................. 4

         F.    Plaintiffs Obtain Class Certification ................................... 5

         G.    The Parties' Negotiations Regarding Settlement ..................... 5

    II.    THE TERMS OF THE SETTLEMENT ............................................. 6

         A.    Injunctive Relief ................................................................ 6

         B.    Cash Refunds ..................................................................... 7

         C.    Attorneys' Fees, Expenses and Incentive Awards ............... 8

         D.    The Notice Program ......................................................... 8

         E.    Notice to the California Attorney General ..................... 9

REASONS THE SETTLEMENT WARRANTS FINAL APPROVAL ................. 10

    I.     STANDARD FOR GRANTING FINAL APPROVAL ................. 10

    II.    THE COURT SHOULD GRANT THE SETTLEMENT FINAL APPROVAL ............. 11

i

A.  The Strength of Plaintiffs' Case.......................................................... 11

B.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval ...................................................... 12

C.  The Risk of Maintaining Class Action Status Through Trial Favors Final Approval ...................................................................................... 13

D.  The Amount Offered in Settlement Favors Final Approval ............................. 13

E.  The Stage of the Pleadings and Extent of Discovery Favor Final Approval ....... 15

F.  The View of Experienced Counsel Favors Final Approval ............................... 15

G.  The Class' Reaction to the Proposed Settlement Favors Final Approval ........... 16

H.  The Presence of a Governmental Participant ........................................ 17

I.  Other Factors ......................................................................................... 17

III.  THE BALANCED FACTORS WEIGH IN FAVOR OF FINAL APPROVAL ............. 17

CONCLUSION ............................................................................................ 18

ii

# TABLE OF AUTHORITIES

**CASES**

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................ 16

*Churchill Vill., LLC. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................... 10, 17

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).......................................................................... 13

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268  (9th Cir. 1992) .................................................................... 10

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .................................................................... 13

*Curtis- Bauer v. Morgan Stanley & Co., Inc.*,
   2008 U.S. Dist. LEXIS 85028 (N.D. Cal. Oct. 22, 2008) ............................ 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................... 10

*In re Chicken Antitrust Litig. Am. Poultry*,
   669 F.2d 228  (5th Cir. 1982) ..................................................................... 13

*In re Ferrero Litig.*,
   2011 U.S. Dist. LEXIS 97488 (S.D. Cal. Aug. 29, 2011) ............................. 4

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011) ................................................................... 1

*In re Ferrero Litig.*,
   768 F. Supp. 2d 1074 (S.D. Cal. 2011).......................................................... 4

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011).......................................................... 4

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ............................ 11

*In re Nutella Mktg. & Sales Practices Litig.*,
   804 F. Supp. 2d 1374 (J.P.M.L. 2011)........................................................... 4

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036  (N.D. Cal. 2007) ................................................. 13, 16

iii

*In re Pac. Enter. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................ 10, 16

*In re Portal Software Secs. Litig.*,
    2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007) ...................... 12

*In re Warner Comm's Sec. Litig.*,
    618 F. Supp. 735  (S.D.N.Y. 1985) ...................................................... 15

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
    396 F.3d 922 (8th Cir. 2005) .............................................................. 12

*Knight v. Red Door Salons, Inc.*,
    2009 U.S. Dist. LEXIS 11149  (N.D. Cal. Feb. 2, 2009) ........................ 16

*Linney v. Cellular Ala. P'ship*,
    1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997) ........................ 11

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234  (9th Cir. 1998) ...................................................... 10, 11

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .............................................................. 13

*Milstein v. Huck*,
    600 F.Supp. 254  (E.D.N.Y. 1984) ...................................................... 13

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.*,
    221 F.R.D. 523  (C.D. Cal. 2004) .............................................. 11, 12, 15

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ....................................................... *passim*

*Rodriguez v. West Publ'g Corp.*,
    2007 U.S. Dist. LEXIS 74767 (C.D. Cal. Sept. 10, 2007) ................. 12, 17

*Stevens v. Safeway, Inc.*,
    2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ........................ 16

**STATUTES**

28 U.S.C. § 1715 .................................................................................... 9

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ............................................... 1

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ............................................... 1

iv

*In re Ferrero Litigation*, Case No. 11-CV-00205-H-KSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL

Cal. Civ. Code §§ 1750, *et seq.*..................................................................................................... 1

**FEDERAL RULES**

Fed. R. Civ. P. 23(e)(2)............................................................................................................. 10

**OTHER AUTHORITIES**

5 W. Moore, MOORE'S FEDERAL PRACTICE, § 23.85[2][e] (Matthew Bender 3d ed.) ........................... 15

Plaintiffs Athena Hohenberg and Laura Rude-Barbato, on behalf of themselves and all others similarly situated, respectfully submit this Memorandum in support of their Motion for Final Settlement Approval.

