**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MAGGIE K. REALIN (263639)
*maggie@consumersadvocates.com*
B. SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Class Counsel*

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Boulevard, Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| IN RE FERRERO LITIGATION | CASE NO. 11-cv-00205 H KSC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS**<br><br><span style="color:red">**REDACTED VERSION FOR PUBLIC FILING**</span><br><br>Judge:       Hon. Marilyn L. Huff<br>Location:    Courtroom 13<br>Date:        July 9, 2012<br>Time:        10:30 a.m. |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...........................................................................................iii

INTRODUCTION and Summary of Argument....................................................................1

ARGUMENT ...........................................................................................................................2

I.      BASES FOR AN AWARD OF FEES AND LITIGATION EXPENSES...................2

      A.     The Contractual Basis ..............................................................................3

      B.     California Law Provides Fees for Successfully Prosecuting Consumer Fraud
           Claims ........................................................................................................5

           1.     Plaintiffs are "Prevailing Plaintiffs" Entitled Fees & Costs Under
                the CLRA .....................................................................................5

           2.     Plaintiffs are "Successful Parties" Entitled to Fees & Costs Under
                California's Private Attorney General Statute ........................6

      C.     The Equitable Basis....................................................................................7

II.     THE COURT SHOULD APPLY THE LODESTAR METHOD TO DETERMINE
      CLASS COUNSEL'S REASONABLE FEE ...........................................................7

III.    CLASS COUNSEL'S LODESTAR IS FAIR AND REASONABLE...........................8

      A.     Class Counsel's Rates Are Reasonable....................................................8

      B.     Class Counsel's Hours Expended Are Reasonable ...........................11

IV.    CLASS COUNSEL'S REQUESTED FEE AWARD IS REASONABLE.................12

      A.     The Results Achieved for the Class .......................................................13

           1.     The Injunctive Relief Provides the Class and Public a Significant
                Benefit.........................................................................................13

           2.     The California Restitution Fund Affords Injured Californians Far
                More Relief Than the 49-State Fund Affords Injured Consumers
                Outside California ....................................................................14

i

B.    The Novelty and Difficulty of Issues and Skill of Counsel .............................. 15

C.    Preclusion of Other Employment and Risk of Non-Payment ........................ 16

D.    Additional Factors ................................................................................................ 16

       1.    Class Counsel's Uncompensated Contribution to the 49-State
             Settlement ................................................................................................ 16

       2.    The California Class's Far Higher Claims Rate .................................... 18

V.    AWARDING THE REMAINDER OF CLASS COUNSEL'S REASONABLE FEE
      FROM THE SETTLEMENT FUND IS PERMISSIBLE AND APPROPRIATE .................... 18

VI.   APPLYING THE COMMON FUND METHOD BASED ON THE SETTLEMENT'S
      MONETARY COMPONENTS WOULD ACHIEVE AN UNREASONABLE RESULT ....... 19

VII.  THE REQUESTED COSTS ARE FAIR AND REASONABLE ................................. 21

VIII. THE REQUESTED INCENTIVE AWARDS ARE FAIR AND REASONABLE.................. 21

A.    The Notoriety & Personal Difficulties Encountered by the Class Representative........... 22

B.    The Amount of Time and Effort Expended by the Class Representative ....................... 23

C.    Personal Benefit Enjoyed as a Result of the Litigation.................................... 23

D.    Remaining Factors ............................................................................................... 24

CONCLUSION ..................................................................................................... 24

APPENDIX 1: CLASS COUNSEL'S LODESTAR ......................................................... A1

APPENDIX 2: CLASS COUNSEL'S EXPENSES........................................................... A2

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*B-K Lighting, Inc. v. Vision3 Lighting,*
4  2009 U.S. Dist. LEXIS 111968 (C.D. Cal. Nov. 16, 2009) ...............................10

5
*Blum v. Stenson,*
6  465 U.S. 886 (1984) ..............................................................................8, 9

7
*Broughton v. Cigna Healthplans,*
   21 Cal. 4th 1066 (1999) ...............................................................................5
8

9
*Camancho v. Bridgeport Fin., Inc.,*
   523 F.3d 973 (9th Cir. 2008).........................................................................8

10
*Champion Produce, Inc. v. Ruby Robinson Co.,*
11  342 F.3d 1016 (9th Cir. 2003).......................................................................2

12
*City of Riverside v. Rivera,*
   477 U.S. 561 (1986) ....................................................................................20
13

14
*Collado v. Toyota Motor Sales, U.S.A., Inc.,*
   2011 U.S. Dist. LEXIS 133572 (C.D. Cal. Oct. 17, 2011) .............................9

15
*Cunningham v. County of Los Angeles,*
16  879 F. 2d 481 (9th Cir. 1988).......................................................................12

17
*Engalla v. Permanente Medical Group, Inc.,*
18  15 Cal. 4th 951 (1971) .................................................................................3

19
*Farmers Ins. Exch. v. Sayas,*
   250 F.3d 1234 (9th Cir. 2001)....................................................................2, 3
20

21
*Faught v. Am. Home Shield Corp.,*
   668 F.3d 1233 (11th Cir. 2011)................................................................18, 19

22
*Flannery v. Cal. Highway Patrol,*
23  61 Cal. App. 4th 629 (1998).........................................................................6

24
*Frankel v. Bd. of Dental Examiners,*
   46 Cal. App. 4th 534 (1996)..........................................................................3
25

26
*Garner v. State Farm Mut. Auto Ins. Co.,*
   2010 U.S. Dist. LEXIS 49477  (N.D. Cal. Apr. 22, 2010) .............................23

27
*Graciano v. Robinson Ford Sales, Inc.,*
28  144 Cal. App. 4th 140 (2006).........................................................5, 20, 21

iii

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

*Grant v. Martinez*,
973 F.2d 96 (2d Cir. 1992) ........................................................................................ 11

*Hanlon v. Chrysler Group, Inc.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................ 4, 12, 19

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ........................................................................................ 12

*Hayward v. Ventura Volvo*,
108 Cal. App. 4th 509 (2004) .................................................................................... 21

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................ 3, 7

*Heston v. Taser Int'l., Inc.*,
431 Fed. Appx. 586 (9th Cir. 2011) ........................................................................... 6

*In re Apple Computer, Inc. Derivative Litig.*,
2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ........................................... 3

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ........................................................................... 6, 7, 12

*In re Commercial Consortium of Cal.*,
135 B.R. 120 (C.D. Cal. 1991) ................................................................................. 10

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ......................................................................... 12

*In re Petroleum Prods. Antitrust Litig.*,
109 F.3d 602 (9th Cir. 1997) ...................................................................................... 8

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) ................................................................................ 4

*Ingram v. Oroudjian*,
647 F.3d 925 (9th Cir. 2011) ...................................................................................... 9

*Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*,
2011 U.S. Dist. LEXIS 21824 (S.D. Cal. Mar. 3, 2011) ............................................. 9

*Keating v. Super. Ct.*,
31 Cal. 3d 584 (1982) ................................................................................................ 7

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ........................................................................................ 7, 8

iv

*Kim v. Euromotors West/The Auto Gallery*,
  149 Cal. App. 4th 170 (2007)...........................................................................................5

*Kona Enters. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000)............................................................................................2

*Lyons v. Chinese Hosp. Ass'n*,
  136 Cal. App. 4th 1331 (2006).........................................................................................6

*Margolin v. Regional Planning Com.*,
  134 Cal. App. 3d 999 (1982)..........................................................................................12

*Mathis v. Spears*,
  857 F.2d 749 (9th Cir. 1988)..........................................................................................10

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) .....................................................................................................5

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .......................................................................................................10

*Neary v. Regents of Univ. of Cal.*,
  3 Cal. 4th 273 (1992) .......................................................................................................3

*Nicholson v. Barab*,
  233 Cal. App. 3d 1671 (1991)..........................................................................................3

*Parkinson v. Hyundai Motor Am.*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010)...........................................................................6

*Perdue v. Kenny A.*,
  130 S. Ct. 1662 (2010) .....................................................................................................7

*Rausch v. Hartford Fin. Servs. Group*,
  2007 U.S. Dist. LEXIS 14740 (D. Or. Feb. 26, 2007)..................................................22

*Razilov v. Nationwide Mut. Ins. Co.*,
  2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13, 2006)............................................23, 24

*Reveles v. Toyota by the Bay*,
  57 Cal. App. 4th 1139 (1997)...........................................................................................5

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)..........................................................................................21

*San Bernadino Valley Audubon Soc'y v. San Bernadino*,
  155 Cal. App. 3d 738 (1984)..........................................................................................12

v

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Schwartz v. Sec'y of Health & Human Servs.*,
   73 F.3d 895 (9th Cir. 1995).............................................................................8

*Science App. Int'l corp. v. Super. Ct.*,
   39 Cal. App. 4th 1095 (1995)........................................................................21

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) .............................................................................2, 6, 7

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
   2002 U.S. Dist. LEXIS 16314 (E.D.N.Y. Aug. 1, 2002)...............................21

*Trustees of Cent. States v. Golden Nugget, Inc.*,
   697 F. Supp. 1538 (C.D. Cal. 1988) .............................................................12

*United Auto. Workers Local 259 Soc. Sec. Dep't. v. Metro Auto Ctr.*,
   501 F.3d 283, 295 (3d Cir. 2007)..................................................................20

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990)...........................................................................9

*Van Vraken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ..........................................................22, 23

*Victoria v. Super. Ct.*,
   40 Cal. 3d 734 (1985) .....................................................................................3

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002).....................................................................2, 13

*Wang v. Massey Chevrolet*,
   97 Cal. App. 4th 856 (2002)............................................................................5

*Weiss v. York Hosp.*,
   628 F. Supp. 1392 (M.D. Pa. 1986) ..............................................................18

*White v. Experian Info. Solutions, Inc.*,
   2011 U.S. Dist. LEXIS 79044  (C.D. Cal. 2011).............................................18

*Wilson v. Airborne, Inc.*,
   2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) .............................22


**Statutes**

Cal. Civ. Code § 1021.5 .......................................................................................6

Cal. Civ. Code § 1760 ...........................................................................................5

vi

Cal. Civ. Code § 1780(e)..................................................................................................5

Cal. Civ. P. Code § 1033.5(a) ........................................................................................21

Cal. Civ. P. Code § 1033.5(c) ........................................................................................21

Cal. Code Civ. P. § 1717..................................................................................................3

Cal. Code of Civ. P. § 664.6 ...........................................................................................3

**Other Authorities**

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.13 (2004) ...........5, 7, 8

**Federal Rules**

Fed. R. Civ. P. 23(h) ........................................................................................................2

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiffs Athena Hohenberg and Laura Rude-Barbato respectfully submit this application seeking an Order: (1) awarding Class Counsel attorneys' fees of $985,919.50, equal to their lodestar; (2) awarding Class Counsel reimbursement of their litigation expenses of $27,503.86; (3) approving incentive awards of $10,000 for Ms. Hohenberg and $7,500 for Ms. Rude-Barbato; and (4) making related findings and orders as set forth in the proposed Judgment and Order Granting Final Approval submitted herewith.

