**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MAGGIE REALIN (263639)
*maggie@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone:     (619) 696-9006
Facsimile:      (619) 564-6665

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd. Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:      (480) 247-4553

*Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FERRERO LITIGATION | Case No. 3:11-cv-00205-H-KSC<br>Pleading Type: Class Action<br><br>**DECLARATION OF RONALD A. MARRON IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS**<br><br>Judge: The Honorable Marilyn L. Huff<br>Hearing: July 9, 2012<br>Time: 10:30 a.m.<br>Location: Courtroom 13 |

I, Ronald A. Marron, declare:

1.     I am Class Counsel in this action. I am a member in good standing of the State Bar of California and the United States District Courts for the Northern, Central, Eastern and Southern Districts of California; and of the United States Court of Appeals for the Ninth Circuit. I make this Declaration in support of Plaintiffs' Motion for Approval of Attorney Fees and Inventive Awards. I make this Declaration based on personal knowledge and if called to testify, I could and would testify competently thereto.

#### The Strength of the Settlement

2.     I believe the Settlement affords the Class an important benefit, specifically because Ferrero has agreed to a substantial injunctive relief. For example, Ferrero will change Nutella's label, discontinue the existing television commercials and shoot new commercials with scripts that Class Counsel has reviewed and provided input on. Ferrero also agreed to change Nutella website to remove content attributable to the former Nutella spokesperson, purported children's nutrition expert Connie Evers, and to no longer employ Ms. Evers as Nutella's spokesperson.

3.     As laid out in Plaintiffs' First Amended Consolidated Complaint, the dangers of regularly consuming the amount of sugar and saturated fat in Nutella are well-documented. *See* FACC ¶¶ 35-43. By prominently disclosing Nutella's sugar and fat content on the front label (or "Principal Display Panel") using the Grocery Manufacturers Association front-of-pack nutrition labeling program, consumers will be better informed and able to make choices to promote their health and the health of their children and families. In addition, Ferrero's agreement to stop using advertising suggestive that Nutella is healthy (such as "balanced breakfast") will prevent well-meaning health-conscious consumers from inadvertently exposing themselves and their families to increased health risks.

4.     Even though this alone would be a great benefit for the Class and the public, the Settlement is strong because it also includes a $550,000 fund by which Class Members can be refunded for up to five Nutella purchases. Our calculations, based on the sales information Ferrero provided in this case, show that this amounts to more than 3% of affected sales. False advertising actions such as

1

this one often settle in that range, but without the addition of the extensive advertising and marketing changes Ferrero has agreed to.

5. In sum, based on my experience and knowledge of the facts of this case, this Settlement provides the Class and public a strong benefit, primarily from the extensive injunctive relief, but also because of the addition of a monetary component.

**Media Coverage of the Settlement**

6. The Settlement has received considerable media attention in recent weeks, including being featured on Good Morning America (which interviewed myself and Ms. Rude-Barbato), ABC News, CBS News, npr.org, and many other popular outlets.

7. The portrayal of the Settlement and Plaintiffs in the media, especially Ms. Hohenberg, who was the "face" of the complaint, was difficult for our clients. Ms. Hohenberg and her daughter were ridiculed and harassed for her lawsuit against Ferrero, and her competence as a mother was attacked. There were plenty of negative internet articles about Ms. Hohenberg and her family. In one of them, Ms. Hohenberg was referred to as a "Nutella Nazi" and "a twit and everything that is wrong with this country." In another, a person commented: "Apparently, Mrs. Athena Hohenberg has too much time on her hands! I am embarrassed at the greed, litigiousness and exploitative nature of so many people in our country." *See* **Exhibit 1** containing a compilation of the media reaction to the lawsuit and/or settlement and a "hate letter" addressed to Ms. Hohenberg.

**Class Representatives' Efforts in Prosecuting this Action**

8. Both class representatives devoted substantial amount of time to this litigation. Ms. Hohenberg and Ms. Rude-Barbato met with their counsel frequently, both telephonically and in person, to discuss the developments of their case and prepare for their respective depositions. The class representatives attended two settlement conferences with Judge Bencivengo, reviewed pleadings and other legal documents, provided their answers to Ferrero's Interrogatories and searched for documents responsive to Ferrero's document requests. Further, both Ms. Hohenberg and Rude-Barbato were subject to embarrassment or discomfort by virtue of being examined during their depositions on

1  sensitive personal matters such as their family's food choices, and having years of their personal

2  purchases revealed after Ferrero subpoenaed records of their Costco purchasing history.

3  <u>**Qualifications of Class Counsel**</u>

4          9.      I have practiced civil litigation for over 17 years. Approximately 15 years ago, I started

5  my own law firm with an emphasis in consumer fraud. Over the years, I have acquired extensive

6  experience in class actions and other complex litigation and have obtained large settlements as lead

7  counsel. In recent years, I have devoted almost all of my practice to the area of consumer fraud, false

8  and misleading labeling of food, nutrition or over-the-counter products. I devoted 476.4 hours to this

9  action.

10         10.     In appointing my firm Interim Lead Co-Class Counsel back in March of 2011, this Court

11 recognized that Class Counsel "appears to be well qualified to represent the interest of the purported

12 class and to manage this litigation." *Hohenberg v. Ferrero U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 38471,

13 at *6 (S.D. Cal. Mar. 22, 2011). Subsequently, when my firm obtained certification of the proposed

14 class, this Court reaffirmed its finding that my firm is adequate Class Counsel. *See In re Ferrero Litig.*,

15 278 F.R.D. 552, 559 (S.D. Cal. 2011).

16         11.     Several other courts have recognized my firm's ability to represent plaintiff classes in

17 consumer fraud actions:

18    •   On November 14, 2011 my firm obtained the certification of a nationwide class of

19        consumers who purchased Qunol CoQ10, a dietary supplement making misleading efficacy

20        claims. *See Bruno v. Quten Research Inst., LLC*, 2011 U.S. Dist. LEXIS 132323 (C.D. Cal.

21        Nov. 14, 2011). My firm then successfully defeated the defendants' motion to decertify the

22        class following the Ninth Circuit's decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d

23        581 (9th Cir. 2012). *See Bruno v. Eckhart Corp.*, 2012 U.S. Dist. LEXIS 30873 (C.D. Cal.

24        Mar. 6, 2012).

25    •   On June 14, 2011, the Honorable Richard Seeborg appointed my firm Interim Class Counsel

26        in a deceptive food labeling case. *See Chacanaca v. Quaker Oats Co.*, 2011 U.S. Dist.

27        LEXIS 65023, at *8-9 (N.D. Cal. June 14, 2011) ("There is no question here that both the

28

3

Weston/Marron counsel…have ample experience handling class actions and complex litigation. It is also clear that both have particular familiarity with suits involving issues of mislabeling in the food industry.")

- I was appointed class counsel in *Peterman v. North American Company for Life and Health Ins., et al.*, No. BC357194, (L.A. Co. Sup. Ct.), which was litigated for over 4 years and achieved a settlement of approximately $60 million for consumers. In granting preliminary approval of the settlement, the Hon. Carolyn B. Kuhl noted that "the excellent work that the plaintiffs' side has done in this case has absolutely followed through to the settlement…The thought and detail that went into the preparation of every aspect was very impressive to me." Excerpts from Transcript of Dec. 21, 2009 Hearing, at 2:12-17, a true and correct copy of which is attached hereto as **Exhibit 2.**

- I also served as class counsel in *Clark v. National Western Life Insurance Company,* No. BC321681 (L.A. Co. Sup. Ct.), a class action that, after litigating the case for well over 6 years, resulted in a settlement of approximately $25 million for consumers.

- In *Iorio v. Asset Marketing*, No. 05cv00633-IEG (CAB) (S.D. Cal.), I was appointed class counsel on August 24, 2006, following class certification, which was granted on July 25, 2006 by the Honorable Irma E. Gonzalez. Dkts. Nos. 113 and 121.

- After nearly 6 years of intensive litigation, a settlement valued at $110 million was reached in *Iorio, supra*, and approved on March 3, 2011, by the Honorable Janis Sammartino. Dkt. No. 480. Final Order approving class action settlement was entered on Mar. 3, 2011, commenting that class counsel were "highly experienced trial lawyers with specialized knowledge in insurance and annuity litigation, and complex class action litigation generally" and "capable of properly assessing the risks, expenses, and duration of continued litigation, including at trial and on appeal." Judge Sammartino also noted "the complexity and subject matter of this litigation, and the skill and diligence with which it has been prosecuted and defended, and the quality of the result obtained for the Class." Excerpts from March 3, 2011

4

1    Order, at 7:18-23 and 17:25-27, a true and correct copy of which is attached hereto as
2    **Exhibit 3** attached hereto.

3    • Also, On March 1, 2012, the Honorable Janis L. Sammartino appointed my firm Interim
4    Class Counsel in an action styled *Margolis et al. v. The Dial Corporation, et al.*, currently
5    pending in the United States District Court Southern District of California, Case No. 3:12-
6    cv-00288-JLS-WVG (Dkt. No. 14). This case involves an OTC pheromone soap product
7    that its manufacturer alleges enhances a man's sexual attraction to women.

8    12.    My firm has recently reached settlements in two other false labeling actions. Both of
9    these settlements were preliminary approved by the court:

10   13.    On February 27, 2012, my firm settled a case against French homeopathic giant Boiron,
11   Inc., pending in the Southern District of California, styled *Gallucci et al. v. Boiron, Inc., et al.*, Case
12   No. 3:11-CV-2039 JAH NLS. On March 6, 2012, the Plaintiffs filed a Motion for Preliminary
13   Approval of Settlement, unopposed by Defendants. (Dkt. No. 64). On April 25, 2012, the Honorable
14   John A. Houston granted the preliminary approval, noting that:

15          During the pendency of the Litigation, Class Counsel conducted an extensive
16          examination and evaluation of the relevant facts and law to assess the merits of the named
17          plaintiffs' and class claims to determine how best to serve the interests of Plaintiffs and
18          the Class. . . . Class Counsel conducted thorough review of the Food, Drug and Cosmetic
19          Act, its numerous changes over the years, and the Act's implementing regulations. Class
20          Counsel have carefully considered the merits of Plaintiffs' claims, and the defenses raised
21          by Defendants.

22   *Gallucci* Dkt. No. 89 at i. Accordingly, Judge Houston appointed my firm and the Weston Firm as
23   Class Counsel, finding that they "will fairly and adequately protect the interests of the Class . . . [and]
24   are experienced and competent to prosecute this matter on behalf of the Class." *Id.* at iii-iv.

25   14.    On March 13, 2012, my firm settled a case against manufacturers of OTC probiotic
26   supplement products, pending in the Southern District of California, styled *Burton v. Ganeden Biotech,*
27   *Inc. et al.*, Case No. 3:11-cv-01471-W-NLS. A Joint Motion for Preliminary Approval of Settlement,

28

5

1   (Dkt. No. 38) in this action was granted on April 16, 2012 (*Id.* at 42). A Fairness Hearing in this case is

2   set for August 21, 2012. (*Id.*).

3   　　　15.　　My firm's former associate, Margarita Salazar, devoted 93 hours to the prosecution of

4   this action. Ms. Salazar, a Merit Fellows of Law scholarship recipient, and former White House intern,

5   graduated from law school in May 2002. Before joining my firm in 2011, Ms. Salazar worked for large

6   law firms, such as O'Melveny & Myers, Buchannan Ingersoll & Rooney, Bryan Cave, and McLeod

7   Law Group, representing clients in general commercial litigation as well as class actions.

8   　　　16.　　My firm's associate, Skye Resendes, devoted 17 hours to the prosecution of this action.

9   Ms. Resendes has been working in the legal field for over 20 years. Prior to attending law school, she

10  worked as a judicial secretary in the San Diego Superior Court for approximately 6 years and as a legal

11  assistant at large and mid-sized San Diego firms (such as DLA Piper and Gray Cary Ware &

12  Freidenrich) for over 15 years. Ms. Resendes is a recipient of the prestigious national Burton Award for

13  excellence in legal writing and graduated from law school *summa cum laude* in 2011. Ms. Resendes has

14  received multiple Witkin Awards for Legal Excellence, a national Inns of Court Outstanding Program

15  Award and was an editor of Thomas Jefferson Law Review for 3 years. Ms. Resendes also clerked for

16  the Honorable Jeffrey B. Barton of the San Diego Superior Court and was a Jefferson Fellow Research

17  Assistant. Her recent briefing in *Allen v. Hyland's* led to a favorable decision on behalf of the firm's

18  clients in the face of the recent 9th Circuit decision in *Mazza v. Am. Honda*. To my knowledge, the

19  *Allen* decision is one of only two post-*Mazza* decisions interpreting that case favorably to plaintiffs.

20  The second favorable decision can be credited to co-counsel here, Jack Fitzgerald and the Weston firm.

21  *See Bruno v. Eckhart Corp.*, 2012 U.S. Dist. LEXIS 30873 (C.D. Cal. Mar. 6, 2012). Since joining my

22  firm in November of last year, Ms. Resendes has dedicated her practice to the prosecution of plaintiff-

23  side consumer cases.

24  　　　17.　　My firm's associate, Maggie Realin, devoted 156.3 hours to the prosecution of this

25  action. After attending law school in Europe where she graduated in 2004 in the top of her class, Ms.

26  Realin obtained an LL.M. degree in Comparative Law from the University of San Diego School of

27  Law. Ms. Realin has clerked for two judges, in both civil and criminal divisions of the Warsaw

28

6

Superior Court. Between 2005 and 2010, Ms. Realin worked at a law office of a certified appellate law specialist in San Diego, California, first as an intern and then as an attorney. Since joining my firm a year ago, Ms. Realin has focused on representing consumers in class actions against large corporations, specifically in the area of deceptive food labeling.

**Class Counsel's Rates**

18.     The Law Offices of Ronald A. Marron's requested rates are as follows:

| Timekeeper | Position | Graduation Year | Hourly Rate |
|---|---|---|---|
| Ronald A. Marron | Principal | 1994 | $650 |
| Margarita Salazar | Associate | 2002 | $450 |
| Maggie Realin | Associate | 2004 | $375 |
| Skye Resendes | Associate | 2011 | $385 |
| Law Clerks | | - | $225 |
| Paralegals | | - | $215 |

19.     These rates are consistent with the prevailing rates for attorneys of similar experience, skill and reputation in this District.

20.     For example, in March 2011, the Honorable Janis L. Sammartino approved the rate of $750 for the top three billers in *Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*, the case where I served as a Class counsel. I was awarded my fees based on my hourly rate of $595, after having voluntarily reduced my rate, in deference to my co-counsel under the circumstances in that case, and in an exercise of billing discretion, which would otherwise have been $650. 2011 U.S. Dist. LEXIS 21824, at *31 (S.D. Cal. Mar. 3, 2011). Specifically, the Honorable Janis L. Sammartino approved the following rates:

/ / /

/ / /

/ / /

/ / /

| Timekeeper | Position[1] | Rate |
|---|---|---|
| Robert S. Gianelli | Partner | $750 |
| Raymond E. Mattison | Partner | $750 |
| Don A. Ernst | Partner | $750 |
| Ronald A. Marron | Partner | $595 |
| Dean Goetz | Not Provided | $595 |
| Sherril Neil Babcock | Not Provided | $575 |
| Christopher D. Edgington | Associate | $575 |
| Jully C. Pae | Associate | $500 |
| Richard R. Fruto | Associate | $410 |
| Joanne Victor | Not Provided | $450 |
| Scott Juretic | Not Provided | $410 |
| Paralegals | - | $195 |

21.     Similarly, several Southern District courts have approved specific fee rates similar to those of Class Counsel. These rates are consistent with the prevailing rates for attorneys of similar experience, skill and reputation. For example, several courts in this district have approved fee ranges into which Class Counsel's rates easily fall. For example, in *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011), the Honorable Cathy Ann Bencivengo—the Magistrate Judge who assisted in reaching the Settlement Agreement in this case—affirmed rates of "$675 [sic] for an experienced partner's time..." *Id*. at 644.[2]

---

[1] *See Iorio*, No. 5-cv-633-JLS-CAB (S.D. Cal.), Dkt. No. 469 at 16-19 (fee motion describing timekeepers' experience).

[2] *See Hartless v. Clorox Co.*, No. 06-cv-2705-CAB (S.D. Cal.), Dkt. Nos. 82, 84-85, 87-88 (declarations in support of motion for attorneys fees).

22.     Other California district courts have approved even higher attorney fee rates. For example, in *CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*, 2012 WL 20539 (N.D. Cal. Jan. 5, 2012), the court found the hourly rates of two top billers reasonable at $1100 and $850. Case No. C05-03649, Dkt. No. 342. Even though the defendants appealed the attorneys' fees award, the Ninth Circuit affirmed the district court's finding that the requested fees were justified. *CLRB Hanson Indus., LLC v. Weiss & Assocs., PC*, 2012 WL 20539, at * 1.

23.     Survey data also confirm the reasonableness of Class Counsel's rates. A 2010 survey by the National Law Journal[3] shows rates of firms in Los Angeles from $495-$820 for partners and $270-$620 for associates; and in Irvine from $395-$710 for partners and $285-$450 for associates. According to the same survey, rates of attorneys at Luce, Forward, Hamilton & Scripps' in San Diego are from $350-$670 for partners and $245-$445 for associates.

24.     Thus, the firm's requested partner rate of $650, and requested associate rate of $450, $385 and $375, based on experience, fall within and below the average/mean range of the typical rates of a San Diego law firm that practices complex litigation. *See generally Catala v. Resurgent Capital Servs., L.P.*, 2010 U.S. Dist. LEXIS 63501, at *19 n.3 (S.D. Cal. June 22, 2010) (relying on same to award fees).

25.     The Law Offices of Ronald A. Marron's blended rate of $516.80 in this case ($441,037.00 divided by 853.4 hours) also falls below that recently approved by another Southern District court. *Stuart v. RadioShack Corp.*, 2010 U.S. Dist. LEXIS 92067, at *16-18 (S.D. Cal. Aug. 9, 2010) (finding blended rate of $708 reasonable, "particularly when no multiplier is being sought on top of the lodestar").

26.     Finally, the Law Offices of Ronald A. Marron's law clerk rate of $225 and paralegal rate of $215 is in a range commonly approved by other courts in this district. *See, e.g.*, *Craft v. County of San Bernardino*, 624 F. Supp. 2d at 1122 (finding $200 rate reasonable for law clerks and $225 for

---

[3] Copies of the NLJ surveys are in Class Counsel's possession but are not being filed due to their volume.

9

1  paralegals); *Iorio*, 2011 U.S. Dist. LEXIS 21824, at *32 (finding $195 rate reasonable for paralegals);

2  *Vasquez*, 2011 U.S. Dist. LEXIS 83696, at *6 (approving rates between $160 and $210 for paralegals);

3  *Create-A-Card*, 2009 WL 3073920, at *2 (approving rates of $150-$235 for paralegals).

4  <u>**Class Counsel's Time Billed**</u>

5  27.    Our firm's practice is to keep contemporaneous records for each timekeeper and to

6  regularly record time records in the normal course of business; and we kept time records in this case

7  consistent with that practice. Moreover, our firm's practice is to bill in 6-minute (tenth-of-an-hour)

8  increments. The firm's billing records are available to submit to the Court for in camera review upon

9  request.

10  28.    The total lodestar for the Law Offices of Ronald A. Marron is $441,037.00, reflecting

11  742.7 attorney hours, 56.9 law clerk hour and 53.8 paralegal hours (853.4 total hours).[4] The Law

12  Offices of Ronald A. Marron's lodestar is summarized in Appendix 1 to Plaintiffs' fee motion. Prior to

13  finalizing the firm's lodestar, we carefully reviewed our hours and made cuts for time entry errors,

14  duplications, and instances where we determined the hours should be reduced or not billed.

15  29.    Although the hours billed may be relatively high given the length of the litigation, that is

16  so because of its intensity, as the Docket evidences, including four complaints (Hohenberg, Rude-

17  Barbato, Master Consolidated Complaint, First Amended Consolidated Complaint); briefing many

18  substantive and procedural motions and an MDL motion; attending three settlement conferences or

19  mediations; and engaging in substantial written discovery and depositions, including from nine third

20  parties, all in the course of less than a year. The time also reflects Class Counsel's work on behalf of

21  Plaintiffs in attempting to intervene in the New Jersey actions in order to protect the interests of the

22  then-putative class from both inconsistent decisions and judgments which might have an effect in this

23  case, and from a reverse auction scenario by counsel more interested in settling the case away from

24  Plaintiffs than litigating it for their benefit.

25

26  _____

27  [4] As noted in Class Counsel's fee application, App. 1 n.1, Class Counsel's total lodestar includes post-application time at a blended rate. That time, however, is not specifically addressed here.

28

*In re Ferrero Litigation,* Case No. 3:11-CV-00205-H-KSC
DECLARATION OF RONALD A. MARRON IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

**Class Counsel's Expenses**

30.     A summary of my firm's expenses in the amount of $18,066.15 is provided in Appendix 2 to Plaintiffs' fee application. This includes $7,207.12 in recoverable costs, consisting of costs for court fees, deposition costs for transcribing, recording and travel, and service of process fees, and $10,859.03 in costs reasonably necessary to prosecute this action, including, for example, travel costs associated with court hearings, transportation and parking costs, costs for local New Jersey counsel (as required by that court's local rules), costs of attending mediation in Florida and deposition supplies.

31.     My firm incurred additional costs for which it does not seek reimbursement, including photocopying, telephone and fax charges, legal research and PACER, postage and meals. I estimate those charges to be more than $10,000.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on May 25, 2012 in San Diego, California.

/s/ Ronald A. Marron
Ronald A. Marron

*In re Ferrero Litigation,* Case No. 3:11-CV-00205-H-KSC
DECLARATION OF RONALD A. MARRON IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARDS

1    DATED: May 25, 2012                         Respectfully Submitted,

2                                                /s/ Jack Fitzgerald
3                                                Jack Fitzgerald

4                                                **THE WESTON FIRM**
                                                 GREGORY S. WESTON
5                                                JACK FITZGERALD
                                                 MELANIE PERSINGER
6                                                COURTLAND CREEKMORE
                                                 1405 Morena Blvd., Suite 201
7                                                San Diego, CA 92109
                                                 Telephone: (619) 798-2006
8                                                Facsimile: (480) 247-4553

9                                                **LAW OFFICES OF RONALD
10                                               A. MARRON, APLC**
                                                 RONALD A. MARRON
11                                               MAGGIE REALIN
                                                 B. SKYE RESENDES
12                                               3636 4th Street, Suite 202
                                                 San Diego, CA 92103
13                                               Telephone: (619) 696-9006
                                                 Facsimile: (619) 564-6665
14

15                                               *Class Counsel*

16

17

18

19

20

21

22

23

24

25

26

27
                                    12
28

**Table of Exhibits**

| EXHIBIT NUMBER | EXHIBIT DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit 1 | News Articles, Comments, and Letters regarding Case and Athena | 1-10 |
| Exhibit 2 | Excerpts from Transcript of Dec. 21, 2009 Hearing at 2:12-17 | 11 |
| Exhibit 3 | Iorio's Final Order: (1) Approving Class Action Settlement, (2) Awarding Class Counsel Fees and Expenses, (3) Awarding Class Representatives Incentives, (4) Permanently Enjoining Parallel Proceedings, and (5) Dismissing Action with Prejudice | 12-35 |

# EXHIBIT 1

# Dear Mrs. Athena Hohenberg

Today I read in a magazines, that you were shocked about the fact, how unhealthy "Nutella" is. It was written that you found out, that the sweet breakfast chocolate spread is not as balanced as the promotion of Ferrero does mention it. You recognized that Nutella is not better than any sweets. And you observed on top of it, that Nutella has a big amount of saturates.

Well, yes: Nutella is sweet! I guess it is as sweet in San Diego/ California/ USA as it is in Bardenberg/ North Rhine-Westphalia/ Germany. Here in my little hometown it tastes great. And I love it!

O.K., I enjoy Nutella just once in a while. Not every day. And not the whole day. And not excessive.

Because I can read. After all on my glass of Nutella it is written, what kind and in which amount ingredients are in Nutella. That help me to discipline myself not to cram full in me that stuff.

Of course I don´t know, if it is written on your glass aswell. Therefore I place an image just here. Sorry it´s written in German language, but might look similar to yours in american English. Maybe you have a look at the backside of your glass Nutella.

I understand, that you are a very responsible mother. You really live an exemplary function towards your child. And in that function it must worry you, when a commercial is misleading.

Nevertheless I understand your worries, I think we are quiet different.

First of all: I do not eat Nutella all day long. I mentioned it.

Secondly: I´m aware, that too much Nutella can´t be healthy. But isn´t it normal with every thing? To much Big

| NÄHRWERTE | | pro 100 g | pro 15 g | GDA*/15 g |
|---|---|---|---|---|
| Energiewert | kcal | 547 | 82 | 4 % |
| | kJ | 2282 | 343 | |
| Eiweiß | g | 6,6 | 1,0 | 2 % |
| Kohlenhydrate | g | 56,8 | 8,5 | 3 % |
| davon Zucker | g | 55,9 | 8,4 | 9 % |
| Fett | g | 31,8 | 4,8 | 7 % |
| davon gesättigte Fettsäuren | g | 10,7 | 1,6 | 8 % |
| Ballaststoffe | g | 3,5 | 0,5 | 2 % |
| Natrium | g | 0,040 | 0,006 | 0 % |

*GDA: Richtwert für die Tageszufuhr eines Erwachsenen basierend auf einer Ernährung mit durchschnittlich 2.000 kcal. Der Bedarf an Nährstoffen kann nach Geschlecht, Alter, körperlicher Aktivität und anderen Faktoren höher oder niedriger sein.

| | | pro 100 g | RDA**/100 g | pro 15 g | RDA**/15 g |
|---|---|---|---|---|---|
| Vitamin E | mg | 7,8 | 65 % | 1,2 | 10 % |
| Kalium | mg | 450 | 22 % | 68 | 3 % |
| Calcium | mg | 128 | 16 % | 19 | 2 % |
| Eisen | mg | 2,5 | 17 % | 0,4 | 3 % |
| Magnesium | mg | 79 | 21 % | 12 | 3 % |

**RDA: Prozentsatz der empfohlenen Tagesmenge

Macs makes you sick. To much Cola makes you sick. To much coffee makes you sick. To much of something makes you sick. It´s normal! To me and a lot of people here in Germany.

Thirdly: I don´t believe any commercials. Of course they want to sell their products and of course in their understanding everything is great with it. Didn´t you know this?

And I tell you, I don´t believe everything what is said in TV. And I don´t believe everything what is written in newspapers and magazines. So maybe this article about you and your fight against Ferrero is a fake, too. Eventually I can´t believe this story.

Be assure, if I would stay in San Diego, I would buy Nutella there, too. Just like you. Maybe I would not

EXHIBIT 1 PAGE 1



eat as much as you obviously do. I´m sure, I would love Nutella there as I love it here, in good old Germany.

But don´t worry. I´m not planning to visit the USA. Never ever. I surely believe, it´s too dangerous out there! On that score I´ve seen a lot on TV and read in newspapers about your country. I admire you somehow, that you are still living there.

Anyway, take care, yours Ralf Pauli.

P.S.: Excuse kindly my spelling mistakes. I apologize for that. No reason to engage your lawyer!

**Teilen Sie dies mit:**

**Gefällt mir:** ★ Gefällt mir  Sei der Erste, dem diese(r) Artikel gefällt.

This entry was posted on 28. April 2012. It was filed under Highlights, Humor and was tagged with California, court, Ferrero, north rhine westphalia, Nutella, San Diego, san diego california, Sweat, sweet breakfast, USA.

## 4 Antworten

**rosa**

this is great! thank you for the fun readin! I am a fan of nutella too. i am from italy, and live in the USA. I do not have a TV, So i do not know how misleading the advertising are. ha ha! yours is a great letter!

30. April 2012 um 05:15

Antwort

**Ralf Pauli**

Hi Rosa,

thank you very much for your comment above, which made me very happy!

Since you love nutella as I do, too, maybe we both start a worldwide "pro Nutella campaign"?! Should ask Ferrero, if they support us. With some glasses of Nutella for free...;–))

In bocca al lupo!

Ralf

30. April 2012 um 11:35

EXHIBIT 1 PAGE 2



Antwort

**Liz**

Apparently, Mrs. Athena Hohenberg has too much time on her hands! I am embarrassed at the greed, litigiousness and exploitative nature of so many people in our country. (sigh) I wonder what life lesson this episode will be imparting to her impressionable daughter? Ralf, please don't let this kind of nonsense keep you away from the USA! I promise you, not everyone is like her! 😳

1. Mai 2012 um 15:02

Antwort

**Michael**

Brilliant !
Pure common sense.

Thank you!

Michael

3. Mai 2012 um 16:55

Antwort

Kommentar verfassen

Gib hier Deinen Kommentar ein ...

Bloggen Sie auf WordPress.com. | Theme: Modularity Lite von Graph Paper Press.

EXHIBIT 1 PAGE 3

Case 3:11-cv-00205-H-KSC Document 14-3 Filed 05/25/12 Page 19 of 52

# The Wiseass Wife

## Loving DIY & Health Tips, Dripping with Sarcasm

28 Apr 2012

1 Comment

## Athena Hohenberg, the Nutella Nitwit, Sues Nutella for Not Being Healthy



(http://thewiseasswife.files.wordpress.com/2012/04/37190b.jpg)Athena Hohenberg, you are a twit and everything that is wrong with this country. And shame on you for smearing the name of Nutella; the very delicious spread that myself and fellow Pinterest pinners alike put in just about everything?

If you have not heard by now, Athena Hohenerg, AKA the Nutella Nazi, brought a class-action lawsuit against these chocolate-hazelnut angels because they tricked her ~~delicate~~ dumb-as-bricks mind into believing that Nutella was good for children.

Nutella's parent company Ferrero USA, Inc. has been ordered to cough-up over $3 million, with over $2 million to be given to consumers who file a claim. According to the New York Daily News:

EXHIBIT 1 PAGE 4

As part of the settlement, anyone in the U.S. who purchased Nutella between January 1, 2008 and February 3, 2012 (or for Calif. residents between August 1, 2009 and January 23, 2012) can file a claim. People can claim their purchases until July 5, 2012 and expect $4 for a single purchase and up to 5 jars for a maximum award of $20 per household.

Apparently Miss Hohenberg decided on a class-action lawsuit against the Nutella makers because she saw an advertisement that implied that Nutella should be incorporated as part of a healthy breakfast, but then was horrified to learn that, in fact, it was (gasp) a sugary chocolate spread. Unfortunately she found this out after she had been dosing her kid with a daily breakfast consisting of Nutella. Apparently she lacked the intelligence to, uh, I don't know, turn over the jar and read the ingredients label.

And this twit is parenting a child?

Well this is one Californian who is not only going to decline my right to a Nutella claim, but I will buy MORE! Because I love you Nutella, and all of your chocolatey, hazelnut-y, sugary goodness. You will adorn my cupcakes, grace my pancakes, and when I am PMS'ing, be shoveled into my mouth full-bore like the antidote to aging. VIVA LA NUTELLA! NUTELLA STRONG!



(http://thewiseasswife.files.wordpress.com/2012/04/37190b-1.jpg)

Posted in General, Health, Products I Love and tagged athena hohenberg, nutella, nutella lawsuit
← Older Entry (http://thewiseasswife.com/2012/04/26/my-640-million-lotto-ticket/)

# One thought on "Athena Hohenberg, the Nutella Nitwit, Sues Nutella for Not Being Healthy"

EXHIBIT 1 PAGE 5

1.     tiffany on <u>April 29, 2012 at 10:30 am</u> said:
Good article. Athena Hohenberg is a NUTCASE.

Nutella and Europe should sue her for damaging the company's name and reputation. Consider her name, Athena Hohenberg, Her name sounds very European to me. Seriously, Nutella in Europe is like peanut butter here in the USA. Everyone there knows its great with fruit and fruit is healthy. But nobody in Europe is stupid enough to beleive that Nutella alone is as healthy as fruit. But rather a great way to get your children to eat fruit and get some nutrition. Better than a candy bar without fruit. Therefore one reason she needs to be sued, likely she is from or has a European background (Nutella should check this out) and if so she is using California sue happy, to make some gain or just damage the reputation of the company. Come on, she already knew about Nutella from Europe. Did she ever travel or live there? She knows. She needs to be sued!

California should also sue her for her stupidity and for the stupidity of her children who will eventually need public services due to her inability to model positive and a healthy role model for her children.

<u>Reply ↓ (/2012/04/28/athena-hohenberg-the-nutella-nitwit-sues-nutella-for-not-being-healthy/?replytocom=136#respond)</u>

<u>Blog at WordPress.com</u>. Theme: <u>Bold Life</u> by <u>Jay Hafling</u>.



**TJP** • 23 days ago



Sweet merciful crap what a fuc#ing world we live in. Unbelievable. I hope this woman gets brain cancer.

▸ Reply



**Cory** • Port Coquitlam, Canada • 23 days ago



Typical Americans, sue, sue sue. Why is this story on a Canadian site? If I went over the boarder and bought a jar, I still can't get my money back because I don't live in the states. What a bunch of Yahoos.

▸ 1 Reply



**Raiders757** • Norfolk, Virginia • 25 days ago

11  0

I think I'll file a law suit against Anheuser-Busch InBev. All these years I thought Budweiser was the "breakfast of champions" and an alternative to cereal in the mornings. Come to find out, it's just watered down beer.

▸ 4 Replies



**Jmn** • Ottawa, Canada • 23 days ago



FIRST INGREDIENT IS SUGAR IF SHE COULD READ SHE WOULD KNOW. 21grams of sugar is 2 tbsp (which means 2 table spoons) if she just watches tv commercials and takes thei word for it well that is stupidity on her part and the courts who awarded the money. Just like peanut butter are we suing them... More

▸ Reply



**Silvia M** • Santa Monica, California • 22 days ago



The whole story is ridiculous!
North America does not have the culture, the knowledge and the value of healthy nutrition. Nutella purchased here is produced in Canada with some unaware ingredients which are not that healthy as in Italy. The scary part is in America, companies injects... More

▸ Reply



**I'm Right, You're ...** • 25 days ago

55  2

these frivolous lawsuits kill me, my dad had a lawsuit i though was pretty darn legitimate when he went to his eye doctor several times complaining about vision loss and by the time the eye doctor referred my dad to a specialist where it was discovered he had glaucoma he had already lost an... More

▸ 10 Replies



**Truthsayer** • 25 days ago

12  0

So the lawyer pockets a ton of change, the mom gets her cut, and everybody else pays more for the product. How did this woman suffer? This is what is wrong with Amerika.

EXHIBIT 1 PAGE 7


▸ 1 Reply


**Fedup** • 24 days ago                                     **1** 👍 💬 0

This stupid bitch should never have been allowed to breed! How stupid are you to think that this crap is good for you. She probably thinks cigarettes are gooding to make her thin. Well at least with this money she can move out of her trailer park and put her kid in fat camp. Stupid is as stupid does. She should be ashamed of herself! Ah, America!

▸ 1 Reply


**Doctaj** • Austin, Texas • 21 days ago                    **6** 👍 💬 1

I'm BEYOND DISGUSTED that this lady won any money at all! She should have been sued for even attempting to gain from her OWN misunderstanding of the product! The label CLEARLY tells calories, fat grams, sugars, etc. I hope this lawsuit is appealed and she finds herself absolutely embarrassed by her stupidity. This has to stop!

▸ Reply


**Play With That®** • Boston, Massachusetts • 25 days ago    **70** 👍 💬 3

Thank God this was settled! Now this woman can move on to the next thing, like suing Cap'n Crunch for impersonating an officer O_O

▸ 6 Replies


**Susan** • 25 days ago                                     **11** 👍 💬 0

I can't decide between: 1. Our nutritional labeling laws are so lax that we all need to file law suites until these companies are honest. OR: 2. If you believe everything you see on TV and DON'T read the label then you are "Voluntarily Ignorant" and deserve what you get.

▸ 1 Reply


**Gregory** • Walnut Creek, California • 25 days ago         **12** 👍 💬 0

The first ingredient is Sugar!. How can anyone claim Nutella misled them? That said, I like it but enjoy it in moderation.

▸ 1 Reply


**Philip** • 26 days ago                                    **33** 👍 💬 1

"If you want in on this money train, go here..." the above article says. And you wonder what's wrong with this country....

▸ 2 Replies


**Maincity** • 23 days ago                                  **2** 👍 💬 0

Hey my can of Coke I gave to the polar bears at the zoo never made them smile! What gives??

▸ Reply

EXHIBIT 1 PAGE 8



*Athena Hohenberg*
*3636 Fourth Avenue #202*
*San Diego, CA   92103-4237*

*Shame on you and Ronald. Suing Nutella when the label clearly states the ingredients.*

*Athena, you yourself said Nutella - "simple, quality ingredients like hazelnuts, skim milk and a hint of cocoa" — a laughable oversimplification, considering that sugar and oil are the first two ingredients listed on the label, and skim milk is almost dead last."*

*It's apparent you're too busy to make healthy meals and wise choices for your child, substituting convenience for parental responsibility. Why did you bother having a child?*

*Rather than blaming Nutella and spending your time on this ridiculous lawsuit, how 'bout you become a responsible parent.  Set a strong example for your child by learning to read labels, not buying what you know is not healthy and teaching your child responsibility – something you obviously need to learn.*

*And fire Ronald – he's just another ill minded attorney who shouldn't have taken this case in the first place.*

*Sue*

EXHIBIT 1 PAGE 9



DENVER CO 802

06 APR 2012 PM 9 L

Athena Hohenberg
c/o Ronald Matton Attorney
3636 Fourth Avenue #202
San Diego, CA    92103-4237

92103423752

EXHIBIT 1 PAGE 10

# EXHIBIT 2

```
 1   CASE NUMBER:        BC 357194

 2   CASE NAME:          JEANETTE M. PETERMAN

 3                              VS.

 4                       NORTH AMERICAN COMPANY FOR LIFE

 5   LOS ANGELES, CA     MONDAY, DECEMBER 21, 2009

 6   DEPT. NO. 323-CCW   HON. CAROLYN B. KUHL, JUDGE

 7   REPORTER:           VIRGINIA R. ISHIDA, CSR 3784

 8   TIME:               10:18 A.M.

 9   APPEARANCES:        (AS NOTED ON TITLE PAGE.)

10

11        THE COURT:  SO WE'RE HERE FOR A PRELIMINARY APPROVAL OF

12   THE SETTLEMENT, AND I THINK THE EXCELLENT WORK THAT THE

13   PLAINTIFFS' SIDE HAS DONE IN THIS CASE HAS ABSOLUTELY FOLLOWED

14   THROUGH TO THE SETTLEMENT.  WE SEE A LOT OF CYNICAL

15   SETTLEMENTS AROUND HERE, I'M SORRY TO SAY.  THIS IS NOT ONE OF

16   THEM.  THE THOUGHT AND DETAIL THAT WENT INTO THE PREPARATION

17   OF EVERY ASPECT WAS VERY IMPRESSIVE TO ME.

18        FOR A MOMENT I WAS WORRIED THAT I WOULDN'T HAVE

19   ANYTHING TO ASK ABOUT OR SAY BUT --

20        MR. MATTISON:  NOW COMES THE BAD NEWS.

21        THE COURT:  -- I OVERCAME THAT.

22        THERE'S ONLY ONE THING THAT I WANTED

23   CLARIFICATION OF THAT I DIDN'T QUITE UNDERSTAND, AND I THINK

24   IT'S PROBABLY MY FAULT.  PAGE 11 OF THE SETTLEMENT, THE

25   ANNUITIZED POLICIES.  I READ THE LAST SENTENCE OF THAT SEVERAL

26   TIMES AND IT COMES UP IN THE NOTICE AGAIN.  THE "NO

27   ADJUSTMENT" LANGUAGE.  COULD YOU EXPLAIN THAT TO ME?

28        MR. GIANELLI:  ARE WE UNDER THE VERY BOTTOM OF PAGE 11,
```

Page 1

EXHIBIT 2 PAGE 11

**EXHIBIT 3**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY J. IORIO, MAX FREIFIELD, and RUTH SCHEFFER, on behalf of themselves and all others, similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, INC., <br><br> Defendant. | CASE NO. 05-CV-0633-JLS (CAB) <br><br> [CLASS ACTION] <br><br> **FINAL ORDER: (1) APPROVING CLASS ACTION SETTLEMENT, (2) AWARDING CLASS COUNSEL FEES AND EXPENSES, (3) AWARDING CLASS REPRESENTATIVES INCENTIVES, (4) PERMANENTLY ENJOINING PARALLEL PROCEEDINGS, AND (5) DISMISSING ACTION WITH PREJUDICE** <br><br> <u>Fairness Hearing</u> <br> Date:   March 3, 2011 <br> Time:   1:30 p.m. <br> Court:  Courtroom 6 <br>          Hon. Janis L. Sammartino |

1

*Iorio, et al. v. Allianz*                                    Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 12

1    Following a hearing on July 1, 2010, ("Preliminary Approval Hearing"), this Court entered

2  its Order (1) Preliminarily Approving Class Action Settlement, (2) Directing Distribution of the

3  Class Action Settlement Notice, (3) Setting a Final Approval Hearing, and (4) Preliminarily

4  Enjoining Parallel Proceedings, (Doc. No. 437) ("Preliminary Approval Order"), preliminarily

5  approving the Settlement entered into by the parties in the above-captioned Action, and scheduling

6  a hearing to determine whether the Settlement is fair, reasonable, adequate, in the best interests of

7  the Class, and free from collusion, whether the Settlement should be finally approved by the Court,

8  and to consider a motion by Class Counsel for an award of attorneys' fees, costs and litigation

9  expenses, and incentives for the Class Representatives ("Fairness Hearing").

10    The Court has considered: (i) the points and authorities submitted in support of the motion

11  for final approval of the Settlement ("Final Approval Motion"); (ii) the points and authorities

12  submitted in support of the motion for an award of attorneys' fees and costs and litigation

13  expenses, and approval of incentive awards for the Class Representatives ("Fee Motion"); (iii) the

14  declarations and exhibits submitted in support of said motions; (iv) Allianz's separate request for

15  final approval of the Settlement and entry of judgment herein, on the terms and conditions set forth

16  in the Settlement; (v) the *Settlement Stipulation* and *Amendment to Settlement Stipulation*; (vi) the

17  entire record in this proceeding, including but not limited to the points and authorities,

18  declarations, and exhibits submitted in support of preliminary approval of the Settlement, filed

19  June 3, 2010 (Doc. Nos. 424-435); (vii) the full and fair notices provided to the Class of the

20  pendency of this class action, the Settlement, the Fairness Hearing, and Class members' rights with

21  respect to this class action lawsuit and Settlement; (viii) the relatively few members of the class

22  certified by the Court who requested exclusion pursuant to their right to do so at the time of the

23  notices of the pendency of this class action; (ix) the existence of only six objections to the

24  Settlement, out of more than 12,000 Class Members, three of which have been withdrawn by the

25  objector; (x) the absence of any objection or response by any official after the provision of all

26  notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §1715; (xi) the oral

27  presentations of Class Counsel and Counsel for Allianz at the Preliminary Approval Hearing and

28

2

EXHIBIT 3 PAGE 13

1 | Fairness Hearing; (xii) this Court's experiences and observations while presiding over this matter,
2 | and the Court's file herein; and (xiii) the relevant law.

3 |      Based upon these considerations, the Court's findings of fact and conclusions of law as set
4 | forth in the Preliminary Approval Order and in this *Final Order: (1) Approving Class Action*
5 | *Settlement, (2) Awarding Class Counsel Fees and Expenses, (3) Awarding Class Representatives*
6 | *Incentives, (4) Permanently Enjoining Parallel Proceedings, and (5) Dismissing Action with*
7 | *Prejudice* ("Final Approval Order"), and good cause appearing:

8 |

9 |      **IT IS HEREBY ORDERED AND DECREED**, as follows:

10 |

11 | 1.   **Definitions.** The capitalized terms used in this Final Approval Order shall have the
12 | meanings and/or definitions given to them in the Settlement, or if not defined therein, the
13 | meanings and/or definitions given to them in this Final Approval Order.

14 |

15 | 2.   **Incorporation of Documents.** This Final Approval Order incorporates and makes a part
16 | hereof:

17 |     A.   the Parties' *Settlement Stipulation*, filed as Exhibit 1 to the Declaration of Robert S.
18 | Gianelli in support of final settlement approval, on February 10, 2011, ("Gianelli Declaration"),
19 | including all exhibits thereto and the Parties' *Amendment to Settlement Stipulation* filed as Exhibit
20 | 2 to the Gianelli Declaration including all exhibits thereto, (collectively, "Settlement Stipulation"),
21 | which sets forth the terms and provisions of the proposed settlement ( "Settlement");

22 |     B.   the Court's findings and conclusions contained in its Preliminary Approval Order
23 | dated July 1, 2010, 2010, (Doc. No. 437), ("Preliminary Approval Order").

24 |

25 | 3.   **Jurisdiction.** The Court has personal jurisdiction over the Parties, the Class Members (as
26 | defined below at paragraph 4 below), including objectors. The Court has subject matter
27 | jurisdiction over this action, including, without limitation, jurisdiction to approve the Settlement,
28 | to settle and release all claims alleged in the action and all claims released by the Settlement,

3

*Iorio, et al. v. Allianz*                                                       Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 14

1  including the Released Transactions (as defined in the Settlement Stipulation), to adjudicate any

2  objections submitted to the proposed Settlement (including objections by Class Members or CAFA

3  officials), and to dismiss this Action with prejudice. All Class Members, by failing to exclude

4  themselves according to the Court's prior orders and the terms of the prior notices of the pendency

5  of the Action, have consented to the jurisdiction of this Court for purposes of this Action and the

6  Settlement of this Action.

7

8  **4.    Definition of the Class and Class Members.** The "Class," which is comprised of the

9  "Class Members," is defined by the Court's Order Granting Plaintiffs' Motion for Class

10  Certification, dated July 25, 2006 (the "Class Certification Order"), (Doc. No. 113), and is as

11  follows: All persons who purchased one of the following annuities from Allianz Life Insurance

12  Company of North America or LifeUSA Insurance Company while they were California residents,

13  age 65 years or older, and prior to July 26, 2006: Bonus Maxxx (including Accumulator Bonus

14  Maxxx, Bonus Maxxx 12% and Bonus Maxxx 14%), BonusDex, Bonus Maxxx Elite, BonusDex

15  Elite, 10% Bonus PowerDex Elite and MasterDex 10; subject to the following categories of

16  persons which are specifically excluded from the Class:

17      A.    Officers, directors or employees of Allianz; any entity in which Allianz has a

18  controlling interest; the affiliates, legal representatives, attorneys or assigns of Allianz; any federal,

19  state or local governmental entity; and any judge, justice or judicial official presiding over this

20  matter, and the staff and immediate family of any such judge, justice or judicial officer.

21      B.    Any person who acted as an independent insurance Agent licensed by the State of

22  California and appointed by Allianz in the sale of Annuities that are in the Class.

23      C.    Any person who, under the terms of the previous orders and notices to class

24  members in this Action, timely and properly submitted a written request to be excluded from the

25  Class.

26

27

28

4

*Iorio, et al. v. Allianz*                                                     Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 15

1       All Class Members are subject to this Final Approval Order and the Final Judgment to be
2   entered by the Clerk of Court in accordance herewith.

3

4   **5.     Findings and Conclusions.**  The Court finds that the Settlement was not the product of
5   collusion or any other indicia of unfairness, is fair, reasonable, and adequate to the Class in light of
6   the complexity, expense, and likely duration of the litigation (including appellate proceedings),
7   and the risks involved in establishing liability, damages, and in maintaining the Action as a class
8   action, through trial and appeal.  The Court finds that the Settlement represents a fair and complete
9   resolution of all claims asserted in a representative capacity on behalf of the Class and should fully
10  and finally resolve all such claims.  In support of these findings and conclusions, the Court further
11  finds:

12      A.     There is no evidence of collusion.  The proposed settlement, as set forth in the
13  Settlement Stipulation, resulted from extensive arms-length negotiation.   The Action was
14  extensively and vigorously litigated, up to the commencement of trial (as further described below),
15  prior to any settlement.  Plaintiffs and Allianz engaged in intensive arms-length negotiations, over
16  the course of multiple mediation sessions before a capable and well-respected mediator, Robert J.
17  Kaplan of Judicate West, with extensive experience in mediating complex consumer and insurance
18  cases.   Extensive negotiations thereafter resulted in the proposed settlement reflected by the
19  Settlement Stipulation.

20      B.     The Settlement provides for substantial cash payments and/or other monetary
21  benefits to every Class Member, without requiring any Class Member to affirmatively participate
22  in a claims process (although some of the categories of Settlement Relief, by their nature, are
23  dependent upon the Class Member's future policy choices, and require an affirmative election to
24  annuitize, convert an existing annuitization option to a different annuitization option, and/or
25  request partial withdrawal).  No portion of the substantial Settlement Relief would be consumed by
26  attorneys' fees, litigation expenses, notice expenses, settlement administration expenses, or the
27  requested incentive awards for the Named Plaintiffs, since such amounts are all separately
28  provided for.  The Court has considered the realistic range of outcomes in this matter, including

5

EXHIBIT 3 PAGE 16

1    the amount Plaintiffs might receive if they prevailed at trial, the strength and weaknesses of the

2    case, the novelty and number of the complex legal issues involved, and the risk that Plaintiffs

3    would receive less than the Settlement Relief or take nothing at trial.  The amount offered by the

4    Settlement is fair, reasonable, and adequate in view of these factors.

5          C.      Before reaching the proposed settlement, Plaintiffs and Allianz fully and vigorously

6    litigated their claims and defenses in extensive proceedings before this Court and in the appellate

7    courts.  A detailed procedural history of this action is set forth in the Court's docket, and is

8    described in the declaration of Robert S. Gianelli and in Plaintiffs' points and authorities submitted

9    in support of preliminary approval.  *Inter alia*, Allianz's challenges to the pleadings, class

10   certification, class decertification, summary judgment, motion to "clarify" the Court's orders

11   regarding class certification, motion to modify the class definition, motion to strike various

12   remedies in the prayer for relief, and motion to decertify the Class' punitive damages claim, and

13   the Parties' motions *in limine* and other trial motions, were all heard and decided prior to

14   Settlement.  Class certification issues were repeatedly submitted to the Ninth Circuit, through three

15   separate Rule 23(f) petitions filed by Allianz.  Trial briefs, witness lists, jury instructions and

16   verdict forms, and deposition testimony designations were all filed and exchanged.  All final pre-

17   trial conferences were completed.  The Parties reported ready for trial on March 29, 2010, while

18   settlement negotiations involving a mediator were ongoing.  Based on the Parties' reported

19   progress made in mediation, a brief continuance to April 1, 2010 was granted.  On that morning,

20   with jury selection scheduled to commence, the Parties reported their proposed settlement to the

21   Court.

22         D.      Before reaching the proposed settlement, Plaintiffs and Allianz also conducted

23   extensive discovery, fully completing all fact and expert discovery.  More than 40 lay and expert

24   depositions, cumulatively hundreds of hours of testimony, were completed.  Plaintiffs took the

25   depositions of 16 key Allianz managerial employees.  Plaintiffs defended the depositions of the

26   class representatives (each was deposed twice) and the depositions of 10 absent class members.

27   All seven expert depositions were completed by the parties.  Written discovery was no less

28   comprehensive. In addition to extensive requests for production of documents at deposition,

6

*Iorio, et al. v. Allianz*                                                    Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 17

1   Plaintiffs propounded three sets of inspection demands (cumulatively 56 requests), plus pre-trial
2   interrogatories and requests for admission.  Plaintiffs also subpoenaed additional documents from
3   selling agents.  Properly authenticated and verified policy data and mailing data was produced for
4   every single individual class member and annuity.  Voluminous documentary evidence (including
5   22 separate batches of records produced by Allianz) was produced, reviewed and analyzed.  The
6   class representatives submitted to extensive written discovery from Allianz as well.  Plaintiffs
7   responded to three rounds of written discovery, including interrogatories, inspection demands, and
8   requests for admission.

9       E.     Based upon this full litigation of relevant legal issues affecting this litigation,
10  extensive investigation of the underlying facts in discovery, and full preparation by the Parties for
11  the trial in the action, Plaintiffs and Allianz were fully informed of the legal bases for the claims
12  and defenses herein, and capable of balancing the risks of continued litigation (both before this
13  Court and on appeal) and the benefits of the proposed settlement.

14      F.     The Class is and was at all times adequately represented by Named Plaintiffs and
15  Class Counsel, including in entering into and implementing the Settlement, and has satisfied the
16  requirements of *Federal Rules of Civil Procedure,* Rule 23, and applicable law.  Class Counsel
17  submit that they have fully and competently prosecuted all causes of action, claims, theories of
18  liability, and remedies reasonably available to the Class Members.  Further, both Class Counsel
19  and Allianz's Counsel are highly experienced trial lawyers with specialized knowledge in
20  insurance and annuity litigation, and complex class action litigation generally.  Class Counsel and
21  Allianz's Counsel are capable of properly assessing the risks, expenses, and duration of continued
22  litigation, including at trial and on appeal.  Class Counsel submit that the Settlement is fair,
23  reasonable and adequate for the Class Members.  Allianz denies all allegations of wrongdoing and
24  disclaims any liability with respect to any and all claims alleged by Plaintiffs and the Class,
25  including their claims regarding the propriety of class certification, but agrees that the proposed
26  settlement will provide substantial benefits to Class Members.  Allianz considers it desirable to
27  resolve the Action to finally put Plaintiffs' and the Class' claims to rest and avoid, among other

28

7

1    things, the risks of continued litigation, the expenditure of time and resources necessary to proceed

2    through trial and any subsequent appeals, and interference with ongoing business operations.

3        G.    The selection and retention of the Settlement Administrator was reasonable and

4    appropriate.

5        H.    As further addressed below, through the mailing of the Notice of Pendency of Class

6    Action and the Settlement Notice, each in the forms and manners ordered by this Court, the Class

7    has received the best practicable notice of the pendency of this class action, of the Settlement, the

8    Fairness Hearing, and of Class Members' rights and options, including their rights to opt out (at

9    the time of the notices of pendency), to object to the settlement, and/or to appear at the Fairness

10   Hearing in support of a properly submitted objection, and of the binding effect of the Orders and

11   Judgment in this Action, whether favorable or unfavorable, on all Class Members. Said notices

12   have fully satisfied all notice requirements under the law, including the Federal Rules of Civil

13   Procedure and all due process rights under the U.S. Constitution and California Constitution.

14       I.    The response of the Class to this Action, the certification of a class in the Action,

15   and to the Settlement, including Class Counsel's application for an award of attorneys' fees,

16   litigation expenses, and the class representatives' incentives, after full, fair, and effective notice

17   thereof, strongly favors final approval of the Settlement.   Out of the 15,626 notices of the

18   pendency of this class action mailed to the members of the class certified by the Court, only 196

19   valid requests for exclusion (affecting 239 Class Annuities) were received.   In response to the

20   more than 16,000 Settlement Notices mailed to the Class, as of February 10, 2011 (five months

21   after the deadline for objecting to the Settlement), just six objections have been received, four of

22   which have been withdrawn by the objectors.   These objections have been filed in the Action,

23   considered by the Court, and are fully addressed below.

24       J.    As set forth in the Settlement, Allianz has denied, and continues to deny, any

25   wrongdoing or liability relating to the Action.   Allianz does not join in Plaintiffs' Final Approval

26   Motion or Fee Motion or the points and authorities and supporting papers filed in support of said

27

28

8

EXHIBIT 3 PAGE 19

1  motions. Notwithstanding, Allianz has separately requested final approval of the Settlement,
2  dismissal of the Action with prejudice, and entry of judgment in the Action, on the terms and
3  conditions set forth in the Settlement.

4

5  6.      **Prior Notices of Pendency of Class Action and of Right to Opt Out.** The Court hereby
6  finds that the "Notice of Pendency of Class Action" in the Action was mailed to the Class
7  Members, in three stages, on November 13, 2006, December 26, 2006, and October 2, 2007, in the
8  form and manner approved by the Court in its orders of October 11, 2006 (Doc. No.126),
9  December 12, 2006 (Doc. No. 136), and September 21, 2007 (Doc. No. 190). The Court finds that
10 said notices were the best notice practicable, and were reasonably calculated, under the
11 circumstances, to apprise the Class Members of their rights, including their right to opt out of the
12 Class at that juncture, as set forth in the notices, and fully satisfied the requirements of due process
13 and all other applicable provisions of law.

14

15 7.      **Special Notice of Right to Remain a Class Member or Request Exclusion:** For a small
16 segment of the Class (318 individuals with 353 Class Annuities), identified as potential Class
17 Members only at the settlement stage (and after the foregoing notices of pendency had been
18 mailed), a supplemental notice of their right to opt out was mailed on August 5, 2010. These Class
19 Members were omitted from prior notices due to an administrative error. Said supplemental notice
20 advised these previously omitted Class Members of their right to remain Class Members or to
21 request exclusion from the Class, and the procedures for doing so. Notice was mailed to these
22 previously-omitted Class Members on August 5, 2010, in accordance with the Court's Order dated
23 July 1, 2010, (Doc. No. 438). The Court finds that said notices were the best notice practicable,
24 and were reasonably calculated, under the circumstances, to apprise these previously-omitted Class
25 Members of their right to opt out of the Class at that juncture, as set forth in the notices, and fully
26 satisfied the requirements of due process and all other applicable provisions of law.

27

28

*Iorio, et al. v. Allianz*                                                        Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 20

8.      **Requests for Exclusion.** After the mailing of the 15,626 notices of the pendency of this class action, and 318 supplemental notices, including specific notice of the Class Members' right (at said times) to exclude themselves from the certified class, timely and valid requests request for exclusion have been received for only 250 Class Annuities (out of more than 16,000). In addition, nine untimely and/or invalid requests for exclusion were received, (six untimely requests and three requests by non-Class Members). A list of those persons and entities who have timely and validly requested exclusion from the Class, according to the terms of the prior notices of the pendency of the class action and the Court's orders regarding said notices, was filed with the Court in support of final settlement approval as Exhibit C to the Settlement Administrator's declaration (**Pl. Ex. 5,** attached to the Gianelli Declaration), and is incorporated herein and made a part hereof. The persons and Annuities on that list are excluded from the class previously-certified by the Court and are therefore not Class Members, shall not be bound by the Settlement or Judgment in the Action, and shall not receive any Settlement Relief.

9.      **Notice of Settlement.** Based upon the declarations of counsel and the Settlement Administrator, the Court finds that the Settlement Notice was mailed on August 5, 2010, in the form and manner agreed to under the Settlement and approved by the Court in the Preliminary Approval Order, (Doc. No. 437). The Settlement Notice provided fair and effective notice to the Class of the Settlement and the terms thereof, including but not limited to those terms related to the Class recovery and the Settlement Relief, the claims and parties released, the binding effect of the Settlement (if approved) on all Class Members, the provisions for attorneys' fees, litigation expenses, administrative expenses, and Named Plaintiffs' incentives, Class Counsel's intention to petition for an award of such fees, expenses, and incentives in the maximum amounts permitted under the Settlement, the date, time, and place of the Final Approval Hearing, and Class members' rights to object to the Settlement and to appear at the Fairness Hearing (on their own or through counsel of their own selection, at their own expense) in support of any timely and validly submitted objection, all as set forth in the Settlement Notice. The Court finds that said form and manner of giving notice, including the steps taken for updating the Class notice mailing database,

10

EXHIBIT 3 PAGE 21

1  researching alternate mailing data, re-mailing any returned notices, and receiving and responding

2  to Class Member inquiries (including the support services to be provided by the Settlement

3  Administrator and Class Counsel), constitute the best notice practicable, and were reasonably

4  calculated, under the circumstances, to apprise the Class Members of the Settlement and Class

5  Members' rights thereunder. The Court further finds that the Class members were afforded a

6  reasonable period of time to exercise such rights.

7        Based on the foregoing, the prior notices of pendency and the Settlement Notice, in the

8  forms and manners approved by the Court, collectively fully satisfy the requirements of due

9  process, the United States and California Constitutions, the *Federal Rules of Civil Procedure*, and

10  all other applicable provisions of law.

11

12  **10.    Notices Pursuant to 28 U.S.C. § 1715.**  Based on the requirements of the Settlement

13  Stipulation and the declarations submitted in support of settlement approval, the Court finds that

14  all notices and requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §

15  1715, have been satisfied. Allianz' provision of CAFA Notices is attested to by the Declaration of

16  Roland C. Goss, (Doc. Nos. 471-1 and 471-2). The proposed settlement was filed on June 3, 2010

17  (Doc. Nos. 425-1, 425-2). On June 11, 2010, Allianz served the notices required by 28 U.S.C. §

18  1715(b), (*see* Doc. No. 432), which included a copy of the Stipulation of Settlement and other

19  documents required by CAFA. This Court entered an Order granting the motion for preliminary

20  approval of the proposed settlement on July 1, 2010 (Doc. No. 437). On July 6, 2010, Allianz

21  served a supplemental CAFA Notice of the entry of the Preliminary Approval Order, *see*

22  Declaration of Roland C. Goss, (Doc. Nos. 471-1 and 471-2), including notice of the date, time,

23  and place of the Fairness Hearing set forth therein. Supplemental CAFA Notices were served by

24  Allianz when this Court re-noticed the Fairness Hearing. The final supplemental CAFA Notice

25  was served by Allianz on January 18, 2011, providing a copy of the Amendment to the Stipulation

26  of Settlement and the date, time and place of the Fairness Hearing set for March 3, 2011. More

27  than ninety (90) days have passed since the service of the foregoing June 11, 2010 and July 6,

28  2010 notices. No objection or response to the Settlement has been filed by any federal or state

11

*Iorio, et al. v. Allianz*                                                      Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 22

1   official, including any recipient of the foregoing notices. No federal or state official, including any

2   recipient of the foregoing notices, has appeared or requested to appear at the Fairness Hearing.

3

4   **11.    Class Member Objections.** As set forth in detail *supra*, full and fair notice of Class

5   Members' right to object to the proposed settlement and to appear at the Fairness Hearing in

6   support of such an objection has been provided in the form and manner required by the Settlement

7   Stipulation, the Court's Preliminary Approval Order, the requirements of due process, and any

8   other applicable law. The deadline for objection expired on September 9, 2010. Six objections

9   have been submitted by the Class Members (all of which have been filed with the Court, (directly

10  by the objector (Doc. Nos. 441, 442, 444-446) and/or by class counsel in support of final

11  settlement approval). Four of these objections (Doc. Nos. 442, 444, 445, 446) have been

12  withdrawn by the objector. The remaining two pending objections are hereby overruled, for the

13  reasons set forth in Plaintiffs' motion for final settlement approval and Allianz' response thereto

14  (Doc. No. 471). No person has requested leave to appear at the Fairness Hearing to object to the

15  Settlement.

16

17  **12.    Final Settlement Approval and Binding Affect.** The terms and provisions of the

18  Settlement have been entered into in good faith, and are fair, reasonable and adequate as to, and in

19  the best interests of, the Parties and the Class Members, and in full compliance with all applicable

20  requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the

21  Due Process Clause), the California Constitution, and any other applicable law. Therefore, the

22  Settlement is approved. The Settlement, this Final Order and Judgment shall be forever binding on

23  the Plaintiffs and all other Class Members, as well as their heirs, executors and administrators,

24  successors and assigns, and shall have *res judicata* and other preclusive effect in all pending and

25  future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the

26  fullest extent allowed by law.

27

28

12

13.    **Implementation of Settlement.**  The parties are directed to implement the Settlement according to its terms and conditions.  Allianz is authorized, at its sole option and in its sole discretion, in accordance with the terms of the Settlement Stipulation, and without requiring further approval of the Court, to implement the Settlement before the Final Settlement Date (as defined in the Settlement Stipulation).

14.    **Appeal after Early Implementation.**  Any Class Member who failed to timely and validly submit his or her objection to the Settlement, in the manner required by the Settlement, the Settlement Notice, and this Court's Preliminary Approval Order, has waived any objection.  Any Class Member seeking to appeal from the Court's rulings must first:  (a) move to intervene upon a representation of inadequacy of counsel (if they did not object to the proposed settlement under the terms of the Settlement Stipulation); (b) request a stay of implementation of the Settlement; and (c) post an appropriate bond.  Absent satisfaction of all three of these requirements, Allianz is authorized, at its sole option and in its sole discretion, to proceed with the implementation of the Settlement, including before the Final Settlement Date, even if such implementation would moot any appeal.

15.    **Release.**  The Release set forth in Section VII of the Settlement Stipulation is expressly incorporated herein in all respects, is effective as of the date of the entry of this Final Order, and forever discharges the Releasees from any claims or liabilities released by the Settlement, including the Released Transactions (as those terms are defined in the Settlement Stipulation).  This Release covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Class Counsel or other counsel representing Plaintiffs or Class Members in this Action, the settlement of this Action, the administration of such Settlement, and the Released Transactions, except to the extent otherwise specified in this Order and the Settlement Stipulation.

13

EXHIBIT 3 PAGE 24

16.     **Permanent Injunction.** All Class Members are hereby permanently enjoined from filing, commencing, prosecuting, intervening in, maintaining, participating (as class members or otherwise) in, or receiving any benefits from, any lawsuit (including putative class action lawsuits), arbitration, administrative or regulatory proceeding or order in any jurisdiction asserting any claims released by this Agreement; and from organizing Class Members into a separate class for purposes of pursuing as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) asserting any claims released by this Agreement. Nothing in this paragraph, however, shall require any Class Member to take any affirmative action with regard to other pending class action litigation in which they may be absent class members. Allianz has reserved the right to file motions or to take other actions to enforce the release provisions of the Settlement Stipulation and of this injunction, as it may deem appropriate. The Court finds that issuance of this permanent injunction is necessary and appropriate in the aid of the Court's jurisdiction over the Action and its judgments.

17.     **Enforcement of Settlement.** Nothing in this Final Order shall preclude any action to enforce or interpret the terms of the Settlement Stipulation. Any action to enforce or interpret the terms of the Settlement Stipulation shall be brought solely in this Court.

18.     **Communications with Class Members.**   Allianz may not be privy to or respond to inquiries from Class Members to Class Counsel regarding the Settlement. However, Allianz has the right to communicate with, and to respond to inquiries directed to it, from Class Members, Annuity Owners, and Annuity Beneficiaries, orally and/or in writing, regarding matters in the normal course of administering the Annuities, including responding to any Complaints received through state agencies, state officials or otherwise, and may do so through any appropriate agents or agencies.  If Allianz receives any inquiry relating to the merits of the Settlement or a Class Member's rights or options under the Settlement, from a Class Member or other Person entitled or potentially entitled to Settlement Relief, Allianz shall not respond to the inquiry but shall forward

14

EXHIBIT 3 PAGE 25

1  it to or refer the inquiring party to Class Counsel.  However, Allianz may respond to questions

2  from Class Members, Owners and Beneficiaries in the ordinary course of business if such Persons

3  initiate contact with Allianz and ask for information about annuitizations, withdrawals, loans and

4  other Annuity contract terms and benefits.

5

6  **19.**    **Attorneys' Fees and Litigation Expenses.**  The Court orders that Class Counsel shall be

7  entitled to an award of reasonable attorneys' fees and litigation expenses incurred in connection

8  with the Action and in reaching this Settlement, to be paid by Allianz at the time and in the manner

9  provided in the Settlement.  The Court finds that an award of reasonable attorneys' fees and

10  litigation expenses, as provided for herein, is appropriate based on the contractual agreement to

11  pay such fees and expenses set forth in the Settlement, the private attorney general doctrine and

12  *Code of Civil Procedure* §1021.5, and the Court's equitable powers under California law.

13        The Court finds to be reasonable, and awards to Class Counsel, attorneys' fees, to be paid

14  as provided in the Settlement, in the total amount of eighteen million dollars and no cents

15  ($18,000,000.00).  The Court finds to be reasonable, and awards to Class Counsel, litigation

16  expenses, to be paid as provided in the Settlement, in the total amount of one million three hundred

17  thousand and no cents ($1,300,000.00), subject to any reduction therefrom pursuant to the terms of

18  the *Amendment to Settlement Stipulation.*  The Court further orders that in accordance with the

19  Settlement, in addition to the foregoing award of litigation expenses, Allianz shall pay to the

20  Settlement Administrator (and the former administrator, if applicable) all reasonable settlement

21  notice and administration expenses billed thereby in connection with the Settlement, consistent

22  with the contracts that such administrators entered into for the performance of such work and any

23  additional work requested by the Parties jointly.

24        The award of attorneys' fees and litigation expenses to Class Counsel in this Final

25  Approval Order shall be the sole reimbursement to which Class Counsel is entitled from Allianz or

26  Releasees with respect to the Action, the Settlement, or the administration of the Settlement.

27  Allianz and Releasees shall have no obligation to pay attorneys' fees or costs or litigation expenses

28

15

*Iorio, et al. v. Allianz*                                                   Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 26

1  with respect to the Action, the Settlement, or the administration of the Settlement, to any other

2  person, firm, or entity other than as provided in this Final Order.  No Named Plaintiff, or any other

3  Class Member, shall have any obligation to pay Class Counsel any further amounts for attorneys'

4  fees, costs, or litigation expenses in the Action.  No Named Plaintiff, or any other Class Member,

5  shall be entitled to seek or receive any further payment of attorneys' fees or litigation expenses in

6  connection with the Action from Allianz or any Releasee.

7        Allianz does not join in Class Counsel's motion for an award of attorneys' fees and

8  litigation expenses.  Allianz does not join in requesting and does not necessarily agree with any of

9  the related findings requested by Class Counsel and made by the Court in connection with Class

10  Counsel's motion for an award of attorneys' fees and litigation expenses, including the findings set

11  forth in this paragraph 19 of the Final Order.  Notwithstanding, pursuant to the Settlement, Allianz

12  does not oppose an award of attorneys' fees and litigation expenses as provided for by Section VIII

13  of the Settlement.

14        In support of the foregoing attorneys' fee and litigation expense award, the Court finds as

15  follows:

16        A.    The following hourly billing rates are reasonable in light of the complexity of this

17  litigation, the work performed, Class Counsels' reputation, experience, and competence, and the

18  prevailing billing rates for comparably complex work by comparably qualified counsel in the

19  relevant market:

20              1.    For Robert S. Gianelli, $750 per hour;

21              2.    For Raymond E. Mattison, $750 per hour;

22              3.    For Don A. Ernst, $750 per hour;

23              4.    For Ronald A. Marron, $595 per hour;

24              5.    For Dean Goetz, $595 per hour;

25              6.    For Sherril Nell Babcock, $575 per hour;

26              7.    For Christopher D. Edgington, $575 per hour;

27              8.    For Jully C. Pae, $500 per hour;

28              9.    For Richard R. Fruto, $450 per hour;

16

*Iorio, et al. v. Allianz*                                          Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 27

10.     For Joanne Victor, $450 per hour;

11.     For Scott Juretic, $410 per hour;

12.     For future attorney time in connection with settlement administration, $410 per hour, as further described below.

The reasonableness of these billing rates is supported by the declarations of these attorneys, the Declaration of Gary Greenfield, by Class Counsel's prior attorneys' fee awards in comparably complex class action insurance litigation in the relevant legal market, by prior attorneys' fee awards in this and other judicial districts for comparably qualified counsel in comparably complex work, and by published industry billing rates, all as set forth in Class Counsel's motion for an award of attorneys' fees, and the supporting declarations and exhibits.

      With respect to future attorney time in connection with settlement administration, Class Counsel have provided an estimate in their submitted declarations, based upon administration of past, comparable class action settlements, of the attorney time which will be incurred for this purpose. The Court approves the requested $410 per hour billing rate for such attorney settlement administration work.

      B.     The $195 hourly billing rate for work performed by certified paralegals is reasonable in light of the experience and qualifications of these non-attorney billers. The reasonableness of this billing rate is supported by a recent fee awards for work performed by these paralegals in the relevant market, in comparable litigation, and the submitted declarations of counsel. Paralegal time, which is normally billed to fee-paying clients, is properly included and reimbursable under a lodestar analysis. *See, e.g., United Steelworkers v. Phelps Dodge Corp.* (9th Cir. 1990) 896 F. 2d 403, 407-08.

      C.     The time declared to have been expended by Class Counsel and Class Counsel's paralegals, as set forth in Class Counsel's motion for an award of attorneys' fees and supporting declarations, is reasonable in amount in view of the complexity and subject matter of this litigation, and the skill and diligence with which it has been prosecuted and defended, and the quality of the result obtained for the Class.

17

EXHIBIT 3 PAGE 28

1    D.    The reasonableness of the fee awarded by this Final Approval Order is supported by

2   a "multiplier" analysis, the second requisite step in a lodestar analysis. A fee multiplier is properly

3   applied if supported by appropriate factors, including the extent of the risks of the litigation and the

4   purely contingent nature of the fee award (factors which are not subsumed in Class Counsel's

5   lodestar amount).  Here, Class Counsel consisted of two small firms, Gianelli & Morris and Ernst

6   and Mattison (now Ernst Law Group and Mattison Law Firm), and a sole practitioner, the Law

7   Offices of Ronald A. Marron.  Cumulatively, the eleven lawyers working on the file expended in

8   excess of 15,200 hours over a five and one-half year period, plus more than 1,800 paralegal/law

9   clerk hours, and more than $1.49 million in out-of-pocket litigation expenses, a very substantial

10  commitment given the small size of these offices.  Class Counsel's ability to recover fees and

11  expenses in this action was purely contingent upon a successful outcome or settlement.  The

12  contingency risks presented by this litigation were significant, as analyzed in the preliminary and

13  final approval motions and supporting declarations.  *Inter alia*, it is significant that a related

14  nationwide class action (from which the Class here was carved out), asserting certain similar

15  claims and theories, was defeated by Allianz in a jury trial. *Mooney v. Allianz Life Insurance*

16  *Company of North America*, D. Minn. Case No. 06-545 ADM/FLN.  The *Mooney* jury verdict has

17  been reduced to judgment, that judgment has become final, and the *Mooney* class recovered

18  nothing.   Risks relating to Class certification are also significant.  In various procedural postures,

19  Allianz vigorously challenged class certification throughout this lawsuit, both before this Court

20  (opposing certification, seeking decertification, seeking "clarification" regarding the certified

21  claims, seeking to modify the class definition, and seeking to decertify plaintiffs' punitive damages

22  claims) and in three separate Rule 23(f) petitions for permission to appeal in the Ninth Circuit.

23  Although this Court rejected these challenges to class certification, the Ninth Circuit has not

24  considered any of Allianz' challenges on their merits to date.  Despite this risk, plaintiffs litigated

25  this action up to only hours before the commencement of jury selection, when the Settlement was

26  reached.

27    In view of the foregoing contingency/litigation risk, factors which are not subsumed in

28  Class Counsel's lodestar, the Court finds that application of the requested fee multiplier of 1.70

18

*Iorio, et al. v. Allianz*                                                                    Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 29

1   (which supports an award of attorneys' fees in the full unopposed amount of $18.0 million dollars)
2   is appropriate.  Multipliers ranging from 2-4 (and higher) have been approved in comparably
3   complex litigation, under such circumstances. *See, e.g., Wershba v. Apple Computer*, 91 Cal. App.
4   4th 224, 255 (2001); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988);
5   *Declaration of Geoffrey P. Miller*, 30-35, (Gianelli Declaration, Pl. Ex. 17).  The requested fee
6   multiplier falls on the low end of the reasonable range, based on typical multipliers approved in
7   comparable litigation, as reflected in the foregoing cases and in the *Declaration of Geoffrey P.*
8   *Miller*, ¶¶30-35, (*Gianelli Declaration*, Pl. Ex. 17).  The Court approves the requested fee
9   multiplier of 1.70, (thereby limiting the awarded fee to the unopposed amount of $18.0 million).

10          E.      Based upon the valuation of settlement benefits set forth in the *Declaration of*
11   *Vincent P. Gallagher, Ph.D.*, (Gianelli Declaration, Pl. Ex. 15), the amount of attorneys' fees
12   approved here by the Court (based on the foregoing lodestar/multiplier), in the amount of $18.0
13   million, represents 16.48% of the Settlement's "full utilization value" (*i.e.*, the value of the benefits
14   made available to the Class) and 29.95% of the Settlement's "projected utilization value"
15   midpoint, (*i.e.*, the midpoint of the range of the projected value of the benefits which will be
16   received by the Class).      The Ninth Circuit has determined that 25% of the recovery is a
17   "benchmark" award for class action cases, and recognized that percentage fees in the range of 20-
18   30% are generally appropriate. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998); *Six*
19   *Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990). The fee award
20   sought in the present case is reasonable when judged by this standard.  The projected utilization
21   value midpoint (29.95%) falls within this generally appropriate range, and the full utilization value
22   (16.48%) falls well below the *Hanlon* benchmark.  A fee award at the higher end of the accepted
23   range, under *Hanlon*, is justified here, in part, by the same contingency/litigation risk discussed
24   above.   The percentage of recovery here, both with respect to full utilization value and the
25   projected utilization value midpoint, is reasonable in light of prior fee awards (measured as a
26   percentage of recovery) in comparable class action litigation, as set forth in the *Declaration of*
27   *Geoffrey P. Miller*, ¶¶36-57, (*Gianelli Declaration*, Pl. Ex. 17).
28

19

F.      Out of approximately 12,000 Class members and more than 16,000 Settlement Notices mailed, including explicit notice of the fees and expenses requested here, there is only a single complaint regarding attorneys' fees, (Doc. No. 441). The stated objection ("[a]s usual, the only party benefiting from a class action lawsuit is the attorneys") is refuted by the foregoing percentage of recovery analysis, and the valuation of the direct class relief performed by Dr. Gallagher. Plaintiffs' contend that this complaint is not a valid objection, since there is no stated basis for the objection. Notwithstanding, this isolated objection to the attorneys' fee award is overruled.

G.      Based on the declarations of Class Counsel submitted in support of the Fee Motion, the Court finds that Class Counsel have incurred out-of-pocket litigation expenses (paid and un-reimbursed, or currently due) in an amount more than $1.49 million, that said expenses were of a nature typically billed to fee-paying clients, and that said expenses were reasonable and necessary to the prosecution of this action in light of the extent of proceedings both on and off the Court's docket, the complexity of the legal and factual issues in the case, the amount at stake in this litigation, and the vigorous efforts of counsel for all parties herein.      The Court finds these expenses are reasonable in this case.

H.      The proposed division of awarded attorneys' fees among Class Counsel, as set forth in the *Client Consent for Amendment to Co-Counsel Association and Fee Distribution Agreement*, filed by Class Counsel in support of preliminary settlement approval as Exhibit 12 to the Declaration of Christopher D. Edgington, and as set forth by the declarations of Mr. Mattison and Mr. Ernst in support of final approval, is reasonable and is hereby approved. The attorneys' fees awarded by this Final Approval Order shall be divided among Class Counsel according to said approved division.

20.     **Named Plaintiffs' Incentives.** The hereby Court approves incentives for each of the Named Plaintiffs, Anthony J. Iorio, Ruth Scheffer, and Max Freifield, to be paid by Allianz at the time and in the manner provided in the Settlement.  The amount of said incentive shall be the full unopposed amount provided for by the Settlement, *to wit*: twenty-five thousand dollars and no

20

EXHIBIT 3 PAGE 31

1  cents ($25,000.00), for each Named Plaintiff. To the extent that any Named Plaintiff may become

2  deceased prior to payment of these incentives, the Parties shall cooperate to ensure that any sums

3  so awarded are distributed to his or her heirs.

4      Based on the declarations of Class Counsel and the Named Plaintiffs submitted in support

5  of final settlement approval, Named Plaintiffs have actively participated and assisted Class

6  Counsel in this litigation for the substantial benefit of the Class despite facing significant personal

7  limitations. Each has waived their right to pursue potential individual claims or relief in the

8  Action. Apart from these incentives, the Named Plaintiffs will receive no settlement payments or

9  benefits of any nature other than their share of the Settlement Relief available to the Class

10  generally. These incentives are approved to compensate the Named Plaintiffs for the burdens of

11  their active involvement in this litigation and their commitment and effort on behalf of the Class.

12      The amount of these incentives shall not affect or reduce the Settlement Relief generally

13  payable to any Class Member, including to Named Plaintiffs, under the Settlement, and shall not

14  affect or reduce the amount of attorneys' fees and litigation expenses payable to Class Counsel

15  under the Settlement and this Final Approval Order.

16

17  **21.    Modification of Settlement Stipulation.** The Parties are hereby authorized, without

18  needing further approval from the Court, to agree to and adopt such amendments to, and

19  modifications and expansions of, the Settlement Stipulation, if such changes are consistent with

20  this Order and do not limit the rights of Class Members or any other Person entitled to Settlement

21  Relief under this Agreement.

22

23  **22.    Retention of Jurisdiction.** The Court has jurisdiction to enter this Final Order. Without

24  in any way affecting the finality of this Final Order or the Final Judgment, for the benefit of the

25  Class and Allianz, and to protect this Court's jurisdiction, the Court expressly retains continuing

26  jurisdiction as to all matters relating to the Settlement, and the administration, consummation,

27  enforcement, and interpretation of the Settlement Stipulation and of this Final Order, and for any

28  other necessary and appropriate purpose.

21

*Iorio, et al. v. Allianz*                                        Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 32

1    Without limiting the foregoing, the Court will retain continuing jurisdiction over all aspects

2    of this case including but not limited to any modification, interpretation, administration,

3    implementation, effectuation, and enforcement of the Settlement, the administration of the

4    Settlement and Settlement Relief, including notices, payments, and benefits thereunder, the

5    Settlement Notice and sufficiency thereof, any objection to the Settlement, any request for

6    exclusion from the certified class, the adequacy of representation by Class Counsel and/or the

7    Class Representatives, the amount of attorneys' fees and litigation expenses to be awarded Class

8    Counsel, the amount of any incentives to be paid to the Class Representatives, any claim by any

9    person or entity relating to the representation of the Class by Class Counsel, to enforce the release

10   and injunction provisions of the Settlement and of this Order, any remand after appeal or denial of

11   any appellate challenge, any collateral challenge made regarding any matter related to this

12   litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this

13   Settlement, and all other issues related to this Action and Settlement.

14        Further, without limiting the foregoing, the Court retains continuing jurisdiction to:

15        A.    enforce the terms and conditions of the Settlement Stipulation and resolve any

16   disputes, claims or causes of action that, in whole or in part, are related to or arise out of the

17   Settlement Stipulation, this Final Order and Judgment (including, without limitation, determining

18   whether a person is or is not a Class Member, and enforcing the permanent injunction that is a part

19   of this Final Order and Judgment), and determining whether claims or causes of action allegedly

20   related to this case are barred by this Final Order and Judgment;

21        B.    enter such additional orders as may be necessary or appropriate to protect or

22   effectuate this Final Order and Judgment, or to ensure the fair and orderly administration of the

23   Settlement; and

24        C.    enter any other necessary or appropriate orders to protect and effectuate the Court's

25   retention of continuing jurisdiction; provided however, nothing in this paragraph is intended to

26   restrict the ability of the Parties to exercise their rights under the Settlement Stipulation.

27

28   **23.    No Admissions.** This Final Order and the Settlement Stipulation, all provisions herein or

therein, all other documents referred to herein or therein, any actions taken to carry out this Final

_Iorio, et al. v. Allianz_                                            Case No. 05-CV-0633-JLS (CAB)

22

EXHIBIT 3 PAGE 33

1  Order and Judgment and the Settlement, and any negotiations, statements, or proceedings relating

2  to them in any shall not be construed as, offered as, received as, used as, or deemed to be evidence

3  of any kind, including in this Action, any other action, or in any other judicial, administrative,

4  regulatory, or other proceeding, except for purposes of obtaining approval of the Settlement and

5  the entry of judgment in the Action, enforcement or implementation of the Settlement, or to

6  support any defense by Allianz based on principles of *res judicata*, collateral estoppel, release,

7  waiver, good-faith settlement, judgment bar or reduction, full faith and credit, setoff, or any other

8  theory of claim preclusion, issue preclusion, release, injunction, or similar defense or counterclaim

9  to the extent allowed by law. Without limiting the foregoing, neither the Settlement Stipulation

10  nor any related negotiations, statements, mediation positions, notes, drafts, outlines, memoranda of

11  understanding, or Court filings or proceedings relating to the Settlement or Settlement approval,

12  shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or

13  concession by any person, including but not limited to, of any liability or wrongdoing whatsoever

14  on the part of Allianz, to Plaintiffs, or the Class, or as a waiver by Allianz, of any applicable

15  defense, including without limitation any applicable statute of limitation.

16

17  **24.  Dismissal of Action.** This action, including all individual and Class claims resolved in it,

18  shall be dismissed on the merits and with prejudice, without an award of attorneys' fees or costs to

19  any party except as provided in this Order.

20

21  **25.  Mattison Law Firm Appointed as Co-Class Counsel.** The law firm of Ernst and

22  Mattison, previously appointed by this Court as co-Class Counsel in the Action, has changed

23  names to Ernst Law Group, and one of the class attorneys of record, Mr. Mattison, has formed a

24  new firm, Mattison Law Group. Notice of the prior firm's name change, and association of the

25  Mattison Law Firm in the Action, have been filed with the Court. Based on the Court's prior

26  findings at the time of the certification of the Class, in support of the appointment of Mr. Mattison

27  //

28  //

23

*Iorio, et al. v. Allianz*                                      Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 34

1  and Ernst and Mattison as co-class counsel, the Court now hereby appoints the Mattison Law Firm

2  as co-class counsel.  Allianz has not objected to the appointment of the Mattison Law Firm as co-

3  class counsel.

4

5  26.      Pursuant to the Settlement, the proposed *Fourth Amended Complaint*, Exhibit A to the

6  Settlement, previously served and filed as Plaintiffs' Exhibit 1 in support of final settlement

7  approval, (Doc. No. 468-2, pp. 106-114), is deemed to be signed by Class Counsel and filed as of

8  the date of this order, superseding any previous complaint in the Action.

9

10  **IT IS SO ORDERED.**

11

12  Dated: March 3, 2011

13

14  Honorable Janis L. Sammartino
   United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

*Iorio, et al. v. Allianz*                                                    Case No. 05-CV-0633-JLS (CAB)

EXHIBIT 3 PAGE 35