**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MAGGIE REALIN (263639)
*maggie@consumersadvocates.com*
B. SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Avenue, Suite 202
San Diego, California 92103
Telephone:     (619) 696-9006
Facsimile:     (619) 564-6665

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd. Suite 201
San Diego, CA 92110
Telephone:     (619) 798-2006
Facsimile:     (480) 247-4553

*Class Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FERRERO LITIGATION | Case No. 3:11-cv-00205-H-KSC<br>Pleading Type: Class Action<br><br>**DECLARATION OF JACK FITZGERALD IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL AND APPROVAL OF ATTORNEY FEES AND INCENTIVE AWARD**<br><br>Judge: The Honorable Marilyn L. Huff<br>Hearing: July 9, 2012<br>Time: 10:30 a.m.<br>Location: Courtroom 13 |

I, Jack Fitzgerald, declare:

1.      I am Class Counsel in this action. I am a member in good standing of the State Bars of California and New York; and of the United States District Courts for the Northern, Central and Southern Districts of California and the Southern and Eastern Districts of New York; and of the United States Court of Appeals for the Ninth Circuit. I make this Declaration in support of Plaintiffs' Motions for Final Settlement Approval and Approval of Attorney Fees and Inventive Awards.

**Discovery**

2.      Plaintiffs served Ferrero two sets of Requests for Production, on March 23 and October 12, 2011. Ferrero responded to the first set on April 8, 2011, and Class Counsel reviewed the many documents it produced. Ferrero did not respond to the second set because discovery was stayed on October 19.

3.      Plaintiffs also served two sets of Interrogatories on Ferrero, on March 23 and June 8. Ferrero responded on April 8 and July 15.

4.      Ferrero served Plaintiffs with Interrogatories on July 25, 2011, to which Plaintiffs responded on August 29, and with Requests for Production on August 31, to which Plaintiffs responded on October 3, including by producing nearly 500 pages of documents.

5.      Plaintiffs also propounded document subpoenas, and in some cases deposition subpoenas, on nine third parties from whom they obtained documents, including Ferrero vendors, distributors, advertising agencies and consultants. These third parties included: Connie Evers, Isabelle Lambotte, Aspen Logistics, Believe Media, Merkley+Partners, Vision Creative Group, The Wilson Group, Zenithmedia, and MS&L. As a result, Class Counsel reviewed thousands of documents.

6.      Ferrero also served a third-party subpoena, on Costco, for records relating to Plaintiffs' purchases.

7.      Plaintiffs deposed three witnesses: Ferrero's Chief Executive Officer, Bernard Kreilman (on April 14, 2011); Nutella's spokesperson, purported children's nutrition expert Connie Evers (on July 26, 2011); and Nutella's former nutritional consultant before Evers, Isabelle Lambotte (on October 4, 2011). Although the Kreilmann deposition was ostensibly related to venue issues relevant to

1

*In re Ferrero Litigation,* Case No. 3:11-CV-00205-H-KSC
DECLARATION OF JACK FITZGERALD IN SUPPORT OF FINAL APPROVAL AND FEE APPLICATION

1  Ferrero's Motion to Transfer Venue, it provided valuable merits discovery, such as Nutella's sales, its

2  manufacturing and distributing process, and the identity of knowledgeable witnesses.

3       8.      Ferrero took Plaintiffs's depositions on Athena Hohenberg and Laura Rude-Barbato on

4  September 29 (Ms. Hohenberg) and 30 (Ms. Rude-Barbato), 2011.

5                                    **Settlement Negotiations**

6       9.      The parties first discussed settlement during a brief, informal telephone conversation in

7  March, 2011, and then again following Mr. Kreilmann's deposition on April. Later, in the summer of

8  2011, the parties attempted to schedule a joint mediation with the Plaintiffs in the New Jersey copycat

9  case, *Glover v. Ferrero USA, Inc.*, No. 11-1086-FLW (D.N.J.). The mediation, however, was derailed

10  by New Jersey counsel's shenanigans in their attempt to wrest away control of the case from Plaintiffs

11  and their counsel.

12       10.     Specifically, On July 13, Plaintiffs, Ferrero and Glover agreed they would mediate

13  together, in San Diego, on August 31, with the hopes that the resolution of Glover's MDL motion

14  scheduled to be heard on July 28 would inform those discussions.

15       11.     On July 26, two days before the Judicial Panel on Multidistrict Litigation was to hear

16  Glover's argument that the first-filed California cases should be centralized with her case in New

17  Jersey, a second plaintiff, Jamie Kaczmarek, filed an action in New Jersey, which was copied verbatim

18  from the *Glover* complaint (including identical typographical errors), except for the plaintiff-specific

19  allegations. Kaczmarek was represented by counsel who frequently work together with Glover's

20  counsel. Nevertheless, despite his duty of candor, Glover's counsel began the hearing by advising the

21  Panel that "since we filed our papers, . . . an action . . . has been recently filed in the District of New

22  Jersey" by "[d]ifferent plaintiffs' lawyers." *See* Excerpts of the Transcript of the July 28, 2011 Hearing

23  before the Judicial Panel on Multidistrict Litigation on Glover's Motion for Centralization at p.3,

24  attached hereto as **Exhibit 1**.

25       12.     Then, four days after the MDL hearing, apparently confident they would prevail with

26  Ferrero's support and their piling on in New Jersey, Glover's counsel unilaterally cancelled the

27

28

2

mediation despite their earlier agreement.[1] Because of New Jersey counsel's gamesmanship surrounding venue, and despite Plaintiffs' attempts to be inclusive of Glover in settlement proceedings, mediation and further settlement discussions stalled for the next couple months.

13. After Plaintiffs filed their Class Certification Motion on August 1 (Dkt. No. 51) and the Court denied Ferrero's Motion to Dismiss on August 29 (Dkt. No. 69), the Court ordered an Early Neutral Evaluation conference on October 19, 2011, before Honorable Magistrate Judge Cathy Ann Bencivengo (Dkt. No. 70). Two weeks before the ENE, on October 4, 2012, Plaintiffs sent Ferrero a 6-page Memorandum of Understanding constituting an offer of settlement. The MOU suggested injunctive relief comprised of advertising modifications, and a common fund to reimburse class members. It did not discuss attorneys' fees with any specificity, only generally noting that settlement was not conditioned on Court approval of a fee request. On October 12, 2011, Ferrero said it would discuss the offer further during the ENE the following week.

14. During the ENE, which both Plaintiffs attended and participated in, discussions centered on the substantive relief for the class, and attorneys' fees were not discussed. However, with Plaintiff's class certification motion still pending, the parties were still far apart in how they valued the case and whether (and how) Ferrero should modify its behavior. Following the ENE, the parties nevertheless agreed to attend a private mediation together with the *Glover* plaintiffs.

15. On November 2, 2011, the parties attended a private mediation session before the Honorable Nichoals J. Politan (Ret.) in West Palm Beach, Florida. Again, there was progress but no resolution.

---

[1] Glover was represented by scores of attorneys at several law firms. Nevertheless, according to her counsel, although the three attorneys who were primarily spearheading the New Jersey litigation were available on the date and in the location agreed, another attorney, based in San Diego, had obligations in San Francisco the day *before* and the day *after* the mediation, but not on August 31. Glover therefore insisted that all the parties and the San Diego-based mediator travel to San Francisco to accommodate that attorney, rather than proceeding with him available by phone or taking one of the many available daily commuter flights between San Francisco and San Diego, or not mediate at all. By the time that attorney finally agreed on August 10 that he could, in fact, be in San Diego to mediate on August 31, the agreed-upon mediator, the Hon. Leo S. Papas (Ret.), was no longer available.

16.     During November, the parties continued to negotiate through periodic email and telephone communications, finally agreeing on approximately November 14, 2011 on most of the injunctive relief provisions embodied in the Settlement Agreement. A few disagreements over some injunctive relief suggested by both parties remained, however, and there was no agreement on the monetary terms of the settlement.

17.     On November 28, the parties attended a second Settlement Conference before Judge Bencivengo. Again, Plaintiffs were present and active participants, at all times discussing Ferrero's proposals with counsel, counter-proposals, and assisting in the ultimate decision to accept the terms embodied in the Settlement Agreement. After several hours of negotiation, and with Judge Bencivengo's ample assistance, the parties finally agreed on all the terms reflected in the Settlement Agreement. The amount of the Injunctive Fee Award Ferrero agreed to pay Class Counsel was the last provision discussed, and then only after the parties had agreed on all the injunctive relief and the class's common fund.

**Media Coverage of the Settlement**

18.     The Settlement has received considerable media attention in recent weeks, including being featured on Good Morning America (which interviewed Ms. Rude-Barbato), ABC News, CBS News, npr.org, and many other popular outlets, including online and television.

19.     A Google News search for "Nutella" on May 22, 2012, showed 6,310 stories about the Settlement in the past month, and a standard Google search for "Nutella AND settlement" generated more than 2.6 million hits.

**Notice to The Attorney General**

20.     On January 25, 2012, Ferrero provided notice of the Settlement to the Attorney General of the California.

21.     The notice packet sent to the Attorney General included complete copies of the Master Consolidated Complaint, Plaintiffs' Memorandum of Points and Authorities in Support of Joint Ex Parte Application for Preliminary Approval of Settlement, the supporting Declaration of Gregory S. Weston and all exhibits attached thereto, including the Claim Form, Publication Notice, and Settlement

4

*In re Ferrero Litigation,* Case No. 3:11-CV-00205-H-KSC
DECLARATION OF JACK FITZGERALD IN SUPPORT OF FINAL APPROVAL AND FEE APPLICATION

Notice, a copy of the Order Granting Joint Motion for Preliminary Approval of Settlement, notice of the Fairness Hearing set for July 9, 2012, and a definition of the Settlement Class.

22.    A true and correct copy of the cover letter sent to the California Attorney General is attached hereto as **Exhibit 2**.

23.    To date, the California Attorney General has not requested further information or indicated an intent to object.

### The Strength of the Settlement

24.    I believe the Settlement affords the Class a substantial and important benefit, most especially in terms of the injunctive relief whereby Ferrero has agreed to modify Nutella's advertising wholesale, including changing its label, discontinuing the existing television commercials and shooting new commercials with scripts that Class Counsel has reviewed and provided input on, changes to the Nutella website to remove content attributable to the former Nutella spokesperson, purported children's nutrition expert Connie Evers, and by agreeing to no longer employ Ms. Evers as Nutella's spokesperson.

25.    As laid out in Plaintiffs' First Amended Consolidated Complaint, the dangers of regularly consuming the amount of sugar and saturated fat in Nutella are well-documented. *See* FACC ¶¶ 35-43. By prominently disclosing Nutella's sugar and fat content on the front label (or "Principal Display Panel") using the Grocery Manufacturers Association front-of-pack nutrition labeling program, consumers will be better informed and able to make choices to promote their health and the health of their children and families. In addition, Ferrero's agreement to stop using advertising suggestive that Nutella is healthy (such as "balanced breakfast") will prevent well-meaning health-conscious consumers from inadvertently exposing themselves and their families to increased health risks.

26.    Even though this alone would be a great benefit for the Class and the public, the Settlement is strong because it *also* includes a $550,000 fund by which Class Members can be refunded for up to five Nutella purchases. Our calculations based on the sales information Ferrero provided in this case show that this amounts to more than 3% of affected sales. False advertising actions such as this one often settle in that range, but without the addition of the extensive advertising and marketing changes Ferrero has agreed to.

5

27.     In sum, based on my experience and knowledge of the facts of this case, I believe this Settlement provides the Class and public a strong benefit, primarily from the extensive injunctive relief, but also because of the addition of a monetary component.

**Class Counsel's Qualifications**

28.     The Weston Firm's partners and principal timekeepers on the matter are myself and Gregory Weston. I graduated from New York University, where I was Editor of the Law Review, after which I worked for Baker & Hostetler LLP in New York, then Mayer Brown LLP in Palo Alto, before joining the Weston Firm in 2010. My career has always focused on complex civil litigation, including class actions on both the defense side and, now with the Weston Firm, entirely on the plaintiff side.

29.     Mr. Weston graduated from Harvard Law School and worked for the law firm now known as Robbins, Geller, Rudman & Dowd until January 2008. Mr. Weston incorporated the Weston Firm on December 31, 2007 and began operations January 7, 2008. During this entire time, all or nearly all of his practice has been representing plaintiffs in consumer fraud and antitrust class actions.

30.     Courtland Creekmore is a 1994 graduate of the University of San Diego School of Law, and has spent 12 of his 18 years of legal experience litigating class actions, exclusively representing plaintiff consumers, securities investors and homeowners in state and federal courts. From 2004-2010, Mr. Creekmore worked for the law firm now known as Robbins, Geller Rudman & Dowd prosecuting federal securities and accounting fraud cases. From 2001-2004, he worked for Epsten, Grinnell & Howell representing homeowners in construction defect litigation. Mr. Creekmore joined The Weston Firm in 2011.

31.     Melanie Persinger is a 2010 graduate of University of Michigan Law School where she was Editor of the Michigan Telecommunications and Technology Law Review. She joined the Weston Firm out of law school and has dedicated her entire career to representing plaintiffs in class actions.

///

///

///

///

///

6

**Class Counsel's Rates**

32.     The Weston Firm's requested rates are as follows:

| Timekeeper | Position | Graduation Year | Hourly Rate |
|---|---|---|---|
| Gregory S. Weston | Partner | 2004 | $525 |
| Jack Fitzgerald | Partner | 2004 | $525 |
| Courtland Creekmore | Associate | 1994 | $500 |
| Melanie Persinger | Associate | 2010 | $300 |
| Paralegals | | - | $195 |

33.     In June 2011, the Weston Firm was awarded fees based on a rate of $500 in *Red v. Unilever United States*, No. 10-cv-387-JW (N.D. Cal.). *See Unilever* Dkt. No. 152 at ¶ 5 (showing $500 rate for attorneys Weston and Fitzgerald), Dkt. No. 163 (Order granting Final Approval). In addition, this past April, the Honorable Margaret M. Morrow awarded the Weston Firm fees in connection with settling a lawsuit against Smart Balance, Inc., based on hourly rates of $500 for Weston and Fitzgerald, $275 for Ms. Persinger, and $150 for paralegals. Relevant excerpts of Judge Morrow's Tentative Order,[2] which has not yet been entered, are attached hereto as **Exhibit 3**. The firm's current rates reflect a modest increase since Judge Ware approved its partners' rates of $500 last June.

34.     These rates are consistent with the prevailing rates for attorneys of similar experience, skill and reputation. For example, several courts in this district have approved fee ranges into which Class Counsel's rates easily fall. For example, in *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011), the Honorable Cathy Ann Bencivengo—who was the Magistrate Judge who assisted in reaching the Settlement Agreement in this case—affirmed rates of "$675 [sic] for an experienced partner's time to $100 per hour for a paralegal's time." *Id.* at 644. The specific rates approved were as follows:[3]

---

[2] Because the Tentative Order was 64 pages and discussed a number of issues not relevant here (such as class certification and motion to intervene filed in connection with the settlement), I attach only the relevant portions.

[3] *See Hartless v. Clorox Co.*, No. 06-cv-2705-CAB (S.D. Cal.), Dkt. Nos. 82, 84-85, 87-88 (declarations in support of motion for attorneys fees).

7

*In re Ferrero Litigation,* Case No. 3:11-CV-00205-H-KSC
DECLARATION OF JACK FITZGERALD IN SUPPORT OF FINAL APPROVAL AND FEE APPLICATION

| Timekeeper | Position | Rate |
|---|---|---|
| Blood Hurst & O'Reardon LLP | | |
| Timothy G. Blood | Partner | $665 |
| Leslie E. Hurst | Partner | $585 |
| Thomas J. O'Reardon II | Partner | $510 |
| Paralegal | - | $260 |
| Robbins Geller Rudman & Dowd LLP | | |
| Timothy G. Blood | Partner | $655 |
| Kevin K. Green | Partner | $615 |
| Leslie E. Hurst | Partner | $585 |
| Rachel Jensen | Partner | $565 |
| Catherine J. Kowalewski | Partner | $555 |
| Cory Miller | Associate | $410 |
| Ivy Ngo | Associate | $380 |
| Thomas O'Reardon | Associate | $345 |
| Paula Roach | Of Counsel | $345 |
| Pamela M. Parker | Of Counsel | $620 |
| John J. Stoia | Of Counsel | $795 |
| Lauren Ledzion | Project Attorney | $350 |
| Vincent M. Serra | Project Attorney | $345 |
| Paralegals | - | $240 - $295 |
| Bonnett, Fairbourn, Friedman & Balint, P.C. | | |
| Andrew S. Friedman | Shareholder | $650 |
| Elaine A. Ryan | Shareholder | $575 |
| T. Brent Jordan | Associate | $500 |

8

| Timekeeper | Position | Rate |
|---|---|---|
| Patricia N. Syverson | Associate | $400 |
| Manfred C. Muecke | Associate | $375 |
| Todd D. Carpenter | Associate | $375 |
| Michael D. Sandulak | Associate | $350 |
| Michael C. McKay | Associate | $250 |
| Paralegals | - | $100 - $175 |
| Bock Hatch, LLC | | |
| Richard J. Doherty | Not Provided | $450 |
| Phillip A. Bock | Not Provided | $450 |
| James M. Smith | Not Provided | $350 |
| Lisa Vandercruyssen | Associate | $285 |
| Paralegal | - | $100 |
| LakinChapman, LLC | | |
| Paul Marks | Not Provided | $303 |
| Marc W. Parker | Not Provided | $396 |
| Crystal Duckett | Paralegal | $108 |

35.    In awarding these rates, Judge Bencivengo noted that "the rates charged by the attorneys and paralegals in this action" were reasonable "based on the Court's familiarity with the rates charged by other firms in the San Diego area[.]" *Id.*

36.    In another recent Southern District of California case, the Honorable Herbert B. Hoffman (Special Master) approved a fee award based on attorney rates of $695, $595, and $550 for

9

partners; $395 and $245 for associates; and $125 to $150 for paralegals. *See Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 151719 (S.D. Cal. Nov. 9, 2011).[4]

37.     Similarly, in *Iorio v. Allianz Life Ins. Co. of N. Am., Inc.*, 2011 U.S. Dist. LEXIS 21824, at *31-32 (S.D. Cal. Mar. 3, 2011), the Honorable Janis L. Sammartino approved the following rates:

| Timekeeper | Position[5] | Rate |
|---|---|---|
| Robert S. Gianelli | Partner | $750 |
| Raymond E. Mattison | Partner | $750 |
| Don A. Ernst | Partner | $750 |
| Ronald A. Marron | Partner | $595 |
| Dean Goetz | Not Provided | $595 |
| Sherril Neil Babcock | Not Provided | $575 |
| Christopher D. Edgington | Associate | $575 |
| Jully C. Pae | Associate | $500 |
| Richard R. Fruto | Associate | $410 |
| Joanne Victor | Not Provided | $450 |
| Scott Juretic | Not Provided | $410 |
| Paralegals | - | $195 |

38.     Survey data further confirm the reasonableness of Class Counsel's rates. A 2007 survey by the National Law Journal shows rates for attorneys at Luce, Forward, Hamilton & Scripps' San Diego offices as between $325 and $725 for partners, with an average of $465 and median of $475, and associates with rates between $220 and $450, with an average of $281 and a median of $280. These rates, adjusted to 2012 dollars, are summarized as follows:

---

[4] *See Cohorst*, No. 10-cv-2666-JM-BGS (S.D. Cal.), Dkt. Nos. 57-4, 57-8, and 57-9 (declarations in support of fee application showing hourly rates).

[5] *See Iorio*, No. 5-cv-633-JLS-CAB (S.D. Cal.), Dkt. No. 469 at 16-19 (fee motion describing timekeepers' experience).

| Position | 2007 Range | 2012 Range | 2007 Average | 2012 Average | 2007 Median | 2012 Median |
|----------|------------|------------|--------------|--------------|-------------|-------------|
| Partner | $325-$725 | $360-$804 | $465 | **$516** | $475 | **$527** |
| Associate | $220-$450 | $244-$499 | $281 | **$311** | $280 | **$310** |

39.     Thus, the firm's requested partner rate of $525, and requested associate rate of $295, fall within, and below the average/median range of the typical rates of a San Diego law firm that practices complex litigation. *See generally Catala v. Resurgent Capital Servs., L.P.*, 2010 U.S. Dist. LEXIS 63501, at *19 n.3 (S.D. Cal. June 22, 2010) (relying on same to award fees).

40.     A 2010 survey by the National Law Journal shows rates of firms in Los Angeles from $350-$670 for partners and $245-445 for associates. According to the same survey (including the 2009 version),[6] although the rates of defense counsel in this case are not provided, the chart below shows the rates charged by the firms currently defending other food companies in cases brought by clients of Class Counsel involving misleading health claims.[7]

| Firm | Median Partner Billing Rate | Median Associate Billing Rate |
|------|------------------------------|-------------------------------|
| Greenberg Traurig (New York Office) | $580 (2010) | $350 (2010) |
| Winston & Strawn (Chicago Office) | $660 (2010) | $375 (2010) |
| Jenner & Block (Chicago Office) | $625 (2009) | $400 (2009) |

41.     The Weston Firm's blended rate of $431.62 in this case ($511,255 divided by 1,184.5 hours) also falls below that recently approved by another Southern District court. *Stuart v. RadioShack*

---

[6] Copies of the NLJ surveys are in Class Counsel's possession but are not being filed due to their volume.

[7] *See Yumul v. Smart Balance, Inc.*, No. 10-cv-927 (C.D. Cal.) (Smart Balance represented by Greenberg Traurig); *Henderson v. The J.M. Smucker Company*, No. 10-cv-4524 (C.D. Cal.) (Smucker represented by Winston & Strawn); *Red v. Kraft Foods, Inc. et al.*, Lead Case No. 10-cv-1028 (C.D. Cal.) (Kraft represented by Jenner & Block).

11

*Corp.*, 2010 U.S. Dist. LEXIS 92067, at *16-18 (S.D. Cal. Aug. 9, 2010) (finding blended rate of $708 reasonable, "particularly when no multiplier is being sought on top of the lodestar").

### Class Counsel's Time Billed

42.    Our firm's practice is to keep contemporaneous records for each timekeeper and to regularly record time records in the normal course of business, and we kept time records in this case consistent with that practice. Moreover, our firm's practice is to bill in 6-minute (tenth-of-hour) increments. The firm's billing records are available to submit to the Court for *in camera* review upon request.

43.    The total lodestar for the Weston Firm in this matter is $509,882.50, reflecting 910 attorney hours, and 274.5 paralegal hours (split among 5 paralegals who billed between 6.2 and 130.7 hours on the case).[8] The Weston Firm's lodestar is summarized in Appendix 1 to Plaintiffs' fee motion. Prior to finalizing the firm's lodestar, we carefully reviewed our hours and made cuts for time entry errors, duplications, and instances where we determined the hours should be reduced or not billed.

44.    Although the hours billed may be seemingly high given the length of the litigation, that is because of its intensity, as the Docket evidences, including four complaints (Hohenberg, Rude-Barbato, Master Consolidated Complaint, First Amended Consolidated Complaint); many substantive and procedural motions and an MDL motion; three settlement conferences or mediations; and substantial written discovery and depositions, including from nine third parties, all in less than a year. The time also reflects Class Counsel's work on behalf of Plaintiffs in attempting to intervene in the New Jersey action in order to protect the interests of the then-putative class from both inconsistent decisions and judgments which might have an effect in this case, and from a reverse auction scenario by counsel more interested in settling the case away than litigating it for the Class's benefit.

45.    Moreover, the hours billed of 127.4 per month are within the range approved as reasonable by other courts in similar false advertising actions. *See Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986 (N.D. Cal. Apr. 4, 2012) (in false advertising action, approving fee based on 15,855.5

---

[8] As noted in Class Counsel's fee application, App. 1 n.1, Class Counsel's total lodestar includes post-application time at a blended rate. That time, however, is not specifically addressed here.

hours spent over 55 months, or 288 hours/month); *Friedman v. 24 Hour Fitness USA, Inc.*, 2010 U.S. Dist. LEXIS 143816 (C.D. Cal. July 12, 2010) (in action alleging false advertising under UCL and CLRA, and RICO violation, finding reasonable 22,578.01 hours over 45 months, or 501.7 hours/month); *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) (in false advertising action, finding reasonable 3,706.6 hours over 24 months, or 154.4 hours/month); *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) (finding reasonable 4,798.7 hours over 38 months, or 126.3 hours/month); *Yoo v. Wendy's Int'l, Inc.*, No. 07-4515 (C.D. Cal. Mar. 9, 2009), Dkt. No. 89 (in action alleging false advertising of food, approving fee based on 1,630 hours spent over 17 months, or 95.9 hours/month).

46.     The strongest evidence of the reasonability of Class Counsel's hours worked, however, comes from comparing the hours to those spent in the New Jersey *Glover* action. Although the actions consolidated there were filed more than three weeks (*Glover*, filed February 27, 2011) and almost 6 months (*Kaczmarek*, filed July 26, 2011) later than these actions (February 1 and 4, 2011, respectively), and involved <u>virtually no motion practice</u>, <u>did not have a certified class</u>, <u>relied on the discovery sought and obtained by Plaintiffs in this case</u>, and merely settled on the heels of this action, on identical terms (other than Ferrero's agreement to pay New Jersey counsel millions more in fees), <u>New Jersey counsel claim 3,000 hours</u> (*see Glover* Dkt. No. 69-1 at 3, 12), for a total lodestar of $1.8 million (and then request a 2.09 multiplier on top of that for a total fee of $3,750,000, of which $750,000 is to come from that class's $2,500,000 restitution fund). Class Counsel's hours here are *conservative* by comparison.

### The Risk of Non-Payment

47.     The Federal Judicial Center published a report in 1996 titled, "Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules ("FJC Report"). The study was requested by the Judicial Conference Advisory Committee on Civil Rules when it was considering proposals to amend Rule 23 of the Federal Rules of Civil Procedure. The study is based on 407 class actions lawsuits that either settled or went to verdict in the two-year period from July 1, 1992 to June 30, 1994 in the following four federal judicial districts: the Eastern District of Pennsylvania (Philadelphia); the Southern District of Florida (Miami); the Northern District of Illinois (Chicago); and the Northern District of California (San Francisco). FJC Report at 3-4, 7-8.

13

48.    For the 407 class actions, the FJC Report reports the following regarding class certification:

- In 59 cases (14.5%), the class claims were certified for settlement purposes only. *Id.* at 35.

- In 93 cases (22.85%), the class claims were certified unconditionally. *Id.*

- Therefore, a total of 152 cases (37.35%) had certified classes, and the other 255 (62.65%) did not. *Id.*

- In at least 23 of the certified classes, the outcome was unfavorable to Plaintiffs. This is based on Table 39 of the FJC Report (at p. 179), which lists the following outcomes adverse to plaintiffs in certified class cases (excluding classes certified for settlement purposes only): nine dismissals by motion, one stipulated dismissal, one non-class settlement, and twelve summary judgments. *Id.* at 179, App. C, Table 39.

49.    Thus, in sum, the successful class claims from the total 407 filed class actions totaled 129 or less (152 minus 23). Using the number 129/407 to get a percentage, 31.7% or less of the filed cases resulted in successful class outcomes for plaintiffs. This does not account for degree of success (i.e., some cases could have resulted in minimal or partial success and would still be in the successful claim category).

**Class Counsel's Expenses**

50.    A summary of Class Counsel's expenses in the amount of $9,437.71 is provided in Appendix 2 to Plaintiffs' fee application. This includes $6,266.19 in recoverable costs, consisting of costs for court fees, deposition costs for transcribing, recording and travel, and service of process fees; and $3,171.52 in costs reasonably necessary to conduct the litigation including, for example, travel costs associated with court hearings, transportation and parking costs, costs for local New Jersey counsel (as required by that court's local rules), and deposition supplies.

51.    Class Counsel incurred additional costs for which it does not seek reimbursement, including photocopying (internal and external), postage and overnight delivery, meals, including while traveling, legal research and PACER charges. I estimate these uncharged costs to our firm to be over $3,000.

**Notice and Administration Costs**

52.     The parties in this action and the 49-state action coordinated in providing class notice, and are using the same administrator to process class claims (although the claims themselves are being handled separately, with each case's respective restitution fund being held in a separate account, etc.). The parties agreed that each case should share the costs in proportion to the sales, meaning the California fund is responsible for 12.4% of the costs. According to the claims administrator, as of May 23, 2012, based on the current claims filed, the current overall estimate for notice and administration costs relating to both the California and 49-State Settlement is $566,564. The California fund's 12.4% share is approximately $70,250 (12.7% of the fund), while the 49-State Fund's share is approximately $501,975 (20% of its fund).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on May 25, 2012 in Santa Clara, California.

/s/ Jack Fitzgerald
Jack Fitzgerald

15

DATED: May 25, 2012

Respectfully Submitted,

/s/ Jack Fitzgerald
Jack Fitzgerald

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
MELANIE PERSINGER
COURTLAND CREEKMORE
1405 Morena Blvd., Suite 201
San Diego, CA 92109
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
MAGGIE REALIN
B. SKYE RESENDES
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Class Counsel*

16

# EXHIBIT 1

```
1                  UNITED STATES JUDICIAL PANEL

2                              ON

3                  MULTIDISTRICT LITIGATION

4   SAN FRANCISCO, CALIFORNIA; CEREMONIAL COURTROOM, NINETEENTH

5    FLOOR; JUDGE DAMRELL, JUDGE VRATIL, JUDGE HEYBURN, JUDGE

6                  FURGESON, JUDGE JONES

7   IN RE:  NUTELLA MARKETING      ) MDL NO. 2248

8   AND SALES PRACTICES LITIGATION) THURSDAY, JULY 28, 2011

9   _____) ORAL ARGUMENT

10                  REPORTER'S TRANSCRIPT OF PROCEEDINGS

11  APPEARANCES:

12  FOR THE PLAINTIFF MARNIE GLOVER:

13  SCOTT & SCOTT
    BY:  JOSEPH P. GUGLIELMO, ATTORNEY AT LAW (SPEAKER ONE)
14  500 FIFTH AVENUE, SUITE 40             FOUR MINUTES
    NEW YORK, NEW YORK  10110-4099         ONE MINUTE REBUTTAL
15  TEL (212) 302-0201

16  FOR THE PLAINTIFF ATHENA HOHENBERG AND LAURA RUDE-BARBATO:

17  THE WESTON FIRM
    BY:  GREGORY S. WESTON, ATTORNEY AT LAW   (SPEAKER TWO)
18  888 TURQUOISE STREET                   FIVE MINUTES
    SAN DIEGO, CALIFORNIA  92109
19  TEL (858) 488-1672 FAX (480) 247-4553
    GREG@WESTONFIRM.COM
20
    FOR FERRERO U.S.A., INC:
21
    WILSON SONSINI GOODRICH & ROSATI
22  BY:  KEITH E. EGGLETON, ATTORNEY AT LAW (SPEAKER THREE)
    650 PAGE MILL ROAD
23  PALO ALTO, CALIFORNIA  94304-1050
    TEL (650) 493-9300 FAX (650) 493-6811
24

25  REPORTED BY:  STARR A. WILSON, CSR 2462
```

```
 1   SAN FRANCISCO, CALIFORNIA; THURSDAY, JULY 28, 2011; 10:25
 2   A.M., CEREMONIAL COURTROOM, NINETEENTH FLOOR, JUDGE DAMRELL,
 3   JUDGE VRATIL, JUDGE HEYBURN, JUDGE FURGESON, JUDGE JONES
 4                              -oOo-
 5          JUDGE HEYBURN:  Next is MDL 2248.  Nutella
 6   Marketing and Sales.
 7          Mr. Guglielmo.
 8          MR. GUGLIELMO:  Thank you.
 9          Good morning.  My name is Joseph Guglielmo from
10   Scott & Scott.  I represent the Plaintiff Marnie Glover, who
11   is the movant in this action seeking consolidation and
12   centralization to the District of New Jersey before the
13   Honorable Freda Wolfson.
14          Your Honor, to update the panel briefly, there are
15   now five federal cases pending.  Um, Defendants, since we
16   filed our papers, have notified the panel of an action that
17   has been recently filed in the District of New Jersey as
18   well as an additional action in the Northern District of
19   California.
20          JUDGE FURGESON:  These are all with different
21   plaintiffs' lawyers?
22          MR. GUGLIELMO:  Different plaintiffs' lawyers,
23   yes.  All of these cases are asserting nationwide classes.
24          As we set forth in our papers, and as the
25   Defendants have set forth in their papers, both the
```

# EXHIBIT 2

650 Page Mill Road
Palo Alto, CA 94304-1050
PHONE 650.493.9300
FAX 650.493.6811
www.wsgr.com

**WSGR** Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

January 25, 2012

**Via Certified Mail**
**Return Receipt Requested**

CAFA Coordinator
Office of the Attorney General
Consumer Law Section
110 West "A" Street, Suite 1100
San Diego, CA 92186-5266

*In re Ferrero Litigation*, 11-CV-00205-H (CAB) (S.D. Cal.)

Dear Sir or Madam:

Ferrero U.S.A., Inc. ("Ferrero"), a defendant in the above-referenced litigation hereby provides notice, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.*, of a proposed class action settlement, which was filed with the District Court for the Southern District of California (the "Court") on January 19, 2012.

Pursuant to 28 U.S.C. § 1715(b), enclosed herewith is a complete copy of the Master Consolidated Complaint, *In re Ferrero Litigation*, 11-CV-00205-H (CAB) (S.D. Cal.), filed on March 23, 2011, and complete copies of the following documents:

- Plaintiffs' Memorandum of Points and Authorities in Support of Joint Ex Parte Application;

- Declaration of Gregory S. Weston in Support of Joint Ex Parte Application for Preliminary Approval of Settlement, with exhibits, including:

  o Exhibit 1: Class Action Settlement Agreement, filed January 19, 2012, and exhibits thereto:

    ▪ Exhibit A: Claim Form;
    ▪ Exhibit B: [Proposed] Order Granting Joint Motion for Preliminary Approval of Settlement;
    ▪ Exhibit C: Publication Notice;
    ▪ Exhibit D: Settlement Notice;
    ▪ Exhibit E: Revised Principle Display Panel;
    ▪ Exhibit F: Information Panel Depiction;
    ▪ Exhibit G: Transcripts of Nutella Television Advertisements "Mom," "Pass," and "Silence";

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

CAFA Coordinator
Office of the Attorney General
January 25, 2012
Page 2

- ■ Exhibit H: Replacement website pages for "Nutella & Nutrition," "About Nutella," and "Breakfast Builder".

- ● Order Granting Joint Motion for Preliminary Approval of Settlement, entered January 23, 2012, setting a Fairness Hearing for July 9, 2012.

The definition of the settlement class in this proposed settlement includes "all persons who, on or after August 1, 2009, bought one or more Nutella products in the State of California for their own or household use rather than resale or distribution."

Please do not hesitate to contact me if you require additional information.

Very truly yours,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Dale R. Bish

Enclosure

# EXHIBIT 3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  | Case No. CV 10-00927 MMM (AJWx) |
|---|---|
| In Re NUCOA REAL MARGARINE LITIGATION | ORDER CERTIFYING SETTLEMENT CLASS, APPROVING FINAL SETTLEMENT, DENYING MOTION TO INTERVENE, AND AWARDING ATTORNEYS' FEES, INCENTIVE AWARD, AND COSTS |

    Rebecca Yumul commenced this action of February 8, 2010 on behalf of herself, and all others similarly situated, against Smart Balance, Inc.[1] In the currently operative complaint, Yumul pleads claims for violation of California's unfair competition law ("UCL"), California Business & Professions Code § 17200 et seq.; violation of California's false advertising law ("FAL"), California Business & Professions Code § 17500 et seq.; and violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 et seq.[2] Yumul alleges

---

[1]Complaint for Violations of Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act ("Complaint"), Docket No. 1 (Feb. 8, 2010).

[2]Fourth Amended Complaint ("FAC"), Docket No. 95 (Jun. 3, 2011).

Class counsel requests $500 per hour for work performed by Gregory S. Weston and Jack Fitzgerald (the two partners working on the case); $275 per hour for work performed by Melanie Persinger (an associate working on the case); and $150 per hour for work performed by Evan Lee, Rosalyn Sutton, Christopher Tanimasa, and David Newberry (paralegals working on the case).[113]

As evidence that these rates are reasonable, class counsel proffer evidence that Weston and Fitzgerald, who graduated from law school in 2004 and are partners in the firm, have extensive experience in litigating consumer class actions.[114]   They also adduce evidence that Weston and Fitzgerald have been awarded fees based on rates of $500 per hour in a recent case in the Northern District of California.[115]   They cite a number of cases in which partners were awarded fees at rates comparable to what Weston and Fitzgerald seek. [116]   See *POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633 CAS (JWJx), 2008 WL 4351842, *4 (C.D. Cal. Sept. 22, 2008) ("Based on the Court's familiarity with the rates charged by other firms in the Los Angeles legal community, the hourly rates of $700, $750, and $685, $525, $475, and $450 for partners and $425, $400, $360, $335, $325, and $275 for associates are reasonable"); *Lingenfelter v. Astrue*, No. SA CV 03-00264-VBK, 2009 WL 2900286, *4 (C.D. Cal. Sept. 3, 2009) ("Based on numerous factors, including the experience of counsel, the risk in taking this case, and the result achieved, the Court determines that $600.00 per hour appropriately reflects all of these factors and is fair and reasonable compensation"); *Vasquez v. Rackauckas*, No. SACV09–1090 VBF(RNBx), 2011 WL 3320482, *2 (C.D. Cal. July 29, 2011) (finding reasonable a $505 per hour rate for a 2003 law school graduate, and $460 per hour a reasonable rate for a 2006 law school graduate). Based on a 2010 survey by the National Law Journal, Weston also asserts that firms in Los Angeles regularly bill clients between $270 to $850 per hour for partners' time and $195 to $620

---

[113]*Id.* at 15-16.

[114]Weston Fees Decl., ¶¶ 22-25.

[115]Weston Fees Decl., ¶ 27.

[116]*Id.*, ¶ 28.

1  per hour for associates' time.[117]  The evidence adduced sufficiently establishes that the rates

2  requested by class counsel are reasonable.   Similarly, class counsel has proffered ample evidence

3  that its requested rate of $150 per hour is below the standard rate for paralegals, and is

4  reasonable.[118]  *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008)

5  (finding a $225 rate reasonable for paralegals); *Vasquez*, 2011 WL 3320482 at *2 (finding $210

6  and $200 rates reasonable for paralegals).

### b.     Reasonableness of the Hours Expended

8       A court may award attorneys' fees only for the number of hours it concludes were

9  reasonably expended on the litigation. *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good

10 faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary").

11 "[T]he fee applicant bears the burden of documenting the appropriate hours expended in the

12 litigation and must submit evidence in support of th[e] hours worked. . . .'" *Gates v. Rowland*, 39

13 F.3d 1439, 1449 (9th Cir. 1994) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir.

14 1992)); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("[C]ounsel bears

15 the burden of submitting detailed time records justifying the hours claimed to have been

16 expended"); *Pac. W. Cable Co. v. City of Sacramento*, 693 F.Supp. 865, 870 (E.D. Cal. 1988)

17 ("The cases do not indicate that every minute of an attorneys' time must be documented; they do,

18 however, require that there be adequate description of how the time was spent, whether it be on

19 research or some other aspect of the litigation. . .").

20      Class counsel report that they have spent 1,228.55 attorney hours and 392.45 paralegal

21 hours on this case; they also seek compensation for the 40 hours of work they predict they will

22 spend on the case between the time the motion was filed and the date judgment is entered.[119]

### i.     Class Counsel's Billing Practices

24      As support for its application, class counsel provides records listing work performed on the

---

[117]*Id.*, ¶ 30.

[118]*Id.*, ¶ 32.

[119]*Id.* at 15.

51