| | |
|---|---|
| **LAW OFFICES OF RONALD A. MARRON, APLC** | **THE WESTON FIRM** |
| RONALD A. MARRON (175650) | GREGORY S. WESTON (239944) |
| *ron@consumersadvocates.com* | *greg@westonfirm.com* |
| MAGGIE REALIN (263639) | JACK FITZGERALD (257370) |
| *maggie@consumersadvocates.com* | *jack@westonfirm.com* |
| B. SKYE RESENDES (278511) | MELANIE PERSINGER (275423) |
| *skye@consumersadvocates.com* | *mel@westonfirm.com* |
| 3636 4th Avenue, Suite 202 | COURTLAND CREEKMORE (182018) |
| San Diego, California 92103 | *courtland@westonfirm.com* |
| Telephone: (619) 696-9006 | 1405 Morena Blvd. Suite 201 |
| Facsimile: (619) 564-6665 | San Diego, CA 92110 |
| | Telephone: (619) 798-2006 |
| | Facsimile: (480) 247-4553 |

**Class Counsel**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE FERRERO LITIGATION | Case No. 3:11-cv-00205-H-CAB<br>Pleading Type: Class Action<br><br>**DECLARATION OF ATHENA HOHENBERG IN SUPPORT OF MOTION FOR FINAL APPROVAL & MOTION FOR APPROVAL OF ATTORNEYS' FEES AND INCENTIVE AWARDS**<br><br>Judge: The Honorable Marilyn L. Huff<br>Hearing: July 9, 2012<br>Time: 10:30 a.m.<br>Location: Courtroom 3 |

I, Athena Hohenberg, declare:

1. I am a Plaintiff and was appointed Class Representative in the above-captioned lawsuit. I submit this declaration in support of Plaintiffs' Motion for final approval and Motion for Approval of Attorneys' Fees and Incentive Awards. I have firsthand knowledge of the matters stated in this declaration, and could and would testify thereto.

### My Decision to Volunteer to Bring this Lawsuit

2. I volunteered to bring this lawsuit because it was upsetting to me that Ferrero would take advantage of my trust by giving me the impression that Nutella was a healthy breakfast for my daughter, when in fact it is a desert item. I imagined that other mothers would feel the same way. Even though my lawsuit sought a refund for the Nutella I purchased, my primary motivation or goal for bringing this lawsuit was to get Ferrero to stop advertising Nutella in this way in order to prevent it from tricking other moms the way I felt tricked.

3. Before ultimately deciding to volunteer and participating in this lawsuit, I conferred extensively with my attorney, Ron Marron, in an effort to understand the consumer and advertising laws and what would be expected of me, including my obligations and responsibilities, as a class representative. After several discussions relating to Ferrero's advertising, and the healthy products I like to feed my daughter, I retained attorney Mr. Marron on January 27, 2011.

### My Participation in this Lawsuit

4. Since I decided to bring this suit, I have been in frequent communication with Mr. Marron and other attorneys involved in the case. For example, throughout the lawsuit I received many telephone calls, emails and letters from Class Counsel's offices, providing me with continuous updates and developments about the case's progress. These communications frequently accompanied and explained legal documents such as pleadings, court rulings, requests for documents, interrogatories, and deposition transcript(s), which I read carefully to ensure I understood them and what was occurring in the case. I often contacted my attorneys or their staff with questions concerning legal documents, the legal process, scheduling, and other related matters.

5. During the course of this lawsuit I have received and reviewed the following e-mails from Class Counsel, although this is not an exhaustive list:

- January 26, 2011 e-mail RE: Retainer Agreement;
- January 26, 2011 e-mail RE: News Article, "Italy fears for Nutella with new EU food labels";
- January 26, 2011 e-mail RE: Nutella Commercial;
- January 28, 2011 e-mail RE: CLRA Notice Letter;
- January 31, 2011 e-mail RE: initial draft of the Complaint;
- February 2, 2011 e-mail RE: filed Complaint;
- February 2, 2011 e-mail RE: topclassactions.com Article;
- February 17, 2011 e-mail RE: First Amended Consolidated Complaint request for information concerning advertising seen;
- April 4, 2011 e-mail RE: filed Consolidated Complaint;
- April 28, 2011 e-mail RE: Declaration in Support of Motion Opposing a Transfer of this Case to New Jersey;
- April 29, 2011 e-mail RE: Declaration in Support of Motion Opposing a Transfer of this Case to New Jersey;
- May 15, 2011 e-mail RE: Case Update;
- August 9, 2011 e-mail RE: Case Update;
- August 28, 2011 e-mail RE: Case Update;
- August 31, 2011 e-mail RE: Law 360 Article on Nutella Case;
- September 9, 2011 e-mail RE: Deposition Date;
- September 14, 2011 e-mail RE: Deposition Date;
- September 15, 2011 e-mail RE: Documents Requested by Defendant;
- September 22, 2011 e-mail RE: Deposition;
- September 23, 2011 e-mail RE: First Amended Consolidated Complaint;
- September 27, 2011 e-mail RE: Defendant's Request for Documents;

2

1    • October 12, 2011 e-mail RE: Early Neutral Evaluation Conference;

2    • November 21, 2011 e-mail RE: Case Management Conference and Mandatory Settlement Conference;

• April 26, 2012 e-mail RE: ABC News Article on Nutella Case;

• April 27, 2012 e-mail RE: Google Article on Nutella Case; and

• April 29, 2012 e-mail RE: News Article on Nutella.

6. During the course of this lawsuit I have received and reviewed the following letters from Class Counsel, although this is not an exhaustive list:

• August 11, 2011 Letter regarding Ferrero's First Set of Interrogatories;

• September 15, 2011 Letter regarding Early Neutral Evaluation Conference and Deposition;

• November 21, 2011 Letter regarding Case Management Conference and Mandatory Settlement Conference; and

• December 20, 2011 Letter regarding withdrawal of Margarita Salazar as my attorney.

7. In addition to regularly communicating with my attorneys about the lawsuit, I was also involved in assisting with discovery and case filings. For example, through telephone conversations and an in-person meeting, I assisted my counsel in responding to Ferrero's document requests and interrogatories, including providing full substantive responses to 75% of Ferrero's interrogatories and searching for and producing documents I had that were responsive to Ferrero's requests.

8. Responding to Ferrero's requests for documentation and information was time consuming, but I took the time to make sure I understood the question that was being asked. If I did not understand the question, which was often the case, I discussed with my attorneys before answering. Once I answered questions to the best of my ability, I reviewed my responses with counsel. After giving my responses to my lawyers, they prepared formal written responses, which I reviewed before they were served.

3

*In re Ferrero Litigation,* Case No. 3:11-CV-00205-H-CAB
DECLARATION OF ATHENA HOHENBERG

9. I also helped my attorneys prepare and signed my Declaration in Support of Plaintiffs' Opposition to Ferrero's Motion to Transfer of this Case to New Jersey, which was filed on May 2, 2011.[1]

10. My deposition was taken on September 29, 2011, which lasted five hours. This was a difficult experience requiring lengthy pre-deposition preparation and interview sessions with my attorneys, and generating anxiety over the deposition itself because of my lack of familiarity with the procedure. During the course of the deposition questioning, I took care to answer the questions clearly and precisely so as not to be misconstrued and to keep an accurate record.

11. Finally, I attended two settlement conferences with Ferrero, on October 19 and November 28, 2011, both in front of Judge Bencivengo. In each instance, I took time off work and time away from my children to attend.

12. I estimate my total involvement in this lawsuit amounts to approximately 60 hours.

**Hardships I Experienced Because of My Participation in this Lawsuit**

13. I work in Imperial Beach, California, in San Diego County, in a conservative property management firm. My work hours are not flexible and I often find myself working over 40 hours per week completing various tasks including supporting real estate agents, brokers, managing properties, and interacting with property owners and contractors.

14. I am also a single mother and live with my 4 year old daughter and 19 year old step daughter. At the outset of this litigation, my then 3 year old daughter had (has) a medical condition and was under-going medical testing, diagnostics and evaluation to determine the cause of an apparent disability (I do not care to be more specific so as to protect my daughter's privacy). In addition, she was (is) undergoing speech therapy. I arrange for her appointments and care with various health care providers and her speech therapist, and attend 9 out of every 10 appointments or, if I cannot get time off from work, ensure she has transportation for her appointment.

---

[1] Dkt. No. 33-1.

4

*In re Ferrero Litigation,* Case No. 3:11-CV-00205-H-CAB
DECLARATION OF ATHENA HOHENBERG

15. This lawsuit generated a great deal of publicity almost immediately after it was filed, with many authors and commentators ridiculing the lawsuit despite not knowing the facts or understanding the law. Unfortunately, much of this ridicule was directed at me personally in comments that questioned my intelligence, sincerity, and competence as a mother. I even received unsolicited e-mails and even telephone calls from strangers harassing me about the lawsuit. This was very disturbing. Worst of all, though, was that my *daughters* were also harassed on two occasions.

16. Although this harassment quieted after a while, on April 26, 2011 media outlets across the country (and even internationally) picked up the story of the Nutella settlement, and I experienced this all over again, but much worse. I began receiving endless calls on my home phone, cell phone, and (worst of all) at work, where the volume of telephone calls blocked the lines and prevented me from carrying out my duties, to the point of jeopardizing my job. My boss was livid. In addition, someone hacked into my Facebook page to obtain personal pictures of me and my daughter which were then used in a blog ridiculing me.

17. As a result of the unwanted attention, I felt completely humiliated and declined all media requests to appear on news shows, such as Good Morning America and Anderson Cooper.

18. I had not expected to expose myself and my family to such harassment during the course of acting as a Class Representative in this lawsuit, or to be the subject of so many posting and articles online degrading me for taking a stand.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed this 24th day of May, 2012, in, Imperial Beach, California.

Athena Hohenberg