| | |
|---|---|
| **LAW OFFICES OF RONALD A. MARRON, APLC** | **THE WESTON FIRM** |
| RONALD A. MARRON (175650) | GREGORY S. WESTON (239944) |
| *ron@consumersadvocates.com* | *greg@westonfirm.com* |
| MAGGIE REALIN (263639) | JACK FITZGERALD (257370) |
| *maggie@consumersadvocates.com* | *jack@westonfirm.com* |
| B. SKYE RESENDES (278511) | MELANIE PERSINGER (275423) |
| *skye@consumersadvocates.com* | *mel@westonfirm.com* |
| 3636 4th Avenue, Suite 202 | COURTLAND CREEKMORE (182018) |
| San Diego, California 92103 | *courtland@westonfirm.com* |
| Telephone: (619) 696-9006 | 1405 Morena Blvd. Suite 201 |
| Facsimile: (619) 564-6665 | San Diego, CA 92110 |
| | Telephone: (619) 798-2006 |
| | Facsimile: (480) 247-4553 |

**Class Counsel**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FERRERO LITIGATION | Case No. 3:11-cv-00205-H-CAB<br>Pleading Type: Class Action<br><br>**DECLARATION OF LAURA RUDE-BARBATO IN SUPPORT OF MOTION FOR FINAL APPROVAL & MOTION FOR APPROVAL OF ATTORNEYS' FEES AND INCENTIVE AWARDS**<br><br>Judge: The Honorable Marilyn L. Huff<br>Hearing: July 9, 2012<br>Time: 10:30 a.m.<br>Location: Courtroom 3 |

I, Laura Rude-Barbato, declare:

1. I am a Plaintiff and was appointed Class Representative in the above-captioned lawsuit. I submit this declaration in support of Plaintiffs' Motion for final approval and Motion for Approval of Attorneys' Fees and Incentive Awards. I have firsthand knowledge of the matters stated in this declaration, and could and would testify thereto.

## **My Decision to Participate in this Lawsuit**

2. I initially heard from an acquaintance that the makers of Nutella were getting sued for falsely advertising that Nutella was part of a balanced breakfast. It was then I realized that I had been duped as well and I was angry. I decided to participate in the lawsuit because I felt Ferrero had also taken advantage of me by suggesting that Nutella was a healthy breakfast for my son when, in fact, it is a dessert item.

3. Not long after, I sought the advice of the attorneys that were also representing Ms. Hohenberg. Before I agreed to participate in the lawsuit, I talked at length to counsel, who explained the consumer and advertising laws and what it meant to be a class representative in a lawsuit like this. After several discussions relating to Ferrero's advertising and the healthy products I like to feed my son, I decided to retain counsel and file a lawsuit.

## **My Participation in this Lawsuit**

4. Since filing the lawsuit, I received an abundant amount of communications from my attorneys, providing me with current events as to the progress of the case. These communications sometimes included documents, like correspondences, e-mails, telephone calls, visits to my work place, attorney office visits, court filings, court rulings, and discovery requests. I was careful to read and comprehend the documents and communications direct to me, and, if I didn't understand, I would ask my attorney to explain. I would often contact my attorneys or their staff with questions concerning a legal document, the legal process, and/or scheduling.

5. During the course of this lawsuit I have received and reviewed the following e-mails from Class Counsel, although this is not an exhaustive list:

- Email dated 2-1-11, regarding full contact information and meeting to go over case information.

- Email dated 2-17-11, regarding First Amended Consolidated Complaint and advertising seen by me.

- Email dated 2-21-11, regarding meeting to go over case information with co-counsel.

- Email dated 2-23-11, regarding News Article on Nutella Case.

- Email dated 4-11-11, regarding case update and the filed Consolidated Complaint.

- Email dated 5-15-11, regarding case update and MDL.

- Email dated 8-19-11, regarding Responses to Defendant Ferrero's Interrogatories.

- Email dated 8-28-11, regarding case update and Motion for Class Certification.

- Email dated 8-31-11, regarding Law 360 Article.

- Email dated 9-7-11, regarding Deposition and Documents needed for Defendants.

- Email dated 9-8-11, regarding Deposition Dates and Documents needed for Defendants.

- Email dated 9-15-11, regarding Deposition Dates and Hearing Date.

- Email dated 9-15-11, regarding Documents needed for Defendants.

- Email dated 9-22-11, regarding Deposition Date and Preparation Dates for the Deposition.

- Email dated 9-23-11, regarding First Amended Consolidated Complaint.

- Email dated 9-27-11, regarding Defendant's Request for Documents to me.

- Email dated 10-12-11, regarding Early Neutral Evaluation Conference.

- Email dated 11-16-11, regarding Law 360 Article.

- Email dated 11-21-11, regarding Order for a Case Management Conference and Mandatory Settlement Conference.

- Email dated 11-25-11, regarding Address of the Court for the Conference Schedule.

- Email dated 4-29-12, regarding News Article on Nutella.

In addition, there were e-mails regarding where I purchased the Nutella and directing me to provide the addresses of the stores in which I had made the purchases.

6. During the course of this lawsuit I have received and reviewed the following letters from Class Counsel, although this is not an exhaustive list:

- Letter dated 8-12-11, regarding Defendant Ferrero U.S.A., Inc's First Set of Interrogatories In Re: Ferrero Litigation.

- Letter dated 9-15-11, regarding Early Neutral Evaluation Conference and Deposition.

- Letter dated 11-21-11, regarding Order for a Case Management Conference and Mandatory Settlement Conference.

- Letter dated 12-20-11, regarding the removal of Margarita Salazar as my attorney.

7. In addition, with the help of my attorneys, I prepared and signed under penalty of perjury a declaration in support of our motion opposing a transfer of this case to New Jersey, which was filed on May 2, 2011.[1]

8. I also responded to various discovery requests with the assistance of my counsel, including requests for documents and interrogatories. I searched for and produced the documents I had that were responsive to Ferrero's requests. This was time consuming, but I was careful to do my best in responding and assisting my attorneys to the fullest extent possible.

9. On or about September 29, 2011 I met with my attorney, Mr. Marron for several hours to prepare for my deposition and discuss what questions to expect during my deposition. I was deposed on September 30, 2011, for approximately five hours. This deposition was a difficult experience both before and afterwards, and caused me more stress than any other aspect of the litigation process. First, I had to undergo lengthy pre-deposition preparation and interview sessions with my attorneys; after that I had to worry about whether I would handle the questioning properly. During the course of the questioning I felt I was belittled, embarrassed, and was repeatedly asked irrelevant questions regarding the food I serve at my café, what food I have in my refrigerator and how could I not read the Nutella label before purchasing Nutella. Nevertheless, I stayed cool and polite and I took care to answer the questions as clearly and precisely as I could.

---

[1] Dkt. No. 33-2.

10. Finally, I attended two settlement conferences with Ferrero, one on October 19; and, the other on November 28, 2011, both in front of Judge Bencivengo. In each case, I took time off work and away from my family to attend the mediations.

11. I estimate my total involvement in this lawsuit to be about 60 hours.

### Hardships I Experienced Because of My Participation in this Lawsuit

12. I live in Imperial Beach, California with my three youngest children, ages 16, 13, and 7. I work in a local café that my business partner and I started in November 2010. While my work hours are flexible in order for me to also meet my family obligations, my responsibilities in running the café include working over 60 hours per week completing various tasks including operating the bakery, opening the store, operating the cash register, waiting tables, and filling food and drink orders.

13. All three of my children are enrolled in California public schools and are involved in extracurricular activities and sports programs. My eldest son is on his high school wrestling team, competes in triathlons and is currently completing 200 hours of community service as part of his commitment to his school and in an effort to meet his graduation requirements. In addition to caring and providing for my children and running the business, I also provide care and assistance to my elderly disabled mother. My mother suffers from back and knee problems which has caused her limited mobility. In addition to her physical limitations, my mother also suffers from severe anxiety disorder, obsessive compulsive disorder and severe depression. She completely relies on me for her care and well-being. Despite my demanding work schedule and family obligations, I dedicated time necessary to see this case through to its conclusion. Frankly, I feel very strongly about preventing this false advertising from continuing.

14. When we first filed the lawsuit, there was a lot of publicity and I saw several articles, blogs and other comments online accusing me of being greedy, stupid, ignorant, etc. It was very upsetting, I felt a little angry and depressed. Later, after the settlement, in April, there was another wave of media attention and, again, I encountered lots of negative comments about the lawsuit and myself and Ms. Hohenberg. I decided to appear on Good Morning America to explain to the public that I sued

4

Ferrero on behalf of thousands of moms, because I do not believe it is fair to advertise a product as healthy when it mainly consists of fat and sugar. I wanted to tell the public that this lawsuit was not motivated by greed as so many people seemed to assume, but out of a genuine desire for truth in advertising. I was not compensated for my appearance in that program, but felt it was one step toward giving our side of the story.

15. I did not expect to expose myself or my family to such attention when volunteering to bring the lawsuit, and I find it upsetting that I could be attacked for doing something like this. Still, I feel strongly that this was an important lawsuit, and proud that I contributed to Ferrero deciding to change its advertising, which was the main reason I brought the suit, and I think its most important result. Still, I wish I would not have been subject to such personal scrutiny and criticism.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed this 24th day of May, 2012, in, Imperial Beach, California.

*Laura Rude-Barbato*
Laura Rude-Barbato

5