Grenville Pridham
2522 Chambers Road, Suite 100
Tustin, CA   92780
(714) 486-5144
grenville@grenvillepridham.com
Local Counsel

Mark Lavery
733 Lee St.
Des Plaines, IL 60016
(847) 813-7771
mtllaw@gmail.com

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:     FERRERO LITIGATION | Case No. 3:11-CV-205-H-(CAB) |
| | **Objection to Class Action Settlement and Notice of Intent to Appear at Fairness Hearing** at 10:30 a.m. on July 19, 2012, on behalf of Class Members Courtney Drey and Andrea Pridham |

TO:

Clerk of Court
U.S. District Court for the Southern District
of California
880 Front Street, Suite 4290
San Diego, CA 92101-8900
Telephone: 619-557-5600

Ronald A. Marron
LAW OFFICES OF RONALD A. MARRON, APLC
3636 4th Avenue, Suite 202
San Diego, CA 92103
Telephone: 619-696-9006

Gregory S. Weston
Jack Fitzgerald
THE WESTON FIRM
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: 619-798-2006

Keith E. Eggleton
Colleen Bal
Dale R. Bish
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: 650-493-9300

**NOTICE OF OBJECTION TO CLASS SETTLEMENT IN IN RE FERRERO LITIGATION, CASE NO. 11-CV-0205 H (CAB) AND NOTICE OF INTENTION TO APPEAR THROUGH COUNSEL AT FINAL APPROVAL HEARING**

Courtney Drey and Andrea Pridham, Class Members and Objectors, through their counsel Grenville Pridham and Mark T. Lavery, hereby object to final approval of the proposed class action settlement in Case No. 11-CV-205 H (CAB) (*See* Exhibit A - Declaration of Courtney Drey and Exhibit B - Declaration of Andrea Pridham) and state in support as follows:

This Court should reject the proposed settlement for one main reason.  The settlement improperly seeks federal judicial approval for Ferrero's Nutella "balanced breakfast" marketing campaign. Objectors Drey and Pridham also submit three others reasons for denial of approval on legal grounds; (1) Class Counsel and the Class Representatives are inadequate under Rule 23(a)(4), *See Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689, 1997 U.S. LEXIS 4032, 65 U.S.L.W. 4635, 11 Fla. L. Weekly Fed. S 128, 97 Cal. Daily Op. Service 4894, 1997 Colo. J. C.A.R. 1314, 97 D.A.R. 8025, 28 Envtl. L. Rep. 20173, 37 Fed. R. Serv. 3d (Callaghan) 1017 (1997);  (2) the proposed attorney's fees and incentive awards enormously exceed 25% of the value of the "package deal" standard established most recently in *Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935 (9th Cir. Cal. 2011) and (3) notice of the Motion for Fees and Costs does not meet Rule 23(h) requirements.  *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp*., 618 F.3d 988 (9th Cir. Cal. 2010).

The main goal of this Objection is to prevent this Court from approving the so-called "injunctive relief" that gives judicial approval to Ferrero's Nutella breakfast marketing efforts.  But this Objection is bolstered by strong legal analysis under alternative legal grounds that also strongly militate towards rejection of the settlement.

### INTRODUCTION

This Court should not give federal judicial approval to the Nutella "balanced breakfast" marketing campaign.  Plaintiffs and Defendant want the Court to approve the statement that Nutella can "**Turn a balanced breakfast into a tasty one**."   (emphasis added).  In her deposition, Plaintiff Rude-

1  Barbato specifically stated that she wanted to prevent Ferrero from using the term "balanced breakfast"
2  but now she wants this Court to approve the use of balanced breakfast in conjunction with Nutella.
3       The parties have provided no evidence to the Court that Nutella is a food that is or should be part
4  of a balanced breakfast.  In the opinion of Dr. Yoni Freedhoff, Nutella actually turns a balanced
5  breakfast into an unbalanced breakfast.  (See Exhibit C - Declaration of Dr. Yoni Freedhoff.)   Dr.
6  Freedhoff is an expert in obesity medicine and volunteered to opine on the proposed settlement in this
7  case.  Objectors Drey and Pridham respectfully request that this Court will take a "sober second look" --
8  as Dr. Freedhoff suggests - before giving final approval to the so-called injunctive relief.
9       We believe that if the Court approves this settlement then the Court gives judicial sanction to
10 Ferrero's marketing desires and the settlement will not provide an aggregate benefit to the class.  We
11 suggest that Class Counsel, the named plaintiffs and Defendant Ferrero have engaged in either parallel
12 self-dealing or colluded to ask the Court to cement Ferrero as a breakfast food in the United States.  The
13 claimed goal of this case was to end Nutella "balanced breakfast" marketing but approval of the
14 settlement will perpetuate a long-standing marketing campaign to -- in the words of Class Representative
15 Hohenberg -- "trick" America's mom into buying Nutella as a breakfast food.  The status quo is
16 preferable to federal judicial approval of this so-called "injunctive relief".
17      The Court also has strong legal grounds to reject the settlement based upon adequacy, the
18 unfairness of the package deal and the parties failure to give reasonable notice of the motion for
19 attorney's fees and costs as required by Rule 23(h).
20                    **FACTUAL BACKGROUND ABOUT NUTELLA**
21      Nutella is a product from continental Europe (Italy) that has been expanding its international
22 sales over the last decade.  In an article in The Grocer in August of 2011, Ferrero's customer
23 development director Levi Boorer was interviewed. The article stated, "Ferrero's Nutella has also been
24 pushing the breakfast message with its 'Wake Up To Nutella' campaign, which has been running for
25 almost a year and has helped generate sales growth of about 20% year-on-year, according to Boorer. 'In
26 Europe, Nutella is very much a breakfast product.  This has been the bedrock of the growth of the brand.
27 We're not creating a brand new strategy we're essentially just implementing a winning one from the
28 European side.'"  As indicated by Boorer, Ferrero's key Nutella sales strategy for sales growth outside of

continental Europe is to market Nutella as a "breakfast food."   In Marketing Week, a trade publication, it was reported on August 18, 2010, that, "Nutella is launching a £10m (over US$15 million) integrated campaign positioning the spread as a "good breakfast option" for all the family."   In comparison, Ferrero is offering to pay less than $2 million for federal judicial marketing approval and a broad release from consumers to cement its Nutella "balanced breakfast" marketing campaign in California — a market that is over half of the size of the United Kingdom.   The Court need not and should not approve these efforts by Ferrero and Class Counsel.

Ferrero has been investigated by governmental authorities for marketing Nutella as a breakfast food.  As described in the Complaint, the UK took action against Ferrero.  Also Danish Minister for food Eva Kjær Hansen requested that Denmark's food control authority investigate the marketing of the Nutella as a healthy breakfast product in Denmark.

In the wake of international enforcement actions against Ferrero's Nutella breakfast marketing campaigns, Class Counsel Ronald Marron filed a class action for Anita Hohenberg.  Class representative Hohenberg claims that she, "volunteered to bring this lawsuit because it was upsetting to me that Ferrero would take advantage of my trust by giving me the impression that Nutella was a healthy **breakfast** for my daughter, when in fact it is a **dessert** item.  I imagined that other mothers would feel the same way.  Even though my lawsuit sought a refund for the Nutella I purchased, my primary motivation or goal for bringing this lawsuit was to get Ferrero to stop advertising Nutella in this way in order to prevent it from tricking other moms the way I felt tricked." (emphasis added) (See Declaration of Anita Hohenberg)

The Weston firm 3 days later filed a copycat class action for Marron's client Plaintiff Rude-Barbato. Barbato stated in her deposition that she was trying to prevent Ferrero from using the words "balanced breakfast" in its advertisements for Nutella? (Rude-Barbato deposition at p. 25 ll 2-6).

Objector Courtney Drey, a mother of three, and Objector Andrea Pridham, a mother of one, agree that Nutella is not an appropriate balanced breakfast food and should be used as a dessert item.    But Objectors Drey and Pridham — unlike the current position of the Class Representatives — believe that federal judicial approval of this settlement in not appropriate and may guarantee that Ferrero continues to market Nutella as a breakfast food in California.

Plaintiffs Hohenberg and Rude-Barbato have now abandoned their efforts to stop Ferrero from marketing Nutella as a children's breakfast food in exchange for $10,000 and $7,500 respectively for themselves and almost $1 million dollars for her lawyers.  This creates a conflict of interest.   Hohenberg and Rude-Barbato contrary to their previously stated desires now request the court to approve the statement that Nutella can "**Turn a balanced breakfast into a tasty one**."   (emphasis added).  Hohenberg and Rude-Barbato also requests that the Court approve trade dress that evokes images of Nutella in combination with healthy foods.  Hohenberg and Rude-Barbato have gone from consumer advocates to advocates for Nutella breakfast marketing in exchange for exorbitant "incentive" awards.  Rude-Barbato and Hohenberg have a conflict of interest and no longer fairly and adequately represent the class.

**THE COURT SHOULD NOT APPROVE THE SO-CALLED "INJUNCTIVE" RELIEF**

Objectors Drey and Pridham request that the Court should not give federal judicial approval to Nutella to claim that it can "**Turn a balanced breakfast into a tasty one**."   Nutella is a chocolate spread flavored with hazelnuts that may be a delicious dessert treat, but it is not a breakfast food and this court should not give any federal judicial approval to allow Ferrero to market Nutella as a breakfast food in California.   The status quo is preferable to federal judicial approval of Nutella's efforts to market its dessert product as a breakfast food.

We request that the Court consider the opinion of Dr. Yoni Freedhoff with respect to the settlement.  Dr. Yoni Freedhoff is a Canadian physician, an Assistant Professor of Family Medicine at the University of Ottawa, the former Family Medicine Chair of the Canadian Obesity Network, a Diplomate of the American Board of Obesity Medicine, and a vocal public health advocate.

As Dr. Freedhoff explained on his blog, "I took a phone call the other day from a consumer advocate lawyer named Mark Lavery who's opposed to the settlement as written.   He alerted me to this paragraph,

"Ferrero will modify the back panel of the label for Nutella (the "Information Panel") by removing the phrase "An example of a tasty yet balanced breakfast" and replacing it with "Turn a balanced breakfast into a tasty one" (the "Revised Statement").   Ferrero retains the right to determine, in

its sole discretion, the location, size and other design characteristics relating to the Revised Statement" (See Exhibit D - Blog Entry).

Mr. Lavery's concern, and it's one that I share, is that the new statement, "Turn a balanced breakfast into a tasty one", is just as disingenuous as the original." (*Id.*)

Dr. Freedhoff volunteered his opinion without payment or expectation of compensation. As Dr. Freedhoff opined, "Looking at the settlement's injunctive relief I'm confused by the proposed wording which in my mind is no less misleading than the original which was in question. The statement, "Turn a balanced breakfast into a tasty one" implies two things.  First that adding Nutella to a balanced breakfast would still leave that breakfast "balanced," and secondly that actually balanced breakfasts aren't tasty.

Again, nutrition isn't intuitive, and in large part that knowledge gap is fueled by marketing. Having watched my fair share of television commercials, and read my fair share of magazine advertisements, I know that included in Nutella in some capacity are hazelnuts and milk - nutritional heroes to many. Perhaps that's why even I was surprised to learn that in a head to head comparison with no name chocolate icing, Nutella was found to have 25% more calories and nearly 30% more sugar.  In fact by weight Nutella is 57% sugar (21g of sugar per 37g serving) and as far as nutritional benefits go, Nutella's are negligible at best providing an effectively insignificant 4% of daily calcium and iron needs.

Which brings me back to the question of whether or not Nutella can be a part of a "balanced" breakfast? As a medical doctor and an expert in both nutrition and obesity I would argue that adding a dollop of no-name chocolate icing to a "balanced" breakfast would in fact unbalance it, making what was once healthy, not. Consequently one might argue that adding a dollop of Nutella with 25% more calories and 30% more sugar than no-name chocolate icing, regardless of the minuscule amounts of calcium and iron Nutella may contain, would perhaps make that breakfast 30% more unbalanced than would adding the icing were such a measure actually quantifiable.

Personally I liken Nutella to a spreadable chocolate bar.  If you believe that adding a chocolate bar to a balanced breakfast leaves it balanced, then by all means give Nutella this marketing get-out-of-jail free golden ticket. On the other hand, if you think allowing Nutella to explicitly continue to suggest, in a society where 1 in 3 children are overweight or obese and the rates of pediatric diabetes are

Courtney Drey and Andrea Pridham Objection

skyrocketing, that the inclusion of chocolate bars with children's meals precludes nutritional balance, perhaps the wording of this settlement's proposed injunctive relief deserves a sober second look.

We request that the Court follow Dr. Freedhoff's suggestion and take a second look at the proposed injunctive relief. Objectors Drey and Pridham ask that the Court reject any approval of Nutella's breakfast marketing program.

## THE CLASS REPRESENTATIVES AND CLASS COUNSEL NO LONGER MEET THE RULE 23(a)(4) ADEQUACY PREREQUISITE

In her article, "Taking Adequacy Seriously: The Inadequate Assessment of Adequacy in Litigation and Settlement Classes," Professor Linda Mullenix, notes that, "Perhaps the [U.S. Supreme] Court's most important acknowledgment relating to the adequacy issue was the Court's recognition, in both *Amchem* and *Ortiz*, that the fairness of a settlement agreement cannot itself bootstrap a finding of adequacy (or satisfaction of the other class certification requirements). Thus, the Court recognized that adequate representation must be in place during all phases of class proceedings; back end ratification of adequacy may not be sufficient to comply with Rule 23."   *See* copy of article attached as Exhibit E.

As such, the Court in this case should re-examine the issue of adequacy of class counsel and their class representative clients. Defendants did not raise the issue of adequacy when Class Counsel made their motion for interim appointment. Furthermore, Defendant's objection to class certification did not address the adequacy of the class representatives. Thus, to date, this issue of adequacy has received little attention in this case. Objectors Drey submits that at this stage of the proceedings both class counsel and the class representatives are not adequate and cannot fairly protect the interests of the class.

Circumstantial evidence in this case suggests that this litigation was "manufactured". The Declaration of Plaintiff Rude-Barbato and her deposition reveals evidence to suggest that her complaint was filed in order to "manufacture" an appearance of competing class actions that would justify a motion for interim appointment of Class Counsel.

On February 1, 2011, Hohenberg v. Ferrero was filed by Ronald A. Marron. According to Plaintiff Rude-Barbato, "I initially heard from an acquaintance that the makers of Nutella were getting

sued for falsely advertising that Nutella was part of a balanced breakfast. It was then I realized that I had been duped as well and I was angry. I decided to participate in the lawsuit because I felt Ferrero had also taken advantage of me by suggesting that Nutella was a healthy breakfast for my son when, in fact, it is a dessert item. Not long after, I sought the advice of the **attorneys that were also representing Ms. Hohenberg**. Before I agreed to participate in the lawsuit, I talked at length to counsel, who explained the consumer and advertising laws and what it meant to be a class representative in a lawsuit like this. After several discussions relating to Ferrero's advertising and the healthy products I like to feed my son, I decided to retain counsel and file a lawsuit." See Declaration of Rude-Barbato (emphasis added).

While, Plaintiff Rude-Barbato does not specifically represent the date when she heard from an acquaintance about the lawsuit -- it must have been the very day that the case was filed because Ms. Barbato reveals in her declaration that she reviewed the following e-mail from class counsel, "Email dated 2-1-11, regarding full contact information and meeting to go over case information." While Plaintiff Rude-Barbato states that "sought the advice of the attorneys that were also representing Ms. Hohenberg", it was not the attorney representing Ms. Hohenberg that filed her case. Rather, on February 4, 2011, The Weston Firm filed a "copycat" class action complaint for Rude-Barbato that added one claim under the New Jersey Consumer Fraud Act.

It is odd that the Weston firm filed the Rude-Barbato "copycat" class action 3 days after the Hohenberg Complaint was filed because according to Rude-Barbato - she has never talked to Greg Weston or Jack Fitzgerald.

In the deposition of Ms. Rude-Barbato, Defense Counsel asked:

Q. Okay. And what about the Weston firm, when did
13 you -- who do you -- who are your lawyers at the Weston
14 firm?
15 A. I don't know them.
16 Q. You don't know them?
17 A. Huh-uh.
18 Q. Have you ever met Greg Weston?
19 A. No.

Courtney Drey and Andrea Pridham Objection

1  20 Q. Have you ever met Jack Fitzgerald?
2  21 A. No.
3  22 Q. You ever talked to either of those individuals?
4  23 A. No.
5  2 Q. Okay. Did you hire the Weston firm?
6  3 A. No.
7  4 Q. So do you --
8  5 A. I hired Ron Marron.
9  Rude-Barbato Deposition p. 9 at ll. 13-23, p. 10 ll. 2-5
10       Rude-Barbaro admitted in her deposition that she hired Ron Marron and that she never met, hired
11 or even talked to any lawyers for the Weston firm.  But the Weston firm filed a class action complaint in
12 her name on February 4, 2011.  Rude-Barbato also stated in her deposition:
13 Q. After hiring Mr. Marron in January 2011, did
14 16 his firm draft a complaint on your behalf?
15 17 A. Yes.
16 18 Q. It was his firm?
17 19 A. Yes.
18 20 Q. It wasn't the Weston firm?
19 21 A. I believe it was his firm.
20       So Rude-Barbato thought that Ron Marron was going to file a complaint for her.  But in fact, the
21 Weston firm filed the Complaint for her.  This type of activity shows that Ron Marron and the Weston
22 Firm colluded and filed copycat actions to create an appearance that Ferrero was being confronted with
23 multiple class actions and in order to justify their joint motion for appointment as Class Counsel.  This
24 type of gamesmanship creates duplicative work which leads to an unreasonable lodestar.  But more
25 importantly, this type of litigation conduct calls into question the adequacy of Class Counsel.  The Rude-
26 Barbato Complaint was not filed by the Weston Firm and the Marron Firm as co-counsel, it was filed
27 just by the Weston firm.   Was the Weston firm trying to mislead the Court about the true nature of the
28 Complaint. Did the Weston firm have authority to file the Rude-Barbato Complaint?   These are

questions the Court might want to investigate prior to finding that Class Counsel and the Class Representatives remain adequate to represent the class.

Ronald Marron stated in his Declaration that, "Although the hours billed may be relatively high given the length of the litigation, that is so because of its intensity, as the Docket evidences, including four complaints (Hohenberg, Rude- Barbato, Master Consolidated Complaint, First Amended Consolidated Complaint). Of course, we now know that Ms. Rude-Barbato hired Ronald Marron in January of 2011.

Rude-Barbato thought that the Marron firm not the Weston firm was drafting her complaint. Thus there was no need to draft the Rude-Barbato Complaint or the Master Consolidated Complaint. Mr. Marron could have filed and drafted the original complaint with both Ms. Hohenberg and Ms. Rude-Barbato as named co-plaintiffs. Instead, he had the Weston firm file the Rude-Barbato complaint thus manufacturing the appearance of competing class action and the "need" for a Master Consolidated Complaint. This type of class action behavior is bizarre and manipulative of the Court system.

In their motion to appoint interim lead Co-Class Counsel, Marron and Weston argued that, "Appointment of interim class counsel is especially appropriate where "there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, [and] a number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities . . . ." Manual of Complex Litigation Fourth § 21.11 (2004). Moreover appointment of interim counsel in such cases "will greatly reduce the inevitable duplication of effort" and the "danger of duplication of fees." See Castaneda v. Burger King Corp., No. C 08-04262, 2009 U.S. Dist. LEXIS 99084, at *50 (N.D. Cal. Sept. 25, 2009) (stating that the "overall number of timekeepers should be kept to a small, efficient core group of lawyers . . .")."

However, Ronald Marron did not disclose to the Court that he had manufactured the overlapping class actions by having the Weston firm file a separate complaint for his client Ms. Rude-Barbato. The Weston firm filed a class action for a client they had never spoken to according to Ms. Rude-Barbato's deposition. Marron and Weston argued to the Court that they sought to avoid "the danger of duplication of fees" but did not tell the Court that they had already significantly created that "danger" by the ruse of

having the Weston firm file a separate complaint for Ms. Rude-Barbato. This type of class action manipulation is not proper and makes class counsel and their clients inadequate to continue in this case. The circumstantial evidence in this case suggests that this was lawyer-motivated litigation that did not seek justice against Ferrero but rather sought to abuse the system in an attempt to self-deal for large attorney's fees and large incentive awards for themselves and the plaintiffs.

Objectors Drey and Pridham request that the Court undertake a rigorous analysis of adequacy in this case. We urge the Court to adopt some of the suggestions made by Professor Linda Mullenix in her article, "Taking Adequacy Seriously: The Inadequate Assessment of Adequacy in Litigation and Settlement Classes" and re-examine the adequacy issue under Rule 23 before approving this settlement. In light of the favorable so-called "injunctive relief" and the conduct of Class Counsel it seems apparent that lawyers and Plaintiffs in this case, sold out the class to enrich themselves.

### PLAINTIFFS AND THEIR LAWYERS SEEK 77.9% OF THE PACKAGE DEAL

Further evidence of the inadequacy of class counsel, is their massive over-reaching and self-dealing for attorney's fees, costs and incentive awards. The Ninth Circuit counseled district courts that, "Even when technically funded separately, the class recovery and the agreement on attorneys' fees should be viewed as a "package deal." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. Cal. 2011). In this case, the Ninth Circuit reaffirmed the position that 25% of the recovery to the class is the benchmark for attorney's fees in class action cases. *Id.* at 942. "If the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate." *Id.* at 945.

In this case, the total amount paid by Defendant is $1,450,000. We submit that the so-called injunctive relief is harmful to the class and has negative value. Plaintiffs have no proffered no evidence to contradict this "negative" valuation of the injunctive relief. From this total, Plaintiffs want a total of $1,130,923.26. That is 77.9% percent of the "package deal". So the class will get less than 25% of the value of the settlement. There is no justification to provide this type of award. Especially in light of the all three Bluetooth "warning signs" in the proposed settlement. See In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. Cal. 2011). In this case, (1) Counsel receives a disproportionate

Courtney Drey and Andrea Pridham Objection

distribution of the settlement; (2) there is a "clear sailing provision" and (3) fees for the "injunctive fee award" revert to the defendant rather than are given to the class. This is circumstantial evidence of collusion or self-dealing.[1]

The Court cannot rely on the representations of Plaintiff's Counsel with respect to their claimed lodestar. Plaintiff's Counsel started this case by filing two duplicative complaints. Plaintiff's complain about the Glover "copycat" action. But Marron and Weston manufactured the first "Rude-Barbato" copycat action. The Consolidation Motion and the Master Consolidated Complaint were unreasonable duplicative and manipulative attorney actions.

Plaintiff's have provided no reason why they are entitled to any award above the 25% benchmark. This is further evidence of the self-dealing that renders them inadequate.

## The Fee Request Does Not Comply with Rule 23(h)

Class Counsel has failed to provide adequate notice of their Rule 23(h) motion for fees and costs and provide class members a meaningful and cost-free opportunity to object. This is another reason to support a finding of inadequacy.

Federal Rule of Civil Procedure 23(h) provides as follows:

(h) Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply: (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner. (2) A class member, or a party from whom payment is sought, may object to the motion. (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a). (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

---

[1] See the attached renewed Objection from Ted Frank of the Center for Class Action Fairness on Self-Dealing in *Bluetooth*. Objectors Drey and Pridham apply and incorporate these arguments to this case into this Objection. Like in *Bluetooth*, the injunctive relief offers no true value to the class. In this case according to Dr. Yoni Freedhoff the injunctive relief may be misleading.

Courtney Drey and Andrea Pridham Objection

Class Counsels' fee request violates Rule 23(h) because notice of the fee motion was not "directed to class members in a reasonable manner." As one circuit court has stressed, "The plain text of the rule requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 993-94 (9th Cir. 2010) (holding "although notice of the motion was provided to the class, class members were deprived of an adequate opportunity to object to the motion itself because, by the time they were served with the motion, the time within which they were required to file their objections had already expired.")

While experienced counsel, such as the undersigned, can use PACER to locate such a motion – most class members cannot easily do so. And even if they could, downloading the motion is cost-prohibitive relative to the recovery. To download the fee motion and supporting paperwork costs $15.60. The maximum recovery is $20. A class member would have to spend more than 75% of their recover just to see the fee motion (assuming they could figure out it was on PACER and took the time to open an account). And any class member that bought less than 4 bottles of Nutella would actually lose money attempting to investigate the fee claim. The fee motion and supporting documentation, at a minimum, should be posted on the settlement website reasonably in advance of the objection deadline. The settlement website has not been updated since March 12, 2012, even though the court docket reflects significant activity since then. This is simply not acceptable notice under the express dictates of FRCP 23(h).

The Advisory Committee Notes to the 2003 amendments to Rule 23(h) further support this view. They specifically state, "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed. R. Civ. P. 23, 2003 Advisory Committee Notes, p 68. See also, 5 Moore's Federal Practice 23.124 (2009) ("[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request.")

Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential

for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately tested, information to evaluate the reasonableness of a proposed fee." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

The Class Notice in this case did "not give the class information about or access to any preliminary estimate of fees requested, nor does it inform them of how to access that information once Plaintiffs' Counsel files its application for attorney's fees" and this violates Rule 23(h). *Yoshioka v. Charles Schwab Corp.*, 2011 U.S. Dist. LEXIS 97383 ("In addition, while the notice informs class members of the upper limits of potential attorney's fees and incentive awards, it does not give the class information about or access to any preliminary estimate of fees requested, nor does it inform them of how to access that information once Plaintiffs' Counsel files its application for attorney's fees") *See* also, *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878 at *54 (N.D. Cal. 2011) the Court stated,

> To enable class members to review class counsel's motion, class counsel shall include language in the Settlement Notice indicating the deadline for filing the attorneys' fees motion, specifically stating the deadline for any class member objections to the fees motion, and informing class members that the motion and supporting materials will be available for viewing on class counsel's website.  See In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 993-94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).   That motion shall be filed with the Court and posted on class counsel's website not later than 20 days before class members' objections are due.

In this day and age, the reasonable standard conforms with the requirements discussed by Judge Chen in *Harris*.  Rule 23(h) notice was not reasonable.  In light of the fact that the Plaintiff's want

Courtney Drey and Andrea Pridham Objection

77.9% of the package deal, the failure to provide reasonable Rule 23(h) notice represents an attempt to conceal from the class the massive self-dealing in this case.[2]

Because the proposed settlement does not comply with the plain language of FRCP 23 and the governing authority set forth by the Ninth Circuit in *Mercury Interactive* and *Bluetooth,* the proposed settlement should be rejected at this time.

Objectors Courtney Drey and Andrea Pridham will appear through counsel Grenville Pridham and/or Mark T. Lavery at the Fairness Hearing scheduled for 9:00 AM on July 9, 2012.  Class Member Objectors can be reached through counsel.

Respectfully Submitted, this 8th day of June 2012.

For Objectors Courtney Drey and Andrea Pridham

/s/ *Grenville Pridham*
By Her Attorney Grenville Pridham

Grenville Pridham
2522 Chambers Road, Suite 100
Tustin, CA   92780
(714) 486-5144

grenville@grenvillepridham.com
Local Counsel

/s/ *Mark T. Lavery*
By Her Attorney Mark T. Lavery

Mark Lavery
Christopher V. Langone, Of Counsel
733 Lee St.
Des Plaines, IL 60016
(847) 813-7771

mtllaw@gmail.com

### CERTIFICATE OF SERVICE BY ECF

I hereby certify that on June 8, 2012, I caused the foregoing Objection to Class Action Settlement and Notice of Intent to Appear at Fairness Hearing to be served via ECF noticing upon those counsel of record who are registered for electronic filing.

/s/ *Grenville Pridham*

---

[2] The Final Approval Motion and Attorney's Fees Motion are Redacted.  The parties require class members to sign a protective order.  We object to that requirement and request the Court to order the parties to file an unredacted motion and provide extension of the time to object.    Publicly available sales data for Nutella is available through IRI and Nielsen; industry data compilers, and is attached hereto as Exhibit G.  We tried to resolve the matter, but were unsuccessful.  We may file a motion to lift the protective order.