| | |
|---|---|
| **LAW OFFICES OF RONALD A. MARRON, APLC** | **THE WESTON FIRM** |
| RONALD A. MARRON (175650) | GREGORY S. WESTON (239944) |
| *ron@consumersadvocates.com* | *greg@westonfirm.com* |
| MAGGIE REALIN (263639) | JACK FITZGERALD (257370) |
| *maggie@consumersadvocates.com* | *jack@westonfirm.com* |
| B. SKYE RESENDES (278511) | MELANIE PERSINGER (275423) |
| *skye@consumersadvocates.com* | *mel@westonfirm.com* |
| 3636 4th Avenue, Suite 202 | COURTLAND CREEKMORE (182018) |
| San Diego, California 92103 | *courtland@westonfirm.com* |
| Telephone:  (619) 696-9006 | 1405 Morena Blvd. Suite 201 |
| Facsimile:  (619) 564-6665 | San Diego, CA 92110 |
| | Telephone:  (619) 798-2006 |
| | Facsimile:  (480) 247-4553 |

**Class Counsel**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE FERRERO LITIGATION | Case No. 11-cv-00205 H KSC<br>Pleading Type: Class Action<br><br>**PLAINTIFFS' RESPONSE TO THE OBJECTION OF MICHAEL E. HALE AND THE PURPORTED OBJECTION OF COURTNEY DREY & ANDREA PRIDHAM**<br><br>Judge: The Honorable Marilyn L. Huff<br>Hearing: July 9, 2012<br>Time: 10:30 a.m.<br>Location: Courtroom 13 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

PLAINTIFFS' RESPONSE TO THE HALE OBJECTION ...................................................... 1

PLAINTIFFS' RESPONSE TO THE PURPORTED DREY/PRIDHAM OBJECTION ......... 2

    I.     RELEVANT FACTS ................................................................................................ 2

    II.    DREY & PRIDHAM LACK STANDING TO OBJECT .................................... 4

    III.   EVEN IF THE COURT WERE TO CONSIDER DREY & PRIDHAM'S OBJECTIONS, THEY LACK MERIT ............................................................... 6

          A.    The Injunctive Relief .................................................................................. 6

          B.    Adequacy ...................................................................................................... 8

          C.    Fees ............................................................................................................. 12

CONCLUSION ........................................................................................................................ 15

i

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT

# **TABLE OF AUTHORITIES**

**Cases**

*Amador v. Logistics Express, Inc.*,
  2011 U.S. Dist. LEXIS 97999 (C.D. Cal. 2010) ............................................................. 10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ....................................................................................................... 12

*Guschausky v. Am. Family Life Assur. Co.*,
  2012 U.S. Dist. LEXIS 46480 (D. Mont. Apr. 2, 2012) ................................................ 12

*Hall v. AT&T Mobility LLC*,
  No. 07-cv-5325-JLL-ES, Dkt. No. 570 (D.N.J. July 22, 2010) ...................................... 5

*In re Bluetooth Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................................... 12

*In re Classmates.com Consol. Litig.*,
  No. 09-cv-45-RAJ, Dkt. No. 211, slip op. (W.D. Wash. June 15, 2012) ....................... 6

*In Re Equity Funding Corp. etc.*,
  603 F.2d 1353 (9th Cir. 1979) ......................................................................................... 4

*In re HP Laser Printer Litig.*,
  2011 U.S. Dist. LEXIS 98759 (C.D. Cal. Aug. 31, 2011) ............................................. 12

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ................................................................................... 12, 14

*In re TD Ameritrade Account Holder Litig.*,
  2011 U.S. Dist. LEXIS 103222 (N.D. Cal. Sept. 12, 2011) ........................................ 2, 6

*Kohler v. Chelsea San Diego Fin., LLC*,
  2010 U.S. Dist. LEXIS 144551 (S.D. Cal. Dec. 9, 2010) ............................................... 5

*McDonough v. Toys "R" Us, Inc.*,
  2011 U.S Dist. LEXIS 150851 (E.D. Pa. Dec. 20, 2011) ............................................. 14

*Silverman v. Motorola, Inc.*,
  2012 U.S. Dist. LEXIS 63477 (N.D. Ill. May 7, 2012) ................................................ 14

*Stavenjord v. Mont. State Fund*,
  146 P.3d 724 (Mont. 2006) ........................................................................................... 12

*Warth v. Seldin*,
  422 U.S. 490 (1975) ......................................................................................................... 4

ii

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT

*Weeks v. Kellogg Co.*,
    2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) .................................................... 13, 14

**Rules**

Fed. R. Civ. P. 37 ............................................................................................................................ 2

S.D. Cal. Civ. L.R. 5.4 .................................................................................................................... 5

S.D. Cal. Civ. L.R. 7.1(h) ............................................................................................................... 6

S.D. Cal. Civ. L.R. 83.3 .................................................................................................................. 5

S.D. Cal. Civ. L.R. 83.4 .................................................................................................................. 6


**Other Authorities**

CM/ECF Electronic Case Filing Administrative Policies and Procedures Manual for the
    Southern District of California § 2(f)(1) ................................................................................. 5

CM/ECF Electronic Case Filing Administrative Policies and Procedures Manual for the
    Southern District of California § 2(f)(2) ................................................................................. 5

iii

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT

## INTRODUCTION

Over 58,000 Californians have made claims in this case[1] while there has been just *one* opt-out and *one* cognizable objection (e.g., a less than ***0.0034% combined*** opt-out and objection rate). With just a few days left in the claims period, which ends on July 5, the Class' reaction overwhelmingly favors final approval. The conclusory assertions of objector Michael Hale (Dkt. No. 124) provide no salient reason for denying the Class final settlement approval.

As for the purported objection of Courtney Drey and Andrea Pridham (Dkt. No. 123), it does not comply with the Court's Preliminary Approval Order or the Southern District of California's Local Rules and Electronic Case Filing Administrative Policies and Procedures Manual, and was filed in part by two attorneys not authorized to practice law in this District. Accordingly, the purported objection is not cognizable and should not be considered. Even if the Court were to consider Drey and Pridham's substantive objections, however, it should find that they lack merit.

## PLAINTIFFS' RESPONSE TO THE HALE OBJECTION

Mr. Hale objects to the Settlement on the basis that "the requirements of Fed. R. Civ. P. 23 cannot be met to maintain this case as a class action" because "[t]he different groups and claims are too disparate and involve too many individualized issues to be maintained as a class." Hale Obj. (Dkt. No. 124) at 1. After carefully considering extensive briefing, however, the Court determined that class certification was appropriate before there was ever a settlement, in part because of the predominance of common issues. *See* Dkt. No. 95 at 8-11. Mr. Hale's conclusory assertion, which does not identify or explain what are the supposed "different groups and claims" over which he complains, is insufficient to overturn the Court's decision.

Mr. Hale also objects that it is "unthinkable that the defendant would implement materially different practice changes in California" than elsewhere. Hale Obj. at 1. The Court, however, is only faced with determining the reasonableness, fairness and adequacy of the Settlement before it, covering the certified California class; it is not responsible for ensuring Ferrero's behavior with respect to individuals not covered by the Settlement is reasonable, fair or adequate. Even if disparate remedies for class and non-class members could form a legitimate objection, however, the injunctive relief Ferrero

---

[1] *See* Fitzgerald Decl. ¶ 18.

1

has agreed to for both the California Class and the 49-State Class is identical. Mr. Hale also contends "the practice changes are illusory and in the defendant[']s best interest," *id.*, but provides no additional facts or reasoning to support this conclusory assertion.

Finally, Mr. Hale requests that the Court "not approve the attorneys' fees and expenses," *id.*, but again provides no facts, analysis, or any reason the fee request is unfair or improper in any respect.

For these reasons, Mr. Hale's objections should be overruled. *See In re TD Ameritrade Account Holder Litig.*, 2011 U.S. Dist. LEXIS 103222, at *31-40 (N.D. Cal. Sept. 12, 2011) (overruling terse, conclusory, and/or unintelligible objections that provide "no substantive grounds for objecting").

## PLAINTIFFS' RESPONSE TO THE PURPORTED DREY/PRIDHAM OBJECTION

### I.   RELEVANT FACTS

On Sunday, June 3, 2012, the parties' counsel received a letter from attorney Mark T. Lavery stating that he represented Courtney Drey, a class member in the Nutella California Class. Mr. Lavery requested a "Rule 37 conference"[2] to discuss the footnote in Plaintiffs' Final Approval Motion, which explained that any Class Member could view the unredacted versions of Plaintiffs' briefs by agreeing to abide by the terms of the Protective Order entered in the action. *See* Fitzgerald Decl. ¶ 2 & Exs. 1-2.

On Monday, June 4, 2012, Ferrero's counsel, Dale Bish, provided Mr. Lavery with the Protective Order. Later that day, Mr. Lavery sent an email copying his co-counsel, Grenville Pridham, who Mr. Lavery stated also represented Courtney Drey. Mr. Lavery's email made no mention of purported objector Andrea Pridham.[3] In his email, Mr. Bish explained that "[a]s soon as [Ferrero] receive[s] signatures from you and Mr. Pridham, we will authorize plaintiffs' counsel to send the unredacted version of their May 25th filing." *See id.* ¶¶ 3-4 & Ex. 1.

Mr. Lavery and Mr. Bish continued to exchange emails throughout the day on Monday, June 4. During that exchange, Mr. Lavery stated that he and his co-counsel would "sign and fax the [Protective Order] confirmation tomorrow morning and call [Mr. Bish] to discuss any issues after we get the sales

---

[2] Rule 37, however, provides that "*a party* may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1) (emphasis added). Drey and Pridham are purported objectors, not parties.

[3] Objector Pridham appears to be attorney Pridham's wife. An internet search shows both Pridhams live at the same address in Orange, California. *See* Fitzgerald Decl. ¶ 4 n.1 & Ex. 3.

2

1  data." However, Mr. Lavery apparently never signed or returned the Protective Order confirmation, as
2  Mr. Bish confirmed two days later. *See id.* ¶ 5 & Ex. 1.

3       A few hours after Mr. Bish confirmed on June 6 that Mr. Lavery and/or his client(s) had not
4  signed the Protective Order, Mr. Lavery called the Weston Firm's offices. At the time, Mr. Weston and
5  Mr. Fitzgerald were in Los Angeles for a hearing. Weston Firm paralegal Allan Bradley took the call,
6  in which Mr. Lavery was borderline abusive. *See id.* ¶ 6.

7       After the hearing, Plaintiffs' counsel Mr. Fitzgerald sent Mr. Lavery an email stating, "I
8  understand you called to speak to Greg or me today. I'm sorry we missed your call, we were in Los
9  Angeles for a hearing in another matter. If you'd like to speak, we are available after 11:00 a.m. PST
10 tomorrow." Mr. Lavery never responded to the email, and did not finally call Mr. Fitzgerald until two
11 weeks later, on June 20. *See id.* ¶ 7 & Ex. 4. Mr. Lavery's conversation with Mr. Bradley was only the
12 beginning of what would be a series of discourteous telephone calls by Mr. Lavery. *See id.* ¶¶ 6-13.

13      Two days later, on Friday, June 8, Mr. Lavery sent Mr. Bish an email stating that he could not
14 agree with the Protective Order, and that "[i]f you are willing to allow the filing of an unredacted
15 motion for final approval and an extension of the objection deadline, we may reach an accord, if not we
16 may have to file a motion with the Court."[4] Mr. Bish responded that Mr. Lavery had "led me to believe
17 that you had agreed to the protective order (and had sent signatures [previously])," and that he was sure
18 "Mr. Pridham has explained that the protective order entered by Judge Bencivengo in this case is in the
19 Southern District's form and is not objectionable." Mr. Bish noted that "[i]f you intend to file a motion
20 with the court, we will respond in due course." Mr. Lavery responded with various demands for "proof"
21 that Ferrero's sales data is confidential, and Mr. Bish responding that "[w]e will respond to your filed
22 objection." *See id.* ¶ 9 & Ex. 1.

---

[4] Drey and Pridham's purported objection brief, in a footnote, moves the Court "to order the parties to file an unredacted motion and provide extension of the time to object." It further advises that Drey and Pridham "may file a motion to lift the protective order." Drey/Pridham Obj. at 15 n.2. This request runs contrary to the Court's Order, made after due consideration of the competing interests, granting Plaintiffs' application to file under seal the unredacted versions of her Final Approval Motion and Fee Application. *See* Dkt. No. 120. Drey and Pridham have no standing to seek reconsideration of that Order and, in any event, provide no persuasive reason for doing so. Further, Drey and Pridham neither agreed to sign the Protective Order, a minimal burden the parties required for members of the public to obtain the unredacted briefs, nor filed a motion to lift the protective order as they said they might. Accordingly, any objection Drey and Pridham have to the process has been equitably waived.

3

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT

On Thursday, June 14, the Weston Firm's office received another call from the same number that had called on June 6 when Mr. Bradley took the call. Again, the caller did not identify himself, and demanded to speak to Mr. Weston or Mr. Fitzgerald. When Weston Firm paralegal David Newberry told him counsel was unavailable, he hung up on Mr. Newberry. *See id.* ¶ 10. Later that day, Mr. Lavery called the offices of Plaintiffs' counsel, Ronald A. Marron. Mr. Marron's paralegal, Carlos Sanchez, took the call, in which Mr. Lavery was again hostile and discourteous. *See id.* ¶ 11.

On June 20, Mr. Fitzgerald received a call from Mr. Lavery, which lasted about six minutes. During the call, Mr. Lavery was again discourteous and threatening. Further, he promised to appeal the objection to the Ninth Circuit, suggesting that he does not believe the objection is meritorious. *See id.* ¶¶ 12-13.

Although Drey and Pridham are also apparently represented by attorneys Grenville Pridham and Christopher V. Langone, Plaintiffs' counsel have never spoken to or received any communications from anyone other than Mr. Lavery, who appears to be spearheading the Drey/Pridham objection. In any event, Messrs. Lavery, Pridham and Langone are so-called "professional objectors," *see id.* ¶ 15, and the Drey/Pridham objection does not assert that the objection is brought in good faith.

## II.   DREY & PRIDHAM LACK STANDING TO OBJECT

Fundamental to the right to object to a proposed class action settlement is the requirement that any purported objector establish standing to do so. *In Re Equity Funding Corp. etc.*, 603 F.2d 1353, 1361 (9th Cir. 1979) (citing *Warth v. Seldin*, 422 U.S. 490, 498-500 (1975)).  In this case, the Preliminary Approval Order and the Local Rules for the Southern District of California provide the procedural framework within which a party must operate to demonstrate such standing.

The Court's Preliminary Approval Order provides that "[n]o Class Member represented by an attorney shall be deemed to have objected to the [Settlement] Agreement unless an objection signed by the Class Member is also filed with the Court and served upon Class Counsel and Defense Counsel . . . **30 days** before the Fairness Hearing." Preliminary Approval Order, Dkt. No. 108 ¶ 7(b). Because purported objectors Courtney Drey and Andrea Pridham have failed to serve and file a signed objection, they cannot be deemed to have objected.

4

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT

Southern District of California Local Civil Rule 5.4(f) requires all filed documents "must" comply with the provisions of the District's CM/ECF Electronic Case Filing Administrative Policies and Procedures Manual for the Southern District of California (APPM). S.D. Cal. Civ. L.R. 5.4(f). While individuals registered to use the District's ECF system may file documents using an electronic or "slash" signature, APPM § 2(f)(1), where an "original document requires the signature of a non-registered signatory," as with the attestation required of Drey and Pridham under paragraph 7 of the Preliminary Approval Order, "the filing party *must* scan and electronically file the original document." *Id.* § 2(f)(2) (emphasis added). Because Drey and Pridham submitted declarations using slash signatures, *see* Dkt. Nos. 123-1 & 123-2, they have not filed and served "an objection signed by the Class Member," as required by the Preliminary Approval Order. *See Kohler v. Chelsea San Diego Fin., LLC*, 2010 U.S. Dist. LEXIS 144551, at *11-12 (S.D. Cal. Dec. 9, 2010) (finding declaration slash-signed by non-registered user "unauthenticated and therefore inadmissible" pursuant to S.D. Cal. Civ. L.R. 5.4(f) and APPM § 2(f)(2), and sustaining objection to same).

Although this deficiency is somewhat technical, there are good reasons here to enforce the Local Rules and Electronic Case Filing Administrative Policies and Procedures. Drey and Pridham's attorneys, Mssrs. Lavery, Langone, and Pridham, are so-called "professional objectors." *See* Fitzgerald Decl. ¶ 15. As described above, the Drey/Pridham objection seems to be primarily the work of Mr. Lavery, who—along with Mr. Langone—has appeared before the Court in an unauthorized manner in violation of the S.D. Cal. Civ. L.R. 83.3(b) and (c) ("only a member of the bar of this court will practice in this court"). Neither Mr. Lavery nor Mr. Langone are admitted to the California Bar, nor this Court. Yet, despite appearing on behalf of Drey and Pridham, *see* Drey/Pridham Obj. at 15, neither Mr. Lavery nor Mr. Langone has sought admission *pro hac vice*.[5] Such unauthorized practice is sanctionable by an "appropriate penalty . . . [to be] credit[ed] to the court library or pro bono fund . . . ." S.D. Cal. Civ. L.R. 83.3(i). *Accord In re Classmates.com Consol. Litig.*, No. 09-cv-45-RAJ, Dkt. No.

---

[5] That Lavery and Langone have engaged in the unauthorized practice of law in this District is especially troubling in light their previously having been admonished for the unauthorized practice of law—and all their arguments made at a Final Approval Hearing accordingly stricken—in the matter of *Hall v. AT&T Mobility LLC*, No. 07-cv-5325-JLL-ES, Dkt. No. 570 (D.N.J. July 22, 2010). *See* Fitzgerald Decl. Ex. 6.

5

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT

211, slip op. at 5-6 (W.D. Wash. June 15, 2012) ("Mr. Chalmers sought to represent the objectors in court without complying with this District's rules for *pro hac vice* admission. The court declined to make an exception to the *pro hac vice* rules. Mr. Chalmers unsuccessfully petitioned the Ninth Circuit for mandamus relief.").

Given this unauthorized practice of law (and Messrs. Lavery and Lagone's presumable concomitant failure to review the Local Rules and requirements), it is unsurprising that the objection does not comply with the Local Rules and Electronic Case Filing Administrative Policies and Procedures, that the objection brief violates the Local Rules,[6] and that Mr. Lavery's telephone calls have run afoul of Local Rule 83.4, requiring professionalism in the conduct of litigation. *See* S.D. Cal. Civ. L.R. 83.4.

Professional objectors Messrs. Lavery, Langone and Pridham should not be rewarded for their unauthorized practice of law, violations of the Local Rules, and the non-compliant purported Drey/Pridham objection. Rather the Court should, respectfully, enforce the Local Rules and procedures in light of the Drey/Pridham group's repeated disregard for them and, accordingly, rule that Drey and Pridham are not proper objectors.[7] *Accord TD Ameritrade*, 2011 U.S. Dist. LEXIS 103222, at *30 (declining to consider Blum objection that did not comply with requirements for objections "properly before the Court").

### III. EVEN IF THE COURT WERE TO CONSIDER DREY & PRIDHAM'S OBJECTIONS, THEY LACK MERIT

#### A. The Injunctive Relief

The "main reason" Drey and Pridham believe the Court should reject the Settlement is that it purportedly "seeks federal judicial approval for Ferrero's Nutella 'balanced breakfast' marketing

---

[6] The fifteen-page brief does not contain the required Table of Contents or Table of Authorities as required by S.D. Cal. Civ. L.R. 7.1(h) for briefs over ten pages.

[7] Drey and Pridham are the only purported objectors who state an intention to appear at the Final Approval Hearing, but they have no standing to appear. *See* Preliminary Approval Order, Dkt. No. 108 ¶ 7(d) ("Any Class Member who does not timely file and serve an objection containing the information set forth above . . . shall not be permitted to appear at the Fairness hearing except for good cause shown"). Accordingly, the Court has the discretion to vacate the hearing and decide the final approval motion and fee application on the papers. *See* S.D. Cal. Civ. L.R. 7.1(d)(1).

6

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT

campaign." Drey/Pridham Obj. at 2. Not so. This objection miscomprehends the terms of the Settlement Agreement, whose only *requirement* is that Ferrero not use the slogan challenged in this action, "An example of a tasty yet balanced breakfast." *See* Final Approval Mot., Dkt. No. 114-1 at 7 (citing Settlement Agreement ¶ 40B).

Although the Settlement Agreement states that Ferrero currently intends to replace that slogan with "Turn a balanced breakfast into a tasty one," (the "Revised Statement") the Court is *not* being asked to sanction the Revised Statement as lawful; rather, approving the Settlement would only enjoin Ferrero from using the slogan challenged in this case. Unsurprisingly, the Settlement Agreement *does not* purport to release future claims concerning a labeling statement that has never been used and was not at issue. Instead, the "Released Claims" are only those "arising out of or relating to the allegations in the Complaint or Defendant's marketing and advertising of Nutella at issue in the Complaint and prior to the Effective Date of this Settlement . . . ." Settlement Agreement ¶ 21(AA). Thus, Drey and Pridham utterly mischaracterize the Settlement as providing a "marketing get-out-of-jail free golden ticket." Drey/Pridham Obj. at 6 (citation omitted).

Tellingly, the Settlement Agreement does not require Ferrero to use the Revised Statement at all. Rather, "[n]othing [in the Settlement Agreement] limit[s] Ferrero's ability to use additional characterizing language or imaging on the label," and "Ferrero retains the right to remove . . . the Revised Statement from the Nutella label altogether." Settlement Agreement ¶¶ 40B(1)-(2). Thus, while the Settlement Agreement states, essentially for information purposes, how Ferrero currently intends to modify the Nutella label slogan, this would not preclude any consumer who in the future was misled by the new slogan, from challenging it in a future suit.

Even setting this aside, there is nothing misleading about the Revised Statement. Although the Canadian Professor that Mr. Lavery solicited,[8] Dr. Yoni Freedhoff, opines that the Revised Statement "implies . . . that adding Nutella to a balanced breakfast would still leave that breakfast 'balanced'," Freedhoff Decl., Dkt. No. 123-3 at 1, this interpretation is contradicted by the plain language of the Revised Statement, which actually states that a "balanced breakfast" is "turn[ed]" into a "tasty" one instead. Merriam-Webster defines "turn" as "to exchange for something else."

---

[8] *See* Dkt. No. 123-4 at 1.

7

*See* http://www.merriam-webster.com/dictionary/turn. Indeed, Drey and Pridham use the same terminology in making their misguided argument, when they assert that "Nutella actually *turns* a balanced breakfast into an unbalanced breakfast." Drey/Pridham Obj. at 3 (emphasis added). This is the same message the Revised Statement conveys.

Moreover, Drey and Pridham focus exclusively on a single aspect of the Settlement's injunctive relief, ignoring the additional significant changes that Ferrero will make to Nutella's marketing including (1) displaying on Nutella's principle display panel (e.g., front label) a "Nutrition Keys" graphic prominently indicating Nutella's calories, saturated fat, sodium and sugar content; (2) ceasing use of the challenged television commercials (and replacing them with new commercials vetted by Class Counsel); and (3) revising the Nutella website to remove any content generated by or attributed to Nutella's former spokesperson, a purported children's nutrition expert, who Ferrero will no longer use in marketing Nutella. Similarly, Drey and Pridham ignore the Class's monetary relief, e.g., the common fund from which Class Members may obtain reimbursement for up to five jars of Nutella. Their limited and unfounded criticism of a single prong of the broad Settlement Agreement provides no grounds for denying final approval.

Finally, in attacking this single prong of the Settlement Agreement's injunctive relief, Drey and Pridham ignore the procedural posture of this case, which settled only after months of negotiations and two Settlement Conferences before the Honorable Cathy Ann Bencivengo. In addition, the parties only settled *after* the Court certified the Class following substantial discovery. Under such circumstances, there is a strong presumption that the Settlement's terms are reasonable, fair and adequate.

**B.     Adequacy**

Alternatively, Drey and Pridham question the adequacy of the Class Representatives and Class Counsel, arguing that "the fairness of a settlement agreement cannot itself bootstrap a finding of adequacy . . . ." Drey/Pridham Obj. at 7 (citation omitted). Again, this ignores the procedural posture of this case, because the Court determined Plaintiffs are adequate Class Representatives, and their counsel adequate Class Counsel, well before a Settlement was reached. *See* Dkt. No. 95 at 7. There is, therefore, no danger that the adequacy requirement is satisfied only to the extent the issue is "bootstrapped" to the Settlement itself.

8

Perhaps recognizing this, Drey and Pridham argue that "the issue of adequacy has received little attention in this case." Drey/Pridham Obj. at 7. This is nonsense. In support of Plaintiffs' motion to appoint their counsel Interim Class Counsel, Class Counsel submitted the detailed declarations of Mr. Marron, Mr. Weston and Mr. Fitzgerald. *See* Dkt. Nos. 8-2, 8-3 & 8-4. Relying on the information provided, the Court found that "[e]ach proposed class counsel appears to be well qualified to represent the interests of the purported class and to manage this litigation." Dkt. No. 11 at 4 (citing Dkt. No. 8-1 at 6-8). When Plaintiffs moved for class certification, they again provided detailed declarations of their counsel demonstrating their adequacy. *See* Dkt. Nos. 51-2, 51-4, 51-5. After again considering their showing, in certifying the class, the Court affirmed that "Plaintiffs and their counsel would adequately represent the putative class." Dkt. No. 95 at 7. Drey and Pridham's contention that Ferrero "did not address the adequacy of the class representatives" on certification, is misplaced, demonstrating only that Ferrero had no grounds to do so. Ferrero vigorously opposed class certification. Had it uncovered *any* reason to believe Plaintiffs were inadequate, it certainly would have raised the argument.

Drey and Pridham nevertheless contend that Class Counsel are inadequate because the purported objectors believe that the Rude-Barbato action was filed "in order to 'manufacture' an appearance of competing class actions that would justify a motion for interim appointment of Class Counsel." Drey/Pridham Obj. at 7. Drey and Pridham's argument, however, is threadbare speculation contradicted by the facts and unsupported by the deposition testimony they cite.

Plaintiff Athena Hohenberg hired attorney Ronald Marron to represent her in an action against Ferrero, which was filed on February 1, 2011 following investigation and the drafting of the Complaint, which took not a lot, but some time—Rome was not built in a day. Ms. Hohenberg and Ms. Laura Rude-Barbato live in the same small San Diego community of Imperial Beach. As Ms. Rude-Barbato testified, at around the same time Ms. Hohenberg filed her action on February 1, she learned of the lawsuit and approached Mr. Marron about possibly being involved. Rude-Barbato Decl., Dkt. No. 114-6 ¶¶ 2-3. Mr. Marron advised Ms. Rude-Barbato that he intended to work with the Weston Firm and obtained her authorization to do so. After investigating her claims and drafting a Complaint on Ms. Rude-Barbato's behalf based on the Hohenberg Complaint, the Weston Firm filed the action on February 4, 2011.

9

Nothing in Ms. Rude-Barbato's deposition testimony on which Drey and Pridham rely is contrary. *See* Drey/Pridham Obj. at 8-9. At the time of her deposition, Mr. Rude-Barbato had not met Mr. Weston or Mr. Fitzgerald, and had not hired the Weston Firm directly. Rather, in hiring Mr. Marron, Ms. Rude-Barbato authorized Mr. Marron to associate with other counsel to assist with representing her. *See* Fitzgerald Decl. ¶ 16. Before retaining Mr. Marron, Mr. Weston and Mr. Fitzgerald were involved in pre-filing communications with Ms. Rude-Barbato, who was advised that the Weston Firm would be assisting in the matter. *See id.* ¶ 17. Thus, there is no question the Weston Firm was fully authorized to file the Rude-Barbato Complaint, and that Ms. Rude-Barbato was aware of and authorized the Weston Firm's participation in her lawsuit.

Drey and Pridham's primary complaint seems to be that Ms. Rude-Barbato's action was filed separately, rather than jointly with Ms. Hohenberg. This occurred, however, because the Hohenberg action was fully prepared for filing, and actually filed, on February 1, several days before Class Counsel had sufficient time to investigate Ms. Rude-Barbato's claims and draft allegations specific to her. Indeed, Ms. Rude-Barbato did not approach Mr. Marron until approximately the time the Hohenberg Complaint was filed, nor retain Mr. Marron until several days later, on February 4 (not January 2011, as Drey and Pridham speculate, *see* Drey/Pridham Obj. at 10). *See* Fitzgerald Decl. ¶ 16.

Drey and Pridham have cited no authority for their assertion that Ms. Hohenberg was obligated to delay her filing because of the possibility that another person might later come forward with similar claims. Further, Drey and Pridham have failed to establish that there is anything wrongful in two separate litigants represented by the same counsel filing actions separately rather than jointly. Similarly, Drey and Pridham have failed to establish that all counsel representing a litigant must appear on her behalf upon the filing of her Complaint.

Nor did this especially influence the motion for consolidation and appointment of interim class counsel. Even if Mr. Marron had been listed on the Rude-Barbato Complaint along with the Weston Firm, consolidation and the appointment of interim class counsel would still have been appropriate. *See* Dkt. No. 11 at 4 ("The appointment of interim class counsel is appropriate here, as there are multiple class actions that are being consolidated into a single action." (citing *Amador v. Logistics Express, Inc.*, 2011 U.S. Dist. LEXIS 97999 (C.D. Cal. 2010)).

10

Drey and Pridham complain that this procedural posture "creates duplicative work which leads to an unreasonable lodestar," but this is entirely conclusory. In actuality, Class Counsel only expended a few additional hours drafting Ms. Rude-Barbato's Complaint, which would have been expended regardless of whether it was filed separately, or the Hohenberg filing delayed to include Ms. Rude-Barbato's allegations. Moreover, while Drey and Pridham complain about the filing of a consolidated complaint following consolidation, Drey/Pridham Obj. at 10, the Consolidated Complaint was filed just one day after the Court's Order consolidating the cases (*see* Dkt. Nos. 11, 14) and involved little more than merging allegations. Thus Drey and Pridham's assertion of significant duplication of work is unfounded.

Finally, Drey and Pridham have not shown any harm to the Class from the separate Hohenberg and Rude-Barbato filings. To the contrary, Class Counsel's interim appointment turned out to be crucial in protecting the California Class's interests against the efforts of New Jersey counsel to abscond with the case, which ultimately allowed Class Counsel in this case to negotiate a far better settlement for the California Class than the one New Jersey counsel negotiated for the 49-State Class. *See* Fee Mot., Dkt. No. 114-2 at 14-15. For example, after this court appointed Interim Class Counsel over the putative (then) nationwide class, New Jersey counsel convinced the New Jersey court to also appoint it Interim Class Counsel over the same asserted nationwide class, and purportedly granted New Jersey counsel "sole authority" to conduct settlement negotiations on the class's behalf. Class Counsel argued that this order should be vacated as violating principles of comity and trampling on this Court's prior Interim Counsel appointment, since Ferrero would theoretically be in contempt of the New Jersey court's order if it discussed settlement with Class Counsel. Ferrero took the position that "Ferrero, as a responsible litigant, is prepared to talk with counsel in each case . . . [and] may discuss settlement on behalf of the putative class with either (or both) sets of plaintiffs' counsel." *See Glover*, No. 11-cv-1086 (D.N.J.) Dkt. No. 47 at 3. Thus, it was only because Class Counsel were appointed Interim Class Counsel that Ferrero was compelled to discuss settlement of the California Class, and ultimately agreed to settle the California action on more favorable terms. This was certainly in the California Class's interests.

11

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT

C. **Fees**

Finally, Drey and Pridham object to Plaintiffs' fee application on the grounds that the fees are supposedly excessive and that the motion does not comply with Rule 23(h). Neither objection is availing.

Addressing Drey and Pridham's first argument, their sole focus on the percentage-of-recovery method is misplaced since, "courts have discretion to employ either the lodestar or the percentage-of-recovery method." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)). Plaintiffs provided a detailed analysis why the lodestar method—which provides a "presumptively reasonable" fee, *see Bluetooth*, 654 F.3d at 941—must be applied in this case in order to achieve a "reasonable result." *See* Fee Appl., Dkt. No. 114-2 at 7-8; *Bluetooth*, 654 F.3d at 942. *Accord In re HP Laser Printer Litig.*, 2011 U.S. Dist. LEXIS 98759, at *15 (C.D. Cal. Aug. 31, 2011) ("Here, because the primary benefit to the class is injunctive relief, the Court finds it appropriate to base the attorney fees on a lodestar calculation rather than any sort of common fund calculation."); *Guschausky v. Am. Family Life Assur. Co.*, 2012 U.S. Dist. LEXIS 46480, at *9-10 (D. Mont. Apr. 2, 2012) (noting that where a settlement produces a common fund, the percentage-of-recovery method, rather than lodestar, should only be applied where "(1) the classes of persons benefitted by the lawsuits are small in number and easily identifiable; (2) benefits can be traced with some accuracy; and (3) the court has confidence the costs of litigation can indeed be shifted to those benefitting." (quoting *Stavenjord v. Mont. State Fund*, 146 P.3d 724, 730 (Mont. 2006) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980))))). Drey and Pridham do not challenge this analysis, but simply assume, incorrectly, that the common fund method should categorically apply.[9]

---

[9] Drey and Pridham rely heavily on the Ninth Circuit's decision in *Bluetooth*, but it is doubtful whether *Bluetooth* even applies here, since the settlement was reached only after a class was certified. *See Bluetooth*, 654 F.3d at 939, 946 (noting that settlement occurred "before any motion was made to certify a class for merits purposes" and stating that "[p]rior to class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement[, and] [a]ccordingly, such agreements must withstand an even higher level of scrutiny . . . ."). *See also Ferrington v. McAfee, Inc.*, 2012 U.S. Dist. LEXIS 49160, at *24-25 (N.D. Cal. Apr. 6, 2012) (citing, *inter alia*, *Bluetooth* for proposition that, "[w]hen the class settlement **precedes formal, adversarial class certification**," a "higher" standard applies (citations omitted, emphasis added)); *Amunrud v. Sprint Communs. Co. L.P.*,

12

Drey and Pridham also argue that the fee application violated Rule 23(h) because it was not "directed to class members in a reasonable manner." Drey/Pridham Obj. at 13. Their reliance on *Mercury Interactive*, however, is misplaced. As Drey and Pridham note, the Ninth Circuit in that case found that class members were deprived of the opportunity to object because the fee motion was filed *after* the deadline for filing objections had expired. *See* Drey/Pridham Obj. at 13 (citing *Mercury Interactive*, 618 F.3d at 993-94). That was not the case here. Rather, Plaintiffs were required to file their fee application "no later than **45 days** before the Fairness Hearing," Preliminary Approval Order, Dkt. No. 108 ¶ 11, with objections due "**30 days** before the Fairness Hearing," *id.* ¶ 7(a). Thus, Class Members had 15 days to object, which well exceeds the time period deemed sufficient by sister federal district courts considering the requirements of *Mercury Interactive*. *See, e.g.*, *Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *79-83 (C.D. Cal. Nov. 23, 2011) (distinguishing *Mercury Interactive* and overruling objection that "counsel's fee application did not provide adequate opportunity for class members to object," where "objectors had a week to review the fee application and motion for settlement approval and file objections," which "afforded ample opportunity for them to consider and lodge objections to the settlement terms," and further noting that "[o]ther courts have set schedules similar to the one issued by this court" (collecting cases, citations omitted)).

Drey and Pridham complain that the fee application was available on PACER so that "most class members cannot easily" access it and "even if they could, downloading the motion is cost-prohibitive relative to the recovery." Drey/Pridham Obj. at 13.[10] This objection is misplaced for three

---

2012 U.S. Dist. LEXIS 17258, at *7-8 (D. Mont. Feb. 10, 2012) (noting that *Bluetooth* applies only before class certification); *Trombley v. Bank of Am. Corp.*, 2012 U.S. Dist. LEXIS 63072, at *10 (D.R.I. May 3, 2012) (citing *Bluetooth* for the proposition that "[w]hen a settlement is reached ***before the class is certified***, the settlement agreement is subject to heightened scrutiny for fairness" (citations omitted, emphasis added)).

[10] Drey and Pridham assert that downloading the fee application would cost a class member $15.60. *Id.* This is false; the fee motion (Dkt. No. 114-2) and supporting papers (Dkt. Nos. 114-3 & 114-4) would cost only $8.70 to download on PACER ($3 for the motion and Marron declaration, and $2.70 for the Fitzgerald Declaration). Rather, this figure appears to relate to the *New Jersey* fee application, as this portion of the Drey/Pridham Objection is duplicated *verbatim* from the objection that Drey/Pridham attorney Mr. Langone lodged in the New Jersey action. *See Glover* Dkt. No. 76 at 9. More importantly, while Drey and Pridham compare the nominal cost of downloading the application to the maximum recovery of $20, they provide no authority that this is a meaningful comparison, nor even explain its

13

reasons. First, "the only clear requirement *In re Mercury* imposes is that class counsel file their application for attorneys' fees, costs and incentive awards before the deadline for filing objections." *Weeks*, 2011 U.S. Dist. LEXIS 155472, at *82 (citing *In re Mercury*, 618 F.3d at 994). Indeed, "the fact that objectors were able to review the fee application and prepare rather lengthy objections to the the settlement and fee request indicates that they had sufficient time to respond." *Id. See also Silverman v. Motorola, Inc.*, 2012 U.S. Dist. LEXIS 63477, at *8 (N.D. Ill. May 7, 2012) (

> Unlike in *Mercury Interactive*, class members in this case were provided with an 'adequate opportunity to object to the motion itself,' which was filed two weeks before the objection deadline. Indeed, although he argues that class members were not afforded an adequate opportunity to objection, [Objector] himself timely objected to the motion. (internal citation omitted)).

Second, the fee application is a publicly-filed and publicly-available document that may be obtained from PACER, but also by contacting the Clerk of the Court. It would be a strange result, indeed, if the law provided that publicly filing litigation documents was insufficient to make them publicly available. Similarly, both the Class Notice and Settlement Website provided multiple means to the contact settlement administrator to obtain the fee application. Under a header "How Can I Obtain More Information," the Notice stated "Class Members can ask questions . . . and review documents concerning the case" by calling a toll free number or making a request in writing. *See* Young Aff., Dkt. No. 114-7. Over 1,200 Class Members availed themselves of this opportunity, and over 1 million individuals visited the Settlement Website. Any request by a Class member for a free copy of the fee motion would have been promptly satisfied.

Third, the final approval motion and fee application were posted by a third party on the internet soon after being filed, and thus could be easily accessed without paying PACER charges. *See* Fitzgerald Decl. ¶ 19.

Therefore, Drey and Pridham's objection that the fee application was not reasonably disclosed to the public and Class Members is unavailing, and should be overruled. Other courts have overruled similar objections. *See, e.g.*, *McDonough v. Toys "R" Us, Inc.*, 2011 U.S Dist. LEXIS 150851, at *69-71 (E.D. Pa. Dec. 20, 2011).

---

relevance. Moreover, successful objectors are typically entitled to costs and reasonable fees, presumably including this $8 PACER charge. Drey and Pridham's objection is, therefore, disingenuous.

14

# CONCLUSION

For the foregoing reasons, the Court should overrule the objections of Michael Hale and hold purported objectors Courtney Drey and Andrea Pridham lack standing and are not entitled to appear at the Fairness Hearing. Even if the Court considers Drey and Pridham's substantive objections, however, it should overrule them for the reasons discussed herein. Accordingly, the Court should, respectfully, grant final approval to the Settlement Agreement and grant Plaintiffs' application for fees, costs and incentive awards.

DATED: July 2, 2012                                          Respectfully Submitted,

/s/ Jack Fitzgerald
Jack Fitzgerald

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
MELANIE PERSINGER
COURTLAND CREEKMORE
1405 Morena Blvd., Suite 201
San Diego, CA 92109
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
MAGGIE REALIN
B. SKYE RESENDES
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**Class Counsel**

15

*In re Ferrero Litigation,* Case No. 11-CV-00205-H-KSC
PLAINTIFFS' RESPONSE TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT