KEITH E. EGGLETON, State Bar No. 159842
COLLEEN BAL, State Bar No. 167637
DALE R. BISH, State Bar No. 235390
AMIR STEINHART, State Bar No. 275037
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendant
FERRERO U.S.A, INC.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re FERRERO LITIGATION ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO.: 11 CV 0205 H <br><br> DEFENDANT FERRERO U.S.A., INC.'S RESPONSE TO OBJECTIONS <br><br> Date: July 9, 2012 <br> Time: 9:00 a.m. <br><br> Before: Hon. Marilyn L. Huff |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    A.    Plaintiffs' Allegations ................................................................................... 2

    B.    Ferrero's Advertisements and Labeling for Nutella Is Not Deceptive ........ 2

    C.    Other Obstacles To Class-wide Recovery ................................................... 4

ARGUMENT ............................................................................................................................. 5

    I.    Legal Standard for Approving Class Action Settlements ......................... 5

    II.    The Proposed Settlement Is Fair And Reasonable .................................... 6

        A.    Any Monetary Recovery By the Class Is Reasonable Considering the Strength of Ferrero's Defenses ............................................................. 6

        B.    The Advertisements and Labeling Are Not Deceptive But Ferrero Nevertheless Agreed to Modify Certain Statements to Address the Core Allegations In the Complaint ................................................................ 8

    III.    Any Allegation of Collusion Is Baseless .................................................. 9

CONCLUSION ....................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**

*Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10-4387, C 10-4937,
    2011 WL 2111796 (N.D. Cal. May 26, 2011) ...............................................................8

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006) ...........................4

*Deitz v. Comcast Corp.*, No. C 06-06352, 2007 WL 2015440
    (N.D. Cal. July 11, 2007) ...........................................................................................5

*Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256, 2011 WL 1897625
    (S.D. Cal. May 17, 2011) ...........................................................................................4

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) .......................................................7

*Frame v. Hillman*, No. 01-CV-2193, 2002 WL 34520817 (S.D. Cal. July 31, 2002) .....6

*Franulovic v. Coca-Cola Co.*, Civil Action Nos. 07-539, 07-828,
    2007 WL 3166953 (D.N.J. Oct. 25, 2007) ..................................................................4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..............................................5

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ....................9

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ...................5

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ....................................5

*In re Mfrs. Life Ins. Co. Premium Litig.*, No. 1109, 96-CV-230, 1998 WL 1993385
    (S.D. Cal. Dec. 21, 1998) ...........................................................................................7

*Jaffe v. Morgan Stanley & Co.*, No. C 06-3903, 2008 WL 346417
    (N.D. Cal. Feb. 7, 2008) .............................................................................................7

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ..............................................4

*Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J. 2011) ........................................4

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..............5, 6, 7

*Sevidal v. Target Corp.*, 189 Cal. App. 4th 905 (2010) ..................................................5

*Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075 (N.D. Cal. 2011) ...................5

**Statutes**

21 U.S.C. § 343(r) ............................................................................................................3

**Rules**

21 C.F.R. § 101.9(c)(9) ....................................................................................................3

**Rules**

Food Labeling; General Requirements for Health Claims for Food,
    58 Fed. Reg. 2478, 2491 (Jan. 6 1993) (to be codified at 21 C.F.R. pts. 20
    and 21) .....................................................................................................................3, 4

**INTRODUCTION**

From the inception of this lawsuit, Ferrero U.S.A., Inc. ("Ferrero") has stood by its advertising and product labeling for its Nutella hazelnut spread and has been prepared to demonstrate that there is nothing false or deceptive about the challenged statements. Consumers of Nutella received exactly what they bargained for – a tasty hazelnut spread that can be enjoyed in any number of ways, including as part of a balanced breakfast. In short, plaintiffs faced significant obstacles in the litigation that would have made it difficult, if not impossible, for the class to receive anything at all.

The parties participated in two settlement conferences before Magistrate Judge Cathy Ann Bencivengo, as well as in private mediation with retired District Court Judge Nicholas J. Politan. With their assistance, the parties reached an agreement to settle these claims. Generally, the proposed settlement consists of two parts – a monetary component and an injunctive relief component.

First, Ferrero created a settlement fund of $550,000 against which California consumers can make claims and receive back a portion of the amount they paid for Nutella. The specific amount of the refund depends on a number of factors, including the number of claimants, the number of jars claimed by claimants, the costs of administering the settlement, and the amount of attorney's fees awarded by the Court. That class members can receive any financial compensation at all supports approval of the settlement because if plaintiffs had attempted to litigate the case further, in all likelihood the class would have received nothing.

Second, Ferrero agreed to modify the product label to address the fundamental claim raised in plaintiffs' complaint, i.e., that the sugar and fat content of Nutella were not prominently displayed on the front of the jar. *See* Compl. ¶¶ 77, 97, 132-33. Ferrero also agreed to modify its television commercials and the handful of marketing phrases at issue in the complaint, to address other concerns raised by plaintiffs.

The proposed settlement provides an appropriate remedy to class members. It both takes into account the strength of Ferrero's defenses and obstacles to class-wide recovery, while also addressing the concerns in plaintiffs' complaint. Indeed, only three class members have objected

to the settlement and those objections are limited to the value of the injunctive relief.[1]  Ferrero therefore respectfully requests that the Court grant final approval of the proposed settlement.

## BACKGROUND

**A.  Plaintiffs' Allegations**

In their complaint, plaintiffs challenge certain statements made on the Nutella product label and in television advertisements for Nutella, including: "Made with over 50 Hazelnuts per Jar," "Contains No Artificial Preservatives," and "An example of a tasty yet balanced breakfast: a glass of skim milk, orange juice and Nutella® on whole wheat bread."  *See, e.g.*, Compl. ¶¶ 79, 81, 146.

Plaintiffs do not contend that the challenged statements are actually false or that Ferrero has somehow misstated the nutritional composition of Nutella.  Rather, plaintiffs' theory of deception is that Ferrero improperly emphasized the "healthy" nutrients (e.g., hazelnuts) while failing to give equal prominence to the "unhealthy" ingredients (e.g., saturated fat and sugar).  *See id.* ¶¶ 95, 97, 99.  With respect to the "balanced breakfast" statement on the back of the Nutella label, plaintiffs allege that the statements incorrectly imply that the nutritional value of Nutella is "derived from Nutella® itself" rather than "from other foods, such as whole-wheat toast."  *Id.* ¶¶ 28, 100.

**B.  Ferrero's Advertisements and Labeling for Nutella Is Not Deceptive**

Ferrero, like all food manufacturers, is subject to a comprehensive regulatory scheme enacted by Congress and the Federal Food and Drug Administration ("FDA") that ensures uniform labeling.  Ferrero complies with those requirements and accurately lists the nutritional value of Nutella in the familiar "Nutrition Facts" panel along with the list of ingredients. Nothing is hidden, concealed or misstated.  If a consumer has any question about the amount of fat or sugar in Nutella, he or she must simply look at the jar.  Class Certification Mot. Hr'g Tr. at

---

[1] In addition to the Court-approved notice plan, the settlement received a significant amount of media attention.  *See* Declaration of Dale R. Bish filed concurrently herewith.

3, Nov. 7, 2011 ("At the same time, so here's someone who gets Nutella. The ingredients are right on the jar.").

Moreover, as explained in Ferrero's motion to dismiss (Dkt. No. 48), any state law requirement governing the labeling of food is prohibited unless it is identical to the federal law. Because Ferrero complies with the FDA labeling requirements, it cannot be held liable under state law for failure to include additional disclosures on the Nutella label. Although the Court denied portions of Ferrero's motion to dismiss under rule 12(b)(6), discovery in the case – including the depositions of the named plaintiffs – was confirming that many of plaintiffs' claims are preempted as a matter of law.[2]

Finally, notwithstanding plaintiffs' allegations, Ferrero never suggested that Nutella – when consumed alone – is itself nutritious and balanced. Rather, Ferrero's "An example of a tasty yet balanced breakfast . . . ." statement conveys Ferrero's view that consumers can spread Nutella on whole grain products to improve their taste, and will receive a mix of nutrients when consumed with food items such as fruit, orange juice, and skim milk. To prevail on their claims, plaintiffs would have to demonstrate that the depicted breakfast (Nutella on whole wheat bread with fruit and skim milk) was not balanced by any objective definition. Plaintiffs would be unable to do so because the depicted breakfast is, in fact, balanced under accepted nutritional guidelines and would have been proven to be so at trial.

According to the daily reference values ("DRV") as established by the FDA, adults and children four years and older should include approximately 65 grams of total fats and 20 grams of saturated fats in a typical 2,000 calorie daily diet. *See* 21 C.F.R. § 101.9(c)(9). A full serving of Nutella contains 11 grams of total fat (i.e., 17% of the DRV) and 3.5 grams of saturated fat (i.e.,

---

[2] As explained in Ferrero's motion to dismiss, challenges to statements about the nutritional composition of a product, i.e., the amount of protein, are preempted as a matter of law. 21 U.S.C. § 343(r). In opposing that motion, plaintiffs argued that statements about ingredients are not implied nutrient claims. However, during their depositions, plaintiffs acknowledged that they do, in fact, associate ingredients with nutrients. *See, e.g.*, Rude-Barbato Dep. (Dkt. No. 76-5) at 29:8-13 ("[Q.] So because – do you associate hazelnuts with protein? A. Right, I do. I – well, yea, peanut butter, the hazelnuts. Q. So you see that as – A. Nuts, I think, are a protein, yes.").

1  18% of the DRV).  With respect to sugar, the FDA has declined to establish a daily reference
2  value because "the public health community has not identified a dietary level above which
3  consumption of sugars has been demonstrated to increase the risk of a disease."  Food Labeling;
4  General Requirements for Health Claims for Food, 58 Fed. Reg. 2478, 2491 (Jan. 6 1993) (to be
5  codified at 21 C.F.R. pts. 20 and 21).  Therefore, any suggestion that a breakfast cannot possibly
6  be considered "balanced" if it contains 3.5 grams of saturated fat (i.e., 18% of the FDA's daily
7  recommended allowance) or 21 grams of sugar is simply wrong.  At most, that view would
8  constitute an individual's own subjective opinion, which is not actionable under the states'
9  consumer fraud statutes.  Hr'g Tr. at 27 ("You said puffery, puffery, advertising.  And I will say
10  it's a close call on that."); *Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256, 2011 WL
11  1897625, at *3 (S.D. Cal. May 17, 2011) ("An alleged misrepresentation must relate to an
12  objectively verifiable fact; subjective representations related to product superiority are mere
13  puffery and are not actionable under the UCL or CLRA.").

14 **C. Other Obstacles To Class-wide Recovery**

15  Aside from the shortcoming of their theory of liability, plaintiffs would have faced a
16  number of other obstacles before recovering any relief for the class.

17  For example, even if plaintiffs could prevail on their theory of liability, they would have to
18  present a credible measure of damages.  *See, e.g.*, *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.
19  App. 4th 663, 698-99 (2006).  Under these circumstances, it would be difficult – if not impossible
20  – for plaintiffs to demonstrate a quantifiable loss caused by the challenged statements.  Where
21  consumers receive something of value (here, a jar of Nutella), the purchase price of the product is
22  not an ascertainable loss.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011)
23  (economic injury was difference between purchase price paid and actual value of mislabeled
24  product).  Indeed, there is no loss whatsoever where a plaintiff purchases a product that contains
25  the ingredients listed on its label.  *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 703-04 (D.N.J.
26  2011); *Franulovic v. Coca-Cola Co.*, Civil Action Nos. 07-539, 07-828, 2007 WL 3166953, at *9
27  (D.N.J. Oct. 25, 2007).  Moreover, Nutella remains an extremely popular product with a deep and
28  loyal customer base that is satisfied with, and that continues to purchase, Nutella notwithstanding

the media frenzy that has followed this case. In other words, consumers are happy with their purchase and believe Nutella is worth the price. Therefore, in the event plaintiffs were able to articulate a common theory of damages, the amount claimed would represent a tiny fraction of the purchase price.

Finally, even if plaintiffs successfully took the case through trial and articulated a theory of damages, they would still be required to identify the individuals entitled to relief, and demonstrate their entitlement to damages. Identification would be especially difficult because only individuals who relied on the contested advertisements and labels would be able to recover. To identify those entitled to relief, Ferrero would have been entitled to ask "numerous individualized fact-intensive questions" to test the memory and credibility of each potential class member as to the type and amount of Nutella they purchased. *Deitz v. Comcast Corp.*, No. C 06-06352, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007) (finding that classes whose definition depends on "'numerous individualized fact-intensive questions'" are "ill-defined and unmanageable") (citation omitted). It would not be "proper or just" to require Ferrero to accept sworn oaths or affidavits in lieu of cross-examination under these circumstances. *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011).

Satisfying that standard, if it were even possible, would be difficult and time-consuming for plaintiffs and the Court because Ferrero does not directly transact with consumers and "[i]t would be impossible to determine [class membership] without significant inquiry." *Deitz*, 2007 WL 2015440, at *8; *see also Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 919 (2010) ("[C]lass members could not be 'readily identified' because Target did not maintain, or have access to, records identifying the individuals who purchased a product with an erroneous country-of-origin designation.").

## ARGUMENT

### I.     Legal Standard for Approving Class Action Settlements

In considering whether to approve settlement agreements, district courts must determine "whether the settlement is fundamentally fair, adequate, and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citing *In re Corrugated Container*

FERRERO U.S.A., INC.'S
RESPONSE TO OBJECTIONS                    -5-                              11 CV 0205 H

1  *Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981)); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The analysis balances several factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *Officers for Justice*, 688 F.2d at 625. In addition, the "strong judicial policy in favor of settlements in complex class actions" should always inform fairness determinations. *Frame v. Hillman*, No. 01-CV-2193, 2002 WL 34520817, at *5 (S.D. Cal. July 31, 2002).

The court's inquiry is not "a trial or rehearsal for trial on the merits" because "any ultimate conclusions [made by the court] on the contested issues of fact and law which underlie the merits of the dispute" negate the primary goals of settlement—avoidance of the expense and uncertainty of continued litigation. *Officers for Justice*, 688 F.2d at 625. The issue "is not whether the settlement could be better, but whether it is fair, reasonable, and adequate and free from collusion." *Frame*, 2002 WL 34520817, at *5. Ultimately, a settlement is a compromise and as such, the fairness determination is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625. (citation and internal quotation marks omitted).

## II.     The Proposed Settlement Is Fair And Reasonable

After two settlement conferences before then-Magistrate Judge Bencivengo, and private mediation with Judge Politan, the parties agreed to a settlement that consisted of two components – a monetary fund that allows consumers to obtain a partial refund of their purchase price and injunctive relief that addresses the core allegations of plaintiffs' complaint.

### A.     Any Monetary Recovery By the Class Is Reasonable Considering the Strength of Ferrero's Defenses

The monetary component of the proposed settlement will provide class members with relief that the Court could order if plaintiffs were able to overcome the substantial obstacles in this

case and obtain a litigated judgment: a portion of the purchase price of Nutella. No objector has suggested, nor could they, that monetary relief is an unreasonable remedy, and none have complained that Ferrero should have paid more. Here, it would impossible for plaintiffs to recover anything close to the full purchase price of Nutella because every class member received something of value. Therefore, the "highest hopes" in this case would be a tiny percentage of what they paid.[3] The settlement reflects that reality. *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ("[A] sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial."); *Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.") (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)).

Given the significant risks and drawbacks to further litigation, a settlement amount equivalent to a fraction of the full purchase price is appropriate. At the time of settlement, discovery was demonstrating that Ferrero's advertisements and labeling for Nutella are not deceptive; that Nutella's labels comply with FDA regulations; that Nutella can, in fact, be enjoyed as part of a balanced breakfast; and that class members are happy with their purchases and have continued buying Nutella. Therefore, any amount of monetary recovery by the class is fair and reasonable given the strength of Ferrero's defenses and the obstacles to any classwide recovery.

---

[3] Plaintiffs do not claim that they bought a valueless product. Plaintiffs would therefore rely on expert testimony to quantify the amount of overpayment, if any, that was attributable to the challenged statements. That model would have to account for the fact that the challenged advertising campaign was the first time that Nutella had ever been advertised in the United States in any meaningful way. Assuming that plaintiffs' damages model could survive *Daubert* scrutiny, the damages analysis would still result in a "battle of experts," with each side presenting its figures and defenses to the other side's proposals. *In re Mfrs. Life Ins. Co. Premium Litig.*, No. 1109, 96-CV-230, 1998 WL 1993385, at *5 (S.D. Cal. Dec. 21, 1998) ("At a trial, there would likely be a battle of experts on myriad complex factual questions . . . these considerations favor approval of the Settlement.").

1  **B.  The Advertisements and Labeling Are Not Deceptive But Ferrero Nevertheless Agreed to Modify Certain Statements to Address the Core Allegations In the Complaint**

Plaintiffs' core allegations are that Ferrero improperly touts the positive attributes of Nutella (e.g., that Nutella can be part of a "balanced breakfast" and is "[m]ade with over 50 hazelnuts per jar") without giving equal prominence to the "unhealthy" nutrients, saturated fat and sugar.  As explained more fully in its motion to dismiss, Ferrero complies with the extensive regulatory framework established by the FDA, which establishes uniform requirements for where and how to disclose the nutritional contents of a food product.  Plaintiffs believe that food companies must do more than is required by the FDA and make that information more prominent.  Although it is under no legal obligation to do so, Ferrero has agreed to address plaintiffs' concerns by changing the front label of Nutella to display the amount of calories, saturated fat, sodium and sugar in each 2 tablespoon serving.  By doing so, Ferrero will have addressed the heart of plaintiffs' action in a way that goes beyond what plaintiffs could have obtained at trial.  *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10-4387, C 10-4937, 2011 WL 2111796, at *9 (N.D. Cal. May 26, 2011) (rejecting plaintiffs' claim that defendants' labels were misleading in that they did not disclose the synthetic nature of an ingredient, because "where manufacturers are in compliance with FDA requirements regarding express nutrient content labeling . . . requiring those manufacturers to add or change something on the label . . . would necessarily impose [an improper] state-law requirement for disclosure").

With respect to the television advertisements, Ferrero continues to believe that there is nothing deceptive about suggesting that parents can feel good about serving their children a balanced breakfast that includes Nutella.  Nevertheless, Ferrero agreed to replace the advertisements with the input of class counsel.

Finally, plaintiffs allege that one of Ferrero's existing marketing statements ("An example of a tasty yet balanced breakfast") somehow suggests that Nutella contributes more nutrients to the proposed breakfast than it actually does, or that Nutella is, by itself, a balanced breakfast.  Ferrero has always disagreed with plaintiffs' strained reading of that phrase but nevertheless agreed to modify the statement.  Although objectors Drey and Pridham contend that

1  Nutella cannot be part of a balanced breakfast, they have offered no objective criteria to refute
2  the FDA's dietary guidelines.
3       The remaining objections to the settlement fundamentally question whether the value of
4  the injunctive relief justifies the amount of attorney's fees sought by plaintiffs' counsel. That is
5  an issue on which Ferrero takes no position and that should not interfere with the approval of the
6  settlement. *See* Settlement Agreement ¶ 61 ("Ferrero shall have no obligation to take any
7  position with respect to amounts not awarded to Class Counsel as part of the Fee Award or to
8  amounts not awarded to the Plaintiffs as part of the Incentive Award.").

### III.    Any Allegation of Collusion Is Baseless

10      Objectors Drey and Pridham suggest that the proposed settlement is the product of
11 collusion between the parties. Those assertions are baseless. The proposed settlement was
12 reached by the parties with the assistance of Judge Bencivengo and retired Judge Politan – a
13 former Chief Judge for the District of New Jersey whose reputation, experience and abilities
14 made him one of the most respected and sought-after mediators in the country. It is misplaced
15 advocacy for any objector to suggest that Judge Bencivengo or Judge Politan would tolerate, let
16 alone participate in, collusive activity.
17      In support of their baseless assertion, the objectors cite the Ninth Circuit's opinion in *In
18 re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). In *Bluetooth*,
19 the proposed settlement consisted of a $100,000 *cy pres* distribution to non-profit groups, no
20 monetary recovery for the class, and up to $800,000 in possible attorney's fees. On appeal, the
21 Ninth Circuit noted that the fee request was eight times higher than the *cy pres* amount,
22 explained the district court's "duty to assess fully the reasonableness of the fee request," and
23 remanded the case so that the district court could more-fully explain the methodology and factors
24 it considered in determining the fee award was reasonable. *Id*. at 943. Because the fee award
25 was "possibly unreasonable," the Ninth Circuit also vacated approval of the underlying
26 settlement so that the district court "may appropriately factor this into its Rule 23(e) analysis."
27 *Id.* at 945-46. On remand, the parties submitted additional materials and briefing in support of
28

the original settlement, which is currently under submission.  *See In re Bluetooth Headset Prods. Liab. Litig.*, No. 07-1822 (C.D. Cal. Feb. 28, 2007), Dkt. Nos. 347, 348, 350, 352.

With respect to the three factors identified in the *Bluetooth* opinion, the Ninth Circuit did not suggest that settlements with those features are *per se* inappropriate and cannot be approved. Indeed, the Ninth Circuit "express[ed] no opinion on the ultimate fairness of what the parties have negotiated." 654 F.3d at 950.  Rather, in those circumstances, the Ninth Circuit cautioned the district court to take special care and "'assure itself that the fees awarded in the agreement [are] not unreasonably high.'" *Id.* at 947 (citation omitted).

Ferrero takes no position on what fee-award methodology would be appropriate under the circumstances here or whether the value of the injunctive relief supports plaintiffs' attorney fee request.  However, the underlying settlement in this case is distinguishable from *Bluetooth* because, here, the settlement provides the relief that plaintiffs were seeking – a percentage of the purchase price, additional disclosure of fat and sugar, and modifications to the television advertisements.

## CONCLUSION

For all of these reasons, Ferrero respectfully requests the Court overrule the objections and issue final approval to the proposed settlement.

Dated:  July 2, 2012

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/  Dale R. Bish
Dale R. Bish
Attorneys for Defendant Ferrero U.S.A., Inc.