**INTRODUCTION**

Athena Hohenberg commenced this action[1] on February 1, 2011 on behalf of herself and all others similarly situated, against Ferrero U.S.A., Inc., alleging false advertising on behalf of a putative nationwide class. On February 4, 2011, Laura Rude-Barbato filed a related class action against Ferrero.[2] On March 22, 2010, the Court consolidated *Hohenberg* and *Rude-Barbato* in an action styled *In re Ferrero Litigation*, appointing Plaintiffs' counsel, the Law Offices of Ronald A. Marron and the Weston Firm, Interim Class Counsel. (Dkt. No. 11.) In the currently-operative Complaint, Plaintiffs plead claims for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), *id.* §§ 17500, *et seq.*, and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and for breach of express and implied warranties. (First Amended Consolidated Complaint ("FACC"), Dkt. No. 45.) Plaintiffs allege Ferrero deceptively marketed its Nutella® Hazelnut Spread ("Nutella") as a healthy breakfast food, especially for children, despite its high saturated fat and sugar content. *Id.* ¶¶ 2, 7-8.

On November 15, 2011, the Court granted Plaintiffs' motion to certify a class comprised of "all persons who, on or after August 1, 2009, bought one or more Nutella® products in the state of California for their own or household use rather than resale or distribution" (the "Class"). (Order Granting Motion for Class Certification ("Cert. Order"), Dkt. No. 95 at 13.[3]) Less than two weeks later, the parties reached a settlement agreement during a second Settlement Conference before then Magistrate Judge Cathy Ann Bencivengo. (*See* Dkt. No. 97.) On January 19, 2012, the parties filed a motion seeking preliminary approval of the proposed Settlement (Dkt. Nos. 105-107), which the Court granted on January 23, 2012, directing that notice be given to Class Members and setting out a schedule

---

[1] Originally styled *Hohenberg v. Ferrero U.S.A., Inc.*, No. 3:11-cv-00205-H-CAB (S.D. Cal.).

[2] Originally styled *Rude-Barbato v. Ferrero U.S.A., Inc.*, No. 3:11-cv-00249-DMS-BLM (S.D. Cal.)

[3] Published at *In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011).

1

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL

for Plaintiffs to file this instant Motion for Final Settlement Approval, and their concurrently-filed Motion for Approval of Attorneys' Fees, Costs and Incentive Awards (*see* Dkt. No. 108).

## FACTUAL BACKGROUND

## I.    HISTORY OF THE LITIGATION

### A.    The Parties and Complaint

Plaintiffs are Class Representatives, and their counsel is Class Counsel for the certified Class. (Cert. Order at 13.) Plaintiffs repeatedly purchased Nutella in California during the class period. (FACC ¶¶ 10-11, 24, 26, 29-30.) They allege that Nutella contains 70% saturated fat and sugar, the consumption of which have been shown to cause serious health problems like heart disease and type-2 diabetes. *Id.* ¶¶ 8, 24-25, 35-43. To this end, Plaintiffs contend that Nutella is comparable with foods like hot fudge topping and candy bars. *Id.* ¶¶ 28, 100.

Despite these malignant effects, Plaintiffs allege that, during the class period, Nutella's label stated it was "[a]n example of a tasty yet *balanced breakfast*[.]" *Id.* ¶¶ 27, 31. In addition, Plaintiffs alleged that Ferrero consistently advertised Nutella as healthy on Nutella's website (www.NutellaUSA.com), *id.* ¶¶ 78-89, and in nationally-aired television commercials, *id.* ¶¶ 90-96. Finally, Plaintiffs alleged that Ferrero deceptively categorized Nutella as a nut spread for placement in grocery stores despite that the product is more like cake icing. *Id.* ¶ 98.

In sum, Plaintiffs allege that:

Ferrero has engineered a long-standing, pervasive and multi-faceted marketing campaign focusing on the purported "nutritional" value of Nutella® as a breakfast food for children. . . . These claims are misleading because Nutella® contains high levels of saturated fats, sugar, oil, . . . and other objectionable ingredients . . . which harm the heart by raising blood cholesterol and blood sugar levels . . . . [T]he nutritional value claimed, if any, is not derived from Nutella®, but instead is dependent on whatever *other* foods . . . are supposed to be consumed along with Nutella®. . . . But Nutella's® actual nutritional facts are comparable to other foods that are definitively *not* considered a part of a "balanced" breakfast, like candy bars and cake icing. . . . Ferrero also made representations [that] Nutella® is especially beneficial to children. Ferrero did and intended to convey with its statements and images that Nutella® is a wholesome and healthful product, when in fact consuming Nutella® daily, a behavior Ferrero implies through its advertising is healthful and not harmful, could create a substantial health risk, raise cholesterol levels, cause disease, damage the heart, and increase the risk and severity of type-2 diabetes. Ferrero's encouragement of the daily consumption of Nutella® by children is especially insidious because of the devastating effects on children's growth and health from high amounts of saturated fat [and] sugar . . . .

2

*Id.* ¶¶ 99-101.

Finally, Plaintiffs allege they relied on Ferrero's advertising in purchasing Nutella for household use, including for their children, *id.* ¶¶ 104-106, and that they were reasonably diligent consumers who exercised reasonable diligence in purchasing, using and consuming Nutella, *id.* ¶¶ 115-18.

**B.     The Copycat *Glover* Action**

On February 27, 2011, Alabama resident Marnie Glover, represented by counsel based in part in San Diego, filed a "copycat" action in the District of New Jersey. Glover's complaint copied 29 paragraphs verbatim from Hohenberg's complaint (e.g., a quarter of its 121 paragraphs).[4] On April 12, 2011, Glover filed a motion with the Judicial Panel on Multidistrict Litigation to centralize this action with hers, in the District of New Jersey. (MDL No. 2248.) On July 26, 2011, two days before the hearing Glover's transfer motion, a second plaintiff, Jamie Kaczmarek, filed an action in New Jersey, which was copied verbatim from the *Glover* complaint (including identical typographical errors), except for the plaintiff-specific allegations.[5] Kaczmarek was represented by counsel who frequently work together with Glover's counsel. Nevertheless, despite his duty of candor, Glover's counsel began the hearing by advising the Panel that "since we filed our papers, . . . an action . . . has been recently filed in the District of New Jersey" by "[d]ifferent plaintiffs' lawyers," without disclosing that the *Kaczmarek* action was filed at the behest of and with the assistance of Glover's attorneys. (*See* Fitzgerald Decl., Ex. 1 at 3.)

**C.     Ferrero's Attempts to Transfer this Action to its Back Yard**

On March 24, 2011, Ferrero filed a motion to transfer this action to the District of New Jersey (Dkt. No. 19), which Plaintiffs opposed (Dkt. No. 33). Then, on April 4, 2011, Ferrero asked the Court to stay discovery while the transfer motion was pending (Dkt. No. 21), which Plaintiffs opposed (Dkt. No. 22). The Court denied both Ferrero's stay motion (Dkt. No. 24), and, on May 11, 2011, its transfer motion, because Plaintiffs had demonstrated that "all of the *Jones* factors are either neutral or weigh

---

[4] *See Glover v. Ferrero U.S.A., Inc.*, No. 3:11-cv-01086-FLW-DEA (D.N.J.), Dkt. No. 1.

[5] *See Kaczmarek v. Ferrero U.S.A., Inc.*, No.3: 11-cv-04353-FLW-TJB (D.N.J.), Dkt. No. 1.

3

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL

against transfer." (Dkt. No. 37 at 9.[6]) Meanwhile, Glover filed her MDL motion on April 12 despite that there were just two cases (this one and her copy), and that Ferrero's transfer motion, seeking identical relief, was still pending. Plaintiffs opposed centralization (alternatively requesting that the actions be centralized before this Court), and the JPML found in their favor. (Dkt. No. 63.[7])

### D.   Ferrero's Motions to Dismiss are Largely Unsuccessful

Ferrero first moved to dismiss the action on April 18, 2011. (Dkt. No. 30.) Plaintiffs opposed on May 31, 2011 (Dkt. No. 39) and Ferrero filed its reply on June 13 (Dkt. No. 42). On June 30, 2011, the Court issued its Order, finding one challenged advertising claim preempted, and holding Plaintiffs had insufficiently pled reliance on Nutella's website, but otherwise upholding Plaintiffs' claims under the FAL, CLRA, and all three prongs of the UCL, as well as for breach of express and implied warranties. (Dkt. No. 43.[8]) The Court gave Plaintiffs leave to amend, which they did by filing on July 7, 2011 the FACC.

Ferrero filed a second motion to dismiss on July 18, 2011. (Dkt. No. 48.) Plaintiffs opposed on August 15, 2011 (Dkt. No. 61), and Ferrero filed its reply on August 22. (Dkt. No. 67.) Addressing the relatively novel issue of the contours of *Tobacco II's* holding concerning the presumption of reliance that arises where there is a long-term advertising campaign, the Court denied Ferrero's motion. (Dkt. No. 69.[9]) Accordingly, on September 12, 2011, Ferrero filed its Answer. (Dkt. No. 70.)

### E.   Plaintiffs Engage Ferrero and Third Parties in Substantial Discovery

Discovery began in this case with an April 29, 2011 Rule 26(f) conference. (Dkt. No. 38 at 1.) Over the next few months, Plaintiffs served two sets of document requests (on March 23 and October 12) and two sets of interrogatories (on March 23 and June 8). Ferrero provided responses on April 8 and July 15, and Class Counsel reviewed the many documents it produced. (Fitzgerald Decl. ¶ 2-3.)

Ferrero also served Plaintiffs with interrogatories on July 25, to which Plaintiffs responded on August 29. Ferrero served Plaintiffs document requests on August 31 and Plaintiffs responded on October 3, including by producing nearly 500 pages of documents. *Id.* ¶ 4. Plaintiffs also propounded subpoenas on

[6] Published at *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1082 (S.D. Cal. 2011).

[7] Published at *In re Nutella Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1374 (J.P.M.L. 2011).

[8] Published at *In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011).

[9] Published at *In re Ferrero Litig.*, 2011 U.S. Dist. LEXIS 97488 (S.D. Cal. Aug. 29, 2011).

4

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL

nine third-parties from who they obtained documents, including Ferrero vendors, distributors, advertising agencies, and consultants. Ferrero subpoenaed Costco for records of Plaintiffs' purchases. *Id.* ¶ 5. As a result, Class Counsel reviewed thousands of documents. *Id.*

On April 14, 2011, Class Counsel traveled to New Jersey to depose Ferrero's CEO, Bernard Kreilmann. Although the deposition's focus was on issues relating to Ferrero's motion to transfer, the deposition provided valuable merits discovery as well (for example, Nutella sales, its manufacturing and distributing process, and the identify of knowledgeable witnesses). *Id.* ¶ 6. On July 26, 2011, Class Counsel traveled to Portland to depose Ferrero's Nutella spokesperson, purported childhood nutrition expert Connie Evers, and on October 4, 2011, Class Counsel travelled back to New Jersey to depose Isabelle Lambotte, a former Nutella nutritional consultant for Ferrero. *Id.* Ferrero took Plaintiffs' depositions on September 29 and 30, 2011. *Id.* ¶ 7.

## F.    Plaintiffs Obtain Class Certification

On August 1, 2011, Plaintiffs moved for Class Certification (Dkt. No. 51), which Ferrero opposed (Dkt. No. 76). Plaintiffs filed their reply (Dkt. No. 83), and Ferrero moved to strike it (Dkt. No. 89), which Plaintiffs opposed (Dkt. No. 90). The Court held a hearing on November 7, 2011, after which, with the Court's leave, both parties submitted supplemental briefing. (Dkt. Nos. 92, 94.) On November 15, 2011, the Court granted Plaintiffs' motion, certified the Class, appointed Plaintiffs Class Representatives, and appointed Class Counsel. (Dkt. No. 95.)

## G.    The Parties' Negotiations Regarding Settlement

The parties began informal settlement discussions in March 2011, and later that summer attempted to schedule a joint mediation, though the lack of cooperation with counsel for Glover resulted in delays. (*See* Fitzgerald Decl. at ¶¶ 9-12.)

After Plaintiffs filed their Class Certification Motion on August 1 (Dkt. No. 51) and the Court denied Ferrero's Motion to Dismiss on August 29 (Dkt. No. 69), the Court ordered an Early Neutral Evaluation conference on October 19, 2011, before Judge Bencivengo (Dkt. No. 71). Two weeks before the ENE, on October 4, 2012, Plaintiffs sent Ferrero a 6-page Memorandum of Understanding ("MOU") constituting an offer of settlement. (Fitzgerald Decl. at ¶ 13.) The MOU suggested injunctive relief comprised of advertising modifications and a common fund to reimburse Class Members. It did not

5

1   discuss attorneys' fees with any specificity, only generally noting that settlement was not conditioned on

2   Court approval of a fee request. *Id.* On October 12, Ferrero said it would discuss the offer further during

3   the ENE the following week. *Id.*

4           As with the MOU, the ENE discussions centered around the substantive relief for the class, and

5   attorneys' fees were not discussed. *Id.* at ¶ 13. It quickly became apparent, however, that the parties were,

6   at that point—when Plaintiffs' class certification motion was still pending—far apart in how they valued

7   the case and whether (and how) Ferrero should modify its behavior. *Id.* The parties nevertheless agreed,

8   following the ENE, to attend a private mediation together with the *Glover* plaintiffs. *Id.* This occurred on

9   November 2, 2011, when the parties attended a private mediation session before the Honorable Nicholas

10  H. Politan (Ret.) in West Palm Beach, Florida. Again, there was progress, but no resolution. *Id.* ¶ 14.

11          During November, the parties continued to negotiate through periodic email and telephone

12  communications, finally agreeing on approximately November 14, 2011 on most the injunctive relief

13  provisions embodied in the Settlement Agreement. *Id.* at ¶ 15. However, there were still disagreements

14  over some injunctive relief suggested by both parties, and no agreement on the monetary terms of the

15  settlement. *Id.*

16          On November 28, the parties attended a second Settlement Conference before Judge Bencivengo.

17  After several hours of negotiation, and with Judge Bencivengo's ample assistance, the parties finally

18  agreed on all the terms reflected in the Settlement Agreement.[10] *Id.* ¶ 16. Thus the Settlement was the

19  result of vigorous and protracted arms-length negotiations, including dozens of written and telephone

20  communications, two settlement conferences with Judge Bencivengo, and a separate private mediation

21  session before a well-respected former federal judge.

22  **II.    THE TERMS OF THE SETTLEMENT**

23          **A.  Injunctive Relief**

24          The Settlement provides the Class and public with substantial injunctive relief by ensuring

25  Nutella's nutritional content is prominently and fully disclosed on the *front* of its label, and by requiring

26

27  ───────────────
    [10] Attached as Exhibit 1 to the Declaration of Gregory S. Weston dated January 19, 2012 (Dkt. No.
28  107).

---

6

Ferrero to cease using television, print, web and label advertisements that misleadingly suggest Nutella is healthy, especially for children.

Product Label: For at least two years or until inconsistent with future government regulations, Nutella must participate in the Grocery Manufacturers Association's "Facts Up Front" (also called "Nutrition Keys") front-of-packaging labeling initiative, requiring its front label to disclose in a prominent standardized graphic its per-serving calorie, saturated fat, sodium and sugar content. (Settlement Agreement, ¶ 40A, Ex. E (mechanical)). Ferrero will also remove from Nutella's label the phrase, "An example of a tasty yet balanced breakfast." Id. ¶ 40B.

Television Advertisements: By July 2012, Ferrero must cease airing the television advertisements Plaintiffs challenged (referred to as "Mom," "Pass" and "Silence" (see FACC ¶¶ 90-96 (transcriptions))). Ferrero will replace those commercials with new ones that have been reviewed and vetted on multiple occasions by Class Counsel. (Settlement Agreement ¶ 41.)[11]

Nutella Website: Ferrero has modified the Nutella website to remove all content referencing or attributable to Connie Evers, and language on the "Nutella and Nutrition," "About Nutella," and "Breakfast Builder" subpages have been modified consistent with Exhibit H to the Settlement Agreement, to address the "balanced" statements at issue in this case. Id. ¶ 42.

### B.    Cash Refunds

Ferrero has established a $550,000 common fund from which it will pay class notice, claims expenses, and restitution to class members, of $4.00 per Nutella jar, up to a maximum of $20 per class member, without proof of purchase, subject to pro rata reduction if the claims exceed the fund. Id. ¶¶ 21E, 43, 47-48. Because the class notice and claims administration are being coordinated between this and the Glover 49-state settlement, with costs divided proportionately according to each class's share of sales, the California Class's notice and administration costs are modest, about $70,250. (See Fitzgerald Decl. ¶ 52.)

---

[11] While Class Counsel agreed to review and provide input into the revised advertising as a term of settlement, the Settlement Agreement does not release future claims.

**C.     Attorneys' Fees, Expenses and Incentive Awards**

The Settlement provides that "Class Counsel will apply for a Fee Award from the Gross Settlement Fund . . . [and] Defendant shall neither object to nor challenge" the application. (Settlement Agreement ¶ 51.) In addition, Ferrero has agreed that, subject to Court approval, "Defendant or its insurance carrier" will pay Class Counsel, "in connection with the Injunctive Relief described above,"  an "Injunctive Fee Award" up to $900,000, which is "[i]n addition to and separate from" the monetary relief. *Id.* ¶ 50. Finally, subject to the Court's approval, in recognition of Plaintiffs' time and effort expended on behalf of the Class, the Settlement Agreement provides that Plaintiffs may seek incentive awards to be paid from the common fund. *Id.* ¶ 56.

**D.     The Notice Program**

The Court approved the parties' proposed Notice Plan as meeting the requirements of applicable law and Due Process. (Dkt. No. 108 at 4 ¶ 2.) The Notice Plan has now been fully implemented in accordance with the Court's Preliminary Approval Order. (*See* Young Aff. ¶¶ 3-4.) Because Defendants do not sell Nutella directly to consumers, they did not did have the mailing addresses for Class Members; accordingly, notice was effected through publication in targeted periodicals, online, and via a dedicated website. The Class Notice was designed to provide potential Class Members with information regarding the litigation and Settlement, and to inform them of their rights. The notice contains information about the nature of the lawsuit, Class Members' legal rights, the Settlement's relief and benefits, the Settlement's release, how to file a claim, and how to opt-out, object and exercise other rights under the Settlement. (*See* Settlement Agreement, Ex. C (the "Class Notice"), Dkt. No. 107-1 at 58.) The Class Notice also directed Class Members to a website dedicated to the Settlement, www.NutellaClassActionSettlement.com, which the Class Members could use to obtain a copy of the detailed Class Notice, Claim Form and other case documents such as the Complaint, the full Settlement Agreement, the Order Granting Class Certification, and the Court's Preliminary Approval Order. (Young Aff. ¶ 4 & Ex. 4.) In addition, Class Members could submit their claim directly via the settlement website. *Id.*

The Class Notice appeared in numerous print sources, as follows:

| DATE | PUBLICATION | PAGE | CIRCULATION |
|---|---|---|---|
| April 16, 2012 issue | *People Magazine* | 63 | 3,450,000 |
| May 2012 issue | *Woman's Day* | 138 | 3,250,000 |
| May 2012 issue | *Parents* | 172 | 2,200,000 |
| May 2012 issue | *Ser Padre* | 51 | 800,000 |

*Id.* ¶ 3, Ex. 2. Class notice was also published online as follows:

| DATE | PUBLICATION | IMPRESSIONS |
|---|---|---|
| April 6 - 20, 2012 | 24/7 Real Media Network, Parenting Channel | 5,000,000 |
| April 6 - 20, 2012 | Facebook | 10,000,000 |

*Id.* ¶ 2.

Aside from formal notice, the Settlement Agreement has received considerable media attention in recent weeks, including being featured on Good Morning America (which interviewed Ms. Rude-Barbato), ABC News, CBS News, npr.org, and many other popular outlets. (Marron Decl. ¶¶ 6-7; Fitzgerald Decl. ¶¶ 18-19.) A Google News search for "Nutella" on May 22, 2012, showed 6,310 stories about the Settlement in the past month, and a standard Google search for "Nutella AND Settlement" generated more than 2.6 million hits. (Fitzgerald Decl. ¶ 19.) Such exposure undoubtedly increased the number of Class Members notified of the settlement.

### E.    Notice to the California Attorney General

In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, Ferrero provided notice of the Settlement to the Attorney General of the California on January 25, 2012. *Id.* ¶ 20. The notice packet sent to the Attorney General included a complete copies of the Master Consolidated Complaint, Preliminary Approval Motion and supporting documents, and the Order Granting Preliminary Approval, notice of the July 9 Fairness Hearing, and a definition of the Settlement Class. *Id.* ¶ 21 & Ex. 2. To date, the California Attorney General has not requested

9

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL

further information or indicated an intent to object. *Id.* ¶ 23. The 90-day window between Attorney General Notice and when a final approval order may be entered has already expired.

## REASONS THE SETTLEMENT WARRANTS FINAL APPROVAL

## I.   STANDARD FOR GRANTING FINAL APPROVAL

The Court may approve a class action settlement upon "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In assessing the fairness, adequacy, and reasonableness of a settlement, courts balance:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

There is a strong judicial policy in favor of the pretrial settlement of class actions. *See Churchill Vill.*, 361 F.3d at 576; *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ("[S]trong judicial policy [ ] favors settlements, particularly where complex class action litigation is concerned." (quoting *Officers for Justice*, 688 F.2d at 626)). Thus, while approval of the settlement is committed to the sound discretion of the court, *Class Plaintiffs*, 955 F.2d at 1276, "the court must also be mindful of the Ninth Circuit's policy favoring settlement . . . ." *Curtis- Bauer v. Morgan Stanley & Co., Inc.*, 2008 U.S. Dist. LEXIS 85028, at *12 (N.D. Cal. Oct. 22, 2008) (citation omitted).

A district court's review of a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

10

between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. A "presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) settlement was reached through arm's length negotiations; [and] (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *11 (C.D. Cal. June 10, 2005); *Linney v. Cellular Ala. P'ship*, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998). (*See also* Order Granting Preliminary Approval, Dkt. No. 108 at 4 ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)))).

## II. THE COURT SHOULD GRANT THE SETTLEMENT FINAL APPROVAL

The Settlement is fair, reasonable and adequate and thus satisfies the standard for final approval. After considerable discovery and pre-trial motions, the parties reached the settlement through protracted and vigorous arms-length negotiations. Counsel for both parties are experienced in litigation of consumer class actions and have zealously and competently litigated the issues in this case. The Settlement was not motivated by any fraud or collusion. Finally, all relevant factors favor settlement of this action and demonstrate that the proposed settlement is fair, reasonable, and adequate.

### A. The Strength of Plaintiffs' Case

Although Plaintiffs believe their claims are meritorious, they acknowledge they faced substantial obstacles to proving Ferrero's liability at trial. For example, the parties dispute whether Ferrero's claims were deceptive, an issue central to Plaintiffs' case. Resolution of this question would be the subject of competing expert testimony, requiring analysis by medical and consumer marketing experts, for example through the use of surveys. Thus, Plaintiffs' ability to prove liability at trial is unclear. The Court itself highlighted this uncertainty at the class certification hearing:

- "[S]o here's someone who gets Nutella. The ingredients are right on the jar. It's not like tobacco, where it's potentially addictive . . . ." (Tr. of Nov. 7, 2011 Hrg., Dkt. No. 93 at 3.)

- "[If] she continued to use [Nutella], . . . is restitution appropriate or not[?]" (*Id.* at 23.)

- "You said puffery, puffery, advertising. And I will say it's a close call on that. It's not one that's just definitely all in one -- on one side." (*Id.* at 27.)

11

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL

Accordingly, this factor weights in favor of final approval. *See In re Portal Software Secs. Litig.*, 2007 U.S. Dist. LEXIS 88886, at *7-8 (N.D. Cal. Nov. 26, 2007) ("[T]he strength of plaintiffs' case, somewhat favors settlement because plaintiffs' remaining claims are tenuous. Plaintiffs assert that establishing liability and damages at trial would be difficult because of the uncertainties associated with proving its claims, which are 'exacerbated by the unpredictability of a lengthy and complex jury trial.'" (record citation omitted)).

**B.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval**

Plaintiffs' claims involve numerous complex legal issues, and the costs and risks associated with litigating this action would require extensive resources and Court time. "[A]voiding a trial and inevitable appeals in this complex . . . suit strongly weigh in support of approval of the Settlement, rather than prolonged and uncertain litigation." *Rodriguez v. West Publ'g Corp.*, 2007 U.S. Dist. LEXIS 74767, at *27-28 (C.D. Cal. Sept. 10, 2007). Indeed, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, while Defendant's challenges to the pleadings and class certification were largely unsuccessful, a number of potential obstacles remained before any relief could be obtained absent settlement: a summary judgment motion in Defendants' favor, a decision by the jury or the Court for Defendants on liability and/or damages, and post-judgment appeals. Moreover, as discussed above, a complex case such as this would require costly expert testimony from both sides. Absent settlement, litigation would likely continue for years before Class Members would see any recovery, which would not be guaranteed.

By contrast, the Settlement provides a real and immediate benefit to Class Members who purchased Nutella in packaging bearing allegedly false and deceptive claims, as well as the general public, without the challenges and risks of trial. Courts have acknowledged that settlements of class actions are favored when they provide an immediate benefit to the class without the risk and expense involved in continued litigation. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). Accordingly, this factor weighs in favor of final approval. *See Officers for Justice,*

12

688 F.2d at 626; *Milstein v. Huck*, 600 F.Supp. 254, 267 (E.D.N.Y. 1984) ("The expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of this settlement").

### C.    The Risk of Maintaining Class Action Status Through Trial Favors Final Approval

While Plaintiffs obtained a certified class, there is no guarantee certification would survive through trial. This risk was distinctly highlighted by the Ninth Circuit's recent decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), which has served as the impetus for a number of decertification or related motions. By contrast, in settling the action, Ferrero effectively accedes to certification and "there is much less risk of anyone who may have actually been injured going away empty-handed." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal. 2007). Accordingly, this factor weighs in favor of final approval. *See id.*

### D.    The Amount Offered in Settlement Favors Final Approval

"[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Rather, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "The fact that a proposed settlement may only amount to a fraction of the proposed recovery does not, in and of itself, mean the settlement is grossly inadequate and should be disapproved." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974). Instead, to assess the reasonableness of a proposed settlement seeking monetary relief, the "inquiry into fairness should contrast settlement rewards with likely rewards if case goes to trial" and consider that "costs of further litigation and risks of proof difficulties militate in favor of settlement approval." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 240 (5th Cir. 1982).

Here, the $550,000 monetary amount offered in settlement is a component of the settlement, and not even the main one, which is the extensive advertising modifications. Nevertheless, $550,000 is a substantial figure under the circumstances. That amount will be used *only* for California Nutella purchasers. For California, affected sales through the end of 2010 (the period Ferrero provided sales

13

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL

figures for) amount to $█████.[12] The fund thus covers approximately █%. If one considers that class members might only be entitled to some *portion* of their purchases as restitution if Plaintiffs prevailed at trial, however (e.g., if the Court determines Nutella had some value notwithstanding deceptive labeling such that Ferrero would be entitled to some equitable offset), that number would increase. Ferrero might also have argued that damages should be limited to its profits rather than its revenue. Given the typical thin margins on grocery products, this would have greatly reduced the amount of recovery at trial.

That the fund is substantial for this class is also highlighted by its disproportionately large size compared to the 49-State Fund in the *Glover* action of $2,500,000: although California had only 12.5% of the affected sales, its $550,000 fund is *18%* of the overall settlement fund for all class members nationwide ($3,050,000). Put another way, the California Fund 44% larger than its proportion of sales.

The retail price of Nutella during the class period was quite low, typically around $3.49 per 13-ounce jar. Class Members, however, may obtain up to $20 in reimbursements based on a $4 valuation (to account for retail price fluctuations and inflation), and without proof of purchase. Moreover, if the average Class Member purchased one jar of Nutella every month during the 30-month class period, their entitlement to a refund for five jars represents a recovery of approximately 17% of their maximum possible recovery at trial, if the Court awarded full refunds for all Nutella purchases during the period, which is probably a remote possibility. Thus, even though class members will recover for a limited

---

[12] Because August is the second month of the third quarter, we calculated this by adding 2010 sales ($█████) to 2/3 of Q3 2009 sales ($█████) and Q4 2009 sales ($█████). We then calculated California's 12.5% share. (*See* Dkt. No. 95 at 10 ("sales of Nutella® in California are approximately 12.5% of national sales") (record citation omitted)).

Plaintiffs previously filed Nutella sales information under seal. (*See* Dkt. No. 22-1, Ex. D; Dkt. No. 95 at 4, 10 (referring to evidence of Nutella sales).) Plaintiffs requested that Ferrero de-designate the sales information as "confidential" under the Protective Order for purposes of this Motion so that the public and Class Members might be able to fairly and fully evaluate the strength of the Settlement, but Ferrero declined. Ferrero has agreed as a compromise, however, that if any member of the public or Class Member, other than a competitor of Ferrero, wishes to review the unredacted version of this memorandum or the concurrently-filed memorandum in support of Plaintiffs' application for attorney fees, costs and incentive awards, he or she may do so by contacting Class Counsel and signing an agreement to abide by the terms of the Protective Order entered in this action (Dkt. No. 32).

number of purchases, their recovery from the settlement fund might well be significantly more than they would receive if they prevailed at trial.

At bottom, the amount of compensation each class member will receive represents a compromise of disputed claims reached following extensive arms-length negotiations, but it is not insubstantial, especially considering the risks, resources needed, and delays inherent in continuing to litigate the action. Accordingly, this factor weighs in favor of final approval.

### E.   The Stage of the Pleadings and Extent of Discovery Favor Final Approval

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (quoting 5 W. Moore, MOORE'S FEDERAL PRACTICE, § 23.85[2][e] (Matthew Bender 3d ed.))). The greater the amount of discovery taken and the more advanced the stage of the pleadings, the more likely it is the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, at *12 (N.D. Cal. Mar. 28, 2007) (quoting *In re Warner Comm's Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985)).

In this case, the first settlement offer was made in October 2011, more than seven months after the litigation had begun. At the time settlement was reached, Plaintiffs had served two sets of requests for the production of documents, two sets of interrogatories, nine third-party subpoenas, and conducted three depositions. Class Counsel reviewed thousands of documents. Ferrero served document requests and interrogatories, too, and Plaintiffs responded. Ferrero also served a subpoena and deposed both Plaintiffs. Most importantly, by the time the parties reached settlement, the Class had been certified. And the parties had obtained the input of Judge Bencivengo on the relative strengths and weaknesses of their cases at the October ENE and again at the November Settlement Conference. "As a result, the true value of the class' claims was well known." *Young*, 2007 U.S. Dist. LEXIS 27269, at *12. Accordingly, this factor weighs in favor of final approval.

### F.   The View of Experienced Counsel Favors Final Approval

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*,

15

2009 U.S. Dist. LEXIS 11149, at *11 (N.D. Cal. Feb. 2, 2009) (citing *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Indeed, "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Stevens v. Safeway, Inc.,* 2008 U.S. Dist. LEXIS 17119, at *25-26 (C.D. Cal. Feb. 25, 2008) (citing *In re Pac. Enters. Secs. Litig.*, 47 F.3d at 378). Thus, "the Court should not without good cause substitute its judgment for [counsel's]." *Boyd*, 485 F. Supp. at 622.

Plaintiffs' counsel believes that the injunctive relief afforded by the Settlement provides Class members and the public with a substantial and important benefit by ensuring that Nutella's nutritional content is fully disclosed and that advertisements cease to suggest a misleading connection between Nutella and children's health. Additionally, the Settlement provides for refunds to Class members to be withdrawn from a $550,000 fund. Plaintiff's counsel believes the combination of monetary and injunctive relief provides substantial value to Class members. (Marron Decl. ¶¶ 2-5; Fitzgerald Decl. ¶¶ 24-27.) There "is nothing to counter the presumption that counsel's recommendation is reasonable." *Knight*, 2009 U.S. Dist. LEXIS 11149, at *11.

Moreover, "[i]n addition to being familiar with the present dispute, Plaintiffs' counsel has considerable expertise in . . . consumer and class action litigation," *id*. The Court has, on two separate occasions, found that Class Counsel is "well qualified to represent the interests of the purported class and to manage this litigation." (Dkt. No. 11 at 4; *see also* Dkt. No. 95 at 7.). Accordingly, this factor weighs in favor of final approval. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1043.

### G.  The Class' Reaction to the Proposed Settlement Favors Final Approval

The Class has reacted entirely positively to the Settlement. The large circulations of the various printed publications in which the notice was published, combined with the online publication, resulted in Notice being disseminated to 24.7 million people nationwide and, proportionately, approximately 3 million in California. (Young Aff. ¶ 3.) Millions more received notice through the thousands of online and television news stories about the Settlement. Unsurprisingly, the claims volume is high, with 55,504 individual claims for 259,362 jars of Nutella as of May 23, 2012, with still another two weeks left in the claims period (ending July 5, 2012). *Id.* ¶ 10.

16

Of the potential class members, there has been just a single opt-out of the California class (**0.00002%** of the 55,504 claimants and a much smaller percentage of total class members[13]). *Id.* ¶ 9 & Ex. 5. And, as the docket reflects, none have so far objected. This weighs in favor of final approval. *See*, *e.g.*, *Rodriguez*, 563 F.3d at 967 (objection rate of 0.014 (e.g. 1.4%) supported approval of the settlement); *Churchill Vill.*, 361 F.3d at 577 (affirming approval of a class action settlement where 90,000 class members received notice, and 45 objections were received (0.05% rate)).

### H.    The Presence of a Governmental Participant

No government entity participated in the Settlement. As noted above, however, California's Attorney General was notified of the terms of the Settlement and has not indicated an intention to object. This provides assurance that consumer protection authorities believe the California Settlement is fair. Consequently, this factor favors final approval.

### I.    Other Factors

Some courts have considered the process by which settlement was reached and the involvement of the named plaintiffs in the process in considering whether a proposed settlement is fair and reasonable. *See Young*, 2007 U.S. Dist. LEXIS 27269, at *13. Here, settlement discussions were not only protracted over several months, intensive, and arms' length, they were also overseen by Judge Bencivengo during two separate settlement conferences. Both Plaintiffs attended both conferences where they were active participants, including in the final decision to accept the terms embodied in the Settlement Agreement. (Marron Decl. ¶ 8; Fitzgerald Decl. ¶¶ 14, 17.) Both factors weigh in favor of final approval.

## III.    THE BALANCED FACTORS WEIGH IN FAVOR OF FINAL APPROVAL

"Ultimately, the district court's determination [regarding the fairness and adequacy of a proposed settlement] is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must not be overlooked that

---

[13] 0.00003% to be exact. *See* Dkt. No. 95 at 4 (noting "10.1% of American households purchased Nutella® during . . . 2010"). The U.S. Population in 2010 was 308,745,538, and California's population 37,253,956, or 12%. Thus, California Class Members should have number 12% of 30,874,554 (which is 10.1% of the U.S. population), or 3,704,946.

voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation." *Id.* Here, all relevant factors weigh in favor of final approval of the Settlement, especially when considered *in toto*.

## CONCLUSION

Plaintiffs' Motion for Final Approval should, respectfully, be granted.

DATED: May 25, 2012

Respectfully Submitted,

/s/ Jack Fitzgerald
Jack Fitzgerald

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
MELANIE PERSINGER
COURTLAND CREEKMORE
1405 Morena Blvd., Suite 201
San Diego, CA 92109
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
MAGGIE REALIN
B. SKYE RESENDES
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Class Counsel*