Because the Settlement has produced both monetary and injunctive relief, Plaintiffs derive the requested award from two sources. First, Ferrero has agreed to pay $900,000 in attorneys' fees to cover injunctive relief. Second, Ferrero has agreed to create a settlement fund of $550,000 from which this application seeks Class Counsel's remaining $85,920 in lodestar, as well as Class Counsel's costs, and Class Representative incentive awards, in the total amount of $130,923.36. The structure of the settlement in the New Jersey action is identical, and precedent for it is provided *infra* at Section V.

The fee application is for Class Counsel's actual lodestar, and no multiplier is sought, relieving the Court of the burden of determining if Class Counsel's efforts were unusually risky or unusually skilled and deserving of a multiplier. Counsel's rates and hours are described in detail in Section IV, and additional detail is provided in Appendix 1 to this brief. While counsel's hours spent are a matter of contemporaneous record, they must show that the requested rates are reasonable. For each primary timekeeper, the rate sought is slightly more than awarded by other federal courts in California between 12 and 15 months ago. *See infra* Section III. Further evidence that these rates are reasonable is provided in the Declarations of Ronald A. Marron and Jack Fitzgerald.

This application, like the underlying causes of action, are brought under California statutes, which provide attorneys' fees for prevailing plaintiffs in consumer fraud actions. *See infra* Section I. These statutes are considered substantive and *require* fees be awarded to prevailing plaintiffs, which is defined liberally to include settlements that provide for monetary relief *or* achieve some of the plaintiff's litigation objectives. The lodestar method of determining a reasonable fee is appropriate here because (1) the Settlement contains substantial non-monetary relief that is difficult to value, and (2) the 25% benchmark, if applied only to the monetary relief in this action, would result in a fee far below Class

1   Counsel's lodestar, which is contrary to California's fee-shifting policy. Such policy is designed

2   precisely to encourage "private attorney general" actions like this one, where a traditional contingency

3   fee will not provide a sufficient incentive to enforce the state's consumer protection laws.

4        While this application for fees does not seek any enhancement beyond the lodestar, the request for

5   incentive awards to the Class Representatives of $10,000 and $7,500 is higher than the $5,000 amount

6   several California courts ruled "presumptively reasonable." The upward deviation is justified by the

7   unusual public attention received by class representatives, much of it highly negative and inaccurate, for

8   example portraying them as motivated by greed and receiving millions personally, or being bad mothers

9   and unintelligent for being tricked by Nutella's advertising. *See infra* Section VIII. The awards are also

10  justified by the extraordinary dedication to this action by two busy mothers, who both took time off

11  work on several occasions to prepare for their depositions, be deposed, and attend the two settlement

12  conferences, as well as continuously reviewed and discussed developments in the action with their

13  counsel. *See* Section VIII.

14                              **ARGUMENT**[1]

15  **I.      BASES FOR AN AWARD OF FEES AND LITIGATION EXPENSES**

16       "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs

17  that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "An award of attorneys'

18  fees incurred in a suit based on state substantive law is generally governed by state law." *Champion*

19  *Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1025 (9th Cir. 2003) *see also Vizcaino v. Microsoft*

20  *Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 883 (9th

21  Cir. 2000). Under California law, the Court awards reasonable attorneys' fees and costs where, as here, a

22  litigant proceeding in a representative capacity secures a "substantial benefit" for a class of persons.

23  *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977). "The task of a federal court in a diversity action is to

24  approximate state law [regarding attorneys' fee awards] as closely as possible to make sure that the

25  vindication of the state right is without discrimination because of the federal forum." *Farmers Ins. Exch.*

26  *v. Sayas*, 250 F.3d 1234, 1236 (9th Cir. 2001).

27  ─────────────────

28  [1] In their concurrently-filed Motion for Final Settlement Approval, Plaintiffs detailed the history of the litigation, the parties' settlement negotiations, and the terms of the Settlement Agreement, which is expressly incorporated herein. *See* Mot. for Final Settlement Approval at 2-10.

2

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

### A.     The Contractual Basis

"A request for attorney's fees should not result in a second major litigation. Ideally . . . litigant will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). That is what the parties have done here through the Settlement Agreement. Ferrero has agreed to separately pay $900,000 of Class Counsel's fee in connection with the injunctive relief obtained, while the remainder of Class Counsel's reasonable fee, and its expenses, are to come from the class fund.

A Settlement Agreement is like any other contract and enforced the same. Cal. Code of Civ. P. § 664.6; *Nicholson v. Barab*, 233 Cal. App. 3d 1671, 1681 (1991); *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 971 (1971). Thus, a primary basis for the fee award here—at least the greatest portion of it—is Ferrero's contractual agreement to pay attorneys' fees awarded, up to the unopposed $900,000 amount. Cal. Code Civ. P. § 1717; *Farmers Ins. Exch.*, 250 F.3d at 1236-37 (applying § 1717 in a California diversity action). This is to be done with the view that such agreements are highly favored at law and interpretation is to be in favor of enforcement if possible. *See Neary v. Regents of Univ. of Cal.*, 3 Cal. 4th 273, 277-78 (1992); *Nicholson*, 233 Cal. App. 3d at 1683; *Victoria v. Super. Ct.*, 40 Cal. 3d 734, 753, n.8 (1985). Here, the parties are in agreement as to an appropriate amount of compensation for Class Counsel's efforts in obtaining the injunctive relief. Ferrero has agreed not to oppose the reasonableness of the requested fee. Settlement Agreement ¶ 50. "A court should refrain from substituting its own value for a properly bargained-for agreement." *In re Apple Computer, Inc. Derivative Litig.*, 2008 U.S. Dist. LEXIS 108195, at *12 (N.D. Cal. Nov. 5, 2008).

That the actual amount to be awarded in connection with the injunctive relief is left to the Court to determine, up to the unopposed limit, does not render the contractual agreement unenforceable. Every term need not be spelled out to state an enforceable contract, so long as a means to make the terms certain is provided for by the contract's terms. *Frankel v. Bd. of Dental Examiners*, 46 Cal. App. 4th 534, 545 (1996). The Settlement Agreement provides the Court guidance, as it specifies that Ferrero has no objection to a fee award in connection with the injunctive relief that does not exceed the unopposed limit of $900,000. Further, if an Injunctive Fee Award is not made in the amount contemplated by the Settlement, these funds will remain with Ferrero, since the unopposed amount is wholly independent from the direct class relief. For example, in *Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986, at *2

3

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1    (N.D. Cal. Apr. 4, 2012), the court awarded a fee agreed upon between the parties, which was

2    "approximately equal to their combined lodestar in th[e] case with no multiplier," because, like here:

> The benefits achieved by Class Counsel are not in the form of a "common fund," but
> rather come in the form of structural changes to [Defendant's] advertising practices and
> the payment to Class Members on a claims-made basis. Moreover, the fee awarded to
> Class Counsel will be paid directly by [Defendant], over and above the consideration to be
> paid to Class Members, and will thus not reduce the benefits available to the Class.

7    *Id.* at *2-3. Where there is no evidence of collusion and no detriment to the parties, courts "should give

8    substantial weight to a negotiated fee amount, assuming that it represents the parties' best efforts to

9    understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees." *Ingram*

10   *v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (citation omitted).

11       Here, Class Counsel negotiated with Ferrero to reach a fee for the injunctive relief obtained

12   based on their lodestar. In addition, the fee was negotiated only after the parties reached agreement in

13   principle on the key injunctive relief terms, and only then after months of negotiations, including two

14   sessions before the Honorable Cathy Ann Bencivengo. It was at the second conference when the

15   "breakthrough" occurred and the parties came to agreement on all the major terms of the settlement. *See*

16   *Brazil*, 2012 U.S. Dist. LEXIS 47986, at *4-5 ("[t]he requested award amount was approved by [the]

17   mediator . . . which serves as 'independent confirmation that the fee was not the result of collusion or a

18   sacrifice of the interest of the class.'" (quoting *Hanlon v. Chrysler Group, Inc.*, 150 F.3d 1011, 1029

19   (9th Cir. 1998)).

20       Moreover, Class Members have overwhelmingly indicated their approval by the total absence of

21   any objections at the time of this application after a fair and effective notice, including the substance of

22   this fee application. Thus, one can fairly say that truly "all parties" are in agreement on the contractual

23   Injunctive Relief Award.

24       In sum, the parties, in arms' length negotiations, have determined that an Injunctive Fee Award

25   within the unopposed limit falls within the reasonable range of awards for the particular circumstances

26   and relief obtained in this case. For the reasons discussed further below, the Court should confirm the

27   agreed-upon amount.

28

4

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1    **B.    California Law Provides Fees for Successfully Prosecuting Consumer Fraud**

2    **Claims**

3        "Shifting fees in a statutory-fee case serves the public policy of encouraging private enforcement

4    of statutory or constitutional rights." FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION

5    (FOURTH) § 14.13 (2004) [hereinafter *Manual for Complex Litigation*]. California has two statutes

6    providing for an award of attorney fees here, the Consumer Legal Remedies Act and the private attorney

7    general statute.

8        ***1.    Plaintiffs are "Prevailing Plaintiffs" Entitled Fees & Costs Under the CLRA***

9        The CLRA "shall be liberally construed and applied to promote its underlying purposes, which

10   are to protect consumers against unfair and deceptive business practices and to provide efficient and

11   economical procedures to secure such protection." Cal. Civ. Code § 1760; *see also Wang v. Massey*

12   *Chevrolet*, 97 Cal. App. 4th 856, 869 (2002). The Act provides a fee-shifting provision directing that

13   "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant

14   to this section" Cal. Civ. Code § 1780(e).

15       "[T]he availability of costs and attorneys fees to prevailing plaintiffs is integral to making the

16   CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits

17   under the statute." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 644 (2009) (quoting *Broughton v.*

18   *Cigna Healthplans*, 21 Cal. 4th 1066 (1999)). "Accordingly, an award of attorney fees to 'a prevailing

19   plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved

20   by a pretrial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170,

21   178-79 (2007).

22       In the settlement of a CLRA claim, a plaintiff prevails if there is a "net monetary recovery,"

23   *Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1151 (1997), or where she is "denied direct relief"

24   but nonetheless the lawsuit "has otherwise achieved its main litigation objective." *Graciano v. Robinson*

25   *Ford Sales, Inc.*, 144 Cal. App. 4th 140, 151 (2006). *See also Kim*, 149 Cal. App. 4th at 178-81

26   (discussing *Reveles* and *Graciano* and concluding that court may determine plaintiff prevailed if "he

27   obtained a net monetary recovery or because he achieved most or all of what he wanted by filing the

28   action or a combination of the two."). Injunctive relief that is "'socially beneficial' . . . justif[ies] a fee

5

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1  award under" the CLRA. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011).

2  While either is sufficient, here both factors are present. Plaintiffs obtained a net monetary

3  recovery and achieved "most or all of what" they wanted by filing the action: (1) across-the-board

4  changes to Nutella's current advertising, (2) a fund to provide restitution, (3) an agreement to pay

5  attorneys' fees and costs, (4) precedents that will assist other consumers in vindicating claims for

6  consumer fraud, and (5) a deterrent to other food companies tempted to make exaggerated health claims.

7  ### 2.  Plaintiffs are "Successful Parties" Entitled to Fees & Costs Under California's

8  ### Private Attorney General Statute

9  California's private attorney general statute provides for an award of attorneys' fees to a

10  "successful party":

11  > in any action which has resulted in the enforcement of an important right affecting the
12  > public interest if (a) a significant benefit, whether pecuniary or nonpecuniary, has been
    > conferred on the general public or a large class of persons, (b) the necessity and financial
13  > burden of private enforcement, or of enforcement . . . are such as to make the award
    > appropriate, and (c) such fees should not in the interest of justice, be paid out of the
14  > recovery, if any.

15  Cal. Civ. Code § 1021.5. *See generally Serrano v. Priest*, 20 Cal. 3d 25 (1977).

16  "Similar to California's fee-shifting statute, the private attorney general statue makes a plaintiff a

17  'successful party' if it achieves its litigation objectives." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp.

18  2d 1160, 1170 (C.D. Cal. 2010). The statute applies "when a plaintiff 'acts as a true private attorney

19  general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit,

20  despite the fact that his or her own financial stake in the outcome would not by itself constitute an

21  adequate incentive to litigate.'" *Heston v. Taser Int'l., Inc.*, 431 Fed. Appx. 586, 589 (9th Cir. 2011)

22  (quoting *Flannery v. Cal. Highway Patrol*, 61 Cal. App. 4th 629, 635 (1998) (internal quotation marks

23  and citation omitted)). "The key question is 'whether the financial burden placed on the party [claiming

24  fees] is out of proportion to its personal stake in the lawsuit.'" *Id.* (quoting *Lyons v. Chinese Hosp.

25  Ass'n*, 136 Cal. App. 4th 1331, 1351 (2006)).[2] Here, Nutella typically retailed for around $3.49, so even

26  frequent buyers could not possibly have a stake adequate to litigate.

27  _____

28  [2] That an action is brought on a contingency basis does not undermine a plaintiff's request for attorneys' fees under the statute. *Lyons*, 136 Cal. App. 4th at 1351.

6

**C.      The Equitable Basis**

Class actions serve the policy goals of efficient judicial management, by setting a procedure whereby one judgment covers all claimants, and of ensuring that the rights of citizens are exonerated even where their individual claims are relatively small and/or their financial means are lean, such that an attorney would be unlikely to accept the financial risk of individual representation. *Keating v. Super. Ct.*, 31 Cal. 3d 584, 609 (1982); *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977). Accordingly, "it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, so that he might share the wealth of those upon whom he has conferred a benefit." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

## II.      THE COURT SHOULD APPLY THE LODESTAR METHOD TO DETERMINE CLASS COUNSEL'S REASONABLE FEE

Under California law, "a court assessing attorney fees begins with a touchstone or lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001) (quoting *Serrano*, 20 Cal. 3d at 48); *see also Hensley v. Eckhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672-73 (2010) (expressing strong preference for lodestar approach).

"[T]he 'lodestar method' is appropriate in class actions brought under fee-shifting statutes . . . where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *In re Bluetooth*, 654 F.3d at 941; *see also Manual for Complex Litigation* § 21.7 at p. 334-35 ("Statutory awards are generally calculated using the lodestar method."). While Ferrero's agreement to pay refunds, fees, notice, and administration costs is "easily monetized," Plaintiffs—both mothers who were duped by Ferrero's commercials suggesting Nutella was nutritious for their young children—brought this case primarily to remedy a public health hazard created by Ferrero's deceptive advertising. Hohenberg Decl. ¶ 2; Rude-Barbato Decl. ¶ 15. And Ferrero agreed

7

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1   to wide-ranging advertising changes as a result of the lawsuit.[3]

2       While in "common fund" cases "where the settlement or award creates a *large* fund for

3   distribution to the class, the district court has discretion to use either a percentage or lodestar method,"

4   *Hanlon*, 150 F.3d at 1029 (emphasis added, citation omitted), even then its discretion "must be exercised

5   so as to achieve a reasonable result." *In re Bluetooth*, 654 F.3d at 942 (citing *In re Petroleum Prods.*

6   *Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)). Because this is a blended settlement that includes

7   primarily injunctive relief, but also a fund for class member claims (though not especially "large"),

8   applying the common fund method would not "achieve a reasonable result." Accordingly, Plaintiffs

9   respectfully request that the Court use the lodestar method to determine Class Counsel's reasonable fee.

10  **III.   CLASS COUNSEL'S LODESTAR IS FAIR AND REASONABLE**

11      Class Counsel's lodestar of $985,919.50 is summarized in <u>Appendix 1</u> hereto. This lodestar is

12  based on 2,137.9 hours (1,652.7 attorney hours, 385.2 paralegal and law clerk hours, and 100 "blended"

13  post-application hours, *see* App. 1 n.1), and is supported by fair and reasonable rates and hours.

14      **A.   Class Counsel's Rates Are Reasonable**

15      Class Counsel's rates are reasonable because they are in line with hourly rates charged by

16  attorneys of comparable experience, reputation and ability for similar litigation. See *Ketchum*, 24 Cal.

17  4th at 1133; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984). Courts look to prevailing market rates

18  in the community in which the court sits. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906

19  (9th Cir. 1995); *see also Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

20  Accordingly, Class Counsel's current rates are reasonable if they are in line with the prevailing rates for

21  other attorneys practicing complex litigation in San Diego. *See Manual for Complex Litigation* at §

22  14.122 ("The rate should reflect what the attorney would normally command in the relevant

23  marketplace.").

24  _____

25  [3] It is not just the parties who believe the primary benefit of this settlement is Ferrero's commitment to
    modify its advertising practices. *See* Vincent Iannelli, M.D., *Lessons from the Nutella Lawsuit*,
26  About.com Pediatrics (May 6, 2012) ("If you bought Nutella . . . you may be eligible to receive a
    payment from the Nutella class action settlement. *More importantly*, 'Ferrero has also agreed to
27  prospective relief by agreeing to modify certain marketing statements about Nutella, create new
    television ads, and change the Nutella website.'" (emphasis added)), *available at*
28  <u>http://pediatrics.about.com/b/2012/05/06/lessons-from-the-nutella-lawsuit.htm</u>.

Here, Class Counsel's requested rates are as follows:

| Attorney | Position | Hourly Rate |
|---|---|---|
| Ronald A. Marron | Partner (MF) | $650 |
| Gregory S. Weston | Partner (WF) | $525 |
| Jack Fitzgerald | Partner (WF) | $525 |
| Courtland Creekmore | Associate (WF) | $500 |
| Margarita Salazar | Associate (MF) | $450 |
| Skye Resendes | Associate (MF) | $385 |
| Maggie Realin | Associate (MF) | $375 |
| Melanie Persinger | Associate (WF) | $300 |
| Paralegals (MF) | | $215 |
| Paralegals (WF) | | $195 |

To assist the court in calculating the lodestar, a plaintiff must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.[4]

***Rates Other Courts Have Awarded.*** "[R]ate determinations in other cases, particularly those settling a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

In March 2011, the Honorable Janis L. Sammartino awarded Mr. Marron fees based on an hourly rate of $595. *Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*, 2011 U.S. Dist. LEXIS 21824, at *31 (S.D. Cal. Mar. 3, 2011). In that case, however, despite being of similar seniority and experience to three partners whose rates of $750 were approved, Mr. Marron, at the request of and in deference to his co-counsel, reduced his request to $595. Marron Decl. ¶ 20. Mr. Marron's rate of $650 is his current rate

---

[4] But compare *Collado v. Toyota Motor Sales, U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 133572, at *14 (C.D. Cal. Oct. 17, 2011) ("The Ninth Circuit has advised that courts are allowed to rely on their own familiarity with the legal market and subject matter of the lawsuit when awarding attorneys' fees," citing *Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011)).

9

1    and a modest increase (9%) over the rate approved in *Iorio*.

2          In June 2011, the Honorable James Ware awarded the Weston Firm fees based on an hourly rate

3    of $500 for Mr. Weston and Mr. Fitzgerald. Fitzgerald Decl. ¶ 33. This April, in a tentative order giving

4    final approval to a class action settlement that has not yet been entered, the Honorable Margaret M.

5    Morrow also awarded the Weston Firm fees based on rates of $500 for Mr. Weston and Mr. Fitzgerald,

6    as well as rates of $275 for Ms. Persinger, and $150 for paralegals (which Judge Morrow noted was

7    "below the standard rate for paralegals"). *See id.* ¶ 33 & Ex. 3 at 50-51. The firm's current rates reflect a

8    modest increase since Judge Ware approved its partner's $500 in June of last year.[5]

9          In addition, Class Counsel's rates are reasonable and consistent with the rates charged by both

10   plaintiff and defense firms in San Diego, California, and around the country. *See* Marron Decl. ¶¶ 21-24;

11   Fitzgerald Decl. ¶¶ 34-40. The rates are also consistent with those awarded by other courts. *See* Marron

12   Decl. ¶¶ 22-24; Fitzgerald Decl. ¶¶ 36-41.

13         Finally, Class Counsel's rates are reasonable because they reflect counsel's practice of not billing

14   or seeking reimbursement of several categories of costs like photocopying, telephone, Lexis, Westlaw

15   PACER, faxes, postage, and meals, including while traveling. Class Counsel estimate these uncharged

16   expenses are approximately $13,000 in this case. *See* Marron Decl. ¶ 31; Fitzgerald Decl. ¶ 51. *Accord*

17   *Parkinson*, 796 F. Supp. 2d 1160, 1177 n.14 (noting such costs factored into requested lodestar).

18         **Survey Data.** "Courts also frequently use survey data in evaluating the reasonableness of

19   attorneys' fees." *B-K Lighting, Inc. v. Vision3 Lighting*, 2009 U.S. Dist. LEXIS 111968, at *18 (C.D.

20   Cal. Nov. 16, 2009) (citing *Mathis v. Spears*, 857 F.2d 749, 755-56 (9th Cir. 1988)). National Law

21   Journal surveys confirm that the rates charged by Class Counsel are reasonable. Marron Decl. ¶ 23;

22   Fitzgerald Decl. ¶¶ 38-40.

23         **Blended Rate.** The reasonableness of Class Counsel's rates is also shown by its blended lodestar,

24   calculated by taking the total lodestar and dividing it by the total hours of all timekeepers (attorneys,

25   paralegals, etc.). The blended rate in this case is $461.16 ($985,919.50 divided by 2137.9 hours). This

26   compares favorably to blended lodestar rates approved in other actions. *See* Marron Decl. ¶ 25;

27
28   [5] "The Supreme Court [has] expressly held the use of current, rather than historical, rates to be an
     appropriate adjustment to lodestar rates to compensate for delays." *In re Commercial Consortium of
     Cal.*, 135 B.R. 120, 126 (C.D. Cal. 1991); *see also Mo. v. Jenkins*, 491 U.S. 274, 283-84 (1989).

1    Fitzgerald Decl. ¶ 41.

2              **B.    Class Counsel's Hours Expended Are Reasonable**

3         Class Counsel are entitled to be compensated for reasonable time spent at all points in the

4    litigation. Courts should avoid engaging in an "*ex post facto* determination of whether attorney hours

5    were necessary to the relief obtained." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). The issue "is

6    not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was

7    performed, a reasonable attorney would have engaged in similar time expenditures." *Id.*

8         Here, Class Counsel expended a total of 1652.7 attorney hours and 385.2 paralegal and law clerk

9    hours. *See* Marron Decl. ¶¶ 27-29; Fitzgerald Decl. ¶¶ 42-46. This includes, *inter alia*, time billed for

10   investigating the claims and drafting pleadings (Ms. Hohenberg's Complaint, Ms. Rude-Barbato's

11   Complaint, the Master Consolidated Complaint, and then the First Amended Consolidated Complaint);

12   extensive law and motion practice relative to the time the case was litigated; drafting and responding to

13   discovery, including taking and defending depositions and third-party discovery; reviewing documents

14   and researching legal authorities; preparing for and participating in meetings, settlement conferences and

15   mediations; preparing for and arguing one motion hearing before this Court (for class certification), and

16   an MDL hearing; and communications and meetings among parties and counsel.

17        The three senior attorneys collaborating on this action, Messrs. Marron, Weston and Fitzgerald,

18   have over thirty years combined experience in complex civil litigation, false advertising, and class

19   actions. Their experience is detailed in the supporting declarations. *See* Marron Decl. ¶¶ 9-17; Fitzgerald

20   Decl. ¶¶ 28-31. Cumulatively, these attorneys have performed 1,262.7 hours of work on this case, or

21   approximately 78% of the total attorney time: Mr. Fitzgerald (614.7), Mr. Marron (476.4), and Mr.

22   Weston (196.3).

23        That this time is reasonable is demonstrated by comparing the average hours billed per month to

24   the averages approved as reasonable in other false advertising actions. *See* Fitzgerald Decl. ¶ 45.

25   Moreover, although this action was litigated far more vigorously and substantively than the New Jersey

26   action, which involved little other than stipulating to delays and then settling on identical terms on the

27   heels of the Settlement in this case, counsel in that action claim a remarkable ***3,000*** hours for a lodestar

28   of $1.8 million. Class Counsel's hours in this case are far more reasonable (and likely accurate) by

                                                      11

1  comparison. *Id.* ¶ 46. Accordingly, Class Counsel should be compensated for all hours claimed, which

2  are documented and based on contemporaneous time records.[6]

3  **IV.    CLASS COUNSEL'S REQUESTED FEE AWARD IS REASONABLE**

4          Fee awards in class actions encourage and support compliance with federal and state law. "The

5  guiding principles in determining awards of attorneys' fees should be to provide compensation sufficient

6  to stimulate the motive for representation of classes[.]" *In re Equity Funding Corp. Sec. Litig.*, 438 F.

7  Supp. 1303, 1325 (C.D. Cal. 1977). Payment at full market rates is essential to fulfill the goal of enticing

8  well-qualified counsel to undertake difficult consumer interest litigation. *San Bernadino Valley Audubon*

9  *Soc'y v. San Bernadino*, 155 Cal. App. 3d 738, 755 (1984).

10         When determining a reasonable fee upon the settlement of a class action, the lodestar figure is

11  "presumptively reasonable," *In re Bluetooth*, 654 F.3d at 941 (quoting *Cunningham v. County of Los*

12  *Angeles*, 879 F. 2d 481, 488 (9th Cir. 1988)); *see also Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir.

13  1994) (the lodestar "presumptively provides an accurate measure of attorney's fees"). Courts may then

14  adjust counsel's lodestar "upward or downward by an appropriate positive or negative multiplier

15  reflecting a host of 'reasonableness' factors, 'including quality of representation, the benefit obtained for

16  the class, the complexity and novelty of the issues presented, and the risk of nonpayment,'" *In re*

17  *Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon*, 150 F.3d at 1029 (citation omitted)). While Class

18  Counsel here do not request an enhancement (or "multiplier"), neither is a downward departure

19  _____

20  [6] Class Counsel's detailed time sheets are not necessary for this motion because the Court need only be provided enough information to assess the reasonableness of the fees claim, and Class Counsel's declarations provide this. *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1006-1007 (1982) (attorney declaration as to number of hours worked by firm members was sufficient); *Trustees of Cent. States v. Golden Nugget, Inc.*, 697 F. Supp. 1538, 1558-59 (C.D. Cal. 1988). Moreover, the lodestar analysis requires "neither mathematical precision nor bean-counting," and allows the Court to "rely on summaries submitted by the attorneys and . . . not review actual billing records," *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-307 (3d Cir. 2005). California authorities likewise "permit[] fee awards in the absence of detailed time sheets," since "[a]n experienced trial judge is in a position to assess the value of the professional services rendered in his or her court." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) (citing *Sommers v. Erb*, 2 Cal. App. 4th 1644, 1651 (1992); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1810 (1996); *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 103 (1994)). Here, the extent of the discovery and law and motion practice, as reflected on the Court's docket and summarized in the Motions for Preliminary and Final Approval, and supporting declarations, readily demonstrates the time expended was reasonable and necessary to obtain this substantial Settlement for the Class. Nevertheless, Class Counsel's detailed time records can and will be provided to the Court immediately upon its request should it desire a more detailed review.

1  warranted.

2      **A.      The Results Achieved for the Class**

3          This resolution of this case represents an excellent result for the Class and consumers

4  nationwide, but even more so for California consumers. In less than a year, Plaintiffs filed this action,

5  pushed it past pleadings, conducted targeted discovery, and obtained class certification, litigating the

6  case quickly and efficiently for the Class. By doing so, Plaintiffs obtained Ferrero's commitment to

7  effecting wide-ranging changes in the way it advertises and markets Nutella, a circumstance that will

8  improve public knowledge and health.

9          *1.      The Injunctive Relief Provides the Class and Public a Significant Benefit*

10          For Ferrero to agree to modify its label to *prominently* disclose Nutella's nutritional content, to

11  revise its Nutella slogan, and to cease its *successful* health-oriented marketing strategy by shooting new

12  television commercials and editing its web advertising, is no small matter.

13          Although injunctive relief of the type provided in the Settlement may be difficult to monetize, it

14  undoubtedly has value for the Class. *See Brazil*, 2012 U.S. Dist. LEXIS 47986, at *4 ("The structural

15  changes to Dell's marketing practices resulting from this litigation, particularly Dell's elimination of

16  allegedly false representations . . . conferred a benefit on both the class members and the public at large."

17  (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ("Incidental or nonmonetary

18  benefits conferred by the litigation" are factors to be considered in a fee application). There is intrinsic

19  value to truth in advertising. Yet, this benefit is not easily valued.

20          Nevertheless, the injunctive relief's value here may be fairly and objectively ascertained by

21  comparing sales before and after the advertising began in August 2009, if one assumes that Ferrero's

22  modifications *away* from the challenged advertising are likely to have the opposite effect on its sales

23  than the challenged advertising had.

24          From August 1, 2009 to December 31, 2010 (17 months), Nutella sales were $████████ (or

25  $██████ per month[7]). From January 1, 2008 to July 31, 2009 (19 months), sales were $████████ (or

26

27

---

28  [7] Because August is the second month of the third quarter, we calculated this by adding 2010 sales
($██████) to 2/3 of Q3 2009 sales ($██████) and Q4 2009 sales ($██████).

13

1    $▮▮▮▮▮▮ per month).[8] Thus Ferrero sold an average of $3,897,417 more Nutella per month when

2    using the challenged advertising. The class period runs from August 1, 2009 to January 23, 2012 (the

3    date of preliminary approval), or approximately 30 months. Thus the additional Nutella sales during this

4    period amount to $116,922,510 more in nationwide sales, and $14,615,313 for California's 12.5% share.

5    Thus, it may be fair to value the injunctive relief somewhere near $14 million for the California Class as

6    an approximation of what Class Members and the public are likely to save when Ferrero's deceptive

7    advertising has ceased.

8            The Court may also consider the financial commitment required of Ferrero to effect the

9    injunctive relief. Although Ferrero has not provided that information in response to Plaintiffs' request,

10   the cost of the required labeling changes, re-shooting television commercials, and revising web content

11   is easily likely to number in the seven figures. In addition, the notoriety of this suit in the media alerts

12   consumers to the subtle ways in which some companies can mislead—which is especially insidious

13   when it comes to health—and warns other food manufacturers against using a health-based advertising

14   campaign likely to mislead the public.

15                   **2.    *The California Restitution Fund Affords Injured Californians Far More Relief***

16                          ***Than the 49-State Fund Affords Injured Consumers Outside California***

17           Class Counsel obtained a better monetary component for the California Class than that obtained

18   for the 49-state class. First, the California fund is proportionally larger. While "total unit sales in

19   California [were] approximately 12.5% of national sales," Order Granting Class Cert., Dkt. No. 95 at 10

20   (record citation omitted), the California Fund ($550,000) is 18% of the overall common fund (e.g.,

21   $3,050,000 including the $2,500,000 49-State Fund). Put another way, the California Fund is 44% larger

22

---

23   [8] Plaintiffs previously filed Nutella sales information under seal. *See* Dkt. No. 22-1, Ex. D. *See also*
     Order Granting Class Cert., Dkt. No. 95 at 4 (referring to Nutella sales). Plaintiffs previously filed
24   Nutella sales information under seal. *See* Dkt. No. 22-1, Ex. D; Dkt. No. 95 at 4, 10 (referring to
     evidence of Nutella sales). Plaintiffs requested that Ferrero de-designate the sales information as
25   "confidential" under the Protective Order for purposes of this Motion so that the public and Class
     Members might be able to fairly and fully evaluate the strength of the Settlement, but Ferrero declined.
26   Ferrero has agreed as a compromise, however, that if any member of the public or Class Member, other
     than a competitor of Ferrero, wishes to review the unredacted version of this memorandum or the
27   concurrently-filed memorandum in support of Plaintiffs' motion for final settlement approval, he or she
     may do so by contacting Class Counsel and signing an agreement to abide by the terms of the Protective
28   Order entered in this action (Dkt. No. 32).

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1   than its proportion of sales.

2          More importantly, however, the 49-State Fund is being used to compensate Nutella purchases

3   beginning January 2008, *twenty months* before Ferrero began using the challenged advertising, as it

4   repeatedly represented to this Court. *See* Kreilmann Decl. in Opp. to Class Cert. Mot. (filed under seal)

5   ¶¶ 30-34; Class Cert. Hrg. Tr., Dkt. No. 93 at 31. By including unaffected purchases in its settlement

6   class, the 49-State Fund is being inappropriately diluted for class members with cognizable injuries. This

7   effect is not small. Based on our review of the Nutella sales data and calculations, approximately 30.4%

8   of the sales covered by the 49-State Fund are those from January 2008 to August 2009, when Ferrero did

9   not even advertise Nutella in the challenged manner. As a result, the California Fund is more than two-

10  and-a-half times larger on a per capita basis for affected sales than the 49-State Fund.

11          **B.      The Novelty and Difficulty of Issues and Skill of Counsel**

12          This case was novel and difficult. The issue in this case concerned the marketing of a product

13  containing high levels of fat and sugar with suggestive, but not explicit, health claims. Moreover, the

14  statements challenged appeared in a variety of media, including on the product's label, website, and in

15  print and national television commercials, all of which included different variations and combinations of

16  phrases so that Plaintiffs were tasked with the particularly difficult challenge of demonstrating a

17  common message or theme. And there was an added complication in that the advertising at issue was

18  underwritten or supported by a purported children's nutrition expert.

19          The action was widely criticized in the media (along with Plaintiffs, particularly Ms.

20  Hohenberg), because to many it seemed "obvious" that Nutella was unhealthy; yet California law

21  prohibits food manufacturers from making even "obvious" misrepresentations. But even the Court, at

22  times, expressed skepticism about some of the claims or the overall viability of the suit. Nevertheless,

23  Plaintiffs persevered and ultimately obtained exactly what they set out to do in this lawsuit—change

24  Nutella's advertising.

25          Plaintiffs respectfully suggest that their track record in this case demonstrates the skill of their

26  counsel, who prevailed either entirely or almost entirely on two Rule 12 motions (Dkt. Nos. 43, 69), a

27  motion to stay discovery (Dkt. No. 24), two motions to transfer the case away from this Court and

28  Plaintiffs' hometown and into Ferrero's back yard (Dkt. Nos. 37, 63), and who obtained a certified Class

15

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1    (Dkt. No. 95). This is especially noteworthy in light of Class Counsel's opponents, accomplished and

2    respected attorneys at the highly-regarded firm, Wilson Sonsini Goodrich & Rosati. For example,

3    Ferrero's primary counsel, Keith Eggleton, was a Ninth Circuit clerk from 1990 to 1991, is a repeat

4    Northern California Super Lawyer, and sits on Wilson Sonsini's Board of Directors.

5          Moreover, Class Counsel was extremely efficient, bringing this action from filing to a certified

6    class in just nine months, during that time also defeating the plethora of motions discussed above. And

7    Plaintiffs obtained the Settlement in less than a year despite Ferrero's strong initial reluctance to change

8    its practices or refund the Class for their Nutella purchases. Moreover, it was only after Class Counsel

9    obtained the certified Class, and after Class Counsel negotiated the California Settlement, that Ferrero

10   agreed to the similar but less favorable terms with the New Jersey plaintiffs for the remaining states.

11         All these factors demonstrate the reasonability of Class Counsel's lodestar.

12         **C.**      **Preclusion of Other Employment and Risk of Non-Payment**

13         Devoting more than 2,000 attorney and staff hours, and substantial costs to the prosecution of

14   this action, necessarily precluded other employment for Class Counsel. There was significant risk that

15   Class Counsel, despite committing these resources, would not have received any compensation for its

16   services. And Class Counsel's ability to collect compensation was entirely contingent upon it prevailing.

17   The substantial risk of non-recovery inherent in class action litigation is well-documented. *See*

18   Fitzgerald Decl. ¶¶ 47-49.

19         **D.**      **Additional Factors**

20         **1.**      ***Class Counsel's Uncompensated Contribution to the 49-State Settlement***

21         Class Counsel's fee is especially reasonable in light of the effect of its work in generating the

22   identical settlement for consumers in the other 49 states, even while Class Counsel will not be

23   compensated for that contribution. After Plaintiffs negotiated the Settlement on behalf of the certified

24   California class, Ferrero settled *Glover* on identical injunctive relief terms in exchange for a release

25   covering Nutella purchasers in the other 49 states. This is emblematic of the involvement of the

26   attorneys in the cases throughout the litigation, who merely followed in Class Counsel's footsteps and

27   reaped huge rewards for doing so (Ferrero agreed to separately pay New Jersey counsel $3,000,000, and

28   they are seeking an extra $750,000 in fees, and over $80,000 in expenses, from the $2,500,000 49-State

1  Fund).

2          Indeed, after Alabama resident Marnie Glover filed her New Jersey action with 29 paragraphs

3  copied *verbatim* from Plaintiffs' Complaint in this case, her attorneys did little other than try to disturb

4  and obtain control over Plaintiffs' case, for example filing an MDL motion while Ferrero's transfer

5  motion was already pending. New Jersey counsel then simply delayed the *Glover* case until they could

6  negotiate a settlement on the heels of the California class certification and Settlement. Thus, although

7  *Glover* was filed just three weeks after *Hohenberg*, there was almost no actual litigation involved. For

8  example, Ferrero filed a Motion to Dismiss, but it was terminated, never heard, and never re-filed after

9  the New Jersey plaintiffs moved for consolidation then stipulated to more delay (*see Glover*, 11-cv-1086

10  (D.N.J.) Dkt. Nos. 24, 52, 56, 58). That was the full extent of "motion practice" between the *Glover*

11  plaintiffs and Ferrero. *Compare generally In re Ferrero* Docket (113 entries, with lots of motion &

12  substantive papers) *with Glover* Docket (67 entries, mostly administrative in nature, repeated

13  stipulations for continuances, etc.).

14          The deposition of Nutella's "children's nutrition expert," Connie Evers perfectly illustrates the

15  point. On April 28, 2011, Plaintiffs subpoenaed Evers deposition, which was initially scheduled for May

16  25. While Class Counsel was initially preparing to take the deposition, on May 16 Evers' counsel invited

17  New Jersey counsel to attend. When they were not prepared to do so on May 25, Class Counsel agreed

18  to postpone the deposition to July 26 to accommodate them. Class Counsel spent considerable time

19  preparing for the deposition, ultimately shipping four bankers' boxes of documents to Portland for use in

20  the proceeding. Besides that, Class Counsel were prepared with Ms. Evers' nutrition books, DVDs of

21  Nutella commercials, demonstrative exhibits, and a slew of non-produced materials located as part of

22  their investigation and preparation for the deposition.

23          Less than a week before the deposition, New Jersey counsel first contacted Class Counsel to

24  coordinate, but then were unreachable on two separate occasions at the times the parties had agreed to

25  have telephone conferences. As a result, the two sets of counsel first spoke when New Jersey counsel

26  arrived a few minutes before the deposition—with few documents, asking for a stapler to prepare them.

27          In short, New Jersey counsel (apparently because they were travelling and relying on California

28  counsel to take the deposition, which required an enormous amount of preparation), were not as well

1    prepared to take the deposition. The varying preparedness was obvious in the deposition. Mr. Fitzgerald

2    was responsible for 342 pages of the 378-page transcript, over 90%. During his examination, Mr.

3    Fitzgerald marked 93 exhibits. Glover's attorneys marked one. The evidence developed in Evers'

4    deposition was crucial to this case. Besides citing it extensively in support of their Motion for Class

5    Certification, Evers' testimony certainly bolstered Plaintiffs' merits case. Unsurprisingly, one of the

6    main forms of relief for the Class is Ferrero's agreement to remove content written by or attributed to

7    Ms. Evers, and she is no longer employed as a Nutella spokesperson.

8                        **2.    *The California Class's Far Higher Claims Rate***

9           As of May 23, the California Class had 55,504 claims for reimbursement of 259,362 four-dollar

10   jars of Nutella ($1,037,448). Young Aff. ¶ 10. This is ███% of the affected California sales. By contrast,

11   the 49-state class includes 197,909 claims for 912,693 Nutella jars ($3,650,772), just ███% of the sales

12   covered by that settlement. Thus, the California claims rate is almost three times higher.

13   **V.    AWARDING THE REMAINDER OF CLASS COUNSEL'S REASONABLE FEE FROM**

14   **        THE SETTLEMENT FUND IS PERMISSIBLE AND APPROPRIATE**

15          Although Class Counsel seek a total fee of $985,919.50, the source of these funds would be

16   divided between Ferrero ($900,000) and the Settlement Fund ($85,919.50), and so in some sense Class

17   Counsel requests separate fee awards. "[S]eparate fee awards are appropriate for independent injunctive

18   and monetary relief settlements." *White v. Experian Info. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 79044,

19   at *18 (C.D. Cal. 2011). Moreover, courts have "allowed distinct fee awards for injunctive and monetary

20   relief when both kinds of relief were included in the same settlement agreement." *Id.* (citing *Weiss v.*

21   *York Hosp.*, 628 F. Supp. 1392, 1415 (M.D. Pa. 1986)).

22          The Eleventh Circuit Court of Appeals, for example, recently upheld separate fee awards for the

23   injunctive and monetary components of a class action settlement in *Faught v. Am. Home Shield Corp.*,

24   668 F.3d 1233 (11th Cir. 2011). The district court had "approved an attorneys' fee award with two

25   components: (1) a $1.5 million lump sum paid directly by [defendant] to class counsel as payment for

26   the business practice changes researched and negotiated by class counsel for the benefit of the class, and

27   (2) 25% of the monetary compensation received by class members," *id.* at 1243. The Eleventh Circuit

28   upheld the awards because the parties intended that "the $1.5 million . . . not come from the money set

18

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

aside for the class; rather, it is a separate lump sum from [defendant] to class counsel," and "the $1.5

million was intended to compensate class counsel for additional work performed and value added to the

settlement, specifically, the work done in changing [defendant's] business practices . . . ." *Id.* The

situation is similar here. The Settlement Agreement expressly separates the injunctive and monetary

relief and contemplates separate payments for them, one from Ferrero and one from the monetary fund.

   Other California courts have made similar awards. For example, in *Brazil*, the parties settled a

putative class action with Dell agreeing to "structural changes to [its] advertising practices and the

payment to Class Members on a claims-made basis." 2012 U.S. Dist. LEXIS 47986, at *2-3. Dell

separately agreed to pay over $6 million in attorneys' fees. The court noted that because "the fee

awarded to Class Counsel will be paid directly by Dell, over and above the consideration to be paid to

Class Members, . . . [it] will thus not reduce the benefits available to the Class." *Id.* at *3 (record citation

omitted). And just as Plaintiffs assert here, the *Brazil* court held that "[i]n such circumstances, the most

appropriate method for calculating reasonable attorneys' fees is the lodestar method." *Id.* (citing *Hanlon*,

150 F.3d at 1029-30).

## VI.   APPLYING THE COMMON FUND METHOD BASED ON THE SETTLEMENT'S MONETARY COMPONENTS WOULD ACHIEVE AN UNREASONABLE RESULT

   If the common fund method were applied here based only on the monetary components of the

Settlement (e.g., without valuing the injunctive relief), the Class would have a constructive common

fund of $1,450,000, comprised of the $550,000 restitution fund and the Injunctive Fee Award of up to

$900,000. By this method, Plaintiffs' fee request would be 70.3% of the common fund. Applying the

"benchmark" of 25% instead, however, Class Counsel's fee would be just $362,500, or a negative

lodestar of 0.36. The result is unreasonable because the size of the Class's restitution fund is a function

of the size of the case (involving only $███████ in California Nutella sales during the class period),

not Class Counsel's failure to obtain a good result. Accordingly, attorneys' fees are more reasonably

calculated under the lodestar method. As the Honorable Alicemarie Stotler explained:

> One-way fee shifting statutes encourage litigation in cases that are not likely candidates to
> produce high-dollar judgments, either because relief sought is non-monetary or because
> only modest amounts of money are at stake. California's fee-shifting and private attorney
> general statutes incentivize counsel to take cases on behalf of plaintiffs who could not
> otherwise afford to vindicate their rights though litigation.

19

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1   *Parkinson*, 2010 U.S. Dist. LEXIS 144107, at *26 (internal quotations and citation omitted). For this

2   reason, both state and federal courts favor the lodestar method in fee-shifting cases even when—

3   especially when—class recoveries are low.

4          The United States Supreme Court and California courts have also rejected the proposition that a

5   lodestar fee must be proportional to the class's recovery on the grounds that enforcing such a

6   requirement would reflect a fundamental misunderstanding of the policy rationale for fee-shifting. In

7   *City of Riverside v. Rivera*, 477 U.S. 561 (1986), the Supreme Court upheld attorneys' fees of

8   $245,456.25 for recovery of $33,350 in damages, explaining that "[a] rule of proportionality would

9   make it difficult, if not impossible, for individuals with meritorious . . . claims but relatively small

10  potential damages to obtain redress from the courts," and that such an approach would "seriously

11  undermine Congress' purpose in enacting [its fee-shifting statute]." *Id.* at 576-78. *See also Graciano*,

12  144 Cal. App. 4th at 164 (favorably analogizing to *City of Riverside* and stating that because the case

13  was brought under "consumer protection statutes involving mandatory fee-shifting provisions, the

14  legislative policies are in favor of Graciano's recovery of all attorney fees reasonably expended without

15  limiting the fees to a proportion of her actual recovery"); *United Auto. Workers Local 259 Soc. Sec.*

16  *Dep't. v. Metro Auto Ctr.*, 501 F.3d 283, 295 (3d Cir. 2007) ("When delinquencies are small, the cost of

17  recovery may be disproportionate, and requiring proportionality would, in effect, discourage [plaintiffs]

18  from taking their claims to federal courts.").

19         The rationale for this is clear. If the recovery far outstripped the fee, a client could easily find a

20  lawyer to take the case on a contingency basis, as such a case has "positive value" that will attract

21  private counsel without fee-shifting. The problem that fee-shifting laws address is one of "negative

22  value," in which a standard contingency rate of 30%-40% of the client's recovery may be less than the

23  cost of pursuing it. Many small individual claims class actions like this one fall into this category.

24  Because the recovery in such cases cannot support private lawyering, they present a collective action

25  problem whereby, absent some form of government intervention into the market for fees, the harms at

26  issue will go unaddressed and defendants' actions will remain unaddressed and undeterred. In sum, the

27  very purpose of fee-shifting is, in large part, to fund cases in which the recoveries are so small that no

28  lawyer would pursue the case otherwise. It is therefore not a condemnation of fee-shifting to note that

20

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

the class recovered less than the fee that the lawyers may receive—that is the very rationale for fee-shifting. As the California Court of Appeal explained in *Graciano*:

> The legislative policy to allow prevailing plaintiffs reasonable attorney's fees [in actions under the CLRA] is clear. [The Act] provides remedies for consumers who have been victims of unfair or deceptive business practices. The provision for recovery of attorney's fees allows consumers to pursue remedies in cases as here, where the compensatory damages are relatively modest. To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying section 1780.

144 Cal. App. 4th at 150 (quoting *Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2004)).

## VII.   THE REQUESTED COSTS ARE FAIR AND REASONABLE

Under Cal. Civ. P. Code § 1033.5(a)(1), (3), (4), and (7), the Court must award costs for court fees; deposition costs for transcribing, recording and travel; service of process fees; and witness fees. In addition, § 1033.5(c) provides discretion to award reimbursement for other costs if they are "reasonably necessary to conduct the litigation, rather than merely convenient or beneficial to its preparation." *Parkinson*, 2010 U.S. Dist. LEXIS 144107, at *40 (quoting *Science App. Int'l corp. v. Super. Ct.*, 39 Cal. App. 4th 1095, 1103 (1995)). Class Counsel has incurred $13,473.31 in recoverable costs. Counsel also seeks $14,030.55 in costs "reasonably necessary to conduct the litigation." The recoverable and necessary costs are summarized in <u>Appendix 2</u>, below.[9] Accordingly, the Court should grant Class Counsel's request for $27,503.86 in costs.

## VIII.   THE REQUESTED INCENTIVE AWARDS ARE FAIR AND REASONABLE

Incentive awards "are fairly typical in class action cases," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), and "serve an important function in promoting class action settlements," *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 U.S. Dist. LEXIS 16314, at *16 (E.D.N.Y. Aug. 1, 2002). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Whether to authorize an incentive payment to a class representative is a matter within the court's discretion.

---

[9] As discussed above, in addition to the costs requested, Class Counsel incurred thousands of dollars of otherwise reasonable costs for which they do not seek reimbursement because they are reflected in Class Counsel's rates.

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

Factors courts consider include:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Considering these factors, the requested incentive awards of $10,000 and $7,500 for Ms. Hohenberg and Ms. Rude-Barbato, respectively, are fair and reasonable. Similar awards, even greater, have been approved by courts in this Circuit. *See, e.g.*, *Rausch v. Hartford Fin. Servs. Group*, 2007 U.S. Dist. LEXIS 14740 (D. Or. Feb. 26, 2007) ($10,000 award); *Cook v. Niedert*, 142 F.3d 1004, 1016 (9th Cir. 1998) (affirming $25,000 award); *Van Vranken*, 901 F. Supp. at 299 ($50,000 award). The requested awards are easily justified in this case.

**A.      The Notoriety & Personal Difficulties Encountered by the Class Representative**

Incentive awards are particularly appropriate where class representatives have attracted significant media attention and notoriety as a result of the litigation, and experienced personal difficulty as a result. *See Wilson v. Airborne, Inc.,* 2008 U.S. Dist. LEXIS 110411, at *37 (C.D. Cal. Aug. 13, 2008) (granting incentive award based in part on "the media attention [the class representative] endured after announcement of the settlement").

This case received enormous media attention, and as the first filer, Ms. Hohenberg was the ostensible face of the litigation. Marron Decl.¶¶ 6-7; Fitzgerald Decl. ¶¶ 18-19; Hohenberg Decl. ¶ 15. Unfortunately, as a result, she was unfairly portrayed in the media and even harassed online. *See* Marron Decl. ¶¶ 6-7 & Ex. 1;[10] Hohenberg Decl. ¶¶ 15-18. In addition, Ms. Hohenberg was subject to harassing phone calls at work, causing her embarrassment. Hohenberg Decl. ¶ 16.

Although not to the same degree, Ms. Rude-Barbato also experienced scrutiny and notoriety as a result of the lawsuit. Rude-Barbato Decl. ¶ 14. To address the criticism, Ms. Rude-Barbato courageously decided to appear on Good Morning America to defend herself and explain to the public that she

---

[10] The examples attached to the Marron Declaration represent just a tiny fraction of the sordid material online about Ms. Hohenberg. Even a cursory Google search for "Hohenberg AND Nutella" will reveal a shocking amount and level of relentlessly negative and ugly comments, even by legitimate news media, about Ms. Hohenberg, which greatly affected her life during the pendency of this action, especially at the beginning and starting on April 26, when news broke of the Settlement.

22

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

1   brought the lawsuit on behalf of thousands of moms, out of a genuine desire for truth in advertising. *Id.*

2   Both Plaintiffs were subject to further embarrassment and discomfort by virtue of being

3   examined during their depositions on sensitive personal matters such as their and their families' food

4   choices. Moreover, years of Plaintiffs' personal purchases were revealed after Ferrero subpoenaed

5   records of their Costco purchasing history. Marron Decl. ¶ 8. The disclosure of such personal

6   information weighs in favor of an incentive award.

7   In sum, the notoriety and extreme amount of unwanted negative attention Plaintiffs received

8   justifies providing Ms. Hohenberg with the requested $10,000 award, and Ms. Rude-Barbato with the

9   requested $7,500 reward, for persevering and seeing the suit through notwithstanding.

10   **B.    The Amount of Time and Effort Expended by the Class Representative**

11   An incentive award is appropriate where the "class representative [] remain[s] fully involved and

12   expended considerable time and energy during the course of the litigation." *Razilov v. Nationwide Mut.*

13   *Ins. Co.*, 2006 U.S. Dist. LEXIS 82723, at *12 (D. Or. Nov. 13, 2006). Here, both Plaintiffs have been

14   significantly involved in this action throughout its pendency. This includes, for both Plaintiffs, preparing

15   for deposition and being deposed; reviewing court filings and rulings; reviewing and responding to

16   discovery, including drafting initial interrogatory responses for counsel and searching for and producing

17   documents; actively participating in two settlement conferences with Judge Bencivengo; and having

18   continuous meetings and communications with Class Counsel throughout the litigation. Hohenberg

19   Decl. ¶¶ 3-12; Rude-Barbato Decl. ¶¶ 2-11; Marron Decl. ¶ 8. Consequently, this factor favors the

20   requested incentive award. *See Garner v. State Farm Mut. Auto Ins. Co.*, 2010 U.S. Dist. LEXIS 49477,

21   at *46-47 (N.D. Cal. Apr. 22, 2010) (approving $20,000 incentive award where plaintiff "made herself

22   available for deposition on two separate occasions . . . ; met with Class Counsel on six separate

23   occasions; attended the full-day Court-ordered appraisal hearing; spoke with Class Counsel and their

24   staff on many occasions; reviewed all major pleadings; and . . . responded to interrogatories and

25   document requests").

26   **C.    Personal Benefit Enjoyed as a Result of the Litigation**

27   Incentive awards are appropriate when a class representative will not benefit beyond ordinary

28   class members. For example, where a class representative's claim makes up "only a tiny fraction of the

1 common fund," an incentive award is justified. *Van Vraken*, 902 F. Supp. at 299. Here, Plaintiffs have

2 not received any unusual or extraordinary benefit, justifying their requested awards. *See Razilov*, 2006

3 U.S. Dist. LEXIS 82723, at *12 (approving $10,000 incentive award for representative who's "only

4 personal benefit . . . from a successful result in this litigation is the . . . entitlement of any class member .

5 . . together with the likelihood that any further [statutory] violations . . . would cease").

6      **D.    Remaining Factors**

7      The other *Van Vraken* factors (such as risk and duration of the litigation) do not particularly

8 inform the incentive award analysis. Neither factor, however, weighs against providing incentive

9 awards. Because of the extreme notoriety and personal hardships Plaintiffs have endured as a result of

10 volunteering for this suit, however, and because of their substantial contribution and significant attention

11 to the case (including to the 49-state settlement as the architects of this lawsuit) and willingness to take

12 their role of protecting the interests of the Class seriously, for example attending both settlement

13 conferences and participating in the negotiations and the decision to accept the Settlement on behalf of

14 the Class, Plaintiffs' incentive award requests are fair and reasonable, and should be approved.

15 <u>**CONCLUSION**</u>

16      Plaintiffs respectfully request that their motion be granted.

17 DATED: May 25, 2012                      Respectfully Submitted,

18                                     /s/ Jack Fitzgerald
                                    Jack Fitzgerald

19                                     **THE WESTON FIRM**

20                                     GREGORY S. WESTON
                                    JACK FITZGERALD

21                                     MELANIE PERSINGER
                                    COURTLAND CREEKMORE

22                                     1405 Morena Blvd., Suite 201
                                    San Diego, CA 92109

23                                     Telephone: (619) 798-2006

24                                     **LAW OFFICES OF RONALD A.**
                                    **MARRON, APLC**

25                                     RONALD A. MARRON
                                    MAGGIE REALIN

26                                     B. SKYE RESENDES
                                    3636 4th Street, Suite 202

27                                     San Diego, CA 92103
                                    Telephone: (619) 696-9006

28                                     *Class Counsel*

## APPENDIX 1: CLASS COUNSEL'S LODESTAR

**FEE LODESTAR (through May 23, 2012):**

| Firm and Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| **Law Offices of Ronald A. Marron, APLC:** | | | |
| Ronald A. Marron | 476.4 | $650 | $309,660 |
| Margarita Salazar | 93.0 | $450 | $41,850.00 |
| Maggie Realin | 156.3 | $375 | $58,612.50 |
| Skye Resendes | 17.0 | $385 | $6,545.00 |
| Law Clerks | 56.9 | $225 | $12,802.50 |
| Paralegals | 53.8 | $215 | $11,567.00 |
| | | **Subtotal:** | **$441,037.00** |
| **The Weston Firm:** | | | |
| Gregory S. Weston | 196.3 | $525 | $103,057.50 |
| Jack Fitzgerald | 614.7 | $525 | $322,717.50 |
| Courtland Creekmore | 4.4 | $500 | $2,200.00 |
| Melanie Persinger | 94.6 | $300 | $28,380.00 |
| Paralegals | 274.5 | $195 | $53,527.50 |
| | | **Subtotal:** | **$509,882.50** |
| **Post-Application Hours (Est.)[11]** | 100 | $350 | $35,000.00 |
| | | **Subtotal:** | **$35,000.00** |
| | | **TOTAL:** | **$985,919.50** |

**LITIGATION EXPENSE LODESTAR**

| | |
|---|---|
| Law Offices of Ronald A. Marron | **$18,066.15** |
| Weston Firm | **$9,437.71** |
| **TOTAL:** | **$27,503.86** |

---

[11] Class Counsel will perform additional work after this application is filed on May 25, minimally including attending the July 9 Final Approval Hearing, reviewing and providing input on Ferrero's final television commercial concepts before they air, and coordinating with Ferrero, New Jersey counsel and the Class Administrator on final claims processing (for example, creating a set of procedures and rules to audit and de-duplicate the claims). Class Counsel may also be required to respond to objections, which could substantially increase the additional time spent. To account for the known additional work and the possibility of more if there are objections, Class Counsel estimates 100 post-application hours, which Class Counsel believes does not significantly overstate additional hours if there are no objections, or understate additional hours if there are objections. Moreover, in an exercise of discretion and in recognition that such work may be performed by various attorneys and staff, Class Counsel value these additional hours at a modest $350 per hour, representing the approximate average billing rate of all timekeepers ($334.38).

A1

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

## APPENDIX 2: CLASS COUNSEL'S EXPENSES

### Marron Firm Expenses Recoverable Under Cal. Civ. P. Code § 1033.5

| Date | Description | Amount |
|------|-------------|--------|
| 2/1/2011 | Filing Fee for *Hohenberg* Complaint | $350.00 |
| 2/10/2011 | Fee for Service of Process of Complaint on Ferrero U.S.A., Inc. | $30.00 |
| 4/14/2011 | Transcription of Bernard Kreilmann Deposition (half) | $357.25 |
| 4/12/2011 | Fee for non-service of subpoena to Connie Evers | $55.00 |
| 4/13/2011 | Fee for Service of Process of deposition subpoena on Connie Evers | $80.00 |
| 4/25/2011 | Fee for Service of Process of third party subpoena on Aspen Logistics | $124.53 |
| 4/25/2011 | Fee for Service of Process of third party subpoena on Believe Media | $126.30 |
| 4/28/2011 | Witness Fee for Connie Evers deposition (originally set for May 25, 2011) | $43.30 |
| 4/28/2011 | Fee for Service of Process of subpoena on Isabelle Lambotte | $145.00 |
| 7/25/2011 | Airfare for RM travel to Portland, Oregon for Connie Evers deposition | $436.80 |
| 7/25/2011 | Lodging in Portland, Oregon for Connie Evers deposition (RM and JF of Weston Firm) | $392.63 |
| 7/25/2011 | Car rental in Portland, Oregon for Connie Evers deposition | $166.85 |
| 7/25/2011 | Transcription of Connie Evers deposition (half) | $2,173.85 |
| 7/25/2011 | Connie Evers deposition videographer (half) | $708.75 |
| 7/26/2011 | Parking for Connie Evers deposition | $10.00 |
| 9/1/2011 | Fee for Service of Process of deposition subpoena on Chris Montemurro | $185.00 |
| 9/5/2011 | Fee for Service of Process of subpoena on Elise Titan, MS&L New York (wrong address) | $87.50 |
| 9/29/2011 | Transcript of Athena Hohenberg Deposition (half) | $621.13 |

A2

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

| Date | Description | Amount |
|------|-------------|--------|
| 9/30/2011 | Transcript of Laura Rude-Barbato (half) | $655.73 |
| 10/14/2011 | Fee for Service of third party document subpoena on Zenithmedia | $122.50 |
| 10/14/2011 | Fee for Service of third party document subpoena on Vision Creative Group | $125.00 |
| 10/14/2011 | Fee for Service of third party document subpoena on Merkley +Partners | $105.00 |
| 10/14/2011 | Fee for Service of third party document subpoena on The Wilson Group | $105.00 |
| | Total: | $7,207.12 |

### Additional Marron Firm Expenses Reasonably Necessary to Prosecute Action

| Date | Description | Amount |
|------|-------------|--------|
| 3/28/2011 | "Good for You!" Nutritional Book & Games by Connie Evers (preparation/exhibit for deposition) | $22.73 |
| 4/25/2011 | Fee for Cal Kik Investigations skip trace on Isabelle Lambotte, Princeton, NJ. | $85.00 |
| 5/25/2011 | Flat rate charge for case deadline calculations (CompuLaw Deadlines on Demand software) | $230.00 |
| 6/20/2011 | Professional Fees to Sterns & Weinroth (New Jersey Local Counsel) for services rendered through May 31, 2011 (half) | $1,162.85 |
| 7/22/2011 | FedEx deposition exhibits and copies to Portland hotel (3 bankers' boxes) | $749.67 |
| 7/25/2011 | Jar of Nutella for use as exhibit in Connie Evers deposition | $3.49 |
| 7/27/2011 | RM lodging in San Francisco (Hotel Whitcomb) for MDL hearing | $137.53 |
| 7/28/2011 | RM flight to San Diego from San Francisco after MDL hearing | $159.40 |
| 7/28/2011 | Professional Fees to Sterns & Weinroth (New Jersey Local Counsel) for services rendered through June 30, 2011 | $528.30 |

A3

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

| Date | Description | Amount |
|------|-------------|--------|
| 9/28/2011 | Professional Fees for Sterns & Weinroth (New Jersey Local Counsel) for services rendered through August 31, 2011 | $2,124.75 |
| 10/19/2011 | Mileage for client transportation to and from ENE | $18.06 |
| 10/24/11 | Professional Fees for Sterns & Weinroth (New Jersey Local Counsel) for services rendered through September 30, 2011 | $4,074.16 |
| 10/26/2011 | Poster-sized copies for Weston Firm of color mechanicals of Nutella print ads produced by third-party (Kinkos) | $72.99 |
| 11/2/2011 | RM airfare to West Palm Beach, FL to participate in joint mediation with Hon. Leo S. Papas (Ret.) | $689.60 |
| 11/9/2011 | Transcript of Class Certification Hearing | $327.50 |
| 11/18/2011 | Professional Fees for Sterns & Weinroth (New Jersey Local Counsel) for services rendered though October 31, 2011 | $445.00 |
| 12/14/2011 | Professional Fees for Sterns & Weinroth (New Jersey Local Counsel) for services rendered through November 30, 2011 | $28.00 |
| | **Total:** | **$10,859.03** |

*Marron Firm Subtotal:*  ***$18,066.15***

### Weston Firm Expenses Recoverable Under Cal. Civ. P. Code § 1033.5

| Date | Description | Amount |
|------|-------------|--------|
| 2/4/2011 | Filing Fee for *Rude-Barbato* Complaint | $350.00 |
| 4/13/2011 | JF Air travel to New Jersey for Bernard Kreilmann (Ferrero CEO) deposition | $578.00 |
| 4/13/2011 | GW Air travel to New Jersey for Bernard Kreilmann (Ferrero CEO) deposition | $538.80 |
| 4/14/2011 | Transcription of Bernard Kreilmann Deposition (half) | $357.25 |
| 7/25/2011 | JF Airfare to Portland, OR for Connie Evers (Nutella spokesperson) deposition | $272.70 |
| 7/25/2011 | Transcription of Connie Evers deposition (half) | $2,173.85 |
| 7/25/2011 | Connie Evers deposition videographer (half) | $708.75 |

A4

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

| Date | Description | Amount |
|---|---|---|
| 9/29/2011 | Transcript of Athena Hohenberg Deposition (half) | $621.12 |
| 9/30/2011 | Transcript of Laura Rude-Barbato Deposition (half) | $665.72 |
| | **Total:** | **$6,266.19** |

### Additional Weston Firm Expenses Reasonably Necessary to Prosecute Action

| Date | Description | Amount |
|---|---|---|
| 6/16/2011 | Flight to San Diego to meet with Scott+Scott (counsel for Glover in NJ action) | $239.40 |
| 6/20/2011 | Professional Fees for Stearns & Weinroth (New Jersey Local Counsel) for services rendered through May 31, 2011 (half) | $1,662.85 |
| 7/24/2011 | Supplies for Deposition of Connie Evers | $199.07 |
| 7/28/2011 | Air travel for GW to MDL hearing in San Francisco | $148.70 |
| 7/28/2011 | Parking for MDL hearing in San Francisco | $9.00 |
| 10/17/2011 | JF airfare to San Diego for ENE | $283.40 |
| 11/7/2011 | JF airfare for trip to San Diego for class certification hearing | $333.40 |
| 11/28/2011 | JF travel from Los Angeles to San Diego for Settlement Conference (Amtrak) | $60.00 |
| 11/28/2011 | JF Flight home from San Diego after Settlement Conference | $202.70 |
| 11/28/2011 | JF Parking at SFO | $33.00 |
| | **Total Expenses:** | **$3,171.52** |

***Weston Firm Subtotal:  $9,437.71***

**GRAND TOTAL:  $27,503.86**

A5

*In re Ferrero Litigation*, Case No. 11-cv-00205 H KSC
MